he and his counsel had been led to believe they could use.

395. On Thursday, 23 May 2002, Meuse was found Not Guilty by a jury of his peers.

396. Since trial to this day, Meuse has been unable to find employment. Meuse is known as the "kidnapper" almost everywhere he goes.

## COUNT 1: <u>VIOLATIONS OF 42 U.S.C. 1983: ARREST</u>

397. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 396 above with the same force and effect as if herein set forth.

398. At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

399. Acting under the color of law, Defendants worked a denial of Meuse's rights, privileges or immunities secured by the United States Constitution or by Federal law,\14/ to wit,

   a. by depriving Meuse of his liberty without due process of law, by taking him into custody and holding him there against his will,\15/

   b. by making an unreasonable search and seizure of his property without due process of law,

   c. by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Meuse equal protection of laws,

   d. by refusing or neglecting to prevent such deprivations and denials to plaintiff,

thereby depriving plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.\16/

400. Around 3:30 P.M., plaintiff, handcuffed to two other detainees, was transported from the Haverhill Municipal Court to a Essex County jail, put into a holding area with other detainees, strip-searched, given prison garb, and remained in jail until he was bailed out by his parents around 10 A.M. on Tuesday, 10 April 2001.

401. Meuse had to appear in Haverhill Municipal Court three more times.

402. On 23 May 2002, the jury found Meuse not guilty as charged.

---

14  <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997); <u>McNamara v. Honeyman</u>, 406 Mass. 43, 52 (1989).

15  <u>County of Sacramento v. Lewis</u>. 523 U.S. 833 (1998); <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315 (1982); <u>Williams v. Hartman</u>, 413 Mass, 398, 403 (1992).

16  <u>Miga v. Holyoke</u>, 398 Mass. 343, 349, 350 (1986) (deprivation of pretrial detainee's substantive due process rights where state seeks to impose punishment without a constitutional adjudication of guilt). <u>Bell v. Wolfish</u>, 441 U.S. 520, 535, n. 16 (1979).

403. Defendants City of Haverhill and the Haverhill Police Department negligently trained Defendants Thomson and Moriarty.

404. Moynihan had an ulterior motive, namely, personal financial benefit, for arresting Meuse and charging him with crimes he had not committed.

405. Pane had the improper purpose of trying to gain an advantage in the custody action and to unlawfully deprive Meuse of his property and liberty.

406. Stults's purpose was to aid and abet Pane, her client, in the custody action, to benefit Stults herself financially and reputationally from depriving Meuse of his property and liberty.

407. There was no warrant for the arrest of plaintiff on 22 March 2001 by the ADA police. The arrest was without reasonable grounds for said Defendants to believe Meuse had committed an offense and Defendants knew they were without probable cause to arrest Meuse.

408. No complaint, information, or indictment was ever sworn against Meuse alleging offenses occurring prior to the moment an Ada, Oklahoma, police officers Casey Northcutt and Fox handcuffed Meuse and told him he was under arrest.

409. As a result of the **concerted unlawful and malicious arrest**, all Defendants directly or indirectly deprived Meuse of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the false arrest against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages[17] in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 2: <u>VIOLATIONS OF 42 U.S.C. 1983: DETENTION AND CONFINEMENT</u>

410. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 409 above with the same force and effect as if herein set forth.

411. As a result of the **concerted unlawful and malicious detention and confinement** of Meuse, all Defendants directly or indirectly deprived Meuse of both his right to his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment for the false detention and confinement against

---

[17] "Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights). Smith v. Wade, 461 U.S. 30, 50-51 ((1983); Clark v. Taylor, 710 F.2d 4, 14 (1st Cir. 1983). Miga, *supra* at 355.

all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

### COUNT 3: VIOLATIONS OF 42 U.S.C. 1983: CONSPIRACY

412. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 411 above with the same force and effect as if herein set forth.

413. Moynihan had gathered information from a third-party caregiver (Anne Kalip) who described to Moynihan the serious physical and psychological condition of the child, the condition which Moynihan wrote in his notes.

