MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04  11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 1 of 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,
Rosalyn Stults,
Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly,** in his official and individual capacities,
**FOX Television Stations, Inc.,
America's Most Wanted,
National Center for Missing and Exploited Children,
Wal-Mart Stores, Inc.**
Defendants

**MEUSE'S OPPOSITION TO
NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT,
WITH MEMORANDUM IN SUPPORT OF OPPOSITION**

    Now comes Brian J. Meuse ["Meuse] to oppose the motion by National Center for Missing and Exploited Children ["NCMEC"] to strike Plaintiff's Complaint.  Given that the issues raised by NCMEC are the same as those raised by Defendants Susan Pane and Rosalyn Stults in their motions to strike, Meuse incorporates  herein in entirety his memoranda in opposition to Pane's and Stults' motions to strike.

    As grounds for opposing, Meuse states that despite its length, his complaint is neither vague nor incomprehensible, and it clearly pleads claims that are not frivolous on their face.  The allegations are sufficiently clear and specific to give NCMEC notice of ways in which the entity is claimed to have violated Meuse's rights, and one cannot say that in support of such a pleading Meuse can prove no set of facts that would entitle him to relief.   Thus, the complaint may not

1

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 2 of 19

properly be dismissed as frivolous, and the dismissal for noncompliance with Rule 8 without leave to amend would be an abuse of discretion. Salahuddin v. Cuomo, 861 F.2d 40, 43 (2d Cir. 1988).

Further, the court has "required pleadings under Sec. 1983 to contain more than mere conclusory allegations" [id., at 43, citing Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck, 463 F.2d 620, 622-23 (2d Cir.1972), *cert. denied*, 410 U.S. 944 (1973)], and Meuse has brought four causes of action under 42 U.S.C. §1983.

Similarly, while a plaintiff should not plead mere evidence, where Meuse brought a claim for §1983/§1985 conspiracy and a claim for common-law conspiracy, he had an obligation to provide "some details of time and place and the alleged effect of the conspiracy." 2A Moore's *Federal Practice*, p. 8.17[5], at 8-123 to 8-124. Hayduk v. Lanna, 775 F.2d 441, 443 n. 1 (1st Cir. 1985).

All that happened here is that looking toward Rule 9(b) and §1983 requirements, Meuse chose to meet the notice requirement of the Rules by landing on the side of detail rather than on that of vagueness. On either side, all pleadings must be "so construed as to do substantial justice." F.R.Civ.R. 8(f).

Moreover, Rule 15(a) directs that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P.15(a); *see* Foman v. Davis, 371 U.S. 178, 182 (1962); 3 Moore's *Federal Practice*, p. 15.08[4], at 15-65. "Given our jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities, it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8." Salahuddin, 861 F.2d at 42.

In factual support of his opposition to the motion to strike the claim against the movant, Meuse submits to this court in Table 1, the facts involving NCMEC. In Table 1, Meuse includes the 16 paragraphs NCMEC identified as those paragraphs in which its name was called. In actual

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

03/31/04  11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 3 of 19

fact, there were 31 individual paragraphs referring explicitly to NCMEC's conduct and its posters and many, many, many dozens more -- that included NCMEC **implicitly** under the umbrella of the word "Defendants."

Following Table 1 is a section containing a summary of NCMEC's role in the underlying events. That section is followed by Meuse's legal arguments:

1. NCMEC has not shown that the complaint is in noncompliance with F.R.Civ.P. 8(e). In fact NCMEC and its counsel appear to have misread Rule 8(e).

   a. NCMEC's Cases: What NCMEC Failed to Say About Them

2. NCMEC is liable for false arrest, detention, imprisonment, assault, battery, malicious prosecution, abuse of process, and defamation of and conspiracy against Meuse, as well as the intentional infliction of emotional distress, , on two theories: by acting for itself through another and by disseminating false information that caused the diverse harms imposed upon him.

| Table 1. The 31 Paragraphs Explicitly Calling Out "NCMEC" or the NCMEC Posters (An Uncounted Number of Paragraphs Implicitly Refer to Pane Under "Defendants" |
|---|
| **NOTE** The BOLDFACED paragraphs below are those which NCMEC did not include in its list of 16 paragraphs. |
| 14.  National Center for Missing and Exploited Children, Wang International Children's Bldg., 699 Prince St., Alexandria, VA 22314-3175.  NCMEC and Wal-Mart are partners. |
| 15.  Wal-Mart Stores, Inc., is a corporation with headquarters located in Bentonville, Arkansas.  Its local agent is Corporation Service Company, at 84 State Street, 5th floor, Boston, MA 02109; phone: 617-227-9590 or 800-225-6244. Wal-Mart is a "Premiere Partner" of NCMEC.  A "Premiere Partner contributes $100,000+ Per Year (In-Kind, Cash, Other)" **[Exh. EEE, a set of webpages]**. |

