UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN J. MEUSE, | ) | Civil Action No. 04-10255-EFH |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM IN SUPPORT OF |
| SUSAN PANE, et al., | ) | MOTION OF FOX TELEVISION STATIONS, INC. |
| Defendants. | ) | TO DISMISS COMPLAINT |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Fox Television Stations, Inc. ("Fox TV")

moves for the dismissal of all counts of the Second Amended Verified Complaint ("Complaint")

of plaintiff Brian J. Meuse ("Plaintiff" or "Meuse") with respect to Fox TV. The Complaint

alleges no conduct by Fox TV, aside from the airing of what the Plaintiff admits was a

"somewhat balanced" news report involving the Plaintiff and law enforcement efforts to locate a

missing child (the "Broadcast").

The claims against Fox TV should be dismissed on four grounds. First, Fox TV cannot

be held liable on account of the Broadcast, because it is protected under the fair report privilege

for its news reports of government activity. Second, the Plaintiff's Section 1983 claims fail

because Fox TV is a private actor not acting under color of law, and, moreover, is not alleged to

have caused any deprivation of a right secured by the Constitution or laws. Third, the majority

of the Plaintiff's state law claims must be dismissed because the Plaintiff has admitted that the

Broadcast was not the cause of the alleged injuries on which those tort claims are based. Finally,

the Plaintiff has failed to plead the existence of a conspiracy involving Fox TV that would render

Fox TV liable for the other defendants' actions. (For the Court's reference, attached to Fox TV's

motion as Exhibit A is a chart summarizing the reasons for which each of the Plaintiff's thirteen

claims must be dismissed against Fox TV.) Dismissal is particularly warranted in this case in

order to protect the First Amendment rights of the press and the strong public interest in

1

supporting media participation in efforts to locate missing children; these efforts would be chilled if Fox TV were subject to costly discovery in a meritless case.

## FACTUAL BACKGROUND

This case arises out of a custody dispute between the Plaintiff and Defendant Pane regarding their daughter, Marissa. On October 1, 2000, the Plaintiff went to Florida for "a week's visitation" with Marissa and promptly flew her out of Florida to Massachusetts. Complaint, ¶¶ 152-64. The Plaintiff then "dropped out of sight with the child" on or about October 5, 2000. Id., ¶ 170. Following a national search by state and federal authorities, the Plaintiff was arrested in Oklahoma on March 22, 2001. Id., ¶¶ 378-80. It was during this search that Fox TV aired the Broadcast regarding Marissa's disappearance and the FBI's efforts to locate her. Id., ¶¶ 313-15, 325-26. At a criminal trial ending on May 23, 2002, the Plaintiff was found "not guilty." Id. at ¶ 395.

## ARGUMENT

### I.   THE COMPLAINT DOES NOT STATE A CLAIM THAT SATISFIES THE STANDARDS OF RULE 12(b)(6).

The Plaintiff's Complaint must be dismissed because the Complaint fails to plead any actionable claim against Fox TV. To survive a motion to dismiss, the Plaintiff has the burden of pleading the necessary factual averments with respect to each material element of each underlying legal theory. Fleming v Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990); Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). While a court must take as true the plaintiff's assertions of fact, the court need not accept legal conclusions or "bald assertions" in ruling on a 12(b)(6) motion. See New Eng. Cleaning Services v Am. Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999); see also Chongris v. Bd. of Appeals of Town of Andover, 811 F.2d 36, 37 (1st Cir. 1987) ("We exempt, of course, [from consideration] those 'facts' which

2

have since been conclusively contradicted by plaintiffs' concessions or otherwise, and likewise
eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets."").
"[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete
enough to warrant further proceedings, which may be costly and burdensome. Conclusory
allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a
fishing expedition." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir.
1999) (italics in original). "[I]f the facts narrated by the plaintiff do not at least outline or
adumbrate a viable claim, his complaint cannot pass Rule 12(b)(6) muster." Gooley, 851 F.2d at
515. As discussed below, the Plaintiff has not pled facts to support any claim against Fox TV.

Dismissal of the Plaintiff's claims is particularly appropriate in this case, given the First
Amendment rights of Fox TV. Resolution prior to trial is "especially favored in defamation
cases" under Massachusetts law. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987)
(summary judgment case), citing Godbout v. Cousens, 396 Mass. 254, 258 (1985). Where First
Amendment rights are implicated, "the stake…is free debate. …The threat of being put to the
defense of a lawsuit…may be as chilling to the exercise of First Amendment freedoms as fear of
the outcome of the lawsuit itself." Cefalu v. Globe Newspaper Co., 8 Mass. App. Ct. 71, 74
(1979). Even if a defendant in a libel case is ultimately successful at trial, the costs of litigation
may induce an unnecessary and undesirable self-censorship. King, 400 Mass. at 708.

II.     THE PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE THE BROADCAST
        WAS PRIVILEGED AS A FAIR REPORT OF GOVERNMENTAL ACTIVITY.

