UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION:  04-10255-EFH

**Brian J. Meuse**
Plaintiff
v.
**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly**, in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

_____

## MOTION TO RECONSIDER (WITH SUPPORTING MEMORANDUM and AFFIDAVIT) MOTIONS OF FOX TELEVISION STATIONS, INC., AND STF PRODUCTIONS, INC., TO DISMISS COMPLAINT

Now comes Plaintiff Brian J. Meuse ["Meuse"] and moves this Honorable Court to recon-

sider the motions of Defendants Fox Television Stations, Inc. ["FOX" or "FOX TV"], and STF

Productions, Inc. ["STF" or "STF/AMW"], to dismiss all counts of the Second Amended Verified

Complaint ["Complaint"].   [The arguments  below are listed in the margin.]\[1]/

---

[1]
1. Where this court has original jurisdiction under 28 U.S.C. §1331, the federal-question statute, and where federal law forms an "ingredient" of the action, even if nonfederal issues are also involved, federal jurisdiction exists.
2. Where there is absolutely no allegation that Meuse violated any federal law and only averments that Meuse was falsely accused of violating a state statute, Meuse's Complaint was brought under both the color of state law -- not federal statutes -- and the color of the federal constitution.
3. Federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments.
4. The seminal Bivens action applies.
5. Meuse's claims fall within the two extensions of Bivens jurisprudence in the 30 years between Bivens and Correctional Services v. Malesko.
6. Private status is not a "special factor counseling hesitation" that would preclude a Bivens claim.
7. Correctional Services Corp. v. Malesko, a 3-2-4 decision, is not definitive on the issue of whether a Bivens claim is available to a private entity.
8. Whether "state action" exists depends on the facts and circumstances of each case.
9. Where FOX and STF/AMW were federal actors violating both state and federal constitutions, Meuse can maintain both §1983 and Bivens claims against them.
   a. A private corporation that engages in federal action is as accountable as a private corporation that engages in state action.
10. Where Meuse's constitutional claims are established, the state law claims are within the pendent jurisdiction of this court.

As grounds for this motion, Meuse states that this court wrongly focused on the FBI to determine whether the movants FOX and STF were acting under the color of federal or state law.  For instance, it can be inferred:

- that FOX was both a "state" and "federal" actor [discussed *infra*],\\[2]/

- that STF was both a "state" and "federal" actor [discussed, *infra*],

- that FBI Agent Prouty was a governmental official using his official position to encourage FOX TV and STF to cooperate with and allow him to give his personal opinions to defame Meuse in order to effect Meuse's arrest and imprisonment,

- that a profitable business relationship existed between the FBI agents, FOX, STF/AMW, NCMEC, and Wal-Mart, and

- that conspiring with them in an elaborate scheme were the other natural defendants.

This court decided that private entities FOX and STF could not be held liable because **(1)** "a <u>Bivens</u> claim was not available against a private entity even if that entity is acting under color of federal law" and **(2)** "Section 1983 applies only to persons acting 'under color of state law.'"

Meuse contends **(1)** that this court did not consider the exceptions available to him in this area of law and **(2)** that the facts in this case do not lend support to the blanket statements of law cited by this court.  The facts supporting Meuse's contrary position demonstrate the several flaws in the court's rationale follow:

- **(1)** no one – FOX, STF, the FBI agents,\\[3]/ or the other defendants -- has averred, asserted, contended, or alleged that the FBI was acting under federal law;

- **(2)** FBI Agent Prouty\\[4]/ violated constitutional amendments by intentionally executing\\[5]/ a facially invalid state warrant and misrepresenting that he had a federal warrant -- which Meuse and even the defendant Haverhill officers have never seen

---

[2]  "Because the doctrine encompassing both concepts – [federal and state governmental action] -- is commonly known as "state action," we use this term to refer to federal government action of significance in establishing the governmental involvement requisite for the assertion of constitutional rights."  <u>Dobyns v. E-Systems, Inc.</u>, 667 F. 2d 1219, 1220 n. 1 (5th Cir.1982).  <u>Hammons v. Norfolk Southern Corp.</u>, 156 F.3d 701, 704 (6th Cir. 1998) (same).

[3]  Though served, the FBI has neither filed a responsive pleading nor returned a waiver.

[4]  Nowhere in Meuse's Complaint or Amended Complaints did he aver that Agent Kelly was involved with FOX or STF/AMW.  At the time of filing his pleadings, Meuse had only evidence – testimonial and tape – that Agent Prouty was involved with those two entities.

[5]  "[W]hen a federal official commits an unconstitutional act, he is necessarily acting outside his official capacity."  <u>Schowengerdt</u>, 823 F.2d 1328, 1333 (9th Cir. 1987) (internal citations omitted).

[Amended Complaint [hereafter "Comp."] ¶¶ 218-219, 223-224; *see also* ¶¶215, 217, 221-222, Exhs. Y-Z];

(3)     the FBI agents were acting under the color of state law, according to Defendant Captain Thompson [Comp. ¶226];[6]/

(4)     there was, however, no unlawful flight warrant – at least, it has never ever been seen by anyone known to be involved in the Meuse case anywhere from Massachusetts to Oklahoma, where he was captured;

(5)     the FBI agents told FOX and STF/AMW that they wanted, in so many words, "to get this guy Meuse" because he violated a state law, to wit, M.G.L. c. 265, §26A, the parental kidnapping statute,[7]/ and was a "fleeing felon" [*see* note 6 in margin];

(6)     no federal statute was implicated, so the alleged flight had to be from **state** law;

(7)     FOX and STF/AMW were working with the FBI agents because they were looking for Meuse for allegedly violating state law, not federal law;

(8)     FOX, STF, and FBI agents were defaming Meuse both under federal and state law;

(9)     FOX, STF, and FBI agents were falsely accusing Meuse of violating state law, not federal law;

(10)    Meuse, in fact, was subsequently tried for a violation of a **state law**, not federal law;

(11)    Agent Prouty appears to have been acting on his own;

(12)    Kelly was acting under orders from Prouty, his supervisor and head of the Boston office, Agent Prouty;

(13)    FBI agents contacted FOX25News Boston, a subdivision of FOX TV, for the planned interview to be played on the Unsolved Mysteries of New England;

(14)    there has traditionally been a liaison from the federal government to the "America's Most Wanted" television show;[8]/

(15)    FOX and STF/AMW perform a job "that was traditionally exclusively performed by the government," to wit, the displaying of Wanted posters;

(16)    there is no evidence whatsoever as to the authority under which the FBI agents were working;

---

[6]   The captain testified bizarrely that "an unlawful flight is how the FBI enters a case. That gives them the jurisdiction, the authority to enter the case and to conduct a search. Charles Kelly, the FBI agent, obtained the unlawful flight warrant"[Comp. ¶226]. The captain had no proof that the so-called "flight" was "unlawful," and had not seen the warrant. Defendant Detective Moynihan testified that the FBI "put out that [Meuse] was a fleeing felon" [Comp. ¶303].

