UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff
v.
**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly**, in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

### MEUSE'S REPLY TO OPPOSITION OF
### STF PRODUCTIONS, INC. AND FOX TELEVISION STATIONS, INC.,
### TO MEUSE'S MOTION TO RECONSIDER ORDER OF DISMISSAL OF BIVENS CLAIMS

Now comes Plaintiff Brian J. Meuse ["Meuse"] and replies to the opposition by Defendants STF Productions, Inc. ["STF/AMW" or "STF"] and Fox Television Stations, Inc. ["FOX"]\[1]/ to Meuse's motion to reconsider the dismissal of the federal claims against STF and FOX.

As grounds for this opposition, Meuse states STF and FOX's factual iterations are not only flawed, they are outright untrue, and the documents in the exhibit attached to their opposition – documents never seen before this week – make a "relook" at the issue mandatory.

### THE MIX OF THE OLD AND BRAND NEW FACTS

Meuse reiterates, of course, the facts recited in his Amended Complaint and its attached

---

[1] In Meuse's Complaint, he used the following shorthand expressions: "FOXNews" or "FOX25News" or "FOX." Counsel for Defendant Fox Television Stations, Inc., prefers the expression "FOX TV." Meuse uses "FOX TV" and "FOX" in this document. Similarly, Meuse used "STF" and "STF/AMW" for STF Productions, Inc.

1

exhibits. From them, it can be inferred:

- that not only were STF and FOX both "state" and "federal" actors [*see* discussion in the margin and in Meuse's motion to reconsider],\[2]/ but so is NCMEC [*see* discussion *infra*, and NCMEC's newly filed motion to dismiss the federal claims against it],

- that a profitable business relationship existed between the FBI agents, FOX, STF/AMW, NCMEC, and Wal-Mart, and

- that conspiring with them in an elaborate scheme were the other defendants.

We must keep in mind also:

**(1)** that in the first few counts, Meuse claimed

    **(a)** that the defendants were acting under the color of law – which did not distinguish between federal and state law – and set forth claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and the United States Constitution and

    **(b)** that Defendants worked a denial of Meuse's rights, privileges or immunities secured by the United States Constitution or by Federal law, and

**(2)** that it is the court which decided

    **(a)** that Meuse was setting forth *Bivens* claims,

    **(b)** that private entities FOX and STF – and now NCMEC wants to be included in the court's decision -- could not be held liable because

        **(i)** "a Bivens claim was not available against a private entity even if that entity is acting under color of federal law" and

        **(ii)** "Section 1983 applies only to persons acting 'under color of state law.'"

Significantly, only on Thursday, 1 July 2004, while writing this opposition, Meuse's counsel received by hand-delivery documents that the court did not have when the decision on FOX's and STF's motions to dismiss issued and that Meuse did not have when he wrote his motion to reconsider. The documents comprised Defs. Exhibit A, attached to STF's opposition, in

---

[2] "Because the doctrine encompassing both concepts – [federal and state governmental action] -- is commonly known as "state action," we use this term to refer to federal government action of significance in establishing the governmental involvement requisite for the assertion of constitutional rights." Dobyns v. E-Systems, Inc., 667 F. 2d 1219, 1220 n. 1 (5th Cir.1982). Hammons v. Norfolk Southern Corp., 156 F.3d 701, 704 (6th Cir. 1998) (same).

which Fox joined, to Meuse's motion to reconsider. That exhibit contained:

- **(a)** a Criminal Complaint purported to have been presented to a Magistrate Judge in this court on 6 November 2000. The Complaint averred that Defendant FBI Special Agent Charles P. Kelly sought a federal warrant based on ***state*** law (M.G.L. c. 265, §26A) and his authority to seek it was in ***federal*** law (18 U.S.C. §1073);
- **(b)** an affidavit by Agent Kelly and dated 6 November 2000; and
- **(c)** an **UN**signed Warrant for Arrest, allegedly dated on 6 November 2000 and bearing the untrue statement that Meuse had been charged with "Unlawful Flight to Avoid Prosecution" in violation of 18 U.S.C. §1073.

STF and FOX used these documents as a basis for faulting Meuse's counsel [STF Mem. in Opp. to Reconsider, at 3] for asserting **(1)** that there was no federal warrant, **(2)** that the FBI must have been acting under color of state law, and **(3)** that STF and FOX, by allegedly assisting the FBI, must also have been acting under color of state law.

