UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly**, in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

### MEUSE'S OPPOSITION TO
### NATIONAL CENTER FOR MISSING AND EXPLOITED CHLDREN'S
### MOTION TO DISMISS PLAINTIFF'S FEDERAL CLAIMS

Now comes Plaintiff Brian J. Meuse ["Meuse"] and opposes NATIONAL CENTER FOR MISSING AND EXPLOITED CHLDREN'S MOTION TO DISMISS PLAINTIFF'S FEDERAL CLAIMS.

As grounds for this opposition, Meuse reiterates and thus incorporates by reference as if set forth herein the legal arguments he set forth in the following five (5) documents:

1. Meuse's Opposition to National Center for Missing and Exploited Children's Motion Pursuant to Rule 8 and Rule 12(F) to Strike Plaintiff's Complaint, with Memorandum in Support of Opposition

    a. The factual arguments given by NCMEC in its motion to dismiss are essentially identical to those it gave in its motion to strike, which has already been adjudicated in Meuse's favor.

2. Motion to Reconsider (with Supporting Memorandum and Affidavit) Motions of Fox Television Stations, Inc., and STF Productions, Inc., to Dismiss Complaint

    a. NCMEC's legal arguments on page 6 are those which the court wrote in its memorandum and order of 9 June 2004. Therefore Meuse's arguments in

1

>   his motion to reconsider are exactly on the points raised by NCMEC in its new motion to dismiss.
>
>   b. Meuse adds more legal argument, *infra*, in this opposition.
>
> 3. Meuse's Reply to Opposition of STF Productions, Inc., and Fox Television Stations, Inc., to Meuse's Motion to Reconsider Order of Dismissal of *Bivens* Claims
>
> 4. Opposition to Motion of Fox Television Stations, Inc., to Dismiss Complaint
>
> 5. Opposition to Motion of STF Productions, Inc., to Dismiss Complaint

## THE MIX OF THE OLD AND BRAND NEW FACTS

Meuse incorporates herein by reference and reiterates, of course, the facts recited in his Amended Complaint and its attached exhibits.

Facts established by having been included in the United States Code or adjudicated at an earlier time, and entitled to judicial notice, include the following:

> **(1)** NCMEC is identified in 42 U.S.C. §5771(10) as being a private, nonprofit corporation;\\**1**/
>
> **(2)** NCMEC is **_not_** enabled by 28 U.S.C. §531 as STF and FOX contended, for §531 is a statute that in one sentence clarifies that the FBI is in the Department of Justice, not a statute enabling NCMEC;
>
> **(3)** NCMEC is **_not_** enabled by 42 U.S.C. §5771 as STF and FOX contended, for §5771 is a statute setting forth Congress's **_findings_** as to NCMEC's performance history;
>
> **(4)** 42 U.S.C. §5775 is the statute authorizing the **_funding_** of NCMEC;
>
> **(5)** the Administrator of the Office of Juvenile Justice and Delinquency Prevention is statutorily obligated to make a grant to NCMEC annually, 42 U.S.C. §5773(2)(b)(1);
>
> **(6)** under 42 U.S.C. §5773(b)(2), the Administrator is authorized to give NCMEC is given an annual grant of up to $10,000,000 to carry out duties set out in §5773(1)(A)-(G);

---

[1] "NCMEC is exempt from federal taxes under section 501(c)(3) of the Internal Revenue Code and has received a ruling that it is a publicly supported organization as described in sections 509(a)(1) and 170(b)(1)(A)(vi) of the Internal Revenue Code. All donations are tax-deductible to the extent allowed by law." Form 990. NCMEC website.

**(7)**   there is no federal or state statute setting out any statutory duties of NCMEC;

**(8)**   there is no federal or state statute enabling NCMEC;

**(9)**   there is no federal or state statute regulating NCMEC;

**(10)**  NCMEC is organized under state law in six states: California, Florida, Missouri, New York, South Carolina, and Virginia;

**(11)**  NCMEC's relationship to certain departments and agencies of the federal government is a "public/private partnership." 42 U.S.C. §5771(19).

