UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10255-EFH

| | |
|---|---|
| Brian J. Meuse, <br>     Plaintiff, <br><br> v. <br><br> Susan Pane, <br> Rosalyn Stults, <br> City of Haverhill, <br> Lt. Detective Daniel Moynihan, <br> Capt. Donald Thompson, <br> Louis Freeh, <br> Charles S. Prouty, <br> Charles Kelly, <br> FOX Television Stations, Inc. <br> STF Productions, Inc./America's Most Wanted, <br> Wal-Mart Stores, Inc., and <br> National Center for Missing and Exploited Children, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT, ROSALYN STULTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

    The Defendant Rosalyn Stults submits this Memorandum in support of her Motion for Summary Judgment against the Plaintiff, Brian Meuse's Amended Complaint. The unwieldy 57-page complaint in this case grows out of a bitterly contested child custody dispute which has already generated, in addition to extensive probate proceedings in two states, a criminal kidnapping trial against the father, Plaintiff Brian Meuse ("Meuse"), and a civil action in state Superior Court. Having been acquitted in the kidnapping trial, Meuse now brings this case against everyone whom he perceives to have played any role in that prosecution, including the child's mother, the police, the FBI, Wal-Mart, and the television show "America's Most

1

Wanted." Most of the other, private entity defendants have previously been dismissed due to Meuse's failure to set forth adequate factual allegations in support of his *Bivens* claims and Section 1983 ("§ 1983") claims. The Defendant Rosalyn Stults ("Attorney Stults"), the probate attorney for the child's mother, also now seeks dismissal on the grounds that, as a private actor neither *Bivens*, nor § 1983 claims lie against her. Moreover, her actions in representing and advocating for her own client are subject to the litigation privilege and cannot give rise to a cause of action in her client's adversary.

## GENERAL BACKGROUND[1]

According to the Amended Complaint, Meuse and Co-Defendant, Susan Pane ("Pane"), engaged in a romantic relationship during which a daughter, Marissa Lynne Meuse ("Marissa"), was born on August 4, 1999. Amended Complaint, ¶ 3. Meuse gratuitously alleges that Pane suffered from various disabilities and was generally an unfit mother, thereby justifying drastic action on his part to save his daughter. *Id.*, ¶¶ 28-31, 40-41, 43, 48. With several custody proceedings pending in both Massachusetts and Florida (¶¶ 43, 48, 53, 54, 57, 58, 59, 151), Meuse took the unilateral actions described in the Amended Complaint section aptly entitled "Faced With Court's Failure To Act, Meuse Must Act To Save Child." *Id.*, ¶ 152. Meuse candidly alleges that in violation of various court orders, he used a week long visit to remove Marissa surreptitiously from Florida to Massachusetts. *Id.*, ¶¶ 152-154. Faced with the predictable judicial reaction to his unilateral action, on October 5, 2000, Meuse "dropped out of sight with the child." *Id.*, ¶ 170. Six days later, Judge Manzi of Essex Probate Court "gave Pane temporary custody of the child." *Id.*, ¶ 172.

---

[1] While Attorney Stults denies most of the allegations against her in the Amended Complaint, for purposes of this Motion only, the following facts will be considered material and undisputed.

Predictably, "dropping out of sight" with a two year old child over whom he did not have legal custody generated vigorous official response. Amended Complaint, ¶ 182. The Haverhill Police sought and obtained an arrest warrant for kidnapping. *Id.*, ¶ 204. The FBI was contacted and issued a warrant for "unlawful flight to avoid prosecution." *Id.*, ¶ 226. In conduct that the Amended Complaint seems to believe is actionable, the FBI and the Haverhill Police proceeded to "coordinate" search activities. *Id.*, ¶¶ 269-77. These search efforts included "poster activities publicizing the abduction in order to assist in the search for the child." *Id.*, ¶¶ 295-99. This search included reports to the National Center for Missing and Exploited Children and placement of posters in various public locations and on the Fox television show "America's Most Wanted". *Id.*, ¶¶ 298-300.