414. Moynihan one affidavitless warrant that was unlawful, having no basis for it, whatsoever.

415. The FBI alleged to the world that there was an outstanding warrant for Meuse.

416. Moynihan was not sure whether he or the HPD had supplied the information to the FBI for the warrant poster.

417. Susan Pane secured an interview with NBC-TV's Sally Jessy Raphael show and they televised the FBI's Wanted Poster two times during the broadcast across the nation.

418. Rosalyn Stults was interviewed by the Eagle-Tribune, publishing in Essex County, Massachusetts, and advertised the then-upcoming Sally Jessy Raphael show.

419. The FBI coordinated activities with the National Center for Missing and Exploited Children with the intent to broadcast nationwide the poster of Meuse and Marissa.

420. On 10 February 2001, FOXNews broadcast the FBI/NCMEC Missing/Abductor poster.

421. On Friday. 16 February 2001, American Broadcasting Company's ["ABC's"] Sally Jessy Raphael's show broadcast a different version of the FBI/NCMEC Missing/Abductor poster. It read "FAMILY ABDUCTION" rather than "MISSING/ABDUCTOR."

422. Beginning on or around 10 February 2001, FOX TV's America's Most Wanted show displayed the FBI/NCMEC Missing/Abductor poster on its website [see above] and that poster exists on the website to date.

423. All the Defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused Meuse damages that were a direct result of those acts.

424. The object and course of action was to capture Meuse by the following:

    a.    by misrepresenting that a custody order was in place when Meuse took the

                child from Florida,

    b.    by misrepresenting that Meuse was a felon,

    c.    by misrepresenting that Meuse was a fugitive, that he had taken unlawful flight to avoid prosecution,

    d.    by misrepresenting that Meuse was wanted for parental kidnapping,

    e.    by preparing posters for display in stores, postoffices, other physical locations, and on television and in newspapers,

    f.    by being interviewed by reporters for television and newsprint.

425.    In furtherance of their object, Defendants did two or more overt acts against the plaintiffs. Those unlawful overt acts include, but are not limited to, the following:

    a.    authored and prepared the posters,

    b.    falsely published to local and national audiences that a federal warrant to capture Meuse had issued,

    c.    falsely published to local and national audiences that Meuse was wanted for parental kidnapping,

    d.    falsely published to local and national audiences that Meuse had taken unlawful flight to avoid prosecution,

    e.    arranged for their distribution of the posters,

    f.    distributed the posters across the nation,

    g.    published the posters on television for local and national audiences,

    h.    arranged for being interviewed on local and national television stations, and

    i.    were interviewed on local and national television shows.

426.    Rosalyn Stults advised and strategized with Susan about how to evade service of process of the 209A order and to keep the child from him before and after the original 209A temporary restraining orders had expired;

427.    Susan Pane intentionally told her mother to lie to a deputy sheriff and a process server that Susan was living in an unknown location. **[Trial Exh. K, attempt at service; Trial Exh. NN, affidavit]**

428.    Stults and Pane had the goal to get posters published nationwide to capture Meuse and with the an agreement Susan intentionally misrepresented that there had been a custody order prior to Meuse taking the child from Florida.

429.    FOXNews, the Haverhill police department, Thompson, Moynihan, Stults, Prouty, NCMEC, and Pane misrepresented that Meuse was a fleeing felon.

430.    In concert with Pane's and Stults's representations and misrepresentations, Moynihan, Thompson, Barone, Kelly, and Prouty indirectly caused the detention and confinement of

Meuse on the grounds that Meuse violated a custody order.

431. The defendants agreed that the object or course of action was to arrest, detain, and confine Meuse without probable cause, and maliciously charge and prosecute him with crimes.

432. Plaintiff suffered harm and damages that are a direct result of those acts.

433. As a result of their **concerted unlawful and malicious conspiracy,** all Defendants deprived Meuse of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

WHEREFORE, Plaintiff demands judgment for the conspiracy against all the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $2,500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 4: <u>VIOLATIONS OF 42 U.S.C. 1983: REFUSING OR NEGLECTING TO PREVENT</u>

434. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 433 above with the same force and effect as if herein set forth.

435. At all times relevant to this Complaint, all Defendant police officers of the Haverhill Police Department were acting under the direction and control of Police Chief Barone, and Defendant City of Haverhill.