**WAL★MART**

In 1996 Wal-Mart launched the Missing Children's Network, the most aggressive retailer program to date aimed at bringing missing children home.  The Missing Children's Network includes bulletin board displays of missing children photographs in more than 2,400 stores, a Code Adam safety procedure to lock and search a store when there is lost child incident while a family is shopping at Wal-Mart, a television public service announcement, and provision of child safety information to 78 million homes in a weekly household flier. If you are interested in learning more about this partner, please click on the link below to visit their web site.

| |
|---|
| 298.  Between October 2000 and 22 March 2001, Pane had about 50 conversations with different organizations: **(a)** NationalCenter for Missing and Exploited Children, **(b)** Voice for the Children, **(c)** a California-based organization.  **[Trial, 5/17/02, at 102-103]**. |
| 299.  Pane provided the organizations current pictures, height, weight, skin color, sufficient information so that the organizations could put together a package, including a poster, for distribution  **[Trial, 5/17/02, at 102-103]**. |
| 300.  Pane had 500 posters made at a time, provided them to the NCMEC in the very beginning of October 2000, distributed them throughout many states, and hung them in laundromats, grocery stores, other stores, hotels, gas |

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04  11:20 AM

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 4 of 19

stations in Massachusetts generally, the Haverhill and Methuen areas in particular, and in many, many towns in New York **[Trial, 5/17/02, at 103-104]**.

> **NOTE**
> Because NCMEC's name appears on each poster, making NCMEC's involvement clear, the paragraphs in which the posters are cited are included in this list even though NCMEC might not be explicitly called out in each paragraph.

306.  The poster by National Center for Missing and Exploited Children ["NCMEC"] names Meuse as an "abductor" and November 6, 2000, as the date when Meuse allegedly fled unlawfully to avoid prosecution **[Trial, 5/21/02, at 86]**.

307.  Moynihan denied having anything to do with the information written on the NCMEC poster **[Trial, 5/21/02, at 86]**. He did not know whether the Haverhill Police Department or the Office of the District Attorney in Essex County had anything to do with what was on this poster **[Trial, 5/21/02, at 87]**.

308.  **He believed that the local FBI was mainly responsible for the poster [Trial, 5/21/02, at 87-88].**

309.  **There was also a second Wanted poster for Parental Kidnapping [Trial, 5/21/02, at 88-89; Trial Exh. GG].**

310.  **On the poster in Trial Exh. GG, the FBI wrote that an arrest warrant for Meuse issued for "Parental Kidnapping" and "Unlawful Flight to Avoid Prosecution." Readers were to contact the FBI Violent Fugitive Task Force by calling 617-742-5533.**

311.  **There was also a third "Family Abduction" poster [Trial, 5/21/02, at 88-89; Trial Exh. FF].**

312.  **On the poster in Trial Exh. FF, the FBI wrote that on 6 November 2000, an FBI warrant for Meuse, the "Abductor," issued for "Unlawful Flight to Avoid Prosecution."**

313.  **On Saturday 10 February 2001, following the America's Most Wanted show, the advertisement "The Kidnapping by a Haverhill man, Wanted by the FBI" was aired on the FOX stations.**

| MISSING | ABDUCTOR[1] |
|---|---|
| (photo of child) | (photo of man) |
| MARISSA LYNE MEUSE | BRIAN MEUSE |

---

[1] "'Abduction' is physical taking of minor child from parent having legal custody." Murphy v. I.S.K. Con. of New England, Inc., 409 Mass. 842, 860 (1991).

4

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR 03/31/04 11:20 AM
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 5 of 19

| | | | |
|---|---|---|---|
| **Case type:** | **DOI** FamilyAbduction | **DOB:** | Jun-26-1962 |
| **Missing:** | Aug-04-1999 | **Sex:** | Male |
| **Age Now:** | Oct-08-2000 | **Height:** | 5'8" 173cm |
| **Sex   Height:** | 1 | **Weight:** | 160 lbs - 73 kg |
| **Weight** | Female | **Hair** | Brown |
| **Hair:** | 2' 7" - 79cm | **Eyes:** | Hazel |
| **Eyes** | 22 lbs - 10 kg | **Case No**: | 897945 |
| **Missing from:** | Lt Brown Brown Port Orange, Fl USA | | |

**Marissa was abducted by her non-custodial father, Brian Jeffrey Meuse. A FBI warrant for Unlawful Flight to Avoid Prosecution was issued for the abductor on November 6, 2000.**

**They may travel out of state in a black and grey 1978 Chevrolet Corvette with Massachusett license plates 1978HD.**

---

**ANYONE HAVING INFORMATION SHOULD**

**CONTACT**

**National Center for Missing & Exploited Children**

**1-800-843-5678 (1-800-THE-LOST)** or

Haverhill Police Department (Massachusetts) 1-978-373-1212 or Your Local FBI



AMW Contact: Gina Long (202) 204-2625

Please tell the person you speak with that you saw this poster on the

AMW.com SEARCHLIGHT

> 320. Moynihan did not know whether the Haverhill Police Department ever did anything to locate Susan Pane or ever contacted the National Center for Missing and Exploited Children or contacted the FBI to get their help to locate Susan Pane [Trial, 5/20/02, at 190].
>
> 326. Before the local feature story, FOX25News advertised the story as a Kidnapper wanted by the FBI, and showed the picture of Meuse and Child poster [Trial Exh. GG].