        A.      The Fox TV Broadcast is Privileged as a Fair Report of the FBI's Public
                Statements Regarding the Plaintiff.

The only action that the Plaintiff alleges was taken by Fox TV in this case was the airing
of the Broadcast. See Complaint, ¶¶ 312-16, 325-26, 503-05. However, the Plaintiff concedes in

3

his Complaint that the allegedly actionable information broadcast by Fox TV came from two official government sources: (1) information publicly released by the FBI to the effect that warrants had issued for the arrest of the Plaintiff for parental kidnapping and unlawful flight, see id., ¶¶ 310, 312-14, 325-26, 503-05; and (2) statements in an interview given by Charles Prouty, then the head of the Boston office of the FBI, to the effect that there was a custody agreement in effect for Marissa Meuse and that the Plaintiff was a fleeing fugitive, see id., ¶¶ 315-16, 325, 503-05. Thus, the Plaintiff's claims must be dismissed, because, on the face of the Complaint, the Broadcast was privileged against liability as a fair report of governmental actions.

"There is a well established privilege to publish reports of judicial, legislative, or other official proceedings." Jones v. Taibbi, 400 Mass. 786, 794 (1987). "The proper scope of the fair report privilege is a matter of law appropriate for summary disposition." Brown v. Hearst Corp., 862 F. Supp. 622, 629 (D. Mass. 1994). As set forth in ELM Med. Lab., Inc. v. RKO Gen., Inc., 403 Mass. 779 (1989):

> The [fair report] privilege recognizes that (1) the public has a right to know of
> official government actions that affect the public interest, (2) the only practical
> way many citizens can learn of these actions is through a report by the news
> media, and (3) the only way news outlets would be willing to make such a report
> is if they are free from liability, provided that their report was fair and accurate.

Id. at 782. See also Yohe v. Nugent, 321 F.3d 35, 43 (1st Cir. 2003). Because "[a]n arrest by an officer is an official action, … a report of ... the charge of crime made by the officer in making or returning the arrest" is within the fair report privilege. Jones, 400 Mass. at 796; Yohe, 321 F.3d at 43. Likewise, a report of public statements made by governmental officials is privileged. See Yohe, 321 F.3d at 44 (fair report privilege applies to official statements made by police chief); ELM Med. Lab., 403 Mass. at 783 (extending fair report privilege to reports of health warnings by Department of Health whether issued in "a news release or in interviews with officials");

Jones, 400 Mass. at 797 (indicating that official statements made to press by police chief are privileged).[1]

This "'fair report privilege'... allows those who fairly and accurately report certain types of official or governmental action to be immune from liability for claims arising out of such reports." ELM Med. Lab., 403 Mass. at 782. A report need only give "a rough-and-ready summary that was substantially correct" in order to qualify for the fair report privilege. Yohe, 321 F.3d at 44; MiGi, Inc. v. Gannett Mass. Broadcasters, Inc., 25 Mass. App. Ct. 394, 396 (1988). A report is considered substantially correct "if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." Yohe, 321 F.3d at 43.[2]

Importantly, the Plaintiff does not allege that Fox TV repeated the official statements inaccurately; rather, he asserts that the official statements themselves were untrue. See

---

[1] The fair report privilege extends to previews of a news report which do not themselves explicitly reference the official basis for the report, see Complaint, ¶ 313, so long as it is clear that, in the context of the entire broadcast, the report is based upon official statements of governmental officials. See Pittman v. Gannett River States Publ'g Corp., 836 F. Supp. 377, 383 (S.D. Miss. 1993) (report of government activity does not need to attribute each quote or statement to an official document or proceeding; "[r]ather, it is necessary only that, when considered in context, it is clear that the article is quoting, paraphrasing or otherwise drawing upon official documents or proceedings.").

[2] In addition, although the Plaintiff himself admits that the report in this case was "somewhat balanced," see Complaint, ¶ 325, a publisher is not required to publish a balanced report to qualify for the fair report privilege. In Alfego v. Columbia Broad. Sys., Inc., 7 Med. L. Rptr. 1075 (D. Mass. 1981), the plaintiff claimed that he had been libeled by a broadcast indicating that he had taken his child in violation of a custody order, and argued that the fair report privilege did not apply because the broadcast did not mention the plaintiff's visitation rights or the fact that the child's mother had been required to post a court-ordered bond. The U.S. District Court for the District of Massachusetts rejected this argument:

> The requirement of substantial accuracy does not prevent broadcasters from airing films which present a specific point of view, nor does it mandate the inclusion of every fact and detail sympathetic to each side of an issue. It is necessary only that the facts which are selected for presentation be substantially true and accurate and not distortive of the underlying event.