[7]   If the FBI agents ordered or recruited FOX and STF/AMW to help capture Meuse <u>without</u> an explanation, FOX and STF/AMW were acting under ***color of federal authority***.

       If the FBI agents ordered or recruited FOX and STF/AMW to help capture Meuse <u>with</u> an explanation, FOX and STF/AMW were acting under ***color of state law***. FOX and STF/AMW were publishing not just something the FBI agents told them, but published an exaggeration and enhancements of what the FBI agents told them, to wit, Meuse had violated *state law*.

[8]   The former **government liaison** to AMW, William Scigliano, is now the Chief Executive Officer and President of IQ Biometrix, which hosts and manages the AMW website. **This is a piece of evidence of the elaborate, on-going scheme from which FOX and STF's advertising revenues became considerable.**

(17)   in his Complaint, Meuse did not invoke any federal statue, but invoked many Amendments to the United States Constitution.

Ironically, federal common law supports Meuse's <u>Bivens</u> claims against FBI Agents Prouty and Kelly, but, as said *supra*, the FBI have not returned their waiver and have not filed and served a pleading responsive to Meuse's Complaint or to either of Meuse's Amended Complaints.   Also ironically, FOX and STF/AMW did not attack Meuse's <u>Bivens</u> claims in their motions to dismiss. Consequently this is Meuse's first opportunity to address the issue raised *sua sponte* by this court. Meuse contends that it would have been more appropriate had the court requested briefs on the issue before dismissing Meuse's federal claims against FOX TV and STF/AMW and remanding the state claims against the two entities to state court.[9]/   At the very least, the pending state claims against FOX TV and STF/AMW must be tried at the same time and in the same court as the claims against all the other defendants.

## ARGUMENTS

1.   **Where this court has original jurisdiction under 28 U.S.C. §1331, the federal-question statute, and where federal law forms an "ingredient" of the action, even if nonfederal issues are also involved, federal jurisdiction exists.**

Where federal law forms an "ingredient" of the action, even if nonfederal issues are also involved, federal jurisdiction exists.  <u>Osborn v. Bank of the United States</u>, 22 U.S. (9 Wheat.) 738 (1824).  <u>Ex parte Young</u>, 209 U.S. 123, 160 (1908) ("If the question of unconstitutionality, with

---

[9]   It is anticipated that now the other corporations will seek dismissal on the grounds the court has raised, and if the court allows their motions, Meuse will find himself prosecuting half the defendant co-conspirators in federal court and the other half in state court.  Trying the same conspiracy in different courts makes the Local Rule 16.1 certifications into shams, in that the efficient administration of justice in the courts will not be furthered.

Moreover, even when the claims against them are in state court, the FOX and STF/AMW witnesses will still be summoned into federal court for depositions and testimony.  They are indispensable witnesses, if not parties, to the conspiracies and other claims. Fed.R.Civ.P. 19(a).  Even as Meuse's claims continue in this court against other defendants, FOX's and STF/AMW's involvement will not only be undiminished in federal court, it will replicated in state court. The only difference will be that this court will have allowed them to escape accountability and liability in the federal court.

At the very least, were the Bivens claims to remain dismissed in federal court, the state law actions should remain in federal court to be tried with the remainder of the case.

MOTION TO RECONSIDER DENIAL OF MOTIONS OF FOX TELEVISION STATIONS, INC., AND STF PRODUCTIONS, INC., TO DISMISS COMPLAINT

Case 1:04-cv-10255-EFH    Document 35    Filed 06/19/2004    Page 5 of 21

reference, at least, to the Federal Constitution, be first raised in a Federal court, that court . . . has the right to decide it . . . ."); Okpalobi v. Foster, 244 F.3d 405, __ n. 64 (5th Cir. 2001) (en banc) (Benavides, C.J., concurring in part and dissenting in part) (same), citing Osborne [sp], at 846-51.

Further, insofar as Meuse's claims arise under the U.S. Constitution, his causes of action against the private corporations arise under federal law for purposes of § 1331 [Comp. ¶1]:

> The federal question jurisdiction statute, 28 U.S.C. § 1331, states that "t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994).

Sallen v. Corinthians Licenciamentos Ltda, 273 F.3d 14, 2001.C01.0000473 at ¶42 <http://www.-versuslaw.com> (1st Cir. 2001) (reversing and remanding on jurisdictional grounds).

> Under the federal-question statute, 28 U.S.C. § 1331, the original jurisdiction of the district courts is triggered if the action "aris[es] under the Constitution, laws, or treaties of the United States." All that is required is the federal question. Osborn v. Bank of United States, 22 U.S. (9 Wheat) 738, 822 (1824) (Marshall, C.J.); . . .

Ortega v. Star-Kist Foods, Inc., No. 02-2530, 2004.C01.0000231 at ¶61 < http://www.versuslaw-.com> (1st Cir. 2004).

Thus, where this court has jurisdiction [Sallen, infra, 2001.C01.0000473 at ¶41, citing Osborn, 817]; and where federal common law supports Meuse's Bivens claims against the private corporations under the prong addressing the deprivation of federal constitutional rights, the claims against FOX and STF/AMW must remain in federal court.

Moreover, given that FOX and AMW **(a)** were motivated by the charisma of money and mystique of power,\\[10]/ **(b)** cooperated with the FBI agents to deprive Meuse of both his federal and state constitutional rights, and **(c)** were federal actors and/or agents of Prouty and Kelly, Meuse's Bivens claims are sustainable against those entities.   A Bivens remedy "exists solely as a response to the problem of unconstitutional federal action."  Kauffman, 28 F. 3d 1223, 1226 (D.C.Cir. 1994).

---

[10]  The headiness of the FBI's power is implied in Bivens: "The mere invocation of federal power by a federal law enforcement official will normally render futile any attempt to resist an unlawful entry or arrest by resort to the local police; and a claim of authority to enter is likely to unlock the door as well. See Weeks v. United States, 232 U.S. 383, 386 (1914); Amos v. United States, [255 U.S. 313, 37 (1921)].... 'In such cases there is no safety for the citizen, . . .'" Bivens. 403 U.S. at 394.