STF and FOX further faulted Meuse's counsel not doing the "barest factual research" so as to learn of the existence of the warrant [STF Mem. in Opp. to Reconsider, at 4]. ***That*** statement expanded the scope of the war between the parties. It is patently untrue. With the "barest factual research" this evening, Meuse's counsel obtained almost definitive proof of the following from the Docket Sheet for the FBI's case [Plaintiff's Exhibit A, attached hereto and Table 1, *infra*]:

- **(a)** Agent Kelly ***might*** have filed the Criminal Complaint as to Meuse on 10/8/2000, but it was not entered into the docket sheet
   - until **5½ months after** the alleged filing,
   - until **thirty-three (33) days after** 23 March 2001, the day Meuse was captured in Ada, Oklahoma [Am.Compl. ¶384 and Exh. FFF],
   - until **twenty (20) days after** 5 April 2001, the day Meuse was arraigned in Haverhill, Massachusetts [Am.Compl. ¶267],
      - on the day Meuse was arraigned, Haverhill District Court Judge Herlihy wanted to see the FBI warrant and requested Essex County Assistant District Attorney John DePaolo to produce it [Am.Complaint, ¶267],
   - until **the same day the Criminal Complaint was dismissed 3½ weeks before Meuse was tried in Haverhill District Court**.
- **(b)** ADA DePaolo never produced the federal warrant;

3

| TABLE 1. Excerpt from Plaintiff's Exh. A attached to this Opposition | | |
|---|---|---|
| **Filing Date** | **#** | **Docket Text** |
| 10/08/2000 | 1 | COMPLAINT as to Brian Meuse , filed. (fmr) (Entered: 04/25/2001) |
| 04/24/2001 | 2 | MOTION by USA , as to Brian Meuse to dismiss , filed. (fmr) (Entered: 04/25/2001) |
| 04/24/2001 | | Mag. Judge Marianne B. Bowler . ENDORSED ORDER as to Brian Meuse : granting [2-1] motion to dismiss as to Brian Meuse (1). (fmr) (Entered: 04/25/2001) |
| 04/24/2001 | | DISMISSAL of Count(s) on Government Motion as to Brian Meuse . Complaint dismissed. (fmr) (Entered: 04/25/2001) |
| 04/25/2001 | | Case closed as to all defendants, as to Brian Meuse party Brian Meuse (fmr) (Entered: 04/25/2001) |

**(c)**  the successor ADA, John Apruzzese, never produced the federal warrant;

**(d)**  the Haverhill police detective and captain admitted never having seen the alleged federal warrant [Am.Complaint, ¶¶219, 223-224];

**(e)**  the USDC docket does not memorialize the filing of the purported affidavit of Agent Kelly on any date whatsoever [*compare* paper 2 in Exh. B, the *Alves* docket sheet];

**(f)**  the docket does not memorialize any hearing before the court on the complaint;

**(g)**  the docket does not memorialize the issuance of a warrant on any date whatsoever [*compare* with entry on 5/23/00 in Exh. B, showing issuance of *Alves* warrant];

**(h)**  the warrant appearing in STF's exhibit is **un**signed by any judicial officer;

**(i)**  Defendant STF's Exhibit A does not include any Return of a received and executed arrest warrant [*compare* paper 4 in Exh. B, the Return in *Alves* docket sheet]; and

**(j)**  the criminal complaint and affidavit prepared by Agent Kelly falsely avers that Meuse kidnapped his child from Massachusetts.

Believing that some retrofitting occurred, because court clerks generally do not wait a half-year before entering a complaint into a Docket Report, Meuse's counsel snooped a bit further and learned that the docket number assigned to the alleged federal case against Meuse is – assuming docket numbers are assigned consecutively -- out of order.  *See* Table 2, *infra*.

It appears that the FBI's Meuse case was an afterthought – after Haverhill District Court Judge Herlihy wanted to see a copy of the mythical or unseen federal warrant [Am.Complaint, ¶267] – and was slipped into an empty numbered slot between the Ogando and Hamilton cases. *See* Table 2, *infra*.  How it was accomplished, Meuse's counsel dares not speculate.