**(12)**  NCMEC's partnership is "with the Department of Justice, the Federal Bureau of Investigation, the Department of the Treasury, the Department of State, and many other agencies in the effort to find missing children and prevent child victimization." §5771(9)(B);

**(13)**  a private charity is neither a charity nor a charitable trust but a private trust [Salisbury Estate v. Department of Taxation, 101 N.E.2d 304 (Ohio App. 1951)];

**(14)**  "The Internal Revenue Service is a proud partner with the National Center for Missing and Exploited Children." Description of Publication 1212 at the URL http://www.irs.gov/publications/p1212/ar01.html.

To be inferred from these facts are the following conclusions:

- that a profitable business relationship exists between the United States Government and NCMEC to the tune of up to $10 million annually 42 U.S.C. §5773(1)(A)-(G).

- that a profitable business relationship exists between the FBI agents, FOX, STF/AMW, NCMEC, and Wal-Mart, and

- that conspiring with them in an elaborate scheme were the other defendants.

Thus, NCMEC is a "state actor" and not a "federal actor" [*see* discussion *infra*].\[2]/\[3]/ The court must keep in mind also

**(1)** that in the first few counts, Meuse claimed

   **(a)**   that the defendants were acting under the "color of law" – by which phrase he intentionally did not distinguish between federal and state law – and set forth

---

[2]  "Because the doctrine encompassing both concepts – [federal and state governmental action] -- is commonly known as "state action," we use this term to refer to federal government action of significance in establishing the governmental involvement requisite for the assertion of constitutional rights." Dobyns v. E-Systems, Inc., 667 F. 2d 1219, 1220 n. 1 (5th Cir.1982). Hammons v. Norfolk Southern Corp., 156 F.3d 701, 704 (6th Cir. 1998) (same).

[3]  **Meuse hereby amends his assertion in his reply brief to STF and FOX's opposition to his motion to reconsider to read that STF, FOX, Wal-Mart, and NCMEC are state actors, not federal actors. The reasons are set forth in this brief,** *passim.*

claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 and the United States Constitution and

**(b)** that Defendants worked a denial of Meuse's rights, privileges or immunities secured by the United States Constitution or by Federal law, and

**(2)** that it is the court which decided

**(a)** that Meuse was setting forth *Bivens* claims,

**(b)** that NCMEC now wants to be included in the court's decision of June 9th, contending that it may not be held liable because

**(i)** "a Bivens claim is not available against a private entity even if that entity is acting under color of federal law" and

**(ii)** "Section 1983 applies only to persons acting 'under color of state law.'"

**It Is Error to Say: So Goes the FBI, So Goes the NCMEC**

All the corporate defendants are private parties. The FBI agents are government investigators. Where the federal government insinuated itself, at the request of state entities\[4]/ as well as the private, natural defendants\[5]/ -- all activated not because of any federal law but because of an alleged violation of a state criminal statute, M.G.L. c. 265 §26A -- the private natural and corporate parties have metamorphosed into state actors.

> Indeed, . . . there is case law to the effect that people who are solely complainants to, or witnesses for, the police in connection with a prosecution are not deemed to be state actors as a result. See, e.g., Grow v. Fisher, 523 F.2d 875, 879 (7th Cir., 1975). **That having been said, however, there is also case law supporting the proposition that to act under color of state law for §1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see "under color" of law for purposes of §1983 actions.** Adickes v. S. H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 LEd.2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1966).

Dennis v. Sparks, 449 U.S. 24, 27 (1980) (footnote omitted) (emphasis supplied). The First Circuit has reiterated the concept:

---

[4] ADA Eileen Foreman of the Essex County District Attorney's Office and Defendant Haverhill Police Detective Daniel Moynihan.

[5] Susan Pane and Rosalyn Stults.

> A private party's conduct is attributable to the state if the state "has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." <u>Barrios-Velazquez v. Asociacion De Empleados Del Estado Libre Asociado</u>, 84 F.3d 487, 494 (1st Cir.l996) (citation and internal quotation marks omitted; alteration in the original).

<u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 10 (1st Cir., 1998).

<u>Gouin v. Gouin et al</u> (Gouin I), #01-CV-10890, Paper 46, slip op. at 37-38 (Collings, R.B., MJ).

If the law alleged to have been violated had been a federal statute, Meuse would be more comfortable in conceding that the private corporations metamorphosed into federal actors, but there was no federal law violated. So it would be tragic were Meuse to concede that which is simply not so.