The publicity campaign had the desired effect. Persons observing the posters in a local Wal-Mart in Ada, Oklahoma reported to the local police their sighting of Meuse and Marissa in a local laundromat. *Id.*, ¶¶ 382-83. On March 22, 2001, Meuse and Marissa were located, and Meuse was arrested. He stood trial for kidnapping in May of 2002. *Id.*, ¶¶ 380, 394. On May 23, 2002, the trial ended in an acquittal, and this suit followed. *Id.*, ¶ 395.

## ALLEGATIONS AGAINST STULTS

Attorney Stults is mentioned in only 20 of the 520 numbered paragraphs of the Amended Complaint. Amended Complaint, ¶¶ 50, 165, 166, 171, 291, 330, 334-35, 337, 368, 406, 418, 426, 428, 444, 460. While the allegedly actionable conduct is obscure, Attorney Stults is clearly alleged to have served only "as counsel for Pane" (¶ 50) and as "Pane's local lawyer" (¶ 165). Attorney Stults' actionable conduct includes such matters as acting with a "purpose … to aide and abet Pane, her client, in the custody action," "advis[ing] and strategiz[ing] with" her client about how "to keep the child from [Meuse]." Amended Complaint, ¶¶ 406, 426. In her role as

3

counsel for Pane, Attorney Stults is also alleged to have done such things as "set up a hearing before Judge Manzi at the Probate and Family Court" (¶ 171), provided material to the Haverhill Police's "domestic violence advocate" (¶ 291), "communicated with local FBI agent, Charles Kelley" (¶ 335), and been interviewed by the Lawrence Eagle Tribune (¶ 418). There is no allegation that Attorney Stults acted in any capacity other than as a private attorney for Pane, nor that any action she undertook was other than pursuant to the zealous representation of her client.

## PROCEDURAL STATUS

On February 6, 2004, Meuse commenced this action against Pane, Attorney Stults, the City of Haverhill and its Police Detective Moynihan and Captain Thompson, local FBI agents Freeh, Prouty and Kelly, Fox Television Stations, Inc., STF Productions, Inc./America's Most Wanted, Wal-Mart Stores, Inc. and the National Center for Missing and Exploited Children ("NCMEC"). Against all defendants, Meuse endeavors to set forth claims of: (a) violation of 42 U.S.C. 1983 (arrest); (b) violation of 42 U.S.C. 1983 (detention and confinement); (c) violation of 42 U.S.C. 1983 (conspiracy); (d) violation of 42 U.S.C. 1983 (refusing or neglecting to prevent violation of rights); (e) malicious prosecution; (f) violation of the Mass. Civil Rights Act; (g) false arrest and imprisonment; (h) assault; (i) battery; (j) defamation, and (k) intentional infliction of emotional distress. Amended Complaint, ¶¶ 397-521.

On June 9, 2004, this Court granted the co-defendant, Fox Television's Motion to Dismiss as to Meuse's federal claims, noting that the federal claims captioned as § 1983 actions also sounded as *Bivens* actions because of the alleged violations of the Fifth and Fourteenth

Amendments.[2] The Court found that Meuse could not maintain a § 1983 claim because the Amended Complaint only alleged cooperation between the corporate defendants and the FBI, a federal (not state) agency. The Court also ruled that Meuse's *Bivens* claims were not cognizable because such actions may not be maintained against a private entity acting under color of federal law. For the same reasons, on June 9, 2004 and July 8, 2004, this Court allowed STF Productions/America's Most Wanted and NCMEC's respective Motions to Dismiss the Amended Complaint. Subsequently, on January 20, 2004, the Court allowed Wal-Mart's assented-to Motion to Dismiss, which was based on the same grounds. The Court remanded Meuse's state law claims to Essex Superior Court, and Meuse commenced a state court action against FOX, STF Productions/America's Most Wanted, NCMEC, and Wal-Mart Stores, Inc.

The remaining defendants in this action are Susan Pane, Attorney Stults, the City of Haverhill and its named captain and detective, and the FBI and its named agents.