436. At all times relevant to this Complaint, all Defendant agents of the FBI were acting under the direction and control of FBI, Director Louis Freeh, and Charles Prouty.

437. Acting under color of law and pursuant to official policy or custom, the Haverhill Police Department, Chief Barone, the City of Haverhill, the FBI, Director Louis Freeh, and Charles Prouty knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant police officers and agents in their duties to refrain from:

    a. unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

    b. unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,

    c. conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the Commonwealth of Massachusetts; and

    d. otherwise depriving Plaintiff of his constitutional and statutory rights, privi-

leges, and immunities.

438. Defendants Thompson, the City of Haverhill, the FBI, Director Louis Freeh, and Charles Prouty had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. The afore-named defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

439. Defendants Thompson, the City of Haverhill, the FBI, Director Louis Freeh, and Charles Prouty directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant police officers and agents heretofore described.

440. As a direct and proximate cause of the negligent and intentional acts of the Defendants Haverhill Police Department, Chief Barone, the City of Haverhill, the FBI, Director Louis Freeh, and Charles Prouty, Plaintiff suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. sec. 1983.

WHEREFORE, Plaintiff demands judgment against Defendants the City of Haverhill, Captain Thompson, Director Louis Freeh, and Charles Prouty, jointly and severally, for actual, general, special, compensatory damages in the amount of $2,500,000 and further demands judgment against each of said Defendants, jointly and severally, for punitive damages in the amount of $100,000, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 5: **MALICIOUS PROSECUTION**

441. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 440 above with the same force and effect as if herein set forth.

442. Defendants instituted criminal process against the plaintiff with malice.

443. Susan Pane and Rosalyn Stults played an active part in the initiation and continuation of the criminal proceedings.

444. Stults played an indirect role by advising Susan how to evade service of process of the original 209A temporary restraining order.

445. Moynihan played an active part in the initiation of the criminal proceedings by causing the false arrest and imprisonment of Meuse.

446. Moynihan signed the application for criminal complaint against Meuse.

447. The charges were not based upon probable cause, that is the state of the facts in the

mind of the prosecutor would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Meuse was guilty.[18]

448. Defendants Moynihan and Thompson had a duty to ascertain whether there was reasonable and probable cause for a prosecution,[19] to wit, knowing that Meuse had been given emergency custody of the child by Judge Herlihy, Defendants Moynihan and Thompson had a duty to arrest Pane when she showed up at the station on 20 October 2000, while the violation of Judge Herlihy's 209A order was still effective.[20]

449. Defendants Moynihan and Thompson breached their duties.

450. Defendants Moynihan and Thompson knew or should have known that the 209A order against Pane was in effect, that Pane was evading service; they had a duty to ascertain the status of that 209A and failed that duty.

451. Defendants Moynihan and Thompson and the FBI agents knew or should have known that Pane had intentionally misrepresented facts about the non-existent custody order when Meuse took the child from Florida and about the medical condition of the child, Marissa.

452. Pane recklessly made categorical statements to Officer Moynihan accusing the plaintiff of violating a court order by taking the child, statements that resulted in Meuse's arrest.[21]

453. Pane instigated or participated in the prosecution by pressing police to arrest and

---

[18] Carroll v. Gillespie, 14 Mass.App.Ct. 12, 19 (1982), cites omitted. Morreale v. DeZotell, 10 Mass.App.Ct. 281, 282 (1980); Nolan & Sartorio, 37 M.P.S., *Torts*, sec. 79, pg. 96 (2d ed. 1989 & 1993 Supp.).

[19] Carroll v. Gillespie, 14 Mass.App.Ct. 12, 18 (1982).

[20] [I]nformation known to be [] sufficiently unreliable or incomplete to support a finding that it was unreasonable to rely upon it without additional information. See Griffin v. Dearborn, 210 Mass. 308, 313 (1911) (where defendant knew that his horse was taken by G's minor son, and did not know whether the son did so, as the son claimed, on order from G, (t)he defendant's immediate prosecution of the son without any precedent investigation" could be found to lack reasonable grounds); Smith v. Eliot Sav. Bank, 355 Mass. at 548, (where defendant bank failed to pursue information as to whereabouts of S, in whose name unauthorized withdrawals were made, and teller identified the plaintiff as forger seven months after brief withdrawal transaction, jury could have found that identification was "so suspect that a 'man of ordinary caution and prudence' would not have relied upon it," quoting from Bacon v. Towne, 4 Cush. at 239.)