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR  03/31/04  11:20 AM
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 6 of 19

> **382.** Meuse learned from the local newspaper in Ada that two women, Glenda Thomas and Alberta Morris, had seen a Meuse Wanted poster on a Bulletin Board in a Wal-Mart Supercenter. The store is located at 1601 Lonnie Abbott Boulevard, Ada, Oklahoma [Exh. FFF].
>
> **415.** The FBI alleged to the world that there was an outstanding warrant for Meuse.
>
> **416.** Moynihan was not sure whether he or the HPD had supplied the information to the FBI for the warrant poster.
>
> **417.** Susan Pane secured an interview with NBC-TV's Sally Jessy Raphael show and they televised the FBI's Wanted Poster two times during the broadcast across the nation.
>
> **418.** Rosalyn Stults was interviewed by the Eagle-Tribune, publishing in Essex County, Massachusetts, and advertised the then-upcoming Sally Jessy Raphael show.
>
> **419.** The FBI coordinated activities with the National Center for Missing and Exploited Children with the intent to broadcast nationwide the poster of Meuse and Marissa.
>
> **420.** On 10 February 2001, FOXNews broadcast the FBI/NCMEC Missing/Abductor poster.
>
> **421.** On Friday. 16 February 2001, American Broadcasting Company's ["ABC's"] Sally Jessy Raphael's show broadcast a different version of the FBI/NCMEC Missing/Abductor poster. It read "FAMILY ABDUCTION" rather than "MISSING/ABDUCTOR."
>
> **422.** Beginning on or around 10 February 2001, FOX TV's America's Most Wanted show displayed the FBI/NCMEC Missing/Abductor poster on its website [see above] and that poster exists on the website to date.
>
> **429.** FOXNews, the Haverhill police department, Thompson, Moynihan, Stults, Prouty, NCMEC, and Pane misrepresented that Meuse was a fleeing felon.
>
> **495.** FOXNews, Prouty, Wal-Mart, NCMEC, AMW, Moynihan, and Susan misrepresented that Meuse was a fleeing felon.
>
> **496.** Wal-Mart sponsored NCMEC and the America's Most Wanted segments in which the poster against Meuse was used.
>
> **503.** On Saturday, 10 February 2001, by televising on FOX stations the Wanted poster and an interview of FBI Agent Prouty, Defendants published that Meuse was wanted for parental kidnapping and was unlawfully fleeing to avoid prosecution.
>
> **507.** On that show, Defendants caused a Wanted poster of Meuse and the child to be televised.
>
> **508.** The "My Child Has Been Stolen" episode was sponsored by NCMEC and America's Most Wanted.
>
> **509.** The Wanted poster was displayed two times and read, ""Family Abduction." portrayed Meuse and the child, and instructed viewers to call 1-800-The-Lost upon seeing Meuse and/or the child.

---

**EXHIBITS**

Exh FF      Family Abduction Poster
Exh GG      Wanted for Parental Kidnapping, Unauthorized Flight to Avoid Prosecution
Exh HHH     America's Most Wanted -- Gold Star Partner of NCMEC

---

As to NCMEC's recitation on page 4 of its brief that the complaint contains "a myriad of allegations . . . unrelated to NCMEC," Meuse responds: Both Right and Wrong: The complaint

6

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04 11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 7 of 19

contains a myriad of allegations but they are related to each other. The Complaint explains the role of each of the dozen defendants and then describes with particularity – as required for an action in conspiracy -- how they conspired with each other to bring Meuse back to Massachusetts to answer to a false charge of criminal conduct. Their acts deprived him of those of his constitutional rights enumerated throughout the complaint.

**SUMMARY OF FACTS PLED IN COMPLAINT (WITH ADDENDUM EXHS. A-HHH)**

**NOTE**
A fuller version of this summary appears in Meuse's oppositions to
Susan Pane's and Rosalyn Stults' motions to strike his complaint.
The summary below focuses on the role of
National Center for Missing and Exploited Children in this action.