Id. at 1076. Similarly, in Kenney v. Scripps Howard Broad. Co., No. 98-1079-CV-W-BD, 2000 WL 33173915, 28 Med. L. Rptr. 2512 (W.D. Mo. June 28, 2000), aff'd, 259 F.3d 922 (8th Cir. 2001), the U.S. District Court for the Western District of Missouri found that a broadcast report of the possible abduction of a child by her parent was a fair report, despite the omission of the fact that there was no custody order in effect regarding the child. Id. at *7.

5

Complaint, ¶¶ 316, 505. However, the requirement of substantial accuracy means that the media

must accurately report what government officials say and do; it does not concern the truth of

statements made by officials or of any underlying charges. According to the Appeals Court,

> Such a privilege would not be lost if the substance of the official statement, and
> hence of the report, was false; *indeed, according to an emergent rule, the*
> *privilege should not be forfeited even if the party making the report knew the*
> *statement to be false.*

MiGi, 25 Mass. App. Ct. at 397 (emphasis added); Yohe, 321 F.3d at 44. Thus, even if the

charges made were false (which Fox TV does not concede), the report of those charges is

privileged against claims arising out of the report. MiGi, 25 Mass. App. Ct. at 396; see also

Foley v. Lowell Sun Publ'g Co., 404 Mass. 9, 11 (1989) (holding as a matter of law that article

stating that plaintiff was arrested on charge of assaulting an officer could not, read as a whole, be

taken to accuse plaintiff of assaulting officer). Likewise, the accurate report of Prouty's

statements in his interview is privileged, regardless of the truth or falsity of the statement

reported. See Yohe, 321 F.3d at 44 (fair report privilege applies to statements made by police

chief in interview, regardless of truth of statements).[3]

Furthermore, the Plaintiff's admissions in the Complaint demonstrate that Fox TV did not

abuse the fair report privilege. See Yohe, 321 F.3d at 44; see also Foley v. Polaroid Corp., 400

Mass. 82, 94 (1987). As the Massachusetts Appeals Court has recognized,

---

[3] Even if the accuracy of the official statements were at issue, the Plaintiff has included as exhibits to his Complaint documents that demonstrate that a warrant issued for his arrest for "kidnapping of a minor by a relative," see Complaint, Ex. Z, and that legal custody resided in Marissa's mother (even if there was no specific custody agreement because the Plaintiff's paternity had not yet been officially established), see id., Ex. CCC at p. 2. In reporting upon legal or judicial matters, "a journalist's report need not describe legal proceedings in technically precise language," if it meets "a common sense standard of expected lay interpretation." Ricci v. Venture Magazine, Inc., 574 F. Supp. 1563, 1567 (D. Mass. 1983); see also Riley v. Harr, 292 F.3d 282, 296-97 (1st Cir. 2002) (quoting Ricci). Thus, for example, a report that a parent had "kidnapped" his daughter was held to be protected as a fair report, even if the precise charge against the plaintiff was wrongful removal of a child from a jurisdiction in violation of the Hague Convention, because the court found that the report was "substantially the same in its gist or sting." Harrison v. Chicago Sun-Times, Inc., 341 Ill. App. 3d 555, 572 (2003). The official statements broadcast on Fox TV were thus "substantially accurate."

6

> It is often said that the benefits of [the fair report] privilege are forgone where a complainant shows that the reporter was actuated by malice toward him. But "malice" would require some redefinition if it were taken not to comprehend knowing falsehood; perhaps repetition of such falsehood with a purpose to do the complainant maximum injury would still qualify as malice.

MiGi, 25 Mass. App. Ct. at 397; see also Yohe, 321 F.3d at 44.

There is no allegation in the Complaint to the effect that that Fox TV intended "to do the complainant maximum injury;" indeed, the allegations demonstrate nothing more than a report of official governmental statements regarding a missing child. Moreover, according to the Plaintiff's own allegations, the coverage in question was "somewhat balanced," see Complaint, ¶ 325, belying any suggestion that the defendants were intent upon doing "maximum injury" to the plaintiff. Thus, there is no basis to find that the defendants abused the privilege, and liability cannot attach. Cf. Friedman v. Israel Labour Party, 957 F. Supp. 701, 714-15 (E.D. Pa. 1997) (plaintiff failed to show abuse of fair report privilege where plaintiff did not demonstrate that sole motivation for article was intent to injure him).

B.    The Fair Report Privilege is Not Limited to Claims for Defamation, and Bars All State and Federal Claims Based Upon the Fox TV Broadcast.

The fair report privilege renders Fox TV immune from liability for any claim arising out of the Broadcast, whether or not the claim is described as an action for defamation. The privilege applies to the Broadcast, and not just to the label applied to the claim, because the privilege reflects and protects First Amendment values that apply regardless of how the Plaintiff has phrased his Complaint. See Lavin v. New York News, Inc., 757 F.2d 1416, 1419 (3rd Cir. 1985) ("Proper application of the fair report privilege fully vindicates the defendants' First Amendment rights[.]"); Medico v. Time, Inc., 643 F.2d 134, 143-46 (3rd Cir. 1981) (discussing First Amendment principles reflected in recognition of fair report privilege); Restatement

7

(Second) of Torts § 611, *Comment b* (1977) ("If the report of a public official proceeding is accurate or a fair abridgment, an action cannot constitutionally be maintained[.]").