To dismiss the federal claims against FOX and STF/AMW would leave the FBI agents vulnerable and the private entities not vulnerable to a <u>Bivens</u> claim. Rephrased, the dismissal of the <u>Bivens</u> claims against FOX and STF/AMW leaves the FBI agents the scapegoats of a conspiracy to defame and deprive Meuse of his liberty interests, i.e., cause his false arrest and imprisonment, *et cetera*.\\[11]/ And rephrasing further, Meuse contends that given the facts and circumstances of this case, his <u>Bivens</u> claims also fall into the exceptions the Supreme Court to this day recognizes.

**2.**     **<u>Where there is absolutely no allegation that Meuse violated any federal law and only averments that Meuse was falsely accused of violating a state statute, Meuse's Complaint was brought under both the color of state law -- not federal statutes -- and the color of the federal constitution.</u>**

In determining a motion to dismiss, the court may draw reasonable inferences from well-pleaded facts, and those reasonable inferences must be construed in favor of the plaintiff. Here, if the FBI agents were not mentioned at all in the Complaint, there would be no vestige of any fact from which this court could infer that the Complaint was brought under color of federal statutes (as opposed to the federal constitution). Here, the FBI agents were called in by a member of the Haverhill Police Department (*see* <u>Comp. ¶226</u>),\\[12]/ At that point, the FBI agents were acting under color of state law and under color of state authority. No federal authority even knew of Meuse. No federal law had been violated.

Subsequently the FBI team, giving the false impression that they were acting under federal authority, acted as a messenger for the Haverhill Police Department, Susan Pane [<u>Comp. ¶¶295, 297</u>], and Rosalyn Stults [<u>Comp. ¶284</u>], and contacted FOX and STF/AMW (as well as NCMEC and Wal-Mart). There are two inferences that can be drawn here, both, however, in Meuse's favor. The first is that the FBI recruited the assistance of FOX and STF/AMW to capture Meuse. The

---

[11]   Letting FOX and STF/AMW escape liability for Meuse's Bivens claims, also leaves the natural defendants – Pane, Stults, and the Haverhill Police Captain and Detective – holding the bag for the tragic farce they began.

[12]   Paragraph 226 of the Complaint memorializes Captain Thompson's testimony: "an unlawful flight is how the FBI enters a case. That gives them the jurisdiction, the authority to enter the case and to conduct a search. Charles Kelly, the FBI agent, obtained the unlawful flight warrant."

second inference is that FOX and STF/AMW were in business with the FBI – the deal being that

the FBI would provide FOX and STF/AMW with "sexy"\[13]/ source material for their television

shows, namely, America's Most Wanted and Unsolved Mysteries, and for the AMW Wanted poster

website.  Whichever inference is preferred by the court does not change the color of law under

which FOX and STF/AMW were acting.

Given that the FBI agents were but acting under the color of state law, so were FOX and

STF/AMW when they conspired with the FBI agents to capture Meuse.

### 3.  Federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments.

First, the defendants whose motions were being decided were FOX and STF, not the FBI.

Second, in Bell v. Hood, 327 U.S. 678, 684 (1946), the Supreme Court decided for the first time

that private parties could recover money for damages suffered as a result of FBI agents for violat-

ing the parties' Fourth and Fifth Amendment rights.

> . . . . The Supreme Court [held] that because the complaint squarely sought recovery on the
> ground that the agents violated the Constitution, federal question jurisdiction existed regard-
> less of whether or not there was a federal cause of action or whether the complaint also al-
> leged a state law claim.*fn3 The Court stated the jurisdictional rule as follows:

>> "(W)here the complaint, as here, is so drawn as to seek recovery directly un-
>> der the Constitution or laws of the United States, the federal court, but for two pos-
>> sible exceptions . . ., must entertain the suit. . . .

Local Division No. 714 v. Greater Portland Transit District of Portland, 589 F.2d 1, 5-6 (1st Cir.

1978).  "[T]he claim for damages based on fourth and fifth amendment violations sufficed to estab-

lish federal question jurisdiction, even though Bivens v. Six Unknown Federal Narcotics Agents,

403 U.S. 388 (1971), had not yet been decided."  Local, at 6 n.3, citing Bell.

> . . . where federally protected rights have been invaded, it has been the rule from the be-
> ginning that courts will be alert to adjust their remedies so as to grant the necessary re-
> lief.*fn6 And it is also well settled that where legal rights have been invaded, and a federal

---

[13]   The stories FOX TV and STF/AMW wanted and still want are those that would appeal to the prurient interests of
their audiences.

statute provides for a general right to sue for such invasion, federal courts may use any
available remedy to make good the wrong done.*fn7 Whether the petitioners are entitled to
recover depends upon an interpretation of 28 U.S.C. §41(1) and on a determination of the
scope of the Fourth and Fifth Amendments' protection from unreasonable searches and dep-
rivations of liberty without due process of law. Thus, the right of the petitioners to recover
under their complaint will be sustained if the Constitution and laws of the United States are
given one construction and will be defeated if they are given another. For this reason the
District Court has jurisdiction.

Bell, 327 U.S. at 684-685 (citations omitted).  Section 41(1) of Title 28 "authorizes the federal dis-

trict courts to try 'suits of a civil nature' where the matter in controversy 'arises under the Constitu-

tion or laws of the United States,' whether these are suits in 'equity' or at 'law.'"

Meuse's case against FOX and STF/AMW arises under the Constitution or laws of the

United States, as well as out of common law.  *See also* Issue 1, *supra*.

**4.      The seminal *Bivens* action applies.**

The Court synopsized Bivens in Correctional Services Corporation v. Malesko, 534 U.S.

(Cal.) 61 (2001), a 3-2-4 decision with a vigorous dissent:  "The District Court treated the com-

plaint as raising claims under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388 (1971),

in which this Court recognized for the first time an implied private action for damages against fed-

eral officers alleged to have violated a citizen's constitutional rights" [Correctional Services, at 61

of Court Syllabus], and "such private entities should be held liable under Bivens to accomplish the

important Bivens goal of providing a remedy for constitutional violations." Id.   The Supreme

Court approved Bivens actions for violations of the Fourth Amendment.  Bivens, 403 U.S. at 397.

"The Court's authority to imply a new constitutional tort, not expressly authorized by stat-

ute, is anchored in its general jurisdiction to decide all cases arising under federal law." Correc-

tional Services, at 61.  But  the "Bivens' limited holding may not be extended to confer a right of

action for damages against private entities acting under color of federal law." Id.