4

| TABLE 2.  List of Cases:  Dates Files and Dates Entered into Docket ||||
|---|---|---|---|
| 00-MJ-00860 | No case | -- | -- |
| 00-MJ-00861 | No case | -- | -- |
| 00-MJ-00862-MBB | USA v Roldan | Date Filed: 5/16/00 | Date Entered: 5/18/00 |
| 00-MJ-00863-MBB | USA v. Jimenez | Date Filed: 5/17/00 | Date Entered: 5/17/00 |
| 00-MJ-00864 | No case | -- | -- |
| 00-MJ-00865 | No case | -- | -- |
| 00-MJ-00866 | No case | -- | -- |
| 00-MJ-00867 | No case | -- | -- |
| 00-MJ-00868 | No case | -- | -- |
| 00-MJ-00869 | No case | -- | -- |
| 00-MJ-00870 | No case | -- | -- |
| 00-MJ-00871 | No case | -- | -- |
| 00-MJ-00872 | No case | -- | -- |
| 00-MJ-00873 | No case | -- | -- |
| 00-MJ-00874 | USA v. Vasquez | Date Filed: 5/22/00 | Date Entered: 5/23/00 |
| ***00-MJ-00875-MBB*** | ***USA v. Alves*** * | ***Date Filed: 5/23/00*** | ***Date Entered: 5/23/00*** |
| 00-MJ-00876-EFH | USA v. Edwards | Date Filed: 5/23/00 | Date Entered: 5/30/00 |
| 00-MJ-00877 | No case | -- | -- |
| 00-MJ-00878 | No case | -- | -- |
| 00-MJ-00879 | No case | -- | -- |
| 00-MJ-00880 | No case | -- | -- |
| 00-MJ-00881 | No case | -- | -- |
| 00-MJ-00882 | USA v. Ramos | Date Filed: 11/2/00 | Date Entered 11/6/00 |
| 00-MJ-00883 | USA v. Taylor | Date Filed: 11/3/00 | Date Entered 11/3/00 |
| 00-MJ-00884 | USA v. Ogando | Date Filed: 11/3/00 | Date Entered 11/6/00 |
| 00-MJ-00885 | No case | -- | -- |
| 00-MJ-00886 | No case | -- | -- |
| 00-MJ-00887 | No case | -- | -- |
| 00-MJ-00888 | No case | -- | -- |
| ***00-MJ-00889-MBB*** | ***USA v. Meuse*** ** | ***Date Filed: 10/08/00*** | ***Date Entered 4/25/01*** |
| 00-MJ-00890 | No case | -- | -- |
| 00-MJ-00891-MBB | USA v. Hamilton | Date Filed: 11/7/00 | Date Entered 11/8/00 |
| 00-MJ-00892 | No case | -- | -- |
| 00-MJ-00893 | No case | -- | -- |
| 00-MJ-00894 | No case | -- | -- |
| 00-MJ-00895 | No case | -- | -- |
| 00-MJ-00896 | No case | -- | -- |
| 00-MJ-00897 | No case | -- | -- |
| 00-MJ-00898 | No case | -- | -- |

\*   USA v. Alves Docket Sheet, attached as Exhibit B
\*\*  USA v. Meuse Docket Sheet, attached as Exhibit A

    The untimeliness of the entry of the <u>Meuse</u> case into the docket made it ***invisible*** in the clerk's office.  At the time of the Broadcast, the warrant had not issued.  At the time the posters were distributed, the warrant had not issued.  And certainly after Meuse was acquitted of parental

5

kidnapping in May 2002, there was no warrant for his arrest for unlawful flight to avoid prosecution or parental kidnapping. Yet STF/AMW and NCMEC continued to retain on their website posters identifying Meuse as an abductor for two years after he was acquitted.

Exhibit B, containing the docket sheet for the <u>Alves</u> case, shows clearly that an affidavit and the ensuing warrant were filed and entered into the docket on the same day that the Complaint was filed. The <u>Meuse</u> docket sheet shows **no affidavit and no warrant and no return of service**. Therefore it is reasonable to conclude that the affidavit and the **UN**signed warrant appearing in Exhibit A to STF's and FOX's oppositions to Meuse's motion to reconsider are suspect. The question has become, When were those documents created? Are they of recent fabrication, for instance, after service of Complaint and Amended Complaints in this action?

| TABLE 3. **Excerpt from Docket Sheet of USA v. Alves** | | |
|---|---|---|
| 05/23/2000 | 1 | COMPLAINT as to Kendra L. Alves , filed. (mlb) (Entered: 05/23/2000) |
| 05/23/2000 | 2 | AFFIDAVIT of Steven M. Woods, as to Kendra L. Alves , re: [1-1] complaint , filed. (mlb) (Entered: 05/23/2000) |
| 05/23/2000 | | Arrest warrant issued as to Kendra L. Alves . (mlb) (Entered: 05/23/2000) |
| ......... | ... | ............. |
| 05/26/2000 | 4 | Return of service arrest warrant WSO 5/24/00 as to Kendra L. Alves (eaf) (Entered: 05/26/2000) |

Nonetheless, it is reasonable to conclude that the FBI agents were trying to enforce ***state*** law and that when the agents spread the word that there was a federal warrant, there was none, and that even the "barest factual research" would not have uncovered one. Even the court records did not memorialize that there was one.