Meuse, instead, contends:

**(1)** that the FBI agents did, indeed,\[6]/ coordinate activities of all the defendants, natural and unnatural,

**(2)** that all the defendants, including the corporate defendants and the FBI agents, were acting under state law, and

**(3)** that **all** the defendants violated Meuse's state and federal constitutional rights, iterated quite thoroughly in his other pleadings.

## <u>No Defendant Has Pled or Defined the Role of the FBI's Agents</u>

Further, as described in excruciating, if not exquisite, detail in his Reply to STF's opposition, in which FOX joined, to Meuse's motion to reconsider, the FBI *might* be enabled to assist state and local-law enforcement departments and agencies, but the law under which the FBI was assisting the Haverhill Police Department to enforce was a state law, to wit, M.G.L. c. 265, §26A. Emphatically, Meuse contends, given the evidence from the docket sheets that the ECF/Pacer system maintains, the FBI agents were absolutely not attempting to enforce 18 U.S.C. §1073, which appears on the docket sheet for <u>USA v. Meuse</u>, No. 1:00-mj-00889-MBB. <u>Meuse's Reply Brief to Opposition to Motion to Reconsider, Exh. A</u>].

---

[6] Meuse averred in ¶¶268-294 of the Complaint and Amended Complaints, as well as in ¶419, the paragraph which NCMEC acknowledged on page 5 of its motion, that the FBI played a role as coordinator. Also, in ¶¶308 *et seq*, Meuse detailed some of the FBI agents' activities and communications with the other defendants.

Given **(1)** the failure of the FBI to file the affidavit prepared allegedly on 6 November 2000, **(2)** the failure of the FBI to obtain a signed warrant, and **(3)** the failure of the government ever to charge Meuse with a federal crime, is proof that the FBI had – in the vernacular – "nothing to go on," so they dismissed the case against Meuse. They did not even wait until Meuse was tried for parental kidnapping in state court. They dismissed the criminal complaint in United States District Court in Boston shortly after the state-court judge wanted to see the federal warrant and the FBI could not produce one to the Assistant District Attorneys working the case for the Essex County DA.

<u>NOTE</u>
The FBI could not produce a federal warrant.
Despite the date on the federal Criminal Complaint being 10/8/00,
it is unlikely it was filed on that date
**because 10/8/00 was a Sunday,
because the child was not "missing" until after that date, and
because of many other reasons that would be untimely to be mentioned here.**

Thus it is reasonable to conclude that having no facts warranting that a criminal charge be brought against Meuse in a federal court, and having no federal law with which to charge Meuse, the FBI agents were clearly, merely assisting Defendants Detective Moynihan and Captain Thompson in trying to catch Meuse so as to try him for the bogus charge of parental kidnapping under a state statute, namely, M.G.L. c. 265, §26A.

As stated in Meuse's Reply Brief to STF's and FOX's opposition to Meuse's motion to reconsider, when the agents spread the word that there was a federal warrant, there was none, and that even the "barest factual research" would not have uncovered one. Even the court records did not memorialize that there was one.

**ARGUMENTS IN ADDITION TO THOSE INCORPORATED HEREIN BY REFERENCE**

1. **NCMEC was continually in contact with the Defendant Detective Moynihan of the Haverhill Police Department.**

When Meuse wrote his Complaint, he walked the fence between Rules 8 and 9(b) of the

6

Federal Rules of Civil Procedure. Nevertheless, three defendants -- Susan Pane, Rosalyn Stults, and NCMEC-- complained that Meuse's Complaint was too lengthy and moved to strike the Complaint on those grounds – amongst others.

"[L]ooking toward Rule 9(b) and §1983 requirements," he wrote in his Opposition to NCMEC's Motion to Strike Complaint, "Meuse chose to meet the notice requirement of the Rules by landing on the side of detail rather than on that of vagueness. On either side, all pleadings must be 'so construed as to do substantial justice.' Fed.R.Civ.P. 8(f)." Id. at 2.

Ultimately, the First Circuit Court of Appeals, in Educadores Puertorriqueños en Acción v. Hernández, 2004 WL 1045546, slip op. 1, No. 03-1588 (1st Cir. (Puerto Rico) May 10, 2004), retreated from the "heightened pleading standard in civil rights actions."