## SUMMARY JUDGMENT STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment is appropriate in a § 1983 claim where the plaintiff cannot reasonably expect to establish that the defendant has performed conduct as a "state actor." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253-54 (1st Cir. 1996) (affirming summary judgment granted by district court dismissing as a matter of law plaintiff's § 1983 claims as well as plaintiff's state

---

[2] In reviewing Stults' present Motion, this Court may, of course, consider such matters of public record from the Court's earlier decisions. *Lee v. City of Los Angeles*, 250 F.3d 66, 689-690 (9th Cir. 2001); 5A Wright & Miller, *Federal Practice & Procedure*, § 1357 at 299 (1990).

law claims because plaintiff could not show that defendant was state actor); *Burke v. Town of Walpole*, 405 F.3d 66 (1st Cir. 2005) (affirming summary judgment against plaintiff's § 1983 claims); *Hamilton v. Arnold*, 135 F. Supp. 2d 99, 103 (D. Mass. 2001) (granting summary judgment against plaintiff's § 1983 claims against his ex-wife's probate court attorney because plaintiff could not show that the defendant/attorney was a state actor).

Where the moving parties do not have the burden of persuasion at trial and have "suggested that competent evidence to prove the case is lacking, the burden devolves upon the non-movant plaintiff to 'document some factual disagreement sufficient to deflect brevis disposition.'" *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)). A non-moving party may not successfully defend against summary judgment where the evidence relied upon "is merely colorable or is not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citation omitted). As a result, the Court may ignore any "conclusory allegations, improbable inferences, and unsupported speculation." *Roche*, 81 F.3d at 253 (citation omitted).

## LEGAL ARGUMENT

It is somewhat difficult to discern the precise legal theory being asserted against Attorney Stults. Although the defendants are very differently situated, the Amended Complaint refers to "the defendants" indiscriminately, and it is unclear precisely what offense is alleged against which defendant. Attorney Stults herself is mentioned in only a very small minority of the paragraphs of the Amended Complaint, and then many of the allegations involve such mundane activities as filing pleadings and consulting with her own client. It appears, however, that Meuse is alleging against Attorney Stults, as against many of the other defendants, a *Bivens* constitutional violation, a § 1983 civil rights violation, and various claims arising under state

6

law. The federal claims cannot be asserted against a private attorney absent affirmative evidence of state action, and the state claims cannot be asserted by Meuse against the attorney for his adversary in probate court litigation.

I. **In Dismissing Meuse's *Bivens* Claims Against Other Defendants, The Court Has Correctly Ruled That Meuse States No *Bivens* Claim Against Private Parties, and Meuse's *Bivens* Claim Against Attorney Stults Should Similarly Be Dismissed.**

A *Bivens* claim, named for *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), is a judicially created constitutional claim which is outside the purview of the Federal Tort Claims Act. *See* 28 U.S.C. S 2679(b)(2)(A). In a *Bivens* action, a plaintiff brings suit for monetary damages against individuals who, under color of federal authority, such as FBI agents or secret service in their individual capacities, allegedly violate constitutional rights. The Supreme Court, however, has refused to extend *Bivens* claims to provide a basis against to *private entities* allegedly acting under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (emphasis added).

For the reasons set forth in the Court's Memorandum and Order of June 9, 2004, a *Bivens* claim cannot be maintained against Attorney Stults, a private individual, because such a claim "is simply not available against a private entity even if that entity is acting under color of federal law." Court's Order of June 9, 2004, p. 3, citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Stoutt v. Banco Popular de P.R.*, 320 F.3d 26, 33 (1st Cir. 2003); *Fletcher v. R.I. Hosp. Trust Nat'l Bank*, 496 F.2d 927, 932 n. 8 (1st. Cir. 1974), *cert. denied*, 419 U.S. 1001 (1974). Therefore, to the extent that Meuse's Amended Complaint attempts to set forth a *Bivens* claim against Attorney Stults, that claim should be dismissed as a matter of law.

## II. A Private Attorney Representing Her Own Client Is Not A State Actor For Purposes Of § 1983, And, As A Result, Meuse's § 1983 Claims Against Attorney Stults Must Be Dismissed.

Attorney Stults is a private, non-governmental individual, as are NCMEC, FOX Television and STF Productions. Therefore, none of Attorney Stults' or the other private co-defendants' efforts, together or separately, to produce or distribute the 'wanted' posters at issue in this case may be said to have occurred "under color of state law." The allegation that a private attorney violated a civil right merely by advising a private client, without more, does not constitute state action "under color of law." *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980), *citing Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir.1974).