Carroll v. Gillespie, 14 Mass.App.Ct. at 20-21.

[21] It is established in a related context that an individual's freedom of movement cannot be subject to the "'honest ... suspicion' of a shopkeeper ... (acting) on his own 'inarticulate hunches.'" Coblyn v. Kennedy's, Inc., 359 Mass. at 325 (false arrest).

Carroll v. Gillespie, 14 Mass.App.Ct. at 24-25.

apply for a complaint for an improper purpose.\22/

454.  Stults instigated or participated in the prosecution by pressing police to apply for a complaint for an improper purpose.

455.  The criminal proceeding terminated in favor of the plaintiff when the assistant district attorney recommended the dismissal of all four charges against Meuse and the court accepted the recommendation and dismissed the charges against Meuse.\23/

456.  Defendants City of Haverhill is liable under the doctrine of *respondeat* superior.

WHEREFORE, Plaintiff Meuse demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 6: ABUSE OF PROCESS

457.  Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 456 above with the same force and effect as if herein set forth.

458.  Defendants maliciously used a "legal process `to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'"\24/

459.  Pane knew that the complaint initiated was groundless and made misrepresentations to the officers to gain advantage in the custody action.\25/

---

22   Conway v. Smerling, 37 Mass.App.Ct. 1, 3 (1994) ("Although distinct from the tort of abuse of process, see Bednarz v. Bednarz,[] 27 Mass.App.Ct. [668], 669, 673, there is in malicious prosecution the common ingredient of an improper purpose, i.e., using court proceedings primarily to gain a private advantage, because of hostility and ill will, and without belief by the accuser in the guilt of the accused.  Restatement (Second) of Torts sec. 668 comments c-g").

23   Correllas v. Viveiros, 410 Mass. 314, 318 (1991). "A dismissal of a criminal complaint by the court . . . entered by a district attorney satisfies the requirement that the criminal prosecution has been terminated in favor of the plaintiff." Sarvis v. Boston Safe Deposit and Trust Co., 1994 WL 879797 (Mass.Super. 1994), citing Wynne v. Rosen, 391 Mass. 797, 800 (1984).

24   Carroll v. Gillespie. 14 Mass.App.Ct. 12, 26 (1982), quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975), quoting from Quaranto v. Silverman, 345 Mass. [423,] 426 (1963).

25   A person may be liable for false imprisonment not only when the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed. Karjavainen v. Buswell, 289 Mass. 419, 427 (1935) (questioned on other grounds by Mezullo v. Maletz, 331 Mass. 233, 239-240 [1954]). Restatement (Second) of Torts s 37 (1965) ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement").

49

460. Stults knew or should have known that the complaint was groundless and she sought to use the process for an ulterior purpose, including, but not limited to, the purpose of aiding her client to gain advantage in her divorce.

461. Defendants Moynihan and Thompson knew or should have known that the complaint initiated was groundless.

462. Defendant Moynihan applied for a warrant without an affidavit and was granted an unlawful warrant for Meuse.

463. Defendants Moynihan and Thompson used the legal process with the ulterior purpose, to wit, for personal financial benefit.

464. Defendants City of Haverhill is liable under the doctrine of *respondeat* superior.

WHEREFORE, Plaintiff Meuse demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages, in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 7: VIOLATION OF MASS. CIVIL RIGHTS ACT, M.G.L. c. 12, sec. 11*I*

465. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 464 above with the same force and effect as if herein set forth.

466. At all times relevant herein, the conduct of all Defendants was subject to the Massachusetts Civil Rights Act.

467. Defendants Susan Pane, Stults, Moynihan, Thompson, Barone, Kelly, and Prouty interfered with or attempted to interfere by threats, intimidation,[26] or coercion with Plaintiff's

---

Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 97-98 (1999).
[26] "Under the MCRA, a `[t]hreat'. . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. `Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. . . . [c]oercion [is] `the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.'" Sarvis v. Boston Safe Deposit & Trust Co. 47 Mass.App.Ct. 86 (1999) quoting Planned Parenthood League of Mass., Inc. v. Blake, 417 Mass. 467, *cert.* denied 513 U.S. 868 (1994).