In August 1999, Meuse and Pane had a child out of wedlock. Meuse was upset by Pane's excessive use of prescription drugs, before, during, and after pregnancy. Pane made plans to leave for Florida after she had consulted with her attorney, Stults. Meuse obtained a temporary restraining order on 4 October 1999 against Pane. The TRO gave custody of the child to Meuse and ordered that Pane not leave the Commonwealth with the infant, but Pane left and landed in Florida.

In June 2000, when the infant was 10 months old, she was brought for a medical examination because she was unable to hold a bottle, a spoon, or a cracker, sit up on her own, or crawl. The mother was to bring the child to four physical and occupational therapy sessions a week, but after two weeks, Pane cancelled the child's therapy sessions and left for vacation in another State.

During August 2000, Meuse observed no improvement in the child's condition, learned about the cancelled therapy visits, and very much feared the muscles of the child's appendages would atrophy. Around Labor Day 2000, Meuse sought a habeas corpus, to bring the child back to Massachusetts, where he could give her the care and attention she needed, but five courts refused with or without diverse reasons to hear him.

On 1 October 2000, Meuse again arrived in Florida to visit with the child for one week.

7

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

03/31/04   11:20 AM

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 8 of 19

When he observed that the child, then 14 months of age, still could not hold a bottle or sit up on her own or crawl, he put himself and the child on a plane to Massachusetts and brought her to the Children's Hospital Emergency Room and set up appointments for therapy and examination by a specialist in pediatric neurology associated with Boston Floating Hospital. Meuse's counsel notified Pane's counsel, Stults, where the child was and the contact information for the doctors and therapists involved.

Stults and Pane immediately phoned the medical professionals and cancelled the appointments Meuse had set up for the child. On 5 October 2000, after learning of the cancellations, Meuse disappeared with the child.

Stults got a hearing scheduled for 11 October 2000. At that hearing a judge gave Pane physical custody. By then, Meuse, personally, was already out of contact and had no knowledge of either the hearing or the custody order of October 11th.

Stults and Pane then began a campaign to find Meuse and the child. To do so, they said that Meuse was in contempt. That was not true. No contempt hearing was held. No judgment of contempt had issued. Haverhill Police Department Detective Moynihan obtained an arrest warrant without an affidavit. The warrant was not signed by a judge. Pane provided the information for posters. Not only Stults but also Pane handled the media and set up and advertised a Susan Pane Legal Defense Fund – funds were to go to Stults -- although Pane was not being tried for a crime or sued civilly outside family court.

Between October 2000 and March 2001, Defendants HPD Detective Moynihan and Captain Thompson coordinated continuous activities through constant contact with FBI Agent Kelly, Stults, and Pane. Pane assembled the data for posters. The posters, produced by the efforts of Pane, the NCMEC, and the FBI, were shown on television, namely, on a FOX25News segment featuring an interview of FBI Agent Prouty, America's Most Wanted, and the Sally Jessy Raph-

8

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04 11:20 AM

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 9 of 19

ael show. The posters were also uploaded to the AMW and NCMEC websites, and hung in WalMarts across the country. NCMEC was clearly identified on the posters as the entity to contact. (Touted on their respective websites is the notice that WalMart is a sponsor of NCMEC.) In the press and posters and on the airwaves, Meuse was presented as being wanted for Parental Kidnapping and Unlawful Flight to Avoid Prosecution.

In March 2001, Meuse was captured at gunpoint in Oklahoma as a result of a WalMart poster describing him as fugitive. The child was turned over to Pane. Fortunately, in Meuse's care, she had learned finally how to smile, sit up, walk, run, and play.

Back in Massachusetts shortly thereafter, Meuse was arraigned for Parental Kidnapping. He was never tried for Unlawful Flight to Avoid Prosecution because that was never true and there never was evidence to support the allegation.

In July 2001, after having reviewed all the orders in both Haverhill District Court and the Probate & Family Court, Justice Alan Swan determined and wrote that no custody order had been in effect prior to Meuse taking the child from Florida.

Meuse was tried during May 2002, after which he was found Not Guilty by a jury of his peers. It was the testimony by the Commonwealth's own witness of the tragic condition of the child at the time Meuse rescued her and the beautiful pictures of the child at play close to the time of the Oklahoman siege that clinched the jury verdict.

Notwithstanding the Not Guilty verdict, the posters representing Meuse as a fugitive remained on the websites of AMW and NCMEC after the criminal trial. The poster on AMW remained on its website until the Complaint in this action was served, in February 2004.

**ARGUMENTS RELATED TO THE "NCMEC" FACTS FOR EACH COUNT**

1. **NCMEC has not shown that the complaint is in noncompliance with F.R.Civ.P. 8(a) and 8(e). In fact NCMEC and its counsel appear to have misread Rule 8(e).**

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 10 of 19

Meuse does not argue that F.R.Civ.P. 8(a) requires only "a short and plain statement of the claim." Meuse points out that there are a dozen defendants and 13 counts. Given that the Complaint is 56 pages (excluding the signature page), that means 4⅔ pages per defendant and about ⅓-page per count per defendant. Given also that four of the causes of action are brought under 42 U.S.C. §1983, one under the Massachusetts Civil Rights Act, and another for conspiracy -- all which must be pled with particularity – the length is neither onerous nor ominous nor fatal.