Thus, the First Circuit has rejected the argument that a statement can be privileged against a defamation claim as a fair report, yet nevertheless remain actionable for intentional infliction of emotional distress, stating, "[A] plaintiff cannot evade the protections of the fair report privilege merely by re-labeling his claim." Yohe, 321 F.3d at 44. See also Correllas v. Viveiros, 410 Mass. 314, 324 (1991) (affirming summary judgment on emotional distress claim based on privilege which also barred defamation claim: "A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort."). In reaching its holding in Yohe, the First Circuit recognized the constitutional dimension of the fair report privilege when it cited to cases involving the application of First Amendment protections to non-defamation claims. See Yohe, 321 F.3d at 45, citing Hustler Magazine v. Falwell, 485 U.S. 46, 56-57 (1988) and Brown v. Hearst Corp., 54 F.3d 21, 27 (1st Cir. 1995).

In this case, and in light of the constitutional values reflected in the fair report privilege, this Court should find that the privilege overrides the Plaintiff's federal statutory claims, as well as his state law causes of action. Accordingly, all of the Plaintiff's claims against Fox TV must be dismissed, because they are all based upon the privileged Broadcast.

III.    THE PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 AGAINST FOX TV MUST BE DISMISSED.

Counts 1, 2 and 3 of the Complaint, which allege that Fox TV violated the Plaintiff's civil rights pursuant to 42 U.S.C. § 1983,[4] must also be dismissed because the Plaintiff has not stated a claim under that statute. Under § 1983, the plaintiff must demonstrate that the defendant (1)

_____

[4] Count 4 of the Complaint, which alleges violations of 42 U.S.C. § 1983 for "Refusing or Neglecting to Prevent," is not alleged against Fox TV. Even if Count 4 had been so alleged, it would fail for the same reasons as Counts 1 – 3.

8

acted "under color of state law," and, while acting under color of law, (2) deprived the plaintiff of "a right secured by the Constitution or laws of the United States." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). The Complaint fails to allege facts sufficient to meet either requirement.

A.      Fox TV Did Not Act "Under Color of State Law."

Fox TV was a private actor, and as such, the Plaintiff's § 1983 claims must be dismissed because Fox TV did not act "under color of law." The "under color of law" element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co., 526 U.S. at 50. Where a private party such as Fox TV is a defendant in a § 1983 action, a plaintiff must demonstrate that the private party acted jointly with state actors to deprive the plaintiff of his civil rights. See Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995). The Plaintiff has failed to do so here.

General allegations of cooperation between private entities and government agencies are not sufficient to sustain a cause of action under § 1983; rather, "[i]t is appropriate to require that the relationship or nature of cooperation between the state and a private individual be pled in some detail." Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980). "Even a considerable degree of cooperation between a private party and the state does not, standing alone, justify a finding that the challenged action…occurred under color of state law." Jones v. Taibbi, 508 F. Supp. 1069, 1073 n.7 (D. Mass. 1981), citing Rendell-Baker v. Kohn, 641 F.2d 14, 24 (1st Cir. 1981) (internal citations omitted).

This is particularly true when a plaintiff attempts to hold the media liable as a state actor. "Attempts to charge the media with state action have generally met with a cool reception in the courts," Jones, 508 F. Supp. at 1073 n.6 (citing cases), because interaction and exchange of

9

information between the media and state officials is part of normal newsgathering activity, and is not, in itself, sufficient "state action" to give rise to a § 1983 claim against the media. In Jones, a reporter agreed to delay broadcasting certain information about a suspect, in exchange for the police permitting the reporter to be present if and when they arrested the suspect. 508 F. Supp. at 1071. The court stated that "Taibbi and the LAPD had a coincidence of interest in the plaintiff as a suspect, but not the concert of involvement that would transform Taibbi's telecast from a private venture to action taken under color of state law." Id. at 1073. The court further noted that the ultimate decision of when and whether to broadcast this information was that of the reporter alone, not that of the police, and refused to "deputize" the media merely because its broadcasting decisions are "of some ancillary benefit and assistance to the police." Id. at 1074.

Thus, in this case, Fox TV's decision to broadcast information provided by state and federal officials regarding the Plaintiff did not deputize Fox TV and transform the private television company into a state actor for purposes of § 1983. Because Fox TV's actions were not "under color of law," Plaintiff's claims against Fox TV pursuant to § 1983 must be dismissed.

B.     Fox TV is Not Alleged to Have Deprived the Plaintiff of a Right or Privilege Secured by the Constitution or the Laws.