**5.      Meuse's claims fall within the two extensions of *Bivens* jurisprudence in the 30 years
between *Bivens* and *Correctional Services v. Malesko*.**

When <u>Correctional Services v. Malesko</u>, 534 U.S. 61 was decided 3-2-4, with a vigorous

dissent, in 2001, the Supreme Court had extended its holding only twice in the 30 years of Bivens

jurisprudence. The first time was in <u>Davis v. Passman</u>, 442 U. S. 228 (1979). There, the Supreme

Court ***"provide[d] a cause of action for a plaintiff who lacked any alternative remedy for harms***

***caused by an individual officer's unconstitutional conduct,"*** and recognized an implied damages

remedy under the Due Process Clause of the Fifth Amendment. <u>Correctional Services</u>, 62 and 70

(emphasis supplied), citing <u>Davis</u>, 442 U. S. at 245. *See also* <u>id</u>. at 248-49. ***The Meuse case***

***against the FBI agents, at the very least, falls into this category.***

The second time was a year later, in <u>Carlson v. Green</u>, 446 U. S. 14 (1980). There, the

Court ***"provide[d] an otherwise nonexistent cause of action against individual officers alleged to***

***have acted unconstitutionally,"*** and recognized a remedy under the Cruel and Unusual Punishment

Clause of the Eighth Amendment. <u>Correctional Services</u>, at 61-62 and 70 (emphasis supplied).\[14]/

The courts in both <u>Davis</u> and <u>Carlson</u>, recognized claims for money damages against federal

officers who abused their constitutional authority. "For Davis, as for <u>Bivens</u>, it is damages or noth-

ing." 442 U.S., at 245. In <u>Carlson</u>, the Court reasoned that a suit under the Federal Tort Claims Act

["FTCA"] against the United States was insufficient to deter the unconstitutional acts of individu-

als, specifically the individual prison officials. 446 U.S., at 18-23. The Court also concluded that

it was "crystal clear" that Congress intended the FTCA and <u>Bivens</u> to serve as "parallel" and "com-

plementary" sources of liability. <u>Correctional Services</u>, at 68, citing <u>Carlson</u>, 446 U. S., at 19-

20.\[15]/ "The purpose of <u>Bivens</u> is to deter individual federal officers from committing constitu-

tional violations." <u>Id</u>., at 70.

---

[14]      A <u>Bivens</u> cause of action may be defeated if "special factors counsel [] hesitation in the absence of affirmative
action by Congress," <u>Bivens</u>,403 U.S. at 396; Carlson, 446 U.S. at 18, or if "Congress has provided an alternative rem-
edy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally ef-
fective." Id. at 18-19 (citing <u>Bivens</u>,403 U.S. at 397). <u>Schowengerdt.</u>, 823 F.2d at 1332.
[15]      "Because the <u>Bivens</u> remedy is recoverable against individuals, it is a more effective deterrent than the FTCA rem-
edy." <u>Carlson</u>, 446 U.S. at 21.

Later, the Supreme Court approved a <u>Bivens</u> claim for the First Amendment. <u>Schowen-</u>

<u>gerdt v. General Dynamics Corp.</u>, 823 F.2d 1328, 1332 (9th Cir. 1987), citing <u>Gibson v. United</u>

<u>States</u>, 781 F.2d 1334, 1342 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).

Given that Meuse, like Davis and <u>Bivens</u>, lacks any other remedy for the alleged constitu-

tional deprivation by FOX and STF/AMW, it is "[his] damages or nothing." <u>Correctional Services</u>,

at 72. His remedy, then, is to have FOX TV and STF/AMW deemed vulnerable to liability as

well. <u>Bivens</u>, 403 U.S. at 397.\<b>16</b>/ Symmetry would then be achieved. *Cf.* <u>Correctional Services</u>,

at 81 (Justices Stevens, Souter, Ginsburg, and Breyer, dissenting).

Meuse's position is not without some support: As in <u>Carlson</u>, where the violation was

deemed to be committed by a federal agent -- a private corporation employed by the Bureau of

Prisons to perform functions that would otherwise be performed by individual employees of the

Federal Government, Meuse's constitutional deprivations can be deemed to have been committed

by FOX TV and STF/AMW, just as if they were federal agents – particularly because of the close-

ness with which they traditionally work with the FBI and its agents. <u>Correctional Services</u>, at 76

(dissent).\<sup>17</sup>/ "[T]he government 'normally can be held responsible for a private decision only

when it has exercised coercive power or *has provided such significant encouragement, either overt*

*or covert*, that the choice must in law be deemed to be that of the [government].'" <u>Gerena v.</u>

<u>Puerto Rico Legal Services Inc.</u>, 697 F.2d 447, 449-450 (1st Cir. 1983) (emphasis supplied).

Here, given the relationship between the FBI and FOX and STF/AMW, it may be reasona-

---

[16] "Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment, supra, at 390-395, we hold that petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment". <u>Bivens</u>, 403 U.S. at 397. *See also* <u>Bivens</u> at 399. This is applicable also to Meuse. <u>See</u> Comp. ¶399, where Meuse pled that his Fourth, Fifth, and Fourteenth Amendment rights had been vio-lated, and Meuse's jurisdictional statement at <u>Comp. ¶1</u>.

[17] Meuse could have named as John Does the individuals at FOX and AMW who cooperated and even conspired with FBI Agent Prouty, but the long-lasting relationship between those private corporations and the FBI and its agents has been become a part of policy and practice, and not the result of the action of a particular set of individuals employed by those corporations when Meuse was defamed and his constitutional rights violated. No matter who the individuals were, the policy and practice of cooperation and conspiracy with the FBI and its agents would have continued.

bly concluded that FOX and STF/AMW perform a job "that was traditionally exclusively per-

formed by the government," to wit, the displaying of Wanted posters." <u>Gerena</u>, 697 F. 2d at 451.

<u>See</u> <u>Dobyns v. E-Systems Inc.</u>, 667 F.2d 1219, 1227 (5th Cir. 1982) ("Private fulfillment of such a

governmental role constitutes state action").

**6.    Private status is not a "special factor counseling hesitation" that would preclude a**
       ***Bivens* claim.**

In <u>Ginn v. Mathews</u>, 533 F.2d 477 (9th Cir. 1976), the "plaintiffs, invoking jurisdiction un-

der section 1331 [as did Meuse in the instant case], sought damages for violations of their constitu-

tional rights by federal actors. Such an action is, by definition, a <u>Bivens</u> action."\[18]/  <u>Schowengerdt</u>,

*infra*, at 1337 n. 13, quoting <u>Ginn</u>, at 480 n. 4.  The court in <u>Ginn</u> also found the private corporation

liable for constitutional violations.