And as Meuse proved at his criminal trial (*see* discussion at page 5 of Meuse's opposition to FOX's motion to dismiss),

- there was no valid custody order prior to Meuse taking the child [Am.Compl. ¶324 and Exh. CCC, memorandum recording adjudication of this issue by Judge Alan Swan],
- there was no crime charged against Meuse before he left Massachusetts with the

- child,
- there was no crime committed either in Florida or Massachusetts,
- there was one affidavitless warrant not signed by any state judge or clerk-magistrate,
- Meuse was found Not Guilty of the *state* law crime with which he was charged **after** capture,
- Meuse had and has never been charged with a federal crime, including 18 U.S.C. §1073 ("Flight to avoid prosecution or giving testimony"), and
- Meuse had and has never been charged tried for a federal crime, including 18 U.S.C. §1073 ("Flight to avoid prosecution or giving testimony").

It is reasonable to conclude that had Meuse been charged with a federal crime, he would have been tried for it. It is reasonable to conclude that there was never a federal warrant and if Meuse is wrong, there was certainly never a valid one. **That means STF/AMW's and FOX's actions were under the color of state law, not federal law, for there was no federal law under which they were acting.** (The activities of the NCMEC are discussed *infra* and in Meuse's opposition to that entity's motion to dismiss federal claims.)

Facts further supporting Meuse's contrary position demonstrate the several flaws in the court's rationale. The flaws were summarized in the 17 points list that can be seen at pages 2-4 of Meuse's Motion to Reconsider Motions of FOX Television Stations, Inc., and STF Productions, Inc., to Dismiss Complaint.

**ARGUMENTS**

In addition to responding to the two issues raised by STF and FOX, Meuse incorporates by reference as if set forth herein all the arguments presented in his motion to reconsider. Those arguments are the following:

1. Where this court has original jurisdiction under 28 U.S.C. §1331, the federal-question statute, and where federal law forms an "ingredient" of the action, even if nonfederal issues are also involved, federal jurisdiction exists.
2. Where there is absolutely no allegation that Meuse violated any federal law and only averments that Meuse was falsely accused of violating a state statute, Meuse's Complaint was brought under both the color of state law -- not federal statutes -- and the color of the federal constitution.
3. Federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating

> the Fourth and Fifth Amendments.
> 4. The seminal <u>Bivens</u> action applies.
> 5. Meuse's claims fall within the two extensions of <u>Bivens</u> jurisprudence in the 30 years between <u>Bivens</u> and <u>Correctional Services v. Malesko</u>.
> 6. Private status is not a "special factor counseling hesitation" that would preclude a <u>Bivens</u> claim.
> 7. <u>Correctional Services Corp. v. Malesko</u>, a 3-2-4 decision, is not definitive on the issue of whether a <u>Bivens</u> claim is available to a private entity.
> 8. Whether "state action" exists depends on the facts and circumstances of each case.
> 9. Where FOX and STF/AMW were federal actors violating both state and federal constitutions, Meuse can maintain both §1983 and <u>Bivens</u> claims against them.
>    a. A private corporation that engages in federal action is as accountable as a private corporation that engages in state action.
> 10. Where Meuse's constitutional claims are established, the state law claims are within the pendent jurisdiction of this court.

11. **Where NCMEC's statutory obligations reveal a business relationship with the national government and business relationships with STF and FOX, the three entities are both "state" and "federal" actors:**
    (a) **By the United States Code, NCMEC has become a federal actor, and by allowing the Haverhill Police Department personnel to insinuate themselves into NCMEC's business, NCMEC has become also a state actor.**
    (b) **Where STF is a partner of the private non-profit corporation NCMEC in NCMEC's statutory and business obligations, STF has become a state actor along with NCMEC.**
    (c) **Where FOX has also furthered NCMEC's statutory and business interests, FOX, too, has become a state actor along with NCMEC.**
    (d) **Where both STF and FOX allowed the Haverhill Police Department personnel to insinuate themselves into those same statutory obligations and business affairs, both STF and FOX became state actors.**

"The Federal Bureau of Investigation is in the Department of Justice." 28 U.S.C. §531, cited by STF/AMW and FOX on page 3 of their opposition to Meuse's motion to reconsider.

Under the Historical and Revision Notes of that section, it is noted that the Attorney General establish[ed] within the Bureau a Child Abduction and Serial Murder Investigative Resources Center ["CASMIRC"]. Section 531, Notes, subsection (a). Under CASMIRC or the National Center for the Analysis of Violent Crime ["NCAVC"], another subgroup of the Bureau, the FBI "assists Federal, State, and local authorities in matters involving child abductions. . . ." Section 531, Notes, subsection (b). NCAVC, "in coordination with the **National Center for Missing and Exploited Children**" [emphasis supplied] and another office under the Department of Justice

8

["DoJ"], provides "training to Federal, State, and local law enforcement in matters regarding child abductions. . . ." Section 531, Notes, subsection (c)(7).