But, ironically, despite Educadores and notwithstanding NCMEC's recognition of why it was being sued by Meuse, NCMEC now complains in its latest motion that Meuse did not plead enough facts concerning NCMEC. That Meuse had more evidence than just the posters [see Complaint Exhibits, FF, GG, EEE, HHH] of NCMEC's involvement with the Haverhill police is indisputable: On 27 June 2004, as part of his voluntary production of documents, Meuse produced to all defense counsel a minimum of a dozen cover letters from NCMEC's Ron Jones, Case Manager, to Detective Moynihan. It was only because of the length of the Complaint and the 60 exhibits attached to it, that Meuse did not also attach the letters produced voluntarily. They were simply more evidence of the involvement about which Meuse complained in general terms, acceptable under the rule of notice pleading.

2. **NCMEC, an alleged private nonprofit corporation, was under instruction by diverse offices and bureaus of the United States Department of Justice to insinuate itself into the state and local law-enforcement agencies.**

"The Federal Bureau of Investigation is in the Department of Justice." 28 U.S.C. §531. The primary function of the FBI is to investigate, as its name implies.

7

Under the Historical and Revision Notes of that section, it is noted that the Attorney General establish[ed] within the Bureau a Child Abduction and Serial Murder Investigative Resources Center ["CASMIRC"]. Section 531, Notes, subsection (a). Under CASMIRC or the National Center for the Analysis of Violent Crime ["NCAVC"], another subgroup of the Bureau, the FBI "assists Federal, State, and local authorities in matters involving child abductions. . . ." Section 531, Notes, subsection (b). NCAVC, "in coordination with the **National Center for Missing and Exploited Children**" [emphasis supplied] and another office under the Department of Justice ["DoJ"], provides "training to Federal, State, and local law enforcement in matters regarding child abductions. . . ." Section 531, Notes, subsection (c)(7).

Under the guidance of the FBI and in consultation with the **NCMEC**, both CASMIRC and NCAVC have developed a specialized course of instruction devoted to training members of CASMIRC consistent with the purpose of §531. CASMIRC also works with **NCMEC** and an office of the DoJ in developing a course of instruction for State and local law enforcement personnel to facilitate the dissemination of the most current multidisciplinary expertise in the investigation of child abductions. . . ." Section 531, Notes, subsection (d)(3). **In training state and local law-enforcement entities, NCMEC is operating within the realm of state law, not federal law . . . or in a realm where there is a confluence of state and federal law.**

> An authorized agency of a State shall maintain close liaison with the National Center on Child Abuse and Neglect, the **National Center for Missing and Exploited Children**, and the National Center for the Prosecution of Child Abuse for the exchange of technical assistance in cases of child abuse.

42 U.S.C. §5119(c). *See also* 42 U.S.C. §5780(3)(C) (same).

NCMEC is, <u>**at most**</u>, a **hybrid actor**, one acting allegedly consistent with both federal and state law. Given that NCMEC has been responsible for developing the courses and training State and local law-enforcement agencies, it must be explored during discovery as to whether NCMEC, in order to benefit itself financially, intentionally did not make itself accountable to the people.

8

The Massachusetts Supreme Judicial Court has weighed in on the subject as what constitutes "state action" . . . and it used U.S. Supreme Court cases to do it. From the discussion, it used the phrase "state action" to mean "state action" and "federal action." <u>Phillips v. Youth Development Program, Inc.</u>, 390 Mass. 652, 654-655 (1983).

> . . . If a nominally private entity is performing a function that is "traditionally the exclusive prerogative of the State," then all the acts of that entity are State action. <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 353 (1974). See <u>Blum v. Yaretsky</u>, 457 U.S. [991], 1011 [(1982)]; <u>Rendell-Baker v. Kohn</u>, 457 U.S. [830], 842 [(1982)].[7]/ The evidence would not support a conclusion that YDP was performing a traditional, exclusive function of the Commonwealth. The Supreme Court has taken a narrow view of what functions are traditionally reserved exclusively to the State. (FN2) YDP did not displace the role of the Juvenile Court probation department. Rather, it engaged in innovative counseling, recreational and educational programs not normally associated with traditional probation.
>
> [FN2] Activities said to have this status are running a company town (<u>Marsh v. Alabama</u>, 326 U.S. 501 [1946]); elections (<u>Terry v. Adams</u>, 345 U.S. 461 [1953]); and perhaps the exercise of eminent domain (<u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 352-353 [1974]). Activities excluded from this category include nursing care (<u>Blum v. Yaretsky</u>, *supra*); education (<u>Rendell-Baker v. Kohn</u>, *supra*); resolution of private disputes (<u>Flagg Bros. v. Brooks</u>, 436 U.S. 149, 161[1978]); and providing utility service (<u>Jackson v. Metropolitan Edison Co.</u>, *supra* 419 U.S. at 358-359).