As this Court stated in its Memorandum and Order of June 9, 2004, "a Section 1983 action against a private entity requires at least some connection between the private entity and the state." Court's Order of June 9, 2004, p. 3, citing *Gerena v. P.R. Legal Servs., Inc.*, 697 F.2d 447, 449 (1st Cir. 1983); *see also, Blum v. Yaretsky*, 457 U.S. 991 (1982). In *Blum*, the United States Supreme Court set forth three factors guiding the determination of whether a private entity's conduct constitutes "state action" for the purposes of a claim under § 1983. *Blum*, 457 U.S. at 1003-05. These factors are:

(1) a sufficiently close nexus between the state and the challenged action of the private entity so that the action of the latter may be fairly treated as that of the State itself;

(2) the State has exercised coercive power or has provided such significant encouragement that the choice of the private entity must be deemed to be that of the State;

(3) the private entity has exercised powers that are traditionally the exclusive prerogative of the State.

*Id.*

8

According to the undisputed factual record, Meuse cannot meet the elements of a claim under § 1983 as set forth by the U.S. Supreme Court in *Blum*. First, there is no basis in the Amended Complaint to support the contention that a close nexus existed between state law officers and Attorney Stults so that her conduct may be attributed to the state itself. According to the Amended Complaint, the only allegation against Attorney Stults is that she contacted Haverhill Detective Moynihan once every two weeks "wanting to know about" the search for Marissa and "telling [him] what they were getting[,] to help them in trying to recover the kidnapped child." Amended Complaint, ¶¶ 330, 334. Meuse does not allege that Attorney Stults was controlled by any law enforcement officials. Second, Meuse does not allege that the state police coerced or encouraged Attorney Stults to act in any way that rendered her choices to be those of the state's. Third, Meuse does not allege that Attorney Stults exercised any power that would be construed as traditionally the exclusive prerogative of law enforcement officials. Indeed, it is offensive to suggest that Attorney Stults' client, the mother of a kidnapped child, needs to be "coerced" by the police to seek the child's return, nor that filing pleadings is "traditionally the exclusive prerogative of law enforcement officials."

Meuse's only allegations as to Attorney Stults are her "communication" with government agencies and alleged "instigation" of the criminal complaint against Meuse. However, mere communication with state or federal law enforcement officers, even if true, cannot without more constitute state action under color of law. *Slotnick*, 632 F.2d at 166 (affirming dismissal as a matter of law of § 1983 claims because communications by private entity with state agents are insufficient to show conspiracy or state action). Moreover, general, bald allegations, such as "Stults instigated or participated in the prosecution by pressing police to apply for a complaint for an improper purpose," (Amended Complaint, ¶ 434) do nothing to connote any control by

Attorney Stults over state law enforcement officials' conduct and are completely unsupported by any evidence aside from Meuse's own conjecture and speculation. Unless every private citizen who contacts the police is a co-conspirator, Meuse's allegations as to Attorney Stults' conduct are insufficient to constitute "state action."

In *Hamilton v. Arnold*, the District of Massachusetts granted summary judgment in favor of a defendant attorney against § 1983 claims also arising from a bitter state probate court dispute. *Hamilton v. Arnold*, 135 F. Supp. 2d 99 (D. Mass 2001). The plaintiff, Hamilton, brought § 1983 claims against Attorney Arnold, alleging that the attorney conspired with the state probate court judge, thereby allegedly acting under color of state law, and that Arnold "conspire[ed] to deprive [Hamilton] of his due process" rights in probate court, "to deny him access to an impartial decision maker, and to deprive him of his property without due process of law." *Id.* The *Hamilton* Court ruled that a private actor may be found to have acted under color of state law if: (1) he was a willful participant in a *joint activity* with the state or its agents; or (2) if he *conspired* (by agreement, "two or more persons acting in concert to commit an unlawful act") with a state actor to deprive a plaintiff of his constitutional rights and the plaintiff is able to prove that there was an agreement to so act. *Id.* at 102 (emphasis added) (defining civil rights conspiracy and requiring evidence of agreement). Although Hamilton submitted numerous affidavits and pieces of evidence establishing that the Attorney Arnold and the state's agent met together often, communicated frequently, and socialized together, the District Court dismissed Hamilton's § 1983 claims on summary judgment because the allegations and factual record failed to show an *agreement to deprive* Hamilton of his rights, or at least a decision to so act interdependently. *Id.* at 103-04 (noting that evidence of communications along with allegations of a conspiracy without more are insufficient as a matter of law to establish a conspiracy to deprive plaintiff of constitutional rights).