There must also be evidence of "actual or potential physical confrontations involving a threat of harm," id. at 473 n. 8, though the confrontation may involve third persons and the threat of harm need not be directed at the plaintiff. See Redgrave v. Boston Symphony Orchestra, 399 Mass. at 100-101 (potential physical harm to audience and orchestra members by third persons protesting plaintiff's political views is a confrontation within the MCRA). A plaintiff is not required to prove a specific intent to threaten, intimidate, or coerce for the purpose of interfering with a secured right. Id. at 99-100.

50

exercise and enjoyment of his rights -- e.g., his rights to his liberty, and his right to due process -- secured by the state and federal constitutions or laws of the United States and/or the Commonwealth of Massachusetts.[27]

468.  Thus, under color of state, Meuse's liberty was threatened, and he was intimidated and coerced into not enforcing his right to living in his home.

469.  Defendants City of Haverhill and the FBI are liable under the doctrine of respondeat superior.

470.  As a direct and proximate result of the conduct of the Defendants, Meuse was intimidated and put in continuing anxiety and has suffered damages including but not limited to the aforesaid damages.

WHEREFORE, Plaintiff Meuse demands judgment against Defendants for injunctive relief and actual, special, compensatory and punitive damages, and attorney's fees and costs of the litigation in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 8: FALSE ARREST AND IMPRISONMENT[28]

471.  Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 470 above with the same force and effect as if herein set forth.

472.  At all times relevant herein, **(a)** the Defendants acted with the intention of confining Meuse within fixed boundaries, **(b)** the act directly or indirectly resulted in confinement, and **(c)** Meuse was conscious of the confinement.[29]

473.  All the Defendants indirectly caused to be imposed on Meuse by force or threats an unlawful restraint upon his freedom of movement, to wit by arresting and handcuffing and shackled together with several others.

474.  Meuse was shackled in such a way that his hands were in front, but the leg shackles were worse, they restricted all movement, and the hand shackles and feet shackles were tightly

---

Sarvis v. Boston Safe Deposit & Trust Co. 47 Mass.App.Ct. at 92 (1999).

[27]  Rogan v. Menino, 973 F.Supp. 72, 77 (D.Mass. 1997).

[28]  A person may be liable for false imprisonment not only when the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed. Karjavainen v. Buswell, 289 Mass. 419, 427 (1935) (questioned on other grounds by Mezullo v. Maletz, 331 Mass. 233, 239-240 [1954]). Restatement (Second) of Torts s 37 (1965) ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement").

Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 97-98 (1999).

[29]  Restatement (Second) Torts, sec. 35; see Foley v. Polaroid Corp., 400 Mass. 82, 89-92 (1987); Nolan & Sartorio, 37 M.P.S. *Torts*, sec. 16, p. 16 (2d ed. 1989 and 1993) Supp.

51

connected together.

475. Shackled with his hands behind his back, Meuse was transported for 5 or 6 days and nights to numerous cities between Oklahoma and Massachusetts, at each of which he was detained in a cell.\30/

476. It was all Defendants who, under the color of state law, indirectly caused the unlawful imprisonment of Meuse in diverse jails from Oklahoma to Massachusetts.

477. As a direct and proximate result of the conduct of the defendants, Meuse suffered harm and damages including but not limited to the aforesaid damages.

478. Defendants City of Haverhill and the FBI are liable under the doctrine of *respondeat* superior.

WHEREFORE, Plaintiff demands judgment against all Defendants for injunctive relief and actual, special, compensatory damages, attorneys' fees and costs of the litigation in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 9: ASSAULT

479. Meuse repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 478 above with the same force and effect as if herein set forth.