"[E]ven as to conspiracies of a type not encompassed by Rule 9(b), [the First Circuit] has required that the complaint 'allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy,'" Hayduk v. Lanna, 775 F.2d 441, 443 n. 1 (1st Cir. 1985), quoting Kadar v. Milbury, 549 F.2d 230, 233 (1st Cir. 1977), quoting Powell v. Workmen's Compensation Bd., 327 F.2d 131, 137 (2d Cir. 1964). "Moreover, in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met." Hayduk, at 443. "Some courts have held that Rule 9(b) must be harmonized with Fed. R. Civ. P. 8(a), the modern rule of notice pleading which mandates only short and plain statements sufficient to place the defendant on notice." New England Data Services Inc. v. Becher, 829 F.2d 286, 289 (1st Cir.1987) (internal cites omitted).

Neither does Meuse argue that F.R.Civ.P. 8(e) reads ""(1) Each averment of a pleading shall be simple, concise, and direct." Nevijel, *infra,* at 673 ( a case cited by Pane, Stults, and NCMEC). Given that the large majority of Meuse's averments are only 1, 2, or 3 lines long, it cannot be deemed that Rule 8(e) was violated. Ironically, that each averment was composed of one direct fact or statement was one reason there are so many numbered paragraphs.

NCMEC's motion to strike recites substantially the same arguments as those Stults and Pane recited. Therefore, Meuse herein fully incorporates by reference as if set forth herein his opposition to Stults' and Pane's motions to strike and supporting memoranda, and states that

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 11 of 19

03/31/04  11:20 AM

NCMEC's arguments must fail for the same reasons Stults' arguments failed [Paper #3] and Pane's arguments must fail [Paper #5].

### a. **NCMEC's Cases: What NCMEC Failed to Say About Them**\[2]/

In all but one of the cases cited by NCMEC, the courts did **not** dismiss without first giving the plaintiff an opportunity to amend the complaint, if necessary. The only case that was first dismissed was dismissed without prejudice; that was Vakharia, *infra* at note 2 in the margin. NCMEC failed to educate this court **(a)** that in the cases cited in its brief, the plaintiffs were allowed to amend if the complaint was deemed violative of Rule 8(a) or 8(e), **(b)** that Rule 41 dismissal was considered harsh, and **(c)** that such a dismissal is frowned upon by our system of jurisprudence. Even the court in Gordon v. Green, 602 F.2d 743, 745-47 (5th Cir.1979), cited by NCMEC's first case, Salahuddin, ruled "that the 4000-page pleading should have been dismissed for lack of compliance with Rule 8 but that leave to file amended complaint should be granted." Id., at 42.

---

**2**   NCMEC cited the following cases in support of its Rule 8(a) and Rule 8(e) arguments:
- Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988);
- Carbone. Inc. v. Proctor Ellison Co., 102 F.R.D. 951 (D.Mass. 1984);
- Newman v. Massachusetts, 115 F.R.D. 341 (D.Mass. 1987);

**Note**
Newman's Amended Complaint was dismissed but she was "given 30 days to file a more "simple, concise, and direct' and 'short and plain' statement of her claims against the defendants herein. The resulting case ended up being appealed on other grounds. 884 F.2d 19 (1st Cir.1989).

- McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996);
- McCoy v. Providence Journal Co., 190 F.2d 760 (1st Cir.), *cert denied*, 342 U.S. 894 (1951); also at 1951.C01.40020 <http://www.versuslaw.com>;

and in footnotes:
- Kuehl v. F.D.I.C., 8 F.3d 905 (1st Cir. 1993) *cert denied*, 511 U.S. 1034 (1994);
- Vakharia v. Little Co. of Mary Hospital & Health Care Ctrs., 917 F.Supp. 1282 (N.D.Ill.1996); and
- Nevijel v. North Coast Life Ins. Co., 651 F.2d 671 (9th Cir. 1981).

11

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04  11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 12 of 19

In **Salahuddin** (22 defendants and 23 causes of action on 15 pages in 88 paragraphs), the court ruled that plaintiff, a prisoner, should have been given an opportunity to file an amended complaint." Id. at 41.  "Despite its length, however, Salahuddin's complaint is neither vague nor incomprehensible, and it clearly pleads at least some claims that cannot be termed frivolous on their face." Salahuddin at 43.

> Dismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised. See Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969). When the court chooses to dismiss, it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8. See generally 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 366-67; 2A Moore's *Federal Practice* para. 8.13, at 8-81 to 8-82 n.38.