The Plaintiff's § 1983 allegations also fail to state a claim that Fox TV deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. The Plaintiff's allegations of actions taken by Fox TV suggest nothing more than a state common-law tort claim (specifically, a claim for defamation). See Complaint, ¶¶ 511-12. As here relevant, the U.S. Supreme Court has held that neither state nor private actors can be held liable under § 1983 merely because there exists a common law cause of action for injuries allegedly sustained. See Paul v. Davis, 424 U.S. 693, 712 (1976). Although common law causes of action recognize certain legal interests (such as the plaintiff's reputation in a defamation claim), "any harm or

10

injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law." Id.; see also Aponte v. Calderón, 284 F.3d 184, 195 (1st Cir.), cert. denied 537 U.S. 886 (2002) (state tort claim for defamation does not amount to claim of deprivation of rights under Due Process Clause).[5] Thus, the Plaintiff's allegations of conduct by Fox TV do not allege facts sufficient to state a § 1983 claim.

Furthermore, the Plaintiff has admitted that Fox TV did not cause any other deprivation of rights that might support a § 1983 claim. While the Plaintiff has separately alleged injuries from his arrest, detention, confinement and prosecution, he has admitted that Fox TV did not cause those injuries. Instead, the Plaintiff admits that his arrest, detention, and confinement were the result of two women recognizing him from a wanted poster in a Wal-Mart. See Complaint, ¶¶ 382-83. Thus, the Plaintiff's § 1983 claims must be dismissed.

IV.    THE PLAINTIFF'S STATE LAW CAUSES OF ACTION MUST BE DISMISSED
       BECAUSE, AMONG OTHER REASONS, THE PLAINTIFF ADMITS THAT FOX
       TV'S ACTIONS WERE NOT THE CAUSE OF THE ALLEGED TORTS.

With the exception of the Plaintiff's defamation claim, which must be dismissed on the basis of the fair report privilege as discussed above, and his conspiracy claim, which will be discussed in Section V, below, the Plaintiff's state law claims are all based upon the allegation that Fox TV is somehow responsible for acts committed by third parties in the course of the Plaintiff's arrest, detention and confinement. However, because the Plaintiff has failed to plead facts to support the claim that Fox TV caused these actions, each of these claims must be dismissed. Furthermore, certain state law claims must also be dismissed for other reasons.

---

[5] The First Circuit has adopted the "defamation-plus" test, which requires that injury to reputation be "accompanied by a change in the injured person's status or rights" to give rise to a § 1983 claim. Aponte, 284 F.3d at 196. No such change in status as a result of Fox TV's actions has been alleged here. Business and reputation losses alone do not constitute the "plus" that is required to transform an ordinary defamation claim into a claim under § 1983. See Buckey v. County of Los Angeles, 968 F.2d 791, 795 (9th Cir. 1992).

A.     Counts 5 through 10 and Count 13 Against Fox TV Must Be Dismissed Because
the Plaintiff Cannot Show that Fox TV Caused Plaintiff's Alleged Injuries.

Counts 5 through 10 and Count 13 of the Complaint (malicious prosecution, abuse of

process, violation of the Massachusetts Civil Rights Act ("MCRA"), false arrest and

imprisonment, assault, battery, and intentional infliction of emotional distress, respectively) all

must be dismissed for failure to allege that actions attributable to Fox TV were the cause of any

alleged injuries to the Plaintiff. For each of these state law claims, there must be a direct causal

link between Fox TV's conduct and any injury caused. See Restatement (Second) of Torts, §

653 and *comment d* (1977) (malicious prosecution); Jones v. Brockton Pub. Markets, Inc., 369

Mass. 387, 389 (1975) (abuse of process); Therrien v. Hamilton, 849 F. Supp. 110, 115 (D.

Mass. 1994) (violation of the Massachusetts Civil Rights Act); Karjavainen v. Buswell, 289

Mass. 419, 427 (1935) (false arrest and imprisonment); Perras v. Hi-Hat, Inc., 326 Mass. 78, 80-

81 (1950) (assault and battery); Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976)

(intentional infliction of emotional distress). Critically, however, the Plaintiff does not allege

any direct action by Fox TV toward him as a basis for any of these claims, see Complaint, ¶¶

441-87, 513-21; thus, the Plaintiff must allege facts to show that Fox TV was responsible for

causing third parties to commit the tortious acts. On the admitted facts of the Complaint, the

Plaintiff cannot meet this burden, and these claims must be dismissed.

As alleged in the Complaint, the Broadcast was the only action allegedly taken by Fox

TV, see Complaint, ¶¶ 312-14, 325-26, and by the time that the Broadcast aired, state and federal

law enforcement were already in pursuit of the Plaintiff. See, e.g., id., ¶¶ 215, 315. Nor is the

Broadcast alleged to have induced any third parties to take any actions toward the Plaintiff; as

discussed above, the Plaintiff admits that Fox TV's broadcast was not the impetus for the

Plaintiff's arrest, detention, and confinement. See id., ¶¶ 382-83 (admitting that the Plaintiff was

arrested after two women in Oklahoma saw a wanted poster of Meuse in a Wal-Mart and contacted the police about having seen Meuse with his daughter at a nearby laudromat).