In <u>Bush v. Lucas</u>, 462 U.S. 367, 385 (1983), the Court wrote of a "special factor counseling

hesitation" that would preclude a <u>Bivens</u>' claim.  In <u>Bush</u>, an example of such a special factor was,

in an illegal demotion context, "an elaborate, comprehensive [statutory] scheme that encompasse[d]

substantive provisions forbidding arbitrary action by supervisors and procedures administrative and

judicial -- by which improper action may be redressed."  <u>Schowengerdt</u>, at 1339, quoting <u>Bush</u>, at

385.  Such a scheme does not exist in the instant case.  No statutory scheme exists in <u>Meuse</u>.

In <u>Reuber v. United States</u>, 750 F.2d 1039, 1058 (D.C. Cir. 1984) (opinion of Wald, J.), the

court held that "private status . . . [,] even if deemed a special factor, is not alone sufficient to coun-

sel hesitation in implying a damages remedy when the private party defendants jointly participate

with the government to a sufficient extent to be characterized as federal actors. . . ."  At 1063, Jus-

tice Bork, concurring in part, stated that "a private person whose conduct is allegedly instigated and

directed by federal officers should be treated as a federal agent" and "be subject to <u>Bivens</u> liabil-

---

[18]    "Although the <u>Ginn</u> court did not use the words, '<u>Bivens</u> action' the court made clear that it was 'consider[ing] the
question of "state" action in its broad sense as involving both state and federal participation.'" <u>Schowengerdt</u>, *infra*, at
1337 n. 13, quoting <u>Ginn</u>, at 480 n. 4.

ity."\[19]/   *See* <u>Schowengerdt</u>, *infra*, at 1338.

In <u>Schowengerdt v. General Dynamics Corp.</u>, 823 F. 2d 1328 (9th Cir. 1987) (reversed and remanded in part), "[t]he 'private' defendants, Kessel and General Dynamics, argue[d] that a <u>Bivens</u> remedy is not available against them since they [were] not government employees even though they may [have been] 'federal actors.'" <u>Schowengerdt</u>, at 1337.   The court disagreed: the private status of a federal actor was not a "special factor" and would not preclude a <u>Bivens</u> action. <u>Schowengerdt</u>, at 1337.  First, the court found "Kessel and General Dynamics were federal actors." <u>Id</u>.  "Second, . . . Kessel jointly participated with the federal defendants in searching Schowengerdt's office and seizing his property. Such joint participation 'would establish both state action and action under color of state law.'. . . The term 'state' as used here encompasses federal action taken under the color of federal law. . . ."  <u>Id</u>. (internal citations omitted).\[20]/,\[21]/

In <u>Howerton v. Gabica</u>, 708 F.2d 380, 383 (9th Cir. 1983), the court declared that "[t]he existence of governmental action is a question of fact."  <u>Schowengerdt,</u> at 1338.

> Because, at this stage of the case, we must accept the plaintiff's factual allegations as true, we do not look beyond the complaint. Schowengerdt's complaint alleges facts that, if true, support a finding of government action, . . .but the final determination of this issue must be made by the district court on remand. See <u>Reuber</u>, 750 F.2d at 1054-55.  **If the district court finds the governmental action requirement satisfied, defendants Kessel and General Dynamics may not rely on their private-party status as a basis for dismissal.**

<u>Schowengerdt,</u> at 1338-1339 (emphasis supplied).

7.   ***Correctional Services Corp. v. Malesko*, a 3-2-4 decision, is not definitive on the issue of whether a Bivens claim is available to a private entity.**

Prior to our recent decision in <u>FDIC v. Meyer</u>, 510 U. S. 471 (1994), the Courts of Appeals

---

[19]  The Fifth and Sixth Circuits were in accord: <u>Dobyns v. E-Systems, Inc.</u>,667 F.2d 1219 (5th Cir. 1982); <u>Yiamouyiannis v. Chemical Abstracts Serv.</u>, 521 F.2d 1392 (6th Cir. 1975) (*per curiam*).

[20]  "[W]hen a federal official commits an unconstitutional act, he is necessarily acting outside his official capacity." <u>Schowengerdt</u>, at 1333 n.3 (internal citations omitted).

[21]  "Under the 'joint action' test, a private party is acting under color of state (or federal) law if 'he is a willful participant in joint action with the [government] or its agents'" <u>Schowengerdt</u>, at 1339 n. 17, quoting <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980). .

had consistently and correctly held that corporate agents performing federal functions, like human agents doing so, were proper defendants in <u>Bivens</u> actions.\[22]/

<u>Correctional Services</u>, at 77 (dissent).  Relying on <u>Meyer</u>'s progeny, which includes <u>Correctional Services</u>, this court (Harrington, J.) held that "a <u>Bivens</u> claim is simply not available against a private entity even if that entity is acting under color of federal law."  However, although the Supreme Court has, ironically, vacillated on this issue and is out of synch with the majority of the circuit courts of appeal, the Court in <u>Correctional Services</u> did leave in place wiggle room, the exceptions to the "preclusionary" rule:  If a plaintiff has a nonexistent cause of action or has no alternative remedy for a constitutional wrong, a <u>Bivens</u> claim is not to be dismissed.   The Court also left in place the diverse tests, of which Meuse passes several, as well as the "special factors counseling hesitation" test, and there is no such special factor existing in this case. These tests are grounded on facts.  When facts are in dispute, discovery, at the very least, is warranted.\[23]/

Even <u>Correctional Services</u>, at n. 9, lists a half-dozen post-<u>Meyer</u> cases support of Meuse's position, listed *infra* in ascending chronological order, and these cases list even others that hold positions contrary to <u>Meyer</u> and <u>Correctional Services</u>:

1.  <u>Yiamouyiannis v. Chemical Abstracts Serv.</u>, 521 F. 2d 1392 (6th Cir. 1975);\[24]/

2.  <u>Dobyns v. E-Systems, Inc.</u>, 667 F. 2d 1219 (5th Cir. 1982);

3.  <u>Gerena v. Puerto Rico Legal Servs., Inc.</u>, 697 F. 2d 447 (1st Cir. 1983)\[25]/ (although the <u>Gerena</u> court found that the defendants were not federal actors, that court did

---

[22]  "<u>Bivens</u> liability does not run against a federal agency, but only against individual federal agents." <u>Kauffman</u>, *infra*, citing <u>Meyer</u>, *supra*.