Under the guidance of the FBI and in consultation with the **NCMEC**, both CASMIRC and NCAVC have developed a specialized course of instruction devoted to training members of CAS-MIRC consistent with the purpose of §531. CASMIRC also works with **NCMEC** and an office of the DoJ in developing a course of instruction for State and local law enforcement personnel to facilitate the dissemination of the most current multidisciplinary expertise in the investigation of child abductions. . . ." Section 531, Notes, subsection (d)(3). **In training state and local law-enforcement entitites, NCMEC is operating within the realm of state law, not federal law . . . or in a realm where there is a confluence of state and federal law.**

> An authorized agency of a State shall maintain close liaison with the National Center on Child Abuse and Neglect, the **National Center for Missing and Exploited Children**, and the National Center for the Prosecution of Child Abuse for the exchange of technical assistance in cases of child abuse.

42 U.S.C. §5119(c). *See also* 42 U.S.C. §5780(3)(C) (same). NCMEC is, in fact, a **hybrid actor**, one acting allegedly consistent with both federal and state law. Given that NCMEC has been responsible for developing the courses and training State and local law-enforcement agencies, it must be explored during discovery as to whether NCMEC, in order to benefit itself financially, intentionally did not make itself accountable to the people.

| TABLE 4.   Excerpt from 42 U.S.C. §5771 (emphasis supplied) [3]/ |
|---|
| (9) [F]or 14 years, the **National Center for Missing and Exploited Children** has – |
|     (A)  served as the national resource center and clearinghouse congressionally mandated under the provisions of this subchapter; and |
|     (B)  worked in **partnership** with the Department of Justice, the Federal Bureau of Investigation, the Department of the Treasury, the Department of State, and many |

---

[3]  The nature of 42 U.S.C. §5771 is extraordinary. It reads like a feature article for a Sunday news magazine or infomercial rather than like an enabling statute. Congress clearly was making excuses for giving preferential treatment to NCMEC, only one of many tens of thousands of nonprofit corporations.

other agencies in the effort to find missing children and prevent child victimization;

(10) Congress has given the **Center**,[4]/ **which is a private nonprofit corporation**,[5]/ access to the National Crime Information Center of the Federal Bureau of Investigation, and the National Law Enforcement Telecommunications System;

(11) since 1987, the **Center** has operated the National Child Pornography Tipline, in conjunction with the United States Customs Service and the United States Postal Inspection Service and, beginning this year, the **Center** established a new CyberTipline on child exploitation, thus becoming "the 911 for the Internet";

(12) in light of statistics that time is of the essence in cases of child abduction, the Director of the Federal Bureau of Investigation in February of 1997 created a new NCIC child abduction ("CA") flag to provide the **Center** immediate notification in the most serious cases, resulting in 642 "CA" notifications to the **Center** and helping the **Center** to have its highest recovery rate in history;

(13) the **Center** has established a national and increasingly worldwide network, linking the **Center** online with each of the missing children clearinghouses operated by the 50 States, the District of Columbia, and Puerto Rico, as well as with Scotland Yard in the United Kingdom, the Royal Canadian Mounted Police, INTERPOL headquarters in Lyon, France, and others, which has enabled the **Center** to transmit images and information regarding missing children to law enforcement across the United States and around the world instantly;

(14) from its inception in 1984 through March 31, 1998, the **Center** has –

    (A) handled 1,203,974 calls through its 24-hour toll-free hotline (1-800-THE-LOST) and currently averages 700 calls per day;

    (B) trained 146,284 law enforcement, criminal and juvenile justice, and healthcare professionals in child sexual exploitation and missing child case detection, identification, investigation, and prevention;

    (C) disseminated 15,491,344 free publications to citizens and professionals; and

    (D) worked with law enforcement on the cases of 59,481 missing children, resulting in the recovery of 40,180 children;

(15) the demand for the services of the **Center** is growing dramatically, as evidenced by the fact that in 1997, the **Center** handled 129,100 calls, an all-time record, and by the fact that its new Internet website www.missingkids.com) receives 1,500,000 "hits" every day, and is linked with hundreds of other websites to provide real-time images of breaking cases of missing children;

(16) in 1997, the **Center** provided policy training to 256 police chiefs and sheriffs from 50 States and Guam at its new Jimmy Ryce Law Enforcement Training **Center**;

(17) the programs of the **Center** have had a remarkable impact, such as in the fight against infant abductions in partnership with the healthcare industry, during which the **Center** has performed 668 onsite hospital walk-throughs and inspections, and trained 45,065 hospital administrators, nurses, and security personnel, and thereby helped to reduce infant abductions in the United

---

[4]    "For the purpose of [Subchapter IV – Missing Children]. . . the term 'Center' means the National Center for Missing and Exploited Children." 42 U.S.C. §5772. Sections 5771—5776a are also in Subchapter IV.