<u>Phillips v. Youth Development Program, Inc.</u>, 390 Mass. 652, 655 n. 2 (1983).

Where NCMEC statutory obligations included developing "innovative . . . educational programs" for law-enforcement personnel, which is **not** "traditionally the exclusive prerogative of the State" [<u>Phillips</u>, 390 Mass. at 654], no federal or state action can be found. *Cf*. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830 (1982) (education).

> . . . "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. . . . Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State

---

[7] <u>Rendell-Baker</u> essentially sought to restrict the trend which had developed in several of the Federal Circuit Courts of Appeal to find State action by virtue of the private enterprise's receipt of public funding or to fasten liability on the State by misapplying the public function test. Significantly, it left these latter tests intact as standards for determining the presence of State action.

<u>Phillips v. Youth Development Program, Inc.</u>, 390 Mass. 652, 658 n. 4.

responsible for those initiatives under the terms of the Fourteenth Amendment." Blum v. Yaretsky, 457 U.S. 991, 1004-1005 (1982) (and cases cited therein).

Boston Phoenix, Inc. v. New England Tel. and Tel. Co., 1996 WL 473998 at 8, No. 95-0059 (Mass. Super. 1996) (Brassard, J.).

> In this case, the DPU expressly concluded that the presumptive 940 blocking scheme served the "legitimate interest in protecting minors from exposure to material potentially harmful to them." (DPU Decision at 20). To the extent that NYNEX acted pursuant to this interest in assigning the plaintiffs' Personal Call service to the 940 exchange, it exercised a traditional state function, thereby implicating state action.
>
> For these reasons, this Court holds that sufficient state action is present in this case to implicate the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

Boston Phoenix, Inc. v. New England Tel. and Tel. Co., 1996 WL 473998 at 9 (Mass.Super. 1996).

**Tests for Determining State OR Federal Action**

In determining whether or not the action of a private entity can properly be attributed to the state, a court must weigh

- the type and amount of regulation imposed on the private entity by the state;
- whether the function in question is one traditionally reserved to the state; and
- whether a symbiotic relationship exists between the state and the private entity. *See* e.g., Jackson, 419 U.S. 345; Blum v. Yaretsky, 457 U.S. 991 (1982); and Rendell-Baker v. Kohn, 457 U.S. 830 (1982).

Shipps v. Compass Group USA, Inc., 2002 WL 31480397 *2, No. 0102928 (Mass.Super. 2002) (Houston, J.). Meuse assumes the same test would apply to determining federal action also.

Here, the NCMEC, a private, nonprofit corporation [42 U.S.C. §§5771(10)], is not regulated. Even assuming *arguendo* that the federal government regulates the NCMEC, that mere fact does not convert NCMEC's action into the conduct of the federal government. *Cf.* Blum, 457 U.S. at 1004, quoting Jackson, 419 U.S. at 350. "A privately owned enterprise providing services the state would not necessarily provide does not engage in state action even if that enterprise's activities are extensively regulated by the government." Shipps, slip op. at 2, citing Blum, 457 U.S.

10

at 1011.

Here, there is no contract. There is a "public/private partnership." 42 U.S.C. §5771(19). "In these contracts some funding and general regulation by the State typically will be involved, but the existence of a true, easily ascertainable independent contractor relationship will relieve the State from any liability for the agency's actions." Phillips v. Youth Development Program, Inc., 14 Mass.App.Ct 626, 649 (1982) (Greaney, J., Dissenting). The latter statement appears to be the reason for §5771(10) explicitly referring to NCMEC being a private nonprofit corporation.