10

In this case, as in *Hamilton*, Meuse alleges a conspiracy between Attorney Stults and state agents to deprive Meuse of his constitutional rights. Also as in *Hamilton*, in support of his conspiracy theory, Meuse cites previous trial testimony and references correspondence between Attorney Stults and law enforcement officials, demonstrating that Attorney Stults and law enforcement officials communicated during the search for Marissa. Amended Complaint, ¶¶ 291, 330, 334, 335. None of the parties denies that there was communication. As Pane's probate court attorney, which probate action involved the custody of Marissa, it was clearly within the scope of Attorney Stults' duties to Pane to pursue information on the status of the search for then-missing Marissa. Reporting to and communicating with police, however, is absolutely distinct from acting in *joint activity* with them, and it is no evidence of an *agreement to deprive* someone of constitutional rights. *Slotnick*, 632 F.2d at 166; *Hamilton*, 135 F. Supp. 2d at 103-04. As in *Hamilton*, Meuse cannot show any *joint activity* or that there was any *agreement to deprive* Meuse of his rights. Thus, Meuse's § 1983 claims, like Hamilton's, should be dismissed as a matter of law.

To the extent that Meuse's conspiracy theory arises from other alleged conduct in probate court proceedings, it should be noted that an attorney cannot be construed as a "state actor" and therefore subject to liability under § 1983 merely by virtue of her status as an officer of the court. *Polk County v. Dodson*, 454 U.S. 312, 317-318 (1981). Finally, an attorney representing a client who allegedly violates another person's civil rights does not incur liability under § 1983 merely by virtue of the attorney-client relationship or by providing legal advice that results in an alleged civil rights violation. *Browne v. Dunne*, 409 F.2d 341, 343-344 (7th Cir. 1969); *see also Tunheim v. Bowman*, 366 F. Supp. 1395, 1396-1397 (D. Nev. 1973).

Since Meuse's allegations as to Attorney Stults are limited solely to communicating with law enforcement officials and advising her own private client, without any allegation of control of the state agencies, or conduct that is traditionally reserved as a state power, Meuse's allegations against Attorney Stults are insufficient to establish state action under color of law. *Slotnick*, 632 F.2d at 166; *Hamilton*, 135 F. Supp. 2d at 104-03. Because Meuse cannot set forth a § 1983 claim, even viewing all facts in the light most favorable to Meuse, his § 1983 claims (Counts 1 through 4) should be dismissed with prejudice.

### III.   In Accordance With Its Duly Prescribed Authority, This Court Should Dismiss Meuse's State Law Claims Because They Are Barred By Two Well Established Massachusetts Legal Doctrines.

Meuse also brings state law claims against Attorney Stults. This Court has the authority to dismiss the state law claims with prejudice as a matter of law, and it should do so. A federal court exercising jurisdiction over an asserted federal question claim may also exercise supplemental jurisdiction over asserted state law claims that arise from the same nucleus of operative facts. *See* 28 U.S.C. § 1367(a) (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). Once the federal claims are dismissed, the District Court has the option to remand the state law claims to state court or to rule on them itself. *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997). This Court should exercise its discretionary supplemental jurisdiction to dismiss Meuse's state law claims because they are facially flawed as a matter of law and they do not raise complex or novel state law issues. *Id.* (affirming district court's authority to exercise supplemental jurisdiction over plaintiff's state law claims). Allowing the state claims to be re-asserted in state court will only generate pointless,

substantial state litigation expenses for Attorney Stults, for the state court, and for the Plaintiff, Meuse.[3]

Because all of Meuse's claims arise from the same set of operative facts, and in the interests of efficient judicial administration and of obtaining a full and fair termination to the years of vexatious litigation that has burdened Attorney Stults, this Court should exercise its supplemental jurisdiction over Meuse's state law claims and should dismiss them concurrently with Meuse's federal claims. This is precisely the procedure followed in *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-57 (1st Cir. 1996) (affirming district court's exercise of supplemental jurisdiction over state law claims that arose from the same facts as § 1983 claims stating that the "preferred approach is pragmatic and case-specific").