480. Meuse is a reasonable person.

481. All Defendants indirectly but intentionally created an apprehension of immediate physical harm by means of an overt gesture, for no known purpose other than to create in Meuse an apprehension of immediate physical harm.\31/  Those overt gestures included the following:

> a. an overly hyperkinetic policeman, literally shaking, held a shotgun two inches from Meuse's face
> 
> b. a policeman with a 9-millimeter handgun aimed at Meuse

482. Any reasonable person would also become apprehensive in the face of defendants' threatening conduct.

483. Defendants City of Haverhill and the FBI are liable under the doctrine of *respondeat* superior.

WHEREFORE, Plaintiff demands judgment against Defendants for actual, special, and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 10: BATTERY

---

30   Simpson and Alperin, Summary of Basic Law, § 1841.
31   Nolan & Sartorio, 37 M.P.S., *Torts*, sec. 12, p. 6 (2d ed. 1989 and 1993) Supp.); Restatement (Second) Torts, sec. 21.

52

484. Meuse repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 483 above with the same force and effect as if herein set forth.

485. Without the consent of Meuse, Defendants intentionally, harmfully, and offensively touched Meuse by handcuffing and shackling him.[32]

486. Without the consent of Meuse, all Defendants indirectly caused the intentional, harmful, and offensive touching of Meuse when chaining and shackling Meuse in the police station.

487. Defendants City of Haverhill and FBI are liable under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff demands judgment against Defendants for injunctive relief and actual, special, and compensatory damages in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 11: CONSPIRACY

488. Meuse repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 487 above with the same force and effect as if herein set forth.

489. All the Defendants **(a)** had an object to be accomplished; **(b)** had an agreement on the object or course of action; **(c)** performed one or more unlawful overt acts; and **(d)** caused Meuse damages that were a direct result of those acts.

490. The object and course of action was to capture Meuse by the following:

    **a.** by misrepresenting that a custody order was in place when Meuse took the child from Florida,

    **b.** by misrepresenting that Meuse was a felon,

    **c.** by misrepresenting that Meuse was a fugitive, that he had taken unlawful flight to avoid prosecution,

    **d.** by misrepresenting that Meuse was wanted for parental kidnapping,

    **e.** by preparing posters for display in stores, postoffices, other physical locations, and on television and n newspapers,

    **f.** by being interviewed by reporters for television and newsprint.

491. In furtherance of their object, defendants did two or more overt acts against the plaintiffs. Those unlawful overt acts include, but are not limited to, the following:

    **a.** authored and prepared the posters,

    **b.** falsely published to local and national audiences that a federal warrant to cap-

---

[32] Waters v. Blackshear, 412 Mass. 589, 590-591 (1992).

ture Meuse had issued,

c. falsely published to local and national audiences that Meuse was wanted for parental kidnapping,

d. falsely published to local and national audiences that Meuse had taken unlawful flight to avoid prosecution,

e. arranged for their distribution of the posters,

f. distributed the posters across the nation,

g. sponsored the posters across the nation

h. published the posters on television for local and national audiences,

i. arranged for being interviewed on local and national television stations, and

j. were interviewed on local and national television shows.

492. Rosalyn Stults advised and strategized with Susan about how to evade service of process of the 209A order and to keep the child from him before and after the original 209A temporary restraining orders had expired;

493. Susan Pane intentionally told her mother to lie to the deputy sheriff that Susan was living in an unknown location.

494. Stults and Pane had the goal to get posters published nationwide to capture Meuse and with the an agreement Susan intentionally misrepresented that there had been a custody order prior to Meuse taking the child from Florida.

495. FOXNews, Prouty, Wal-Mart, NCMEC, AMW, Moynihan, and Susan misrepresented that Meuse was a fleeing felon.

496. Wal-Mart sponsored NCMEC and the America's Most Wanted segments in which the poster against Meuse was used.

497. FBI Agent Charles Prouty helped further the conspiracy when he was interviewed by the agents, servants, or employees of the television broadcasters.

498. In concert with Pane's and Stults's representations and misrepresentations, Moynihan, Thompson, Barone, Kelly, and Prouty indirectly caused the detention and confinement of Meuse on the grounds (a) that he violated a custody order; (b) that he was wanted for parental kidnapping, and (c) that he was fleeing unlawfully to avoid prosecution.

499. The defendants agreed that the object or course of action was to arrest, detain, and confine Meuse without probable cause, and maliciously charge and prosecute him with crimes.

500. Defendants City of Haverhill and the FBI are liable under the doctrine of *respon-*

*deat* superior.