Salahuddin. at 42.  "Given our jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities, it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8." Salahuddin, at 42.

**Carbone**, cited by NCMEC, was cited also in Hayduk v. Lanna, 775 F.2d 441 (1st Cir. 1985), for the proposition "that dismissal of the counts after plaintiffs had two opportunities to amend their complaint was well within the discretion of the district court especially since the plaintiffs were notified before amending a second time that the allegations of fraud in their first amended complaint failed to meet the particularity requirements of Rule 9(b)." Hayduk, at 445.

In **McHenry**, too, "the district court had given plaintiffs three opportunities to amend the complaint, but the third amended complaint restated the prior ones without curing their deficiencies," so the court dismissed the complaint.  A few years later, the Ninth Circuit stretched the McHenry envelope: after a district court dismissed the complaint, the Appeals Court wrote, "While plaintiffs' second amended complaint frustrates the aim of the federal rules to bring about the just, speedy and inexpensive resolution of cases, its deficiencies were readily curable with some guid-

12

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04 11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 13 of 19

ance from the court. The court's sudden-death response was therefore an abuse of discretion." Bautista v. Los Angeles County, 216 F.3d 837, <http://www.versuslaw.com> 2000.C09.0042343 at ¶27 (9th Cir.2000) (reversing and remanding).

"Thus, a defective complaint is not subject to dismissal with prejudice, i.e. without opportunity to amend or replead, unless either it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of its allegations or multiple repleadings have not cured the defects." In re Yadidi, BAP No.. CC-01-1106-KMoB, 2002.C09.0001022 at ¶57 <http://www.versuslaw.com> (9th Cir. 2002).(9th Cir. 2002), citing McHenry, 84 F.3d at 1178-80.

And in **McCoy**, the action went to trial, the plaintiff prevailed, and the First Circuit determined that:

> [the complaint was not] so badly drawn that the defendants . . . were prevented from making their defense, or that either we or the court below . . . have been wholly prevented from ferreting out the issues lurking in the verbiage. Therefore, at this late stage of the proceeding, we treat the error as harmless in conformity with the mandate of Rule 61, F.R.C.P. wherein it is provided: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

McCoy, 1951.C01.40020 at ¶44 <http://www.versuslaw.com>.

Similarly in **Kuehl**, which had 36 counts, many of which were duplicates, the plaintiffs failed to file an amended complaint as ordered, "even after the Magistrate Judge gratuitiously [*sic*] gave plaintiffs rather specific guidance as to how the complaint should be amended." Id. at 907.

In Vakharia, the only case cited by NCMEC in the plaintiff was not given an opportunity to amend prior to dismissal, the plaintiff's claims were dismissed without prejudice.

Lastly, NCMEC cited **Nevijel**, also, as an example of a dismissal of a lengthy Complaint with a lengthy addendum. Beyond that naked assertion, NCMEC said nothing about Nevijel, which, Meuse contends, is distinguishable from the instant case. In Nevijel, the court wrote:

> . . . The original complaint . . . was verbose, confusing and almost entirely conclusory. It consisted of 48 pages with 14 pages of addenda and 9 pages of exhibits. Even though the

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH   Document 14   Filed 03/31/2004   Page 14 of 19

03/31/04  11:20 AM

appellees moved immediately for dismissal, appellants did not respond for over 19 months. Nevijel, at 674.

Moreover, in the original Nevijel complaint, there appears to have been at least two dozen defendants initially and upon amendment, "many other defendants" were added "without leave of the court." Id. at 673. And Nevijel's counsel had brought multiple related cases against diverse defendants and all his complaints were "confusing, distracting, ambiguous, and unintelligible" [id. at 675] to the extent that it was "impossible to designate the cause or causes of action attempted to be alleged in the complaint." Id.

Because such conclusions are subjective to the reader, Meuse cannot prove that the attributes of Nevijel cannot be attributed to his complaint. He can only simply contend and state that his complaint might be lengthy, but it sets out the facts with clarity in an over-all well-organized structure and with well-delineated causes of action.

In conclusion, none of the eight cases cited by Defendant NCMEC even remotely supports its motion to strike Meuse's complaint.

2.  **NCMEC is liable for false arrest, detention, imprisonment. assault, battery, malicious prosecution, abuse of process, and defamation of and conspiracy against Meuse, as well as the intentional infliction of emotional distress, on two theories: by acting for itself through another and by disseminating false information that caused the diverse harms imposed upon him.**

The key to this case begins with Pane and Stults. They gave life to the full-bodied falsities – that Meuse was in contempt and that Pane had legal custody prior to Meuse taking the child to Massachusetts -- when they kept on pushing the police to find Meuse and the child. Considerable trial testimony, included in the complaint, confirms that Pane and Stults were in constant contact with the HPD, the FBI, and NCMEC.