Thus, there is no claim for malicious prosecution and abuse of process, because Fox TV cannot, on the face of the Complaint, be found to have instituted or to have had any control over the institution of criminal proceedings against Meuse. See Restatement (Second) of Torts, § 653, *Comment d* (1977) ("the giving of the information or the making of the accusation…does not constitute a procurement of the proceedings that the third person initiates if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit"); Jones v. Brockton Pub. Markets, Inc., 369 Mass. at 389 (to survive Rule 12(b)(6) motion, plaintiff must allege facts to support claim that defendant's actions caused damage from abuse of process). Likewise, the admissions discussed above demonstrate that Fox TV did not induce or compel the arrest, detention and confinement that form the bases of the Plaintiff's MCRA claim (see Complaint, ¶¶ 465-70), false arrest and imprisonment claim (see id., ¶¶ 471-78), assault claim (see id, ¶¶ 479-83), battery claim (see id, ¶¶ 484-87), and intentional infliction of emotional distress claim (see id, ¶¶ 513-21).[6]

Under the facts set forth in the Complaint, Fox TV's Broadcast did not directly cause the Plaintiff's alleged harms, and did not indirectly compel or induce any third party to commit the acts alleged. Therefore, Counts 5 through 10 and Count 13 against Fox TV must be dismissed.[7]

---

[6] The Plaintiff has not alleged that his emotional distress claim is premised on the Broadcast. See Complaint, ¶¶ 513-21. Even if he had, that claim must be dismissed due to the fair report privilege, as well as for the reasons discussed in Section IV.B.2, below.

[7] This case stands in contrast to a wide variety of cases involving defendants who committed torts by intentionally causing or setting in motion another person or object which injured or threatened to injure the plaintiff. See, e.g., U.S. v. Frizzi, 491 F.2d 1231, 1232 (1st Cir. 1974) (intentionally spitting in someone's face); Commonwealth v. Stratton, 114 Mass. 303, 304-06 (1873) (delivering food knowing and concealing the fact that it contained a "deleterious and destructive drug"); Commonwealth v. Cohen, 55 Mass. App. Ct. 358, 359-60 (2002) (intentionally spitting on a person); Commonwealth v. Dixon, 34 Mass. App. Ct. 653, 657 (1993) (committing an overt act intended to cause death by strangulation); Commonwealth v. Burno, 18 Mass. App. Ct. 796, 802 (1984) (crashing

13

B.    The Plaintiff's MCRA and Intentional Infliction of Emotional Distress Claims
      Also Must Be Dismissed Because the Nature of the Conduct Alleged Does Not
      Satisfy the Requirements of Those Claims.

      1.    *The Plaintiff has not pleaded that Fox TV used threats, intimidation, or
            coercion in violation of MCRA.*

The Plaintiff's MCRA claim (Count 7) also must be dismissed because the Complaint

does not allege facts supporting an allegation that Fox TV used threats, intimidation, or coercion

to interfere with the Plaintiff's rights. To state a claim under the MCRA, the plaintiff must

demonstrate that the defendant (1) interfered with or attempted to interfere with (2) his exercise

or enjoyment of rights secured by the constitution or laws of the United States, or by the

constitution or laws of the commonwealth (3) by means of threats, intimidation or coercion. See

G.L. c. 12, §§ 11H, 11I (1979); Columbus v. Biggio, 76 F. Supp. 2d 43, 54 (D. Mass. 1999),

citing Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 564 (1995).

By enacting the MCRA, "the legislature did not intend to create a vast constitutional and

statutory tort." Freeman, 419 Mass. at 565 (citation omitted). The legislature's requirement of

"threats, intimidation, or coercion" was specifically intended to limit defendants' liability under

the Act. Id. at 565-66. A "threat" under the MCRA requires an "intentional exertion of pressure

to make another fearful or apprehensive of injury or harm;" "intimidation" requires "putting [a

person] in fear for the purpose of compelling or deterring conduct;" and "coercion" requires the

"application to another of such force, either physical or moral, as to constrain him to do against

his will something he would not otherwise have done. Anderson v. Boston Sch. Comm., 105

F.3d 762, 766 (1st Cir. 1997). The Complaint provides absolutely no foundation for the

allegation that the "substantially accurate" Broadcast constituted "threats, intimidation, or

---

car into a police cruiser in the course of a chase); Taylor v. State, 52 Md. App. 500, 506 (1982) (intentionally setting
house on fire at 4:00 a.m., knowing that inhabitants were likely home and asleep); People v. Moore, 3 N.Y.S. 159,
160 (Sup. Ct. 3d Dept. 1888) (forcefully seizing the reins to a horse-drawn sleigh in which plaintiff was sitting).

coercion," as thus defined. Even if the Broadcast had threatened the Plaintiff's arrest, a threat to use lawful means to reach an intended result is not actionable under the MCRA. See, e.g., Sena v. Commonwealth, 417 Mass. 250, 263 (1994) (defendant's implicit threat to obtain a warrant and arrest the plaintiff through lawful means was not actionable under the MCRA).