[23]  There is a set of unique facts in the instant case.  FOX and STF/AMW appear to have a symbiotic relationship with the FBI.  They have as yet neither admitted nor denied that relationship.  If proven to be true, FOX and AMW are federal agents or actors.  Yet, the primary wrong done Meuse by them is defamation, which is a common-law tort.  Other wrongs were indirectly committed – to wit, the false arrest and imprisonment, the assaults, the batteries.  And, of course, the violations of Meuse's federal constitutional rights – his liberty interest, his right not to be falsely charged with criminal wrongdoing.  The full scope of FOX TV's (FOX25News) and STF's (AMW) involvement and motives has not yet been fully explored.

[24]  In <u>Yiamouyiannis</u>, the Sixth Circuit permitted a <u>Bivens</u> claim against a private corporation.  Specifically, the <u>Yiamouyiannis</u> complaint, alleging that because of the speeches plaintiff made, Department of Health, Education and Welfare coerced his employer to fire him, stated a <u>Bivens</u>-type damages action for violation of first amendment rights."

[25]  <u>Gerena</u>, at 450: "the party seeking to establish that action of a private party violated the Constitution [under a 'nexus' theory] must be able to point to the specific act or actions of the government which in fact motivated the private action."

*not* rely on Fletcher v. Rhode Island Hosp. Trust Bank, 496 F.2d 927, 932 n.8 (1st Cir.), *cert. denied*, 419 U.S. 1001 (1974), which had been relied on by this court in granting the motions by FOX TV and STF/AMW to dismiss Meuse's complaint. Gerena, also a First Circuit case, ignored Fletcher, because – evidently -- the First Circuit panel in Fletcher had found *without explanation* that there is no cause of action against private parties acting under color of federal law. *See* Gerena, at 449.

4.  Reuber v. United States, 750 F. 2d 1039 (D.C. Cir. 1984)\[26]/;

5.  Schowengerdt v. General Dynamics Corp., 823 F. 2d 1328 (9th Cir 1987);\[27]/

6.  Kauffman v. Anglo-American School of Sofia, 28 F. 3d 1223 (D.C.Cir. 1994)\[28]/. This court has "overruled its Circuit precedent in light of Meyer and held that Meyer dictates the exclusion of all corporate entities from Bivens liability." Correctional Services, at 81 n. 9 (dissenting footnote).

7.  Hammons v. Norfolk Southern Corp., 156 F. 3d 701 (6th Cir. 1998),\[29]/ Here, the court explained that the conclusion of Meyer is in no way compelled in other cases.

---

[26]  "[A] panel of this court . . . once permitted a Bivens action to be brought against a private corporation whose agents had allegedly taken actions at the behest of, and in conjunction with, the federal government." Kauffman, *infra* at 1226, citing Reuber, 750 F.2d 1039, 1053-60 (opinion of Wald, J.); id. at 1063-65 (opinion of Bork, J.)."

Even the most thorough of these opinions, ..., focused entirely on the question of whether Bivens could be extended from suits against conventional federal agents to ones against ostensibly "private" parties who are alleged to be federal actors--a topic of some controversy, . . .

Kauffman, at 1226 (internal citations omitted),

Having answered that question in the affirmative, Reuber and its fellow cases simply assumed without analysis that private entities were no less susceptible to Bivens actions than private individuals. See, e.g., Reuber, 750 F.2d at 1058 (Wald, J.) ("private status ... is not alone sufficient to counsel hesitation in implying a damages remedy").

Kauffman, at 1226.  "But whatever its intrinsic appeal," the court in Kauffman concluded, "Reuber 's assumption does not survive Meyer." Kauffman, at 1226.

According to Mr. Kauffman's own affidavit, the School was established primarily to serve the federal government's interest in meeting the educational needs of its diplomats' families; it is this same interest that explains the federal government's continuing grants to the School. See 22 U.S.C. § 2701. If funds are diverted from the School's coffers to liability payments, the government presumably will have to choose between allowing its interest to be served less well and spending more money to make up the shortfall--precisely the same choice that it would confront if Bivens actions could be brought against federal agencies. In other words, diversion of resources from a private entity created to advance federal interests has effects similar to those of diversion of resources directly from the Treasury.

Kauffman, at 1227-1228.

Clearly the unattractive grounds upon which the Kauffman decision rests are not sustainable in our system of justice. The paramount basis of the decisions of our courts is not the cost to the government if a court found for one an aggrieved plaintiff, but according to the constitutional rights of the aggrieved plaintiff. To oppress the governed is an improper basis to contain the costs of governing.

[27]  See note 6, *supra*.

[28]  Kauffman, *infra* at 1226-1228.  The discussion of Bivens liability does not end in Kauffman.

[29]  "Hammons asserts that the lower court's reliance on Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471 (1994), was misplaced inasmuch as that decision did not address the specific issue of whether a Bivens action can be maintained against a private corporation. We agree." Hammons, 156 F.3d at 705.

See <u>Correctional Services</u>, 81 n. 9 (dissenting footnote).. According to <u>Hammons</u>, at 705, "Nothing

in <u>Meyer</u> prohibits a <u>Bivens</u> claim against a private corporation that engages in federal action.

Moreover, the reasons given by the Supreme Court for barring a <u>Bivens</u> claim against a federal

agency do not apply to private corporations."

> While the Court in <u>Meyer</u> focused on the deterrence goal, this clearly is not the only goal underlying a <u>Bivens</u> claim.  In allowing a plaintiff to recover damages for injuries inflicted by federal agents in violation of the plaintiff's Fourth Amendment rights, the <u>Bivens</u> Court took a range of policy considerations into account.  It seemed to focus, however, on the history of the federal courts and their role in protecting rights under the Constitution.  It noted that "'where federally protected rights have been invaded, it has been the role from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.'"  <u>Bivens</u>, 403 U.S. at 392 (quoting <u>Bell v. Hood</u>, 327 U.S. 678, 684 (1946)).  The Court also noted that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interest in liberty."  <u>Id</u>. at 395.  Furthermore, the Court recognized that "'[t]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.'"  <u>Id</u>. at 397 (quoting <u>Marbury v. Madison</u>, 1 Cranch 137, 163, 2 L.Ed. 60 (1803)).

<u>Hammons</u>, 156 F.3d at 705-706.