[5]    Unlike Correctional Services, Inc v. Malesko, 543 U.S. 61 (2001), a private for-profit corporation that operates facilities that house federal prisoners and detainees under contract with the Bureau of Prisons (BOP), NCMEC holds itself out to the public as a private nonprofit corporation. Id. at 63. Correctional Services is also an Eighth Amendment case. Meuse is not.

> States by 82 percent;
>
> (18) the **Center** is now playing a significant role in international child abduction cases, serving as a representative of the Department of State at cases under The Hague Convention, and successfully resolving the cases of 343 international child abductions, and providing greater support to parents in the United States;
>
> (19) the **Center is a model of public/private partnership**, raising private sector funds to match congressional appropriations and receiving extensive private in-kind support, including advanced technology provided by the computer industry such as imaging technology used to age the photographs of long-term missing children and to reconstruct facial images of unidentified deceased children;
>
> (20) the **Center** was 1 of only 10 of 300 major national charities given an A+ grade in 1997 by the American Institute of Philanthropy; and
>
> (21) the **Center** has been redesignated as the Nation's missing children clearinghouse and resource center once every 3 years through a competitive selection process conducted by the Office of Juvenile Justice and Delinquency Prevention of the Department of Justice**, and has received grants from that Office** to conduct the crucial purposes of the **Center**.

It is under these statutes that NCMEC partners with STF/AMW and Wal-Mart and works both under federal and state laws.

And under 42 U.S.C. §5773(b)(2), **NCMEC is given an annual grant of up to $10,000,000 from the federal government** to carry out duties set out in §5773(1)(A)-(G). It is also believed that the Commonwealth, the City of Haverhill, and/or its police department have received a federal grant through the U.S. Attorney General for getting involved in the alleged abduction of the Meuse child. *See* 28 U.S.C. §531, FBI Funding Authorizations, (a)(1)(E) and (b)(1).\[6]/

In sum, where FOX and STF/AMW are partners of NCMEC, it is reasonable to infer, short of discovery, that the FBI recruited the assistance of NCMEC's partners FOX and STF/AMW to capture Meuse – as Meuse has continuously contended. It is also reasonable to infer that FOX and STF/AMW were not only recruited or deputized by the FBI agents,\[7]/ as Meuse alleged in his motion to reconsider, but that the FBI benefitted from the advantageous business profits of both

---

[6] Individuals employed by the State or local law enforcement agency working with the Bureau remains as an employee of the respective agency for all purposes "on a nonreimbursable basis, except if appropriate to reimburse State and local law enforcement for overtime costs for an individual appointed to work with the resource team." Section 531, Notes, subsection (d)(2).

STF/AMW and FOX TV.

Whichever inference is preferred by this court does not change the colors of law under which FOX and STF/AMW were acting: clearly they were acting under the color of **both** federal and state laws when they conspired with the FBI agents and NCMEC and Wal-Mart to capture Meuse. As the affidavit produced by STF and attached to its opposition to Meuse's motion to reconsider, it was Assistant District Attorney Eileen Foreman of the Essex County (Massachusetts) D.A.'s Office who requested the FBI "to assist in the location and apprehension of Brian Meuse" [Defs. Exhibit A, Affidavit of Charles P. Kelly, ¶¶1-2]. At that point the FBI and its "deputies" began, at the very least, acting under the color of Massachusetts law as well as under federal law.

**12.    Where there is within *Correctional Services, Inc.*, an exception to the "preclusionary" rule in which the facts in Meuse fit, Meuse's federal constitutional claims are established. Meuse's state law claims are within the pendent jurisdiction of this court.**

If a plaintiff has a nonexistent cause of action or has no alternative remedy for a constitutional wrong, a Bivens claim is not to be dismissed. Correctional Services v. Malesko, 543 U.S. 61, 61-62 (2001). "Whether it makes sense to impose asymmetrical liability costs on private prison facilities alone is a question for Congress to decide. " Id., at 62. Thus the question as to whether Meuse can sue FOX and STF in their roles as federal actors remains open.\[8]/

Where the Court in Correctional Services did leave this exception to the "preclusionary" rule, Meuse can sustain his federal claims against the private corporations.

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.

Marbury v. Madison, 1 Cranch 137, 163, 2 L.Ed. 60 (1803).