Where the function of finding missing children is **not** the exclusive prerogative of the state – despite the partnership – NCMEC is not necessarily a federal or state actor. *See* Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982), and Jackson, 419 U.S. at 353. "State action requires more than just the exercise of a power that effects the public interest." Shipps, slip op. at 3, citing Jackson, 419 U.S. 352-55. "To be a state [*read,* federal] actor, the private party must engage in an activity traditionally associated with sovereignty." Shipps, slip op. at 3. "While a government-protected monopoly will more readily constitute state action, the inquiry remains whether the nexus between the private entity and the state [*read,* federal government] is sufficiently close that the entity's conduct may be fairly treated as that of the state [*read,* federal] ". Id., citing Jackson, 419 U.S. at 351.

Here, there is no symbiotic relationship between NCMEC and the federal government. "A symbiotic relationship exists when the state compels decisions made by a private actor." Shipps, slip op. at 3, citing Rendell-Baker, 457 U.S. at 841. "The finding of a symbiotic relationship is further strengthened when the state profits from the private enterprise's business practices and conduct." Shipps, slip op. at 4, citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 723 (1961). Until discovery is completed, we shall not know whether the federal government has profited by NCMEC's behavior.

Courts have found numerous situations in which the regulation and funding, function, and relationship between a private party and the state result in state action. A contractor-physician

11

employed by the state prison system acted under color of state law when he treated the prisoner-plaintiff's leg injuries. West v. Atkins, 487 U.S. 42 (1988) (finding state action for purposes of § 1983). Compass is a state actor for purposes of exemption from Sherman Antitrust claims because it enjoys an exclusive contract with the DOC. Ortega v. Canteen Corp., Civil Action No. 00-2633 (2001) (J. Houston) (citing Miley v. John Hancock Mutual Life Ins. Co., 242 F.2d 758 (1st Cir.1957)). Additionally, state action exists when the Department of Health, an agency required to provide services for mentally ill adolescents who are wards of the state, carries out its mandate by contracting with private entities and extensively controlling the actions of those entities. Doe v. Westlake Academy, Civil Action No. 97-2187 (Mass.Super. Essex 2000) (12 Mass. L. Rptr. 353).

Shipps, slip op. at 4. Until discovery is conducted, we shall not know whether the federal government extensively controls NCMEC. Thus no conclusion on this third test is available at this time.

| TABLE 1.   Excerpt from 42 U.S.C. §5771 (emphasis supplied) [8] |
|---|
| (9) [F]or 14 years, the **National Center for Missing and Exploited Children** has – <br>    (A) served as the national resource center and clearinghouse congressionally mandated under the provisions of this subchapter; and <br>    (B) worked in **partnership** with the Department of Justice, the Federal Bureau of Investigation, the Department of the Treasury, the Department of State, and many other agencies in the effort to find missing children and prevent child victimization; |
| (10) Congress has given the **Center**,[9] **which is a private nonprofit corporation**,[10] access to the National Crime Information Center of the Federal Bureau of Investigation, and the National Law Enforcement Telecommunications System; |
| (11) since 1987, the **Center** has operated the National Child Pornography Tipline, in conjunction with the United States Customs Service and the United States Postal Inspection Service and, beginning this year, the **Center** established a new CyberTipline on child exploitation, thus becoming "the 911 for the Internet"; |
| (12) in light of statistics that time is of the essence in cases of child abduction, the Director of the Federal Bureau of Investigation in February of 1997 created a new NCIC child abduction ("CA") flag to provide the **Center** immediate notification in the most serious cases, resulting in 642 "CA" notifications to the **Center** and helping the **Center** to have its highest recovery rate in history; |
| (13) the **Center** has established a national and increasingly worldwide network, linking the **Cen-** |

---

[8]    The nature of 42 U.S.C. §5771 is extraordinary. It reads like a feature article for a Sunday news magazine or infomercial rather than like an enabling statute. Congress clearly was making excuses for giving preferential treatment to NCMEC, only one of many tens of thousands of nonprofit corporations.

[9]    "[F]or the purpose of [Subchapter IV – Missing Children]. . . the term 'Center' means the National Center for Missing and Exploited Children." 42 U.S.C. §5772. Sections 5771—5776a are also in Subchapter IV.

[10]    Unlike Correctional Services, Inc v. Malesko, 543 U.S. 61 (2001), a private for-profit corporation that operates facilities that house federal prisoners and detainees under contract with the Bureau of Prisons (BOP), NCMEC holds itself out to the public as a private nonprofit corporation. Id. at 63. Correctional Services is also an Eighth Amendment case. Meuse is not.