All of Meuse's complaints relate to activities undertaken by Attorney Stults in the course of representing Pane in probate court litigation for custody of Marissa, in resulting activity (i.e. the child search) arising from Meuse's violation of the probate court's orders, and in communicating with law enforcement preliminary to their criminal indictment and trial of Meuse. Two different doctrines of Massachusetts law clearly indicate that Meuse's claims fail to state a cause of action. First, statements made incidental to the litigation process by a party, by his attorney or by a witness are absolutely privileged and cannot be the source of non-client liability. Second, it is well established that an attorney owes a duty only to her own client with no duty to her client's adversary in litigation. These claims can be disposed of, as a matter of law, at this juncture. There is no

---

[3] "When deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chi. v. Int'l College of Surgeons*, 522 U.S. at 173 (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350-51 (1988)). See also *Hopkins v. Walker*, 244 U.S. 486, 490 (1917).

benefit to anyone in remanding them to state court for their inevitable outcome.

      A.      <u>The Litigation Privilege Bars Meuse's State Law Claims.</u>

Many of Meuse's state law claims sound in defamation or appear to arise from alleged statements or communications of Attorney Stults. Under long recognized Massachusetts law, however, "statements by a party, counsel or witness in the institution of, or in the course of, a judicial proceeding are absolutely privileged," where the statements relate to that litigation or are in conferences and other communications preliminary to litigation. *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976); *see also Sullivan v. Birmingham*, 11 Mass. App. Ct. 359, 368 (1981) (dismissing claims of abuse of process, libel and negligence against an attorney because of policy considerations which mandate application of the privilege: "overriding public interest" bars any action that could survive element-by-element analysis of claims flowing from plaintiff's allegations).

Analyzing the purposes and application of the litigation privilege, in *Sriberg v. Raymond*, the Supreme Judicial Court found that the absolute litigation privilege prevents the imposition of conflicting duties on advocates and protects the rights of litigants to have their claims heard and resolved by the Court. *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976). "It is, on the whole, for the public interest, and best calculated to serve the purposes of justices to allow counsel full freedom of speech, in conducting the causes, and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not to be impaired by numerous and refined distinctions." *Sriberg*, 370 Mass. at 109 (quoting Massachusetts Supreme Judicial Court Chief Justice Shaw in *Hoar v. Wood*, 3 Met. 193, 197-98 (1841)). The litigation privilege is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients" and "the public interest in according to all men the utmost freedom of access to the courts of justice for the settlement of their private disputes." *Sullivan*, 11 Mass. App. Ct. at 361-62

(quoting *Restatement (Second) of Torts* §§ 586-87, Comments a, a (1977)). If attorneys were concerned about personal exposure to claims by their client's adversaries, zealous representation would be chilled, and the public would not obtain justice.

It is also well established that the scope of the absolute litigation privilege is broad and applies to all of an attorney's statements, so long as the statements were pertinent to the litigation. In *Sriberg v. Raymond*, 370 Mass. 105 (1976), the Massachusetts Supreme Judicial Court reviewed the question of the litigation privilege pertaining to statements made by attorneys in connection with litigation. The precise issue in that case was whether a defamatory statement made in a mailed communication, which threatened to bring suit, enjoyed application of the litigation privilege. In determining that it did, the Court noted that, "we have hitherto held that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Id.* at 108.

In addition, the absolute litigation privilege attaches to the conduct, not the legal theory asserted by the plaintiff. Accordingly, it "protects the maker from *any* civil liability based thereon," as the privilege would be useless if it could be evaded by choice of legal label. *Sax v. Sax*, 53 Mass. App. Ct. 765, 773 (2002) (finding defendant "absolutely immune from civil liability" under any theory of recovery) (emphasis added); *Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140 (1996) (citations omitted) (dismissing all of plaintiff's claims for violation of M.G.L. c. 93A, invasion of privacy, intentional infliction of emotional distress, violation of the Mass. Civil Rights Act); *Sullivan*, 11 Mass. App. Ct. 368 (dismissing all of plaintiff's claims of abuse of process, libel and negligence against an attorney arising from attorney's conduct related to litigation matter); see also *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984) (applying Massachusetts law and

15

holding that litigation privilege should be applied broadly to *all* claims, and dismissing claim for interference with business relations due to application of litigation privilege).