501.  Plaintiff suffered harm and damages that are a direct result of those acts.

WHEREFORE, Plaintiff demands judgment against all Defendants for injunctive relief and actual, special, compensatory and punitive damages, attorney's fees, costs, expenses, and interest in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 12: **DEFAMATION**

502.  Meuse repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 501 above with the same force and effect as if herein set forth.

503.  On Saturday, 10 February 2001, by televising on FOX stations the Wanted poster and an interview of FBI Agent Prouty, Defendants published that Meuse was wanted for parental kidnapping and was unlawfully fleeing to avoid prosecution.

504.  By false statements both orally and pictorially on 10 February 2001, Defendants intended to impeach Plaintiff Meuse's honesty, integrity, virtue, or reputation.

505.  The defamatory statements were, including, but not limited to, the following:

   a. that there was a custody agreement,
   b. that Meuse was Wanted for parental kidnapping,
   c. that Meuse was unlawfully fleeing to avoid prosecution

506.  On Friday, 16 February 2001, ABC televised on the Sally Show, hosted by Sally Jesse Raphael, an episode entitled "My Child Has Been Stolen."

507.  On that show, Defendants caused a Wanted poster of Meuse and the child to be televised.

508.  The "My Child Has Been Stolen" episode was sponsored by NCMEC and America's Most Wanted.

509.  The Wanted poster was displayed two times and read, ""Family Abduction." portrayed Meuse and the child, and instructed viewers to call 1-800-The-Lost upon seeing Meuse and/or the child.

510.  Defendants published the statements with knowledge of their falsity or with reckless disregard as to whether they were false.

511.  By false statements both orally and pictorially on 10 February 2001 and on 16 February 2001, Defendants intended to impeach Plaintiff Meuse's honesty, integrity, virtue, or reputation.

512.  Meuse has been harmed and damaged by Defendants' publications.

55

WHEREFORE, Plaintiff demands judgment against all Defendants for injunctive relief and actual, special, compensatory and punitive damages, attorney's fees, costs, expenses, and interest in an amount deemed at time of trial to be just, fair, and appropriate.

## COUNT 13: <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

513.  Meuse repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 512 above with the same force and effect as if herein set forth.

514.  Defendants intentionally and deliberately inflicted emotional distress on Meuse by maliciously prosecuting Meuse, or by abusing the lawful process by unlawful purpose, or by violating Meuse's constitutional rights, or by falsely arresting and imprisoning the plaintiff, by conspiring against Meuse, or by interfering with Meuse's state civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

515.  Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

516.  The actions of the Defendants were the cause of Meuse's distress.

517.  Meuse is a reasonable man.

518.  The emotional distress sustained by Meuse was severe and of a nature that no reasonable man could be expected to endure.[33]

519.  As a result of the Defendants' extreme and outrageous conduct, Plaintiff was, is, and, with a high degree of likelihood, will continue to be emotionally distressed due to the intentional exclusion.[34]

520.  Defendant City of Haverhill is liable under the doctrine of *respondeat* superior.

521.  As a result of the Defendants' extreme and outrageous conduct, Meuse has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment, including interest, jointly and severally against all Defendants in an amount deemed by this Court to be just and fair and in any other way in which the Court deems appropriate.

---

[33]  <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 145 (1976).

[34]  "Extreme and outrages conduct is not required if the emotional distress resulted from the commission of another tort. <u>American Velodur Metal, Inc. v. Schinabek</u>. 20 Mass.App.Ct. 460, 470-471 (1985).

                                                Respectfully submitted,
                                                BRIAN J. MEUSE,
                                                By his attorney,

4 February 2004

                                                Barbara C. Johnson, Esq.
                                                6 Appletree Lane
                                                Andover, MA 01810-4102
                                                978-474-0833
                                                BBO #549972

## PLAINTIFF'S VERIFICATION

The undersigned, being duly sworn, deposes and says that I am the Plaintiff herein, and have read the foregoing pleading filed on my behalf, and the facts stated therein are true.

__ February 2004

                                                Brian J. Meuse

Subscribed and sworn to before me, this _6_ th day of February 2004.

                                                Notary Public

                                                My Commission Expires March 5, 2009