WalMart and AMW and Fox 25News got into the act because of the FBI's and NCMEC's contact with them. FBI Agent Prouty ran the FBI Boston office. He was interviewed in

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 15 of 19

FOX25News' New England Unsolved Crimes segment that featured the Meuse-Marissa poster. WalMart and AMW are sponsors and partners of NCMEC, which is in actuality an instrument of the federal government, not just the independent nonprofit it purports to be, and customarily work with the FBI. The problem in the Meuse case is that none of the four entities – WalMart, AMW, the NCMEC, and the FBI – checked to confirm whether Pane and Stults were truthful and whether the Haverhill Police Department gave them valid and reliable information. Before defaming Meuse nationwide, WalMart, AMW, the NCMEC, the FBI, and the HPD had an obligation to perform their duties in a lawful and competent manner. They did not.

The incompetence of Defendant Detective Moynihan – as well as his captain -- was remarkable. Moynihan had an obligation to check whether that which Pane and Stults told him was true or not before he sought an arrest warrant in Haverhill District Court. The warrant he sought had no legal basis and no affidavit. The alleged federal warrant appears to be a mythic warrant. Moynihan and his captain, Thompson, admitted they had never seen the federal warrant. In fact, the FBI warrant was not even seen by the Oklahoman police force that arrested Meuse or by the Oklahoman court that held him for extradition. If it existed, it never surfaced before, during, and after Meuse's arrest and subsequent trial for Parental Kidnapping.

But for Pane's and Stults's lies and misrepresentations to the law-enforcement entities and to the media, all the consequences that Meuse suffered would not have occurred.

> A person may be liable for false imprisonment **not only** when the person's own acts directly impose a restraint upon the liberty of another **but also** when that person, by providing false information, causes such restraint to be imposed. Karjavainen v. Buswell, 289 Mass. 419, 427 (1935) (questioned on other grounds by Mezullo v. Maletz, 331 Mass. 233, 239-240 [1954]). Restatement (Second) of Torts s 37 (1965) ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement").

Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 97-98 (1999) (emphasis supplied). *See also* Restatement (Second) of Torts § 35 (1965).

15

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 16 of 19

> An assault and battery is the intentional, unprivileged, unjustified touching of another with such violence that bodily harm is likely to result. See Commonwealth v. Burke, 390 Mass. 480, 482-483, 457 N.E.2d 622 (1983). **The offensive touching may be** direct, as by striking another, or it may **be indirect, as by setting in motion some force or instrumentality with the intent to cause injury**. See Commonwealth v. Stratton, 114 Mass. 303 (1873); Perkins & Boyce, *Criminal Law* 153-154 (3d ed. 1982).

Com. v. Dixon, 34 Mass.App.Ct. 653, 654-655 (1993) (emphasis supplied); Com. v. Cohen, 55 Mass.App.Ct. 358, 359-360 (2002) (holding indirect touching constitutes criminal battery), quoting Dixon, at 654, and citing United States v. Frizzi, 491 F.2d 1231, 1232 (1st Cir.1974), amongst others.

In People v. Moore, 50 N.Y. Sup.Ct. 356 (1888), "the victim was driving a horse-drawn sleigh. The defendant intercepted the sleigh, grabbed the reins, and, over the driver's protests, caused it to be turned around and headed in the opposite direction." Com. v. Burno, 18 Mass.App. Ct. 796 (1984). The court in Moore reasoned and ruled that the horses and sleigh were the instruments with which the defendant "directed and augmented his personal and physical force against and upon the body of [the victim]." Moore. at 358. Two treatises, LaFave & Scott, Jr., *Criminal Law* § 81, at 604 (1972); Perkins, *Criminal Law* c. 2, § 2, at 108-109 (2d ed.1969), held similarly, to wit, "that the 'touching' element of a battery does not require the actual touching of the victim." In Burno, the Commonwealth adopted this reasoning and held that an automobile is an extension of a person.

W. Prosser and P. Keeton, *The Law of Torts* (5th ed. 1984), at 43, describes the tort [of assault](and, thereby, one form of the crime):

> "The interest in freedom from apprehension of a harmful or offensive contact with the person, as distinguished from the contact itself, is protected by an action for the tort known as assault. **No actual contact is necessary to it, and the plaintiff is protected against a purely mental disturbance of this distinctive kind**. This action, which developed very early as a form of trespass, is the first recognition of a mental, as distinct from a physical, injury. There is **'a touching of the mind, if not of the body.'**" (footnotes omitted).