Additionally, as with a claim under 42 U.S.C. § 1983, a civil rights claim under the MCRA requires an "actual deprivation of constitutional rights." See Therrien v. Hamilton, 849 F. Supp. 110, 115 (D. Mass. 1994), citing Elwood v. Pina, 815 F.2d 173, 177 (1st Cir. 1987). As discussed in Section III.B, above, defamation injuries are not a "deprivation of constitutional rights," and the Plaintiff has admitted that Fox TV caused no injury to liberty or property interests that would constitute such a deprivation. Accordingly, the Plaintiff's MCRA claim must be dismissed as against Fox TV.

> 2.  *The Plaintiff's claim for intentional infliction of emotional distress also must be dismissed because the actions attributed to Fox TV's actions were not "extreme and outrageous."*

Count 13 of the Complaint alleges that Fox TV intentionally inflicted emotional distress upon the Plaintiff. However, the Plaintiff has not pleaded any facts to support the claim that Fox TV's conduct was "extreme and outrageous." Therefore, this claim as to Fox TV must be dismissed.

In order to state a claim for intentional infliction of emotional distress, the plaintiff must set forth sufficient facts to demonstrate, among other things, that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 27 (1st Cir. 1997). The case must be one in which "the recitation of the facts to an average member of the community would arouse

15

his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts, § 46, *comment d* (1965); see also Agis, 371 Mass. at 145 (citing Restatement). This requirement is "aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved." Agis, 371 Mass. at 145.

The only act alleged in the Complaint as to Fox TV was the Broadcast of information obtained from law enforcement, which, in the Plaintiff's own words, was "somewhat balanced." See Complaint, ¶¶ 310, 312-16, 325-26, 503-05. As a matter of law, Fox TV's conduct certainly does not rise to the level of being "extreme and outrageous." See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (on motion to dismiss claim for intentional infliction of emotional distress, court may determine as a matter of law that conduct is not "extreme and outrageous"). On the contrary, in broadcasting information about a missing child, Fox TV was performing a public service. "[T]he media in this type of situation...perform an invaluable service to both law enforcement and the public at large." Gist v. Macon County Sheriff's Dep't, 284 Ill.App.3d 367, 380 (1996) (dismissing claim against the media for broadcasting a "most wanted fugitives" flyer). Thus, Count 13 of the Complaint must be dismissed as to Fox TV.

V.   THE PLAINTIFF CANNOT TIE FOX TV TO CLAIMS AGAINST OTHER
     DEFENDANTS THROUGH CONCLUSORY ALLEGATIONS OF CONSPIRACY.

In an attempt to hold Fox TV liable for the conduct of every other defendant in this case, the Plaintiff, in Counts 3 and 11 of the Complaint, has made vague and conclusory allegations of a civil conspiracy under state and federal law. These claims fail on the face of the Complaint, and, accordingly, must be dismissed.

The Plaintiff's two conspiracy claims substantially overlap one another. Count 3 of the Complaint alleges that Fox TV was involved in a conspiracy to violate the Plaintiff's civil rights under 42 U.S.C. § 1983. Under § 1983, a civil rights conspiracy is defined as "a combination of

16

two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (citation omitted).

Count 11 of the Complaint, in turn, alleges civil conspiracy under Massachusetts law. Massachusetts recognizes two separate theories of conspiracy. See Estate of Halloran v. United States, 268 F. Supp. 2d 91, 94-95 (D. Mass. 2003). The first, called a "true conspiracy," requires the Plaintiff to demonstrate that: (1) two or more persons combined to accomplish a wrong; (2) the defendants, in combination, possessed a peculiar power of coercion over the plaintiff that an individual standing in similar relation to the plaintiff would not have had, and (3) the plaintiff suffered damages as a result. See id. The second theory, called the "concerted action" theory, requires that the defendant: (1) knew of a common plan and its purpose; (2) the goal of the plan was to commit a tortious act; and (3) the defendant took affirmative steps to encourage the achievement of the result. See id. at 95; Kurker v. Hill, 44 Mass. App. Ct. 184, 189 (1998). Under the latter theory, the Plaintiff must demonstrate that Fox TV engaged in independent tortious conduct of its own, see Heinrich ex rel. Heinrich v. Sweet, 49 F. Supp. 2d 27, 44 (D. Mass. 1999), and that Fox TV's "encouragement or assistance" was a "substantial factor" in causing the resulting tort, see Estate of Halloran, 268 F. Supp. 2d at 95.