> As such, we believe that the primary goal of <u>Bivens</u> was to provide a remedy for victims of constitutional violations by federal agents where no other remedy exists, regardless of whether the official would be deterred in the future from engaging in such conduct.

<u>Hammons</u>, 156 F.3d at 706.

> . . . Damages as a traditional form of compensation for invasion of a legally protected interest may be entirely appropriate even if no substantial deterrent effects on future official lawlessness might be thought to result. Bivens, after all, has invoked judicial processes claiming entitlement to compensation for injuries resulting from allegedly lawless official behavior, if those injuries are properly compensable in money damages. I do not think a court of law - vested with the power to accord a remedy should deny him his relief simply because he cannot show that future lawless conduct will thereby be deterred.

<u>Hammons</u>, at 706, quoting <u>Bivens</u> at 407-08 (Harlan, J., Concurring).  The court in <u>Hammons</u>

agreed, "recognizing the importance of deterring the individual wrongdoer, believe[d] that the im-

portance of remedying constitutional violations far exceeds any deterrence goal -- victims are

entitled to relief regardless of whether future lawless conduct is deterred."*fn9\[30]/

---

[30]    The original note 9 reads in relevant part:

See <u>Vector Research, Inc. v. Howard & Howard Attorneys, P.C.</u>, 76 F.3d 692, 698 (6th Cir. 1996) (holding that "a party not a public official may be liable under <u>Bivens</u>, but not entitled to qualified immunity because the reason for affording qualified immunity to a public official does not apply to a government actor who is not a public official").

> Finally, <u>Meyer</u>'s second basis for barring a <u>Bivens</u> action against a federal agency, the potentially enormous financial burden on the Government, is not applicable to the case at hand. **Allowing a Bivens claim against a private corporation does not implicate "federal fiscal policy," where, as here, the federal purse is not involved.** See generally <u>United States v. Standard Oil Co. of Cal.</u>, 332 U.S. 301, 311 (1947).

<u>Hammons,</u> at 706 (emphasis supplied).

**8.    <u>Whether "state action" exists depends on the facts and circumstances of each case.</u>**[31]/

Deciding on a case-by-case basis whether a <u>Bivens</u> claim may be maintained against a private corporation that engages in federal action causes inconsistencies in the circuits.  That inconsistency or what appears to be vacillation makes the best case for providing remedies as prescribed in the constitution, i.e., in a fundamentally fair, principled manner.   For instance, the court in <u>Bivens</u> heralded the diverse conclusions of the court in <u>Borak</u>, *infra*:

> Thus, in suits for damages based on violations of federal statutes lacking any express authorization of a damage remedy, this Court has authorized such relief where, in its view, damages are necessary to effectuate the congressional policy underpinning the substantive provisions of the statute. . . . *fn4

> > <u>Borak</u> case is an especially clear example of the exercise of federal judicial power to accord damages as an appropriate remedy in the absence of any express statutory authorization of a federal cause of action. There we "implied" -- from what can only be characterized as an "exclusively procedural provision" affording access to a federal forum, . . .

> The exercise of judicial power involved in <u>Borak</u> simply cannot be justified in terms of statutory construction, . . . nor did the <u>Borak</u> Court purport to do so. . . . The notion of "implying" a remedy, therefore, as applied to cases like <u>Borak,</u> can only refer to a process whereby the federal judiciary exercises a choice among traditionally available judicial remedies according to reasons related to the substantive social policy embodied in an act of positive law. . . .

<u>Bivens</u>, 403 U.S. at 402 (internal citations omitted).

> [R]elying largely on earlier decisions implying private damages actions into federal statutes, . . . ("The <u>Borak</u> case is an especially clear example of the exercise of federal judicial power to accord damages as an appropriate remedy in the absence of any express statutory

---

[31]   "Because the doctrine encompassing both concepts [state action and federal action] is commonly known as "state action," we use this term to refer to federal government action of significance in establishing the governmental involvement requisite for the assertion of constitutional rights."  <u>Dobyns</u>, at ¶59 n. 1.   The reference to "federal action" as "state action" is, in fact, common to the overwhelming majority of cases discussing both concepts.  E.g., <u>Hammons v. Norfolk Southern Corp.</u>, 156 F. 3d at 704, too, refers to "federal action" as "state action."

authorization of a federal cause of action"), and finding "no special factors counseling hesitation in the absence of affirmative action by Congress," . . . , we found an implied damages remedy available under the Fourth Amendment.**fn3**

> **\*fn3** Since our decision in <u>Borak</u>, we have retreated from our previous willingness to imply a cause of action where Congress has not provided one. . . . Just last Term it was noted that we "abandoned" the view of <u>Borak</u> decades ago, and have repeatedly declined to "revert" to "the understanding of private causes of action that held sway 40 years ago." . . .

<u>Correctional Services</u>, at 67 (internal citations omitted).   The problem with <u>Borak</u>, according to

<u>Alexander v. Sandoval</u>, 532 U. S. 275 (2001), arose after Title VI of the Civil Rights Act of 1964

was enacted and set forth a duly ratified statutory scheme that was to be followed in employment-

discrimination cases.

> . . . we have held that "[t]he question whether Congress ... intended to create a private right of action [is] definitively answered in the negative" where "a statute by its terms grants no private rights to any identifiable class."

<u>Gonzaga University v. Doe</u>, 122 S.Ct. 2268, 2275 (2002), quoting <u>Touche Ross & Co. v. Redington</u>, 442 U. S. 560, 576 (1979).

    Thus in the <u>Bivens</u> cases, it only appears that <u>Borak</u> fell from favor and florescence into dis-

favor and decay within a short period of time*.  **It did not.  It had simply been replaced by a duly-**

**ratified statutory scheme.**  Therefore the conclusion is inescapable, as Meuse contends, that the

two exceptions provided in <u>Bivens</u> decades ago are still fine law and this and the High Court shall

not abandon it.

    The most logical and persuasive argument appears in <u>Hammons</u>:

> Like the <u>Lugar</u> and <u>Adickes</u> Courts,\[32]/ this Court is primarily concerned with remedying constitutional deprivations. Accordingly, we find no valid reason to treat corporations that engage in federal action differently than corporations engaging in state action, particularly where, as here, the litigation involves a matter of corporate policy.

<u>Hammons</u>, 156 F.3d at 708.

**9.    Where FOX and STF/AMW were federal actors violating both state and federal constitutions, Meuse can maintain both §1983 and Bivens' claims against them.**

---

[32]    <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922,(1982).  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970).