---

[7] At the very least, the deal was that the FBI would provide FOX and STF/AMW with "sexy" source material for their television shows, namely, America's Most Wanted and Unsolved Mysteries, and for the AMW Wanted poster website.

[8] Meuse certainly can in their roles as state actors and in their roles as hybrid actors, i.e., when they act simultaneously as both federal and state actors. At no time, of course, were FOX and STF/AMW acting as reporters. The Broadcast was a feature story, not a news story. At all times FOX and STF/AMW benefited financially from their association with NCMEC -- a private entity acting as an arm of the Department of Justice -- and the FBI.

> Allowing a Bivens claim against a private corporation does not implicate "federal fiscal policy," where, as here, the federal purse is not involved. See generally United States v. Standard Oil Co. of Cal., 332 U.S. 301, 311 (1947).

Hammons, 156 F.3d 701, 706.

Defendants FOX and STF/AMW argue that Hammons was abrogated by Correctional Services. This is true but not on Hammons' dicta regarding "federal fiscal policy." For instance, citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922,(1982) and Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), the Court in Hammons was "primarily concerned with remedying constitutional deprivations . . . [and found] no valid reason to treat corporations that engage in federal action differently than corporations engaging in state action, particularly where, . . . , the litigation involves a matter of corporate policy." Hammons, 156 F.3d at 708. This latter issue is that on which Correctional Services abrogated Hammons.\[9]/,\[10]/

The Court in Correctional Services v. Malesko also left in place the diverse tests, of which Meuse passes several, as well as the "special factors counseling hesitation" test, and there is no such special factor existing in this case. These tests are grounded on facts. When facts are in dis-

---

**9**   Meuse contends that there is, of course, no rational excuse for a "private corporation that engages in federal action" not to be as accountable as a private corporation that engages in state action."

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. [Citation omitted.] Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor know or reasonably should know would cause others to inflict the constitutional injury.

Springer v. Seaman, 821 F.2d 871, 879 (1st Cir. 1987). A corporation is a person for purposes of §1983. See Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970). In Massachusetts, a corporation is a person for construing the general laws. *See also* note 9, *infra*.

**10**   By definition in G.L. c. 4, § 7, twenty-third, the word "person" for purposes of construing the general laws "include[s] corporations, societies, associations and partnerships" and, therefore, does not describe the Commonwealth or its subdivisions. Howard v. Chicopee, 299 Mass. 115, 121 (1937). Hansen v. Commonwealth, 344 Mass. 214, 219 (1962), and cases cited.

pute, discovery, at the very least, is warranted.\[11]/

The Court in Correctional Services summarized its rationale. It determined the following:

- that Malesko is not a plaintiff in search of a remedy as in Bivens and Davis [id. at 74],
- that Malesko does not seek a cause of action against an individual officer (as in Carlson [id.],
- that Malesko "instead seeks a marked extension of *Bivens*, to contexts that would not advance *Bivens*' core purpose of deterring individual officers from engaging in unconstitutional wrongdoing" [id.], and
- that "caution toward extending *Bivens* remedies into any new context . . . forecloses such an extension here." Id.

In the totality of the circumstances determined above, the Court reversed the judgment of the Second Circuit Court of Appeals in Correctional Services.

In contrast, this court may summarize Meuse as follows:

- that unlike Malesko, Meuse is a plaintiff in search of a remedy as in Bivens and Davis [id. at 74],
- that Meuse does not seek a cause of action against an individual officer (as in Carlson [id.], for unlike Malesko, Meuse does not know of an individual officer or staffer in either FOX or STF/AMW – other than, possibly, the unidentified policy-makers – who was responsible for the wrong done him,
- that unlike Malesko, Meuse does ***not*** "seek[ ] a marked extension of *Bivens*, to contexts that would not advance *Bivens*' core purpose of deterring individual officers from engaging in unconstitutional wrongdoing" [id.],
- that unlike Malesko, Meuse has no alternative remedy,
- that unlike Malesko, Meuse's decision to sue FOX and STF/AMW was not a strategic choice,
- that unlike Malesko, Meuse did not sue under the Eighth Amendment, making much of the legal discussion in Correctional Services irrelevant to the totality of circumstances in the instant case.

---

Kilbane v. Secretary of Human Services, 14 Mass.App.Ct. 286, 287 (1982).

[11]   There is a set of unique facts in the instant case. FOX and STF/AMW appear to have a symbiotic relationship with the FBI. They have as yet neither admitted nor denied that relationship. If proven to be true, FOX and AMW are federal agents or actors. Yet, the primary wrong done Meuse by them is defamation, which is a common-law tort. Other wrongs were indirectly committed – to wit, the false arrest and imprisonment, the assaults, the batteries. And, of course, the violations of Meuse's federal constitutional rights – his liberty interest, his right not to be falsely charged with criminal wrongdoing. The full scope of FOX TV's (FOX25News) and STF's (AMW) involvement and motives has not yet been fully explored, . . . and cannot be without discovery.