> **ter** online with each of the missing children clearinghouses operated by the 50 States, the District of Columbia, and Puerto Rico, as well as with Scotland Yard in the United Kingdom, the Royal Canadian Mounted Police, INTERPOL headquarters in Lyon, France, and others, which has enabled the **Center** to transmit images and information regarding missing children to law enforcement across the United States and around the world instantly;
>
> (14) from its inception in 1984 through March 31, 1998, the **Center** has –
>
>     (A) handled 1,203,974 calls through its 24-hour toll-free hotline (1-800-THE-LOST) and currently averages 700 calls per day;
>
>     (B) trained 146,284 law enforcement, criminal and juvenile justice, and healthcare professionals in child sexual exploitation and missing child case detection, identification, investigation, and prevention;
>
>     (C) disseminated 15,491,344 free publications to citizens and professionals; and
>
>     (D) worked with law enforcement on the cases of 59,481 missing children, resulting in the recovery of 40,180 children;
>
> (15) the demand for the services of the **Center** is growing dramatically, as evidenced by the fact that in 1997, the **Center** handled 129,100 calls, an all-time record, and by the fact that its new Internet website www.missingkids.com) receives 1,500,000 "hits" every day, and is linked with hundreds of other websites to provide real-time images of breaking cases of missing children;
>
> (16) in 1997, the **Center** provided policy training to 256 police chiefs and sheriffs from 50 States and Guam at its new Jimmy Ryce Law Enforcement Training **Center**;
>
> (17) the programs of the **Center** have had a remarkable impact, such as in the fight against infant abductions in partnership with the healthcare industry, during which the **Center** has performed 668 onsite hospital walk-throughs and inspections, and trained 45,065 hospital administrators, nurses, and security personnel, and thereby helped to reduce infant abductions in the United States by 82 percent;
>
> (18) the **Center** is now playing a significant role in international child abduction cases, serving as a representative of the Department of State at cases under The Hague Convention, and successfully resolving the cases of 343 international child abductions, and providing greater support to parents in the United States;
>
> (19) the **Center is a model of public/private partnership**, raising private sector funds to match congressional appropriations and receiving extensive private in-kind support, including advanced technology provided by the computer industry such as imaging technology used to age the photographs of long-term missing children and to reconstruct facial images of unidentified deceased children;
>
> (20) the **Center** was 1 of only 10 of 300 major national charities given an A+ grade in 1997 by the American Institute of Philanthropy; and
>
> (21) the **Center** has been redesignated as the Nation's missing children clearinghouse and resource center once every 3 years through a competitive selection process conducted by the Office of Juvenile Justice and Delinquency Prevention of the Department of Justice**, and has received grants from that Office** to conduct the crucial purposes of the **Center**.

It is under these statutes that NCMEC partners with diverse departments, agencies, and bureaus of the federal government and with STF/AMW and Wal-Mart and works both under federal and state laws.

And under 42 U.S.C. §5773(b)(2), **NCMEC is given an annual grant of up to $10,000,000 from the federal government** to carry out duties set out in §5773(1)(A)-(G). ] the relevant statute, perform duties similar to those of regular Juvenile Court probation officers. > (FN11)

> . . . the Supreme Judicial Court has held that "near-complete governmental funding does **not** turn a private charitable and educational institution into a public entity so long as the private institution remains free, in fact, to control its own affairs."  Bello v. South Shore Hospital, 384 Mass. 770, ----, Mass.Adv.Sh. (1981) 2411, 2417, quoting with approval Rendell-Baker v. Kohn, 641 F.2d 14, 25 (1st Cir. 1981). See also Rendell-Baker v. Kohn, 102 S.Ct. at 2771.

Phillips, 14 Mass.App.Ct. at 637 [emphasis supplied]. With this holding, NCMEC must be deemed not to be a federal actor, for it maintains its independence.

It is also believed that the Commonwealth, the City of Haverhill, and/or its police department have received a federal grant through the U.S. Attorney General for getting involved in the alleged abduction of the Meuse child. *See* 28 U.S.C. §531, FBI Funding Authorizations, (a)(1)(E) and (b)(1).\[11]/

Clearly NCMEC was acting under the color of state and possibly federal laws when the entity conspired with the FBI agents, STF/AMW, FOX TV, Wal-Mart, and the other defendants to capture Meuse. As the affidavit produced by STF and attached to its opposition to Meuse's motion to reconsider, it was Assistant District Attorney Eileen Foreman of the Essex County (Massachusetts) D.A.'s Office who requested the FBI "to assist in the location and apprehension of Brian Meuse" [Defs. Exhibit A, Affidavit of Charles P. Kelly, ¶¶1-2]. At that point the FBI and its "deputies" – NCMEC, in particular -- began, at the very least, acting under the color of Massachusetts law as well as under federal law.