Affirming the dismissal of the plaintiff's complaint against the defendant/law firm, in *Doe v. Nutter, McClennen & Fish*, the Appeals Court of Massachusetts followed longstanding case precedent that routinely applies the litigation privilege not only to statements made in court proceedings, but also to correspondence and other statements made in the context of a proposed judicial proceeding or event related to the proceeding, *even if the statements were made in bad faith and were knowingly false*. *Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140 (1996), rev'w denied, 423 Mass. 1111 (1996). The plaintiff in *Doe* alleged that the law firm's M.G.L. c. 93A response letter which threatened to bring a law suit was defamatory and was made maliciously with knowledge of the content's falsity. *Id.,* at 137. The *Doe* Court, however, ruled that the litigation privilege is "absolute" as to *any* civil liability and "provides a complete defense even if the offensive statements are uttered maliciously or in bad faith." *Id.*, at 140 (internal citations omitted) (dismissing all of plaintiff's claims for violation of M.G.L. c. 93A, invasion of privacy, intentional infliction of emotional distress, violation of the Mass. Civil Rights Act). See also *Frazier v. Bailey*, 957 F.2d 920, 932 (1st Cir. 1992) (claims for negligence, defamation, intentional infliction of emotional distress, and violation of Massachusetts Civil Rights Act based on communications preliminary to litigation and during pendency of litigation were entitled to absolute immunity from all civil liability under Massachusetts law); *Correllas v. Viveiros*, 410 Mass. 314, 319-20 (1991) (affirming grant of summary judgment in favor of defendant in civil action for malicious prosecution, defamation, and intentional infliction of emotional distress, where defendant made allegedly wrongful statements to police during police investigation of plaintiff, because a police investigation is a related event to a potential judicial prosecution or

16

proceeding, and statements were, therefore, subject to the absolute litigation privilege); *Aborn v. Lipson*, 357 Mass. 71, 73 (1970) (holding that "[t]he words 'pertinent to the proceedings' are not to be construed narrowly," nor according to evidentiary rules as to admissibility); *Mezullo v. Maletz*, 331 Mass. 233, 236 (1954).

According to Meuse's own Amended Complaint, Meuse's causes of action arise solely from Attorney Stults' conduct in representing Pane in the child custody dispute in the probate court proceedings and in events related to the probate court's custody orders. Amended Complaint, ¶¶ 50, 166, 171, 291, 330, 334, 368, 426, 428, 444. Attorney Stults also allegedly provided information to and communicated with the police and the FBI during the investigation to locate Marissa, whose custody was the subject of the probate court action in which Attorney Stults represented Pane. Amended Complaint, ¶¶ 378-80. Meuse was eventually charged with and tried for kidnapping Marissa. Thus, all of the allegedly wrongful conduct by Attorney Stults was performed preliminary to or incidental to either the probate court litigation regarding the custody of Marissa or the search for then-missing Marissa.

As directed in substantial case law, the absolute litigation privilege applies directly to Attorney Stults' alleged conduct relating to the probate court litigation and communications with law enforcement officers incidental to the criminal investigation of Meuse. *Correllas*, 410 Mass. at 319-20 (statements made to police during investigation are subject to absolute litigation privilege); *Aborn*, 357 Mass. at 73 (holding that "[t]he words 'pertinent to the proceedings' are not to be construed narrowly," nor according to evidentiary rules as to admissibility); *Mezullo*, 331 Mass. at 236; *Doe*, 41 Mass. App. Ct. at 140 (absolute litigation privilege operates to bar any and all civil liability).

Due to the application of the absolute litigation privilege, all of Meuse's causes of action against Attorney Stults fail to state a claim upon which relief can be granted. Further, in accordance with this Court's supplemental jurisdiction over Meuse's state law claims, the Amended Complaint should be dismissed in its entirety.

B.  Meuse's Claims Are Precluded Because As A Matter Of Law, An Attorney Owes No Duty To Her Client's Adversary In Litigation.