16

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN'S MOTION PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN SUPPORT OF OPPOSITION

03/31/04 11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 17 of 19

> For this variety of assault, it is not necessary that the victim be actually frightened or placed in fear of an imminent battery at the hands of one with the apparent present ability to commit such a battery. The critical state of mind on the part of the victim is to be placed "in reasonable apprehension" of an impending battery. This distinction preserves the rights of the intrepid crime victim or intrepid plaintiff. As W. LaFave and A. Scott, *Criminal Law* (2d ed. 1986) explained, at 693 n. 18:
>
>> "The word 'scare' or 'frighten' is sometimes used loosely herein as a short term for the more cumbersome but more accurate expression 'causing reasonable apprehension of immediate bodily harm.' See W. Prosser & W. Keeton, Torts § 10 (5th ed. 1984), speaking of the requirement of apprehension of immediate bodily harm required for a civil assault: **'Apprehension is not the same thing as fear, and the plaintiff is not deprived of his action merely because he is too courageous to be frightened or intimidated.'**"

Lamb v. Maryland, 93 Md. App. 422, 613 A.2d 402, 1992.MD.40091 ¶¶73-76 <http://www.versuslaw.com> (1992) [emphasis supplied].

In another Maryland case, Taylor v. State, 52 Md.App. 500, 504-505 (1982), cited in Burno, at 802 n.8, the court concluded, when defining "battery" and "assault": "He who acts through another acts himself." Taylor at 505 n. 2.

> There are a number of British and American cases to the same effect. In Her Majesty's Advocate v. Keay, 1 Swin. 543 (Scot. 1837), the evidence showed that the defendant, without just cause, whipped a pony being ridden by a young boy as the defendant was passing in his carriage. As a result of the whipping, the pony bolted and threw its rider. The court concluded that a criminal assault had been committed, Lord Cockburn opining, at p. 546:
>
>> "If [the defendant] had seized the boy in his arms and carried him away, that would most clearly have constituted an assault, and the fact of his having made the pony the instrument of carrying him off makes no difference. The maxim '*qui facit per alium facit per se,*' makes the act of the pony the act of the [defendant]."

Taylor, 52 Md.App. at 504-505.

Like Stults and Pane and the other defendants, NCMEC is liable for the harm done to Meuse and the damages he suffered in each of the causes of action for the same reasons the other defendants are liable. Like Stults' and Pane's arguments, NCMEC's arguments must fail for the same reasons. And as Stults and Pane did, in the case at bar, NCMEC used and was used by the

17

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

03/31/04  11:20 AM

Case 1:04-cv-10255-EFH    Document 14    Filed 03/31/2004    Page 18 of 19

other defendants as instruments for its wrongdoing.

### Conclusion

That which must be acknowledged by this court is found in Fed.R.Civ.P. 8(f): "All pleadings shall be so construed as to do substantial justice." Gorski v. New Hampshire Department of Corrections, 290 F.3d 466, <http://www.versuslaw.com> 2002.C01.0000193 (2002).

Lastly, Meuse states that one of the many reasons contributing to the length of the complaint is the compelling evidence of the conspiracy out of which all the causes of action arose. Meuse's counsel believed and still believes that being forthright up front with the testimonial and documentary evidence (*see* Complaint Exhibits A through HHH) will ultimately promote both time- and cost-effectiveness as well as encourage early settlement between some if not all the parties.

WHEREFORE, Plaintiff prays this court DENY NCMEC's motion to strike and award Plaintiff attorney's fees for having to oppose a frivolous motion. If the award of fees to Meuse is made, Plaintiff's counsel prays that she be given at least 10 days (because of a full professional schedule) to prepare the accounting and supporting affidavit.

|  |  |
|---|---|
| | Respectfully submitted,<br>BRIAN J. MEUSE,<br>By his attorney, |
| 31 March 2004 | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net><br>Barbara C. Johnson, Esq.<br>6 Appletree Lane<br>Andover, MA 01810-4102<br>978-474-0833<br>BBO #549972 |

### CERTIFICATE OF SERVICE

I hereby certify that the within pleading was electronically filed through ECF. A true copy of the above document will have been served by first-class mail on 31 March 2004 upon the attorneys known and of record and to whom notice will not be electronically mailed.

MEUSE'S OPPOSITION TO NATIONAL CENTER FOR
MISSING AND EXPLOITED CHILDREN'S MOTION
PURSUANT TO RULE 8 AND RULE 12(F) TO STRIKE
PLAINTIFF'S COMPLAINT, WITH MEMORANDUM IN
SUPPORT OF OPPOSITION

Case 1:04-cv-10255-EFH   Document 14   03/31/04   11:20 AM
Filed 03/31/2004   Page 19 of 19

Daniel P. O'Brien, Esq.
Posternak Blankstein & Lund LLP
100 Charles River Plaza
Boston, MA 02114

Chauncey D. Steele IV, Esq.
Craig & Macauley, PC
600 Atlantic Avenue
Boston, MA 02210

/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>
31 March 2004                              Barbara C. Johnson