The Complaint falls far short of the requirements for pleading a conspiracy under either state or federal law. In an effort to control frivolous conspiracy suits under § 1983, the First Circuit has required that allegations of civil rights conspiracies indicate the specific, factual basis on which the conspiracy allegation rests. In holding that the U.S. District Court for the District

of New Hampshire erred in denying a motion to dismiss a conclusory conspiracy claim, the First

Circuit stated:

> Especially because the circumstances under which cooperation by a private party
> with law enforcement personnel will convert private action to state action are
> unclear...it is appropriate to require that the relationship or nature of cooperation
> between the state official be pled *in some detail*. This is in line with our
> requirement that some factual basis supporting the existence of a conspiracy must
> be pled when a conspiracy is alleged in a civil rights case.

McGillicuddy v. Clements, 746 F.2d 76, 77 (1st Cir. 1984) (emphasis in original). Similarly, the

First Circuit affirmed the dismissal of a conspiracy claim in Slotnick v. Staviskey, 560 F.2d 31

(1st Cir. 1977), stating:

> [C]omplaints cannot survive a motion to dismiss if they contain conclusory
> allegations of conspiracy but do not support their claims with references to
> material facts...The complaint contains frequent references to conspiracy, but it
> offers few insights into the specific nature of the alleged concerted action. ...
> [T]he courts need not conjure up unpleaded facts to support these conclusory
> suggestions.

Id. at 33. See also Slotnick v.Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980) (affirming dismissal

of § 1983 conspiracy claim that "neither elaborates nor substantiates its bald claims that certain

defendants conspired with one another."); Dewey v. University of New Hampshire, 694 F.2d 1,

3 (1st Cir. 1982) (with regard to § 1983 claims in general, "We recognize the great utility of 42

U.S.C. § 1983 as an instrument of justice in the hands of the weak against the mighty, but we

also are aware of the impact of its misuse.").

Similarly, under Massachusetts law, allegations of conspiracy must be stated with

particularity. See Heinrich, 49 F. Supp. 2d at 44. "Mere allegations of fraud, corruption or

conspiracy, averments to conditions of mind, or referrals to plans and schemes are too

conclusional to satisfy the particularity requirement, no matter how many times such accusations

are repeated." Id.

Although the Plaintiff alleges independent actions on the part of each defendant, see e.g., Complaint, ¶¶ 424-29, 490-95 and alleges in a conclusory manner that "the defendants agreed that the object or course of action was to arrest, detain, and confine Meuse without probable cause, and maliciously charge and prosecute him with crimes," see, id., ¶¶ 431, 499, the Plaintiff sets forth no facts to support the existence of any such agreement including Fox TV. There are no allegations regarding when or where this agreement was reached, the identities of the individuals who reached the agreements for each party, what "peculiar power of coercion" the defendants possessed in concert, or any other facts that would support the Plaintiff's conclusory allegations. Nor does the Complaint even identify the theory of conspiracy on which the Plaintiff's state law claim rests.[8]

Indeed, apart from the Plaintiff's conclusory language, which must be disregarded, his allegations of conspiracy are empty. See New Eng. Cleaning Services, 199 F.3d at 545 ("The court is not required to accept legal conclusions as true when considering a motion to dismiss"); DM Research, Inc., 170 F.3d at 55 ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."). Accordingly, the conspiracy counts of the Complaint (Counts 3 and 11) must be dismissed.

---

[8] To the extent that the Plaintiff bases his Massachusetts conspiracy claim on the "concerted action" theory, he has failed to assert an independent tortious act by Fox TV. See Heinrich, 49 F. Supp. at 44. As discussed in Section II, above, the only act alleged on the part of Fox TV, i.e., the Broadcast, is not actionable under the fair report privilege. The plaintiff has also failed to set forth any facts demonstrating that Fox TV's acts were a "substantial factor" in causing a resulting tort. See Estate of Halloran, 268 F. Supp. 2d at 95. On the contrary, as discussed above, the Complaint indicates that the Broadcast did not assist in Meuse's capture by a police; Meuse's ultimate capture was the result of two women in Oklahoma identifying him from a wanted poster in Wal-Mart. See Complaint, ¶¶ 382-83.

CONCLUSION

For the reasons stated above, defendant Fox Television Stations, Inc., respectfully

requests that this Court dismiss all counts of the Complaint against it.

Respectfully submitted,

FOX TELEVISION STATIONS, INC.,

By its attorneys,

Elizabeth A. Ritvo (BBO #421440)
Jeffrey P. Hermes (BBO #637952)
Samantha L. Gerlovin (BBO #652389)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA  02111
(617) 856-8200

Dated: May 10 , 2004

#1274152 v\2 - hermesjp - rb54021.doc - 24273/1

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE
DOCUMENT WAS SERVED UPON THE ATTORNEY OF
RECORD FOR EACH OTHER PARTY BY MAIL (BY HAND) ON
5/10/04                                          and
                                                 e-mail
_____
SIGNATURE