### a. <u>A private corporation that engages in federal action is as accountable as a private corporation that engages in state action.</u>

There is, of course, no rational excuse for a "private corporation that engages in federal action" not to be as accountable as a private corporation that engages in state action."

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. [Citation omitted.] Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor know or reasonably should know would cause others to inflict the constitutional injury.

<u>Springer v. Seaman</u>, 821 F.2d 871, 879 (1st Cir. 1987). A corporation is a person for purposes of §1983. *See* <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970).\[33]/

> Where the government has directed a contractor to do the very thing that is the subject of the claim, we have recognized this as a special circumstance where the contractor may assert a defense. <u>Boyle v. United Technologies Corp.</u>, 487 U. S. 500 (1988). The record here would provide no basis for such a defense.

<u>Correctional Services</u>, at 74 n. 6.

There is also no basis for this court to invoke and compare the instant Meuse case with <u>Chatman v. Hernandez</u>, 805 F.2d 453 (1st Cir. 1986). Chatman sued the military, not a private corporation. It is too dissimilar to the instan**t** case for comparative purposes**.** For instance, the Court in <u>Chatman</u> noted that "Chatman's alleged constitutional violations could have been brought under the <u>Bivens</u>' rationale, but for those 'special factors'" [<u>Chatman</u>, at 456], which were (1) "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations" [<u>id.</u>] and (2) the military has its own system of justice. <u>Id</u>.

---

[33] By definition in G.L. c. 4, § 7, twenty-third, the word "person" for purposes of construing the general laws "include[s] corporations, societies, associations and partnerships" and, therefore, does not describe the Commonwealth or its subdivisions. <u>Howard v. Chicopee</u>, 299 Mass. 115, 121 (1937). <u>Hansen v. Commonwealth</u>, 344 Mass. 214, 219 (1962), and cases cited.

<u>Kilbane v. Secretary of Human Services</u>, 14 Mass.App.Ct. 286, 287 (1982).

Nevertheless, the court in <u>Chatman</u> held true to the core of <u>Bivens</u>:

In <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), the Supreme Court authorized a suit for damages against federal officials whose actions violated an individual's constitutional rights, even though Congress had not expressly authorized such suits.

<u>Chatman</u>, 805 F.2d at 455-456.

<u>Rogers v. Vicuna</u>, 264 F.3d 1 (1st Cir. 2001), also cited by this court (slip op. at 3), is dissimilar to the instant case. There, in <u>Rogers</u>, the court, after finding that Rogers' cars were not stolen, granted the federal government summary judgment on Rogers' claim under <u>Bivens</u> because, unlike Meuse, "Rogers had failed to demonstrate any constitutional violation . . . or any impropriety [by] the IRS agents." <u>Id.</u> at 4. The facts in <u>Rogers</u>, the court found, did not "rise to the level of a constitutional violation." <u>Id.</u> at 5 (citation omitted).

"The complaint reveals only that [the IRS agents] entered Rogers's property without a warrant or other document issued by a court authorizing that entry. . . . however, the mere absence of a warrant is not automatically indicative of an impermissible search."

<u>Id.</u> And finally,

The touchstone of [Rogers's] claims is whether Rogers had a reasonable expectation of privacy in his driveway. The Supreme Court has continually held that "what a person exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967). In the context of IRS property seizures, the Court has stated that warrantless seizures of vehicles parked on public streets, parking lots or other open places pursuant to tax liens are not a violation of the Fourth Amendment's prohibition on unreasonable seizures. <u>G.M. Leasing Corp. v. United States</u>, 429 U.S. 338, 351-52 (1977).

<u>Id.</u> at 5. And the First Circuit concluded that "Rogers [did] not have a reasonable expectation of privacy in [his] driveway that was visible to 'the occasional passerby.'" <u>Id.</u>, quoting <u>United States v. Hensel</u>, 699 F.2d 18, 32 (1st Cir.), <i>cert. denied</i>, 464 U.S. 823 (1983), and citing <u>United States v. Roccio</u>, 981 F.2d 587 (1st Cir. 1992) (where IRS agents entered the private property of Roccio's girlfriend and seized Taxpayer Roccio's vehicle pursuant to a levy), for the further proposition that IRS agents, "'needed no warrant to seize the automobile.'" <u>Rogers</u>, at 5, citing <u>Roccio</u> at 591.

A warrant was not required because the taxpayer's vehicle "was clearly visible from the street on an unobstructed driveway." [<u>Roccio at 591.</u>] In order to state a Fourth Amend-

ment claim, therefore, Rogers needed to plead facts that would distinguish the IRS agents' seizure of his vehicles from the seizure in Roccio. His complaint, however, is devoid of any such assertion.

Rogers, at 5.

Unlike the vehicles in Rogers and Roccio, Meuse was not was clearly visible from a street on an unobstructed driveway. Meuse was asleep inside his house in Oklahoma when Oklahoma police officers, executing an invalid Massachusetts warrant, entered his residence in SWAT-team style as a result of a Wanted poster falsely alleging that Meuse was a fugitive unlawfully fleeing to avoid prosecution.

Unlike Rogers, Meuse did, indeed, state deprivations of his federal constitutional rights by the FBI agents, FOX, and STF/AMW. Meuse also did, indeed, state deprivations of his State constitutional rights. Bivens undisputedly offers to Meuse redress for constitutional violations under color of federal law, and §1983 undisputedly offers to Meuse redress for constitutional violations under color of state law. Rogers, at 4, citing Bivens and Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 683 (1st Cir. 1999).

Thus, where Meuse did cite and the district court did understand that Meuse did plead the appropriate constitutional amendments on which Bivens relies, Meuse has made out a legitimate claim against the FBI. *BUT*, as Meuse points out, the motions being decided are *not* those of the FBI agents or the U.S. government but of FOX and STP.

**11. Where Meuse's constitutional claims are established, the state law claims are within the pendent jurisdiction of this court.**

"The state law claims would be within the pendent jurisdiction of the federal court if the constitutional claims were established." Dobyns v. E-Systems Inc., 667 F.2d 1219, 1221 n. 4 (5th Cir. 1982), citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

WHEREFORE, Plaintiff Brian Meuse prays this Court allow this motion.

20

Respectfully submitted,
BRIAN J. MEUSE,
By his attorney,

/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>

19 June 2004                    Barbara C. Johnson, Esq., BBO #549972
                                6 Appletree Lane
                                Andover, MA 01810-4102
                                978-474-0833

## **AFFIDAVIT**

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief.
Sworn under the pains and penalties of perjury.

/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>

19 June 2004                    Barbara C. Johnson, Esq., BBO #549972