In the totality of the circumstances to be determined above, this motion court must reverse the judgment of dismissal of the claims brought against STF/AMW and FOX TV under the federal constitution and 42 U.S.C. §1983.

**13.　Where there is a threat of injustice, Meuse's *Bivens* claims may not be defeated and hence dismissed.**

Stoutt v. Banco Popular De Puerto Rico, 320 F.3d 26, 2003.C01.0000048 <http://www.ver-suslaw.com> (1st Cir. 02/10/2003), and the instant case are distinguishable.  In Stoutt, Stoutt and his corporate co-plaintiffs sued Banco Popular in the federal court **(1)** for local-law torts flowing from Banco Popular's report to and subsequent contact with the FBI and **(2)** for false arrest in a *Bivens* claim under the Fourth Amendment.  After discovery, the district court granted the Bank a summary judgment, holding that the Bank was entitled to absolute immunity under the safe harbor provision of 31 U.S.C. § 5318(g)(3).  Stoutt, 2003.C01.0000048 at **¶23** <http://www.versus-law.com> (internal cite omitted).

In contrast, in the instant case, there is **no** statutory immunity.

The appellate panel in Stoutt affirmed.  Its rationale was as follows:

- It had not been decided whether *Bivens* claims are excluded from statutory immunity provisions [id. at 33];
- in Stoutt, there was no *Bivens* violation by the bank [id.];
- in Stoutt, there was no "threat of injustice" [id.];
- "under the safe harbor provision, careless or malicious reporting is possible" [id.];
- the safe harbor provision, "whether read broadly or narrowly, means that some 'wrongs' will go unredressed";
- "'rights' are regularly limited or defeated by privileges, immunities and other defenses of many kinds" [id. at 33, citing Cleavinger, 474 U.S. at 199-200];
- "[i]n truth, all 'rights' are limited by countervailing concerns and interests" [id. at 33];
- "[t]he distinction that calls some of these limitations ones on "remedy" is largely a verbal convenience" [id.];
- "[h]appily in this [Stoutt's] case, there is no threat of injustice."

In contrast, in the instant case,

- it still has not been decided whether *Bivens* claims are excluded from statutory immunity provisions [id. at 33];
- in Meuse, there **was** a *Bivens* violation by FOX and/or STF/AMW and/or NCMEC and/or others;
- in Meuse, there **is** a "threat of injustice";
- in Meuse, there is **no** safe harbor provision, making "careless or malicious reporting" in Meuse either tortious or a violation of civil rights, depending on the reporting [id.];
- there is no statutory safe harbor provision to read "broadly or narrowly";
- the common-law fair report privilege does not apply, for there was no "fair reporting" [*see* Meuse's opposition to FOX's and STF's motions to dismiss the federal claims];
- "'rights' are regularly limited or defeated by privileges, immunities and other defenses of many kinds" [id. at 33, citing Cleavinger, 474 U.S. at 199-200];
- "[i]n truth, all 'rights' are limited by countervailing concerns and interests" [id. at 33];
- "[t]he distinction that calls some of these limitations ones on "remedy" is largely a verbal convenience" [id.];
- unhappily in this [Meuse's] case, there **is** a threat of injustice.

In the totality of the circumstances here, where there is a threat of injustice, Meuse's *Bivens* claims may not be defeated and hence dismissed.

14. **Where Meuse's constitutional claims are established, his state law claims are within the pendent jurisdiction of this court.**

"The state law claims would be within the pendent jurisdiction of the federal court if the constitutional claims were established." Dobyns v. E-Systems Inc., 667 F.2d 1219, 1221 n. 4 (5th Cir. 1982), citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

WHEREFORE, Plaintiff Brian Meuse prays this Court allow his motion to reconsider the dismissal of his federal claims (and the remand of his state claims) against FOX and STF.

<div style="text-align:right">
Respectfully submitted,<br>
BRIAN J. MEUSE,<br>
By his attorney,<br>
<br>
/s/ Barbara C. Johnson &lt;barbaracjohnson@worldnet.att.net&gt;<br>
Barbara C. Johnson, Esq., BBO #549972<br>
6 Appletree Lane
</div>

5 July 2004

<div style="text-align: center;">
Andover, MA 01810-4102
978-474-0833
</div>

## AFFIDAVIT

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief. Sworn under the pains and penalties of perjury.

5 July 2004

/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>
Barbara C. Johnson, Esq., BBO #549972