---

[11]  Individuals employed by the State or local law enforcement agency working with the Bureau remains as an employee of the respective agency for all purposes "on a nonreimbursable basis, except if appropriate to reimburse State and local law enforcement for overtime costs for an individual appointed to work with the resource team." Section 531, Notes, subsection (d)(2).

3. **Where there is within *Correctional Services, Inc.*, an exception to the "preclusionary" rule in which the facts in Meuse fit, Meuse's federal constitutional claims are established. Meuse's state law claims are within the pendent jurisdiction of this court.**

Meuse incorporates by reference as if set forth herein the discussion of this issue in his Reply Brief to STF and FOX's oppositional response to Meuse's motion to reconsider.

> The absence of a statutory remedy for the violation of constitutional rights cannot absolutely and in all cases bar judicial protection of those rights. The Supreme Court of the United States has recognized this principle and, in the absence of special factors or an explicit alternative statutory remedy, has allowed direct actions to protect rights under the Federal Constitution.

Phillips, 390 Mass. at 658 n. 4, citing Carlson v. Green, 446 U.S. 14, 18-19 (1980); Davis v. Passman, 442 U.S. 228, 242-243 (1979); and Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 396-397 (1971).

4. **Where there is a threat of injustice, Meuse's *Bivens* claims may not be defeated and hence dismissed.**

Meuse incorporates by reference as if set forth herein the discussion of this issue, in entirety, in his Reply Brief to STF and FOX's oppositional response to his motion to reconsider.

In fact, Meuse contends that where the Essex County District Attorney's office insinuated itself into the NCMEC/Meuse matter, NCMEC was a state actor. Camilo-Robles v. Hoyos, 151 F.3d 1, 10 (1st Cir., 1998).

> . . . [A] person whose constitutional rights have been interfered with may be entitled to judicial relief even in the absence of a statute providing a procedural vehicle for obtaining relief. (FN4)

Phillips, 390 Mass. at 657-658.

> Although we have held that at least one constitutional right (ballot access) will be protected even in the absence of State action (*see* Batchelder v. Allied Stores Int'l, Inc., 388 Mass. 83, 89-90 [1983]), the concept of due process of law ("the law of the land"--art. 12 of the Massachusetts Declaration of Rights) inherently is concerned with governmental action. \[12]/

---

[12] There is little doubt that this court may fashion its own concepts of due process of law under the Constitution of the Commonwealth and apply them within the permissible limits of the Constitution of the United States. *See* Moe v. Secretary of Admin. & Fin., 382 Mass. 629, 649 (1981). Thus, in determining what is State action

15

Phillips, 390 Mass. at 658.

**5.   Where Meuse's constitutional claims are established, his state law claims are within the pendent jurisdiction of this court.**

"The state law claims would be within the pendent jurisdiction of the federal court if the constitutional claims were established." Dobyns v. E-Systems Inc., 667 F.2d 1219, 1221 n. 4 (5th Cir. 1982), citing United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

WHEREFORE, Plaintiff Brian Meuse prays this Court deny NCMEC's motion to dismiss and his motion to reconsider the dismissal of his federal claims (and the remand of his state claims) against NCMEC.

|  |  |
|---|---|
|  | Respectfully submitted,<br>BRIAN J. MEUSE,<br>By his attorney, |
| 7 July 2004 | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net><br>Barbara C. Johnson, Esq., BBO #549972<br>6 Appletree Lane<br>Andover, MA 01810-4102<br>978-474-0833 |

**AFFIDAVIT**

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief. Sworn under the pains and penalties of perjury.

|  |  |
|---|---|
| 7 July 2004 | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net><br>Barbara C. Johnson, Esq., BBO #549972 |

---

for State due process of law purposes, we need not define State action as the Supreme Court of the United States has defined State action for Fourteenth Amendment and §1983 purposes.

Phillips, 390 Mass. at 658-659.