Meuse's claims are also barred by the well-established Massachusetts rule precluding claims against attorneys by their client's adversary. The reason for this rule is the potential for conflicts of interest that would arise from recognizing a duty in attorney to someone other than their client. The Massachusetts Supreme Judicial Court has consistently refused to impose any liability upon an attorney that would conflict with the basic duty owed to their own clients to zealously advocate on their client's behalf.[4]

The conflict of interest is particularly acute where, as here, the client and non-client are engaged in litigation against each other. As the Supreme Judicial Court stated in *Lamare v. Basbanes*, 418 Mass. 274, 276 (1994), "[i]t is well-established that attorneys owe no duty to their client's adversary." In *Beecy v. Pucciarelli*, the Supreme Judicial Court articulated the broader policy reasons that preclude holding attorneys liable to their clients' adversaries:

> [C]reating a duty in favor of an adversary of the attorney's client would create an unacceptable conflict of interest which would seriously hamper an attorney's effectiveness as counsel for his client ... [T]he nature of the adversary system precludes an adverse party from relying on his opposing party's attorney.

---

[4]  *See Spinner v. Nutt*, 417 Mass. 549, 554 (1994) (attorney for trustee owed no duty of care to beneficiaries); *Logotheti v. Gordon*, 414 Mass. 308, 311 (1993) (attorney for testator owed no duty of care to heirs at law); *DaRoza v. Arter*, 416 Mass. 377, 381-82 (1993) (attorney's duty to client insurer precludes imposing duty of care to injured employee); *Page v. Frazier*, 388 Mass. 55, 63 (1983) (bank's closing attorney owed no duty of care to borrower); *Beecy v. Pucciarelli*, 387 Mass. 589, 597 (1982) (plaintiff has no cause of action against opposing attorney for wrongfully initiating lawsuit).

18

387 Mass. 589, 597 (1982) (citations omitted).

In this case, Meuse and Pane were engaged in highly disputed custody litigation against each other in the Essex Probate Court and in Florida Probate Courts. Amended Complaint, ¶¶ 50, 171. Further, all of Meuse's allegations against Stults in the Amended Complaint are comprised of Stults' conduct and/or statements either in probate court child custody proceedings or with law enforcement officials during the nationwide search to find her client's missing daughter, Marissa. Amended Complaint, ¶¶ 50, 166, 171, 291, 330, 334, 335, 368, 406, 426, 428, 443, 444, 460, 467. Clearly, the interests of Pane and Meuse were (and remain) adverse in the probate court actions and in the child search, which arose from the probate court's custody orders. To impose on Stults a duty of care to Meuse "would be imposing conflicting duties on attorneys. This we shall not do." *Logotheti*, 414 Mass. at 312. Massachusetts courts have *never* imposed a duty of care upon a litigation attorney which could result in liability to her client's adversary.

Because Stults as a matter of law did not owe any duty to Meuse, Meuse's claims fail as a matter of law. Accordingly, Meuse's Amended Complaint should be dismissed as a matter of law.

## CONCLUSION

For the above reasons, including this Court's ruling on STF, NEMEC, Fox's Motions to Dismiss, and because Meuse's allegations against Attorney Stults are insufficient as a matter of law to show state action by a private entity, Meuse's federal claims (Counts 1 through 4) against Stults should be dismissed with prejudice. Moreover, by operation of the absolute litigation privilege to all of the allegedly wrongful conduct, and because of the fact that Stults owed no

duty to her client's adversary, the Amended Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,
The Defendant,
Rosalyn Stults,
By her attorneys,

*/s/ George A. Berman*
George A. Berman, BBO# 040200
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110
617-951-2100

Date: December 21, 2005

## CERTIFICATE OF SERVICE

I, George A. Berman, certify that on this 21st day of December, 2005, I served the within Memorandum in Support of Stults' Motion for Summary Judgment by served by first class mail, postage prepaid to:

Barbara C. Johnson, Esq.
6 Appletree Lane
Andover, MA 01810

Douglas I. Louison, Esq.
Regina M. Ryan, Esq.
Merrick Louison & Costello
67 Batterymarch Street, 3rd Floor
Boston, MA 02110

Anton P. Giedt, Esq.
U.S. Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA 02210

*/s/ George A. Berman*
George A. Berman

PABOS2:MDEMAGI:617404_1
14809-90514