**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRIAN J. MEUSE,<br><br>    Plaintiff,<br><br>    v.<br><br>SUSAN PANE, et al., . . . LOUIS FREEH, in his official capacity, CHARLES S. PROUTY, in his official and individual capacities, CHARLES P. KELLY, in his official and individual capacity,<br><br>    Defendants. | Civil Action No. 04-CV-10255-EFH |

**MEMORANDUM IN SUPPORT OF FEDERAL DEFENDANTS'**
**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**I.  SUMMARY**

The defendants, the Director of the Federal Bureau of Investigation[1] ("FBI"), Charles S. Prouty, former Executive Assistant Director ("EAD"), and Charles P. Kelly, Special Agent ("SA") (collectively "federal defendants"), through their undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Dismiss or in the Alternative for Summary Judgment, with respect to plaintiff, Brian J. Meuse's Complaint (Docket No.: 1, "Complaint"), for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, lack of jurisdiction over the individual defendants, and insufficiency of service of process.  Fed. R. Civ. P. 12.

The plaintiff's suit derives from events and alleged actions taken in October of 2000, through March of 2001, relating to the FBI involvement in the plaintiff's arrest for kidnapping.  The Complaint alleges civil rights violations and, *inter alia*, false arrest and imprisonment, assault, battery,

---

[1]      Pursuant to Fed. R. Civ. P. 25(d)(2), Robert S. Mueller, III, the current Director of the FBI, is automatically substituted for Louis Freeh, the former Director of the FBI, who was sued in his official capacity according to the caption of the plaintiff's Complaint.  Pursuant to Fed. R. Civ. P. 25(d)(2), a public officer who is sued in an official capacity may be described as a party by the officer's official title rather than by name.

defamation, and intentional infliction of emotional distress.[2]  As can best be determined from the Complaint, plaintiff's allegations of violations appear to be based on the presumption that the state warrant, and therefore the federal warrant, issued for his arrest were invalid.

## II. STATEMENT OF RELEVANT FACTS

1. On October 8, 2000, the plaintiff failed to return his daughter, Marissa Lynne Meuse, to her mother's home in Florida after a scheduled visit pursuant to a June 5, 2000, Temporary Order regarding support and visitation ("Temporary Order") issued by the Trial Court, Probate and Family Court Department, Essex Division, Commonwealth of Massachusetts.  Complaint, at Exhibit W; Exhibit 4, Affidavit of SA Charles P. Kelly, at ¶¶ 2(A), (B), ( C ); Complaint, at ¶¶ 152, 170.

2. Pursuant to the Temporary Order and an Interim Order issued by the Circuit Court of Volusia County, Florida ("Interim Order" Complaint, at Exhibit QQ), Susan Pane, the plaintiff's former girlfriend and mother of Marissa Meuse, had custody of the child in the State of Florida.  Complaint, at Exhibit W, Exhibit QQ; see also Complaint, at Exhibit T, ¶ 37, Findings of Fact and Conclusions of Law, Justice Manzi, Probate and Family Court, Commonwealth of Massachusetts.

3. On or about October 1, 2000, the plaintiff removed his daughter from Florida, contrary to the Temporary Order and the Interim Order, and traveled to Massachusetts.  Complaint, at Exhibit W, Exhibit QQ; Complaint, at ¶ 154.

4. From October 3, 2000 to October 5, 2000, the plaintiff, *inter alia*, placed his daughter in the care of Anne Kalip, a neighbor in Haverhill, Massachusetts.  Exhibit 4, Affidavit of SA

---

[2]The complaint alleges several claims, specifically: (1) Violation of 42 U.S.C. § 1983: arrest; (2) Violation of 42 U.S.C. § 1983: Detention and confinement; (3) Violation of 42 U.S.C. § 1983: conspiracy; (4) Violation of 42 U.S.C. § 1983: refusing or neglecting to prevent; (5) Malicious prosecution; (6) Abuse of process; (7) Violation of Mass Civil Rights Act (MGL c. 12., sec. 11I); (8) False arrest and imprisonment; (9) Assault; (10) Battery; (11) Conspiracy; (12) Defamation; and (13) Intentional Infliction of Emotional Distress.

Charles P. Kelly, at ¶ 2(D); Complaint, at ¶¶ 155, 156, 162, 165.

5. When Ms. Kalip requested the child's medical records and custody information, the plaintiff removed his child from Ms. Kalip's care. Exhibit 4, Affidavit of SA Charles P. Kelly, at ¶ 2(D). The plaintiff then dropped out of site with the child. Complaint, at ¶ 170.

6. The plaintiff then fled Massachusetts, and was apprehended by the Ada, Oklahoma Police Department on March 22, 2001. See generally Complaint, at ¶¶ 407 and 408 (only for purpose of plaintiff's acknowledgment of arrest in Ada, Oklahoma, March 22, 2001. All other allegations in ¶¶ 407 and 408 are denied).

7. A state arrest warrant was issued for Brian Meuse on October 25, 2000, by the Haverhill, Massachusetts, District Court for "Kidnapping Minor by Relative" in violation of Massachusetts General Laws (MGL), Chapter 265, Section 26A. Exhibit 1, Warrant of Arrest. MGL Ch. 265, § 26A states that if a child is kidnapped and taken outside the Commonwealth by a relative, the punishment is a fine of not more than $5,000, or by imprisonment in the state prison of not more than five years, or both.[3]

---

[3] Clarification regarding the characterization of the warrant is in order. This particular state arrest warrant contained a parenthetical note that reads: "PENALTY: house of correction not more than 1 year; or not more than $1,000; or both." Exhibit 1. Notably, though, and directly relevant to this action, the applicable MGL provision, Ch. 265, § 26A, states that if a child is kidnapped and taken outside the Commonwealth by a relative, the punishment is a fine of not more than $5,000, or by imprisonment in the state prison of not more than five years, or both (see full text below). Based on the relative punishments, the former would be characterized as a misdemeanor, and the latter, a felony. A computer printout obtained from the Commonwealth of Massachusetts Criminal Justice Information System indicates that a state felony warrant was issued on October 25, 2000, for the arrest of Brian Meuse, clearly demonstrating that the felony provisions of the statute were operative. Exhibit 5.

M.G.L.A. 265 § 26A states in full:

> Whoever, being a relative of a child less than eighteen years old, without lawful authority, holds or intends to hold such a child permanently or for a protracted period, or takes or entices such a child from his lawful custodian, or takes or entices from lawful custody any incompetent person or other person entrusted by authority of law to the custody of another person or institution shall be punished by imprisonment in the house of correction for not more than one year or by a fine of up to one thousand dollars, or both. Whoever commits any offense described in this section by taking or holding said child outside the Commonwealth or under circumstances which expose

8. A computer printout obtained from the Commonwealth of Massachusetts Criminal Justice Information System indicates that a state felony warrant was issued on October 25, 2000, for the arrest of Brian Meuse. Exhibit 5; see also footnote 3.

9. In a letter dated November 2, 2000, First Assistant District Attorney Robert N. Weiner, Essex County, Massachusetts requested the United States Attorney for the District of Massachusetts to seek the issuance of a federal flight warrant. Exhibit 2.

10. The FBI opened a fugitive investigation on November 4, 2000. On November 6, 2000, a federal arrest warrant for Brian Meuse was issued by the United States District Court for the District of Massachusetts for "Unlawful Flight to Avoid Prosecution" ("UFAP") in violation of 18 U.S.C. § 1073. Exhibit 3. [4]

10. SA Kelly executed the affidavit in support of the application for the UFAP warrant. Exhibit 4. A violation of 18 U.S.C. § 1073 requires that the related state crime be a felony. Id., at ¶ 2(G); see also footnotes 3 and 4.

11. Former EAD Prouty was the Special Agent in Charge of the Boston Division, the office handling the investigation for the FBI.

---

the person taken or enticed from lawful custody to a risk which endangers his safety shall be punished by a fine of not more than five thousand dollars, or by imprisonment in the state prison for not more than five years, or by both such fine and imprisonment. (Emphasis added)

[4] The affidavit of SA Kelly (Exhibit 4) states that law enforcement efforts to locate Brian Meuse and Marissa Meuse within the state of Massachusetts were unsuccessful. Exhibit 4, at ¶ 2(H) SA Kelly further stated that he had probable cause to believe that Brian Meuse had fled Massachusetts. Id., at ¶ 4.

### III.  ARGUMENT

#### A.   42 U.S.C. § 1983 Official Capacity Claims (Counts 1-4)[5]

##### 1.   The Official Capacity Claims Should Be Dismissed For Lack of Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction with respect to the claims against the federal defendants in their official capacities because the United States has not waived its sovereign immunity.  Furthermore, 42 U.S.C. § 1983, under which the plaintiff brings his suit, requires that the actions complained about be violations of state law.  In this instance, the federal defendants' conduct occurred under color of federal law, not state law.

A suit against an agent or officer of the United States in his official capacity is a suit against the United States.  See 28 U.S.C. § 1346(b); Eveland v. Director of Central Intelligence Agency, 843 F.2d 46, 49-50 (1st Cir. 1988); Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) ("A damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent.").  Absent a waiver of sovereign immunity, the United States is immune from suit.  See Muirhead v. Meacham, 427 F.3d 14, 17 (1st Cir. 2005) (case remanded for entry of order of dismissal for lack of subject matter jurisdiction, because the United States did not waive its sovereign immunity).  The United States' consent to be sued ordinarily takes the form of an express waiver of sovereign immunity which "cannot be implied but must be unequivocally expressed." Id. citing United States v. King, 396 U.S. 1, 4 (1969). Even then, the waiver must be strictly construed. Id.  If there is no waiver of sovereign immunity, courts lack jurisdiction over claims against the United States.  Id. citing United States v. Sherwood, 312 U.S. 584, 586 (1941); see also Howe v. Bank for Intern. Settlements, 194 F.Supp.2d 6, 19 (D.Mass. 2002) (the United State's consent to be sued is a prerequisite for jurisdiction); United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994), citing United

---

[5]   It is not clear whether the plaintiff intends for counts 5 and 6 alleging malicious prosecution and abuse of process, to be claims of constitutional violation.  If they are construed in that fashion, the arguments presented in this section would apply to those counts as well.

States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).

Moreover, because the FBI as a federal entity acts pursuant to federal law,[6] any alleged activity of the federal defendants (all employees of the FBI at the time) in their official capacities occurred under color of federal law. See Exhibits 3 and 4. To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that "the conduct complained of was carried out under color of state law." Gomez v. Toledo, 446 U.S. 635, 640 (1980); Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002). Section 1983 cannot form the basis of an action brought against officials acting under color of federal law, as the plaintiff attempts to do. See Rogers v. Vicuna, 264 F.3d 1, 3-4 (1st Cir. 2001) ("... [section] 1983 cannot form the basis of an action against individuals acting under color of federal law." (citations omitted)). Likewise, the United States has not waived its sovereign immunity from suit for money damages arising out of any alleged constitutional violations. A suit against the United States cannot be maintained under the guise of a suit against its officers and agents except in the manner provided by law. James v. Campbell, 104 U.S. 356 (1881).

Thus, because the plaintiff has failed to state a valid claim under 42 U.S.C. § 1983, the counts against the federal defendants in their official capacities should be dismissed.

**B.   Alleged Common Law And State Law Torts And Other Violations (Counts 5–13)**

    **1.   Plaintiff's Tort Claims Against The United States Should Be Dismissed For Lack Of Subject Matter Jurisdiction Because Plaintiff Failed To Exhaust Administrative Remedies As Required By the Federal Tort Claims Act**

As explained above, the United States is immune from suit except in those specific instances where it waives its sovereign immunity. See Block v. North Dakota, 461 U.S. 273, 280 (1983); Muirhead v. Meacham, 427 F.3d 14, 17 (1st Cir. 2005); Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989). In those instances, the terms and conditions of its consent to be sued, as

---

[6] "[T]he Federal Bureau of Investigation shall: (a) investigate violations of laws, including the criminal drug laws, of the United States and collect evidence in cases in which the United States is or may be a party in interest..." 28 C.F.R. § 0.85 (2003).

set out by Congress, limit and define the jurisdiction of any court, state or federal, to entertain an action against the United States.  United States v. Testan, 424 U.S. 392, 399 (1976); United States v. King, 395 U.S. 1, 4 (1969); Coggeshall Development Corp., 884 F.2d at 3.  To the extent that the plaintiff's Complaint alleges tortious activity by the federal defendants in the performance of their duties, the plaintiff's claims are governed by the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq ("FTCA"), which defines a court's jurisdiction to hear such a suit.

One of the primary conditions placed on the consent of the United States to be sued under the FTCA is set forth in 28 U.S.C. § 2675(a), which provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added).

In accordance with the statute, the filing of an administrative claim is jurisdictional, and is an absolute, non-waivable prerequisite to maintaining a civil action against the United States for damages arising from the alleged wrongful acts of a federal employee.  McNeil v. United States, 508 U.S. 106 (1993); Cotto v. United States, 993 F.2d 274, 280 (1st. Cir. 1993).

Here, the Complaint does not aver that Plaintiff filed an administrative claim with the FBI before he brought the instant matter before this Court.  Moreover, Plaintiff does not assert that the FBI has denied his claim in writing as required by the FTCA, nor does the FBI have any record of an FTCA claim being filed by the plaintiff.  See Exhibit 6, Declaration of William L. Hooton, Assistant Director, FBI Records Management Division.

In light of plaintiff's failure to comply with the administrative claim requirements of the FTCA, this court should find that it lacks jurisdiction over the subject matter of plaintiff's complaint

as it relates to the federal defendants, and the complaint should be dismissed as to the federal defendants pursuant to Fed. R. Civ. P. 12(b)(1).[7]

### 2. Counts 6-12 Against The United States Are Barred By The Statute of Limitations Under The FTCA

The Statute of limitations provision of the FTCA, 28 U.S.C. § 2401(b), as amended, provides as follows:

> A tort claim against the United States <u>shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues</u> ....

28 U.S.C. § 2401(b) (emphasis added).

This presentment requirement is jurisdictional and must be fully satisfied before a FTCA claim suit can be maintained. <u>Skwira v. United States</u>, 344 F.3d 64, 71 (1st Cir. 2003).

It is generally acknowledged that federal law governs the accrual of a cause of action. <u>See</u> <u>McLellan Highway Corp. v. United States</u>, 95 F.Supp.2d 1, 13 (D. Mass. 2000). Under federal law a cause of action "accrues" at the time of injury for most types of torts. <u>See</u> <u>Attallah v. United States</u>, 955 F.2d 776, 779 (1st Cir. 1992).

Count 6 (abuse of process) refers to the obtaining of the criminal complaint. This complaint was obtained on October 25, 2000. The statute of limitations for filing of an administrative claim with respect to that count ran on October 25, 2002. Count 8 (false arrest and imprisonment), Count 9 (assault), and Count 10 (battery), all refer to plaintiff's arrest on March 22, 2001. The statute of limitations for the filing of an administrative claim with respect to those counts ran on March 22, 2003. Count 11 (conspiracy) and Count 12 (defamation) refer to events that occurred prior to plaintiff's arrest on March 22, 2001. The statute of limitations for filing of an administrative claim

---

[7] As a consequence of the FTCA defect, plaintiff has also failed to comply with Fed. R. Civ. P. 8(a)(1), which mandates that "a pleading which sets forth a claim for relief....shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed .R. Civ. P. 8(a)(1).

with respect to those counts ran, at the latest, on March 22, 2003.

As with the plaintiff's failure to comply with the administrative claim requirements of the FTCA, this court should find that it lacks jurisdiction over the subject matter of plaintiff's complaint as it relates to the federal defendants, at least with respect to counts 6-12, for failure to timely file an administrative claim with the FBI. The complaint should thus be dismissed as to the federal defendants pursuant to Fed. R. Civ. P. 12(b)(1).

      **3.**      **There Was No Negligence On the Part of EAD Prouty or SA Kelly And Therefore, There Is No Waiver of Sovereign Immunity**

The provisions of 28 U.S.C. § 2680(a) provide that the Government is not liable under the FTCA where the government employee "exercised due care." The proper standard to apply in determining whether due care was used is the federal standard. Hydrogen Technology Corp. v. United States, 831 F.2d 1155, 1161 (1st Cir. 1987), cert. denied 486 U.S. 1022 (1988). Only if due care is found lacking should state negligence law be applied. Id. The First Circuit has used the standard expressed in the Restatement (Second) of Torts to find that federal standard. Jiminez-Nieves v. United States, 682 F.2d 1, 4 (1st Cir. 1982). Restatement (Second) of Torts § 282 defines negligence as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." The court in Hydrogen Technology Corp. stated the test to apply in a situation similar to the instant action is: "Considering the status of defendant (law enforcement agency) and that of plaintiff (subject of investigation) what would the reasonable law enforcement agency have done under the circumstances?" Hydrogen Technology Corp., 831 F.2d at 1161, quoting the district court below, 656 F.Supp. 1126 (D. Mass. 1987).

In this action, EAD Prouty and SA Kelly, relying on the information provided by the Haverhill Police Department and the Haverhill District Attorney's Office, proceeded as any reasonable person in their positions would proceed. EAD Prouty participated in a newscast, providing information of the type normally provided in such a situation. He had no reason to question the

accuracy of the information provided by the local police and the local district attorney, and he acted in a reasonable fashion. SA Kelly also had no reason to question the information provided by the local authorities, and his actions in obtaining the UFAP were the same actions any reasonable officer would have taken to assist in locating a missing child and a parent presumed to have abducted the child. It is an indisputable fact that "[p]olice work often requires officers to rely on the observations, statements, and conclusions of their fellow officers." Baptiste v. J.C. Penney Company, 147 F.3d 1252, 1260 (10th Cir. 1998). See United States v. Hensley, 469 U.S. 221, 230-33 (1985) (officers entitled to rely on flyer issued by another police department for reasonable suspicion to conduct investigatory stop); Whiteley v. Warden, 401 U.S. 560, 568 (1971) ("[p]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause"); Albright v. Rodriguez, 51 F.3d 1531, 1536 (10th Cir. 1995) ("[o]fficers may rely on information furnished by other law enforcement officials to establish reasonable suspicion ... and to develop probable cause for an arrest"); Capone v. Marinelli, 868 F.2d 102, 105 (3d Cir. 1989) ("Given that the NCIC bulletin expressly stated that a warrant existed for the arrest of Capone, as well as the nature of the alleged offenses and the fact that a young child was in possible danger, officer O'Neill's reliance upon the bulletin cannot be said to have been unreasonable." ).

As one district court has perceptively written, "the Constitution does not mandate that every single officer [involved in a search] conduct an independent investigation into the existence of ... probable cause." Fullard v. City of Philadelphia, 1996 WL 195388, *9 (E.D. Pa. 1996). The federal defendants acted reasonably here, and the allegations in the complaint do not show a lack of due care. These claims should be dismissed as to the federal defendants.

    **4.    The FTCA Does Not Waive Sovereign Immunity for Defamation**

Claims based on libel, slander, misrepresentation, or deceit are expressly excluded from the FTCA's general waiver of sovereign immunity. 28 U.S.C. §2680(h). This exception is broadly

construed. See United States v. Neustadt, 366 U.S. 696, 702 (1961). Defamation is included among these torts. See Jiminez-Nieves, 682 F.2d at 6. Plaintiff's complaint against federal defendants is based upon a claim excluded under §2680(h), and as such, is not actionable under the FTCA.

**C.   42 U.S.C. § 1983 Individual Capacity Claims (Counts 1-4)**

    **1.   The Claims Against EAD Prouty and SA Kelly In Their Individual Capacities Should Be Dismissed On The Grounds Of Qualified Immunity**

As stated above, 42 U.S.C. § 1983 precludes the plaintiff from bringing his constitutional claims against the federal defendants because they were acting under color of federal law, not state law as Section 1983 requires. Likewise, the Section 1983 claims against EAD Prouty and SA Kelly in their individual capacities should also be dismissed.

If the Court construes the Section 1983 allegations in Counts 1-4 as allegations of constitutional deprivation, the Court may consider jurisdiction over plaintiff's complaint, as to EAD Prouty and SA Kelly, as a "Bivens" action. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (establishing cause of action enabling plaintiff to seek judicial relief against federal officers who allegedly violated his Fourth Amendment rights). However, even in the Bivens context, the Section 1983 claims against EAD Prouty and SA Kelly should be dismissed on the grounds of qualified immunity because the plaintiff has failed to allege a constitutional violation.[8]

Under the doctrine of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar that their conduct does not violate

---

[8] Only federal officials who actually participate in the alleged constitutional violations are subject to a Bivens-type suit. "[T]he Plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of Bivens liability." Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000). The FBI Director, named only in plaintiff's complaint in his official capacity, is not discussed in this section because general responsibility of the Director for supervising the operation of the FBI is not sufficient to establish personal liability. Id.; see also .Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1987). Further, plaintiff does not identify any direct or specific involvement by the Director in his complaint. See Heinrich ex rel. Heinrich v. Sweet, 62 F.Supp.2d 282, 312 (D.Mass. 1999) (Dismissal is appropriate in a Bivens action if "the complaint fails to allege a violation of a statutory or constitutional right").

11

clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635 (1987). The purpose of qualified immunity is to shield government officials from "undue interference with their duties and from potentially disabling threats of liability." Harlow, 457 U.S. at 806. The Supreme Court has repeatedly emphasized that qualified immunity is an immunity from suit, not merely a defense to liability. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Further, the qualified immunity determination should be made as early in the litigation as possible, preferably on a motion to dismiss or an early motion for summary judgment and in advance of discovery. Hunter, 502 U.S. at 227; Anderson, 483 U.S. at 646, n. 6; Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). See also e.g. Siegert v. Gilley, 500 U.S. 226, 232 (1991). It protects government officials not only from adverse judgments, but also from discovery, trial, and other burdens of protracted litigation. Mitchell, 472 U.S. at 515.

A qualified immunity defense requires a twofold analysis: (1) whether a constitutional right would have been violated on the facts alleged; and assuming the violation is established, (2) whether the right alleged to have been violated was clearly established. Saucier v. Katz, 533 U.S. 194, 200-201 (2001); see also Siegart, 500 U.S. at 232. If the plaintiff fails to meet the first prong, then the defendants are entitled to immunity. Saucier, 533 U.S. at 200-201. If the plaintiff is able to meet the first prong, but cannot show that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted", then the defendants are again entitled to immunity. Id. If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity. Id.

In the First Circuit, it is not enough that a reasonable official would have recognized that the action in issue was wrong: "The contours of the right [must be] sufficiently plain that a reasonably prudent [official] would have realized not merely that his conduct might be wrong, but that it violated [the] particular constitutional right." Martinez v. Colon Pizarro, 54 F.3d 980, 988 (1st Cir. 1995), cert. denied, 516 U.S. 987 (1995).

12

To overcome qualified immunity, a plaintiff cannot simply allege that his constitutional rights were violated. Qualified immunity is not to be decided on the basis of a plaintiff's invocation of extremely broad or abstract rights. Instead, the contours of the claimed right must be sufficiently apparent so that a reasonable official in the defendant's position would have known of the unlawfulness of his conduct. Huntert, 502 U.S. at 227 (1991); Tatro v. Kervin, 41 F.3d 9, 15 (1st Cir. 1994). Thus, when a plaintiff fails to allege facts demonstrating a constitutional violation, as plaintiff in the instant action has failed to do with respect to EAD Prouty and SA Kelly, the federal defendants are entitled to qualified immunity as a matter of law. Applying the Saucier standard to the plaintiff's allegations in this action, it is clear that EAD Prouty and SA Kelly are entitled to qualified immunity.

**2.    EAD Prouty**

Plaintiff, in his complaint, refers to EAD Prouty's appearance on a Fox news segment on February 10, 2001. Complaint, at ¶ 315. The plaintiff alleges that EAD Prouty misrepresented that there was a custody agreement in this matter and that he untruthfully asserted that the plaintiff was a fleeing fugitive. Complaint, at ¶¶ 316, 325. Assuming for the purposes of a motion to dismiss or for summary judgment, that the plaintiff's allegations are true, a misrepresentation, or inaccurate statement (compare Complaint allegations with Complaint, at Exhibit W, Exhibit QQ, Exhibit T- ¶ 37), such as the one alleged here does not amount to a constitutional deprivation.

If, for example, there was a material misrepresentation in a warrant, resulting in the violation of a Fourth Amendment right against a search without probable cause or the deprivation of a Fifth Amendment right to due process, a hearing may be required to determine the validity of the warrant. See Franks v. Deleware, 438 U.S. 154 (1978); Krohn v. United States, 742 F.2d 24 (1st Cir. 1984); Vega -Encamacion v. Babilonia, 344 F.3d 37 (1st Cir. 2003); Aponte Matos v. Toledo Davila, 135 F.3d 182 (1st Cir. 1998). However, in this action the types of misrepresentation alleged against EAD Prouty had nothing to do with a search authorization or a warrant. The statements were part of a news program, and making the statements, even if inaccurate, did not result in any constitutional

deprivation. Thus, there is no action by EAD Prouty alleged by the plaintiff to have caused a constitutional violation.

In Counts 1 and 2 there are no claims that actions by EAD Prouty resulted in the alleged unconstitutional arrest. In Count 3 it is alleged that EAD Prouty's misrepresentations, in concert with others, resulted in Plaintiff's detention and confinement. Such a statement is not sufficient to support a Bivens claim. The statements made by EAD Prouty as part of the news segment, even if false, as alleged in Count 3, did not result in a constitutional violation, therefore, he is entitled to qualified immunity. Hunter, 502 U.S. at 227; Tatro, 41 F.3d at 15; Heinrich, 62 F.Supp.2d at 312.

Count 4 relies on a respondeat superior theory for liability of EAD Prouty. The plaintiff also alleges that the FBI agents were acting under the direction and control of EAD Prouty. Complaint, at ¶ 436. It is also alleged that EAD Prouty failed to properly instruct, supervise, control, and discipline the FBI agents. Complaint, at ¶ 437. It is also alleged that EAD Prouty knew wrongs were about to be committed against the plaintiff and failed to prevent the wrongs. Complaint, at ¶ 438. Finally, EAD Prouty is alleged to have approved and ratified the actions of the FBI agents. Complaint, at ¶ 439. Looking at this count in a light most favorable to the plaintiff and assuming all the allegations are true, Count 4 does not allege a Bivens claim against EAD Prouty. Respondeat superior is not a viable theory of Bivens liability. Ruiz Rivera, 209 F.3d at 28; see also footnote 8 supra.

### 3. SA Kelly

The actions that the plaintiff alleges in his complaint that are attributed to SA Kelly do not amount to a violation of the plaintiff's constitutional rights, thus, SA Kelly is likewise entitled to a defense of qualified immunity. Counts 1, 2, and 4 of plaintiff's complaint should be dismissed as to SA Kelly because there are no allegations concerning any specific actions by SA Kelly in those counts. The plaintiff alleges in Count 3 that SA Kelly's misrepresentations in concert with others indirectly cause the plaintiff's detention and confinement. As discussed above, under Bivens, these alleged misrepresentations do not amount to a constitutional violation. Further, indirect causation

does not state a proper claim in a Bivens suit. Hunter, 502 U.S. at 227 (1991); Tatro, 41 F.3d 9, 15 (1st Cir. 1994); Heinrich, 62 F.Supp.2d at 312.

The plaintiff alleges that SA Kelly informed "the captain" of the existence of the federal warrant for the plaintiff. Complaint, at ¶ 220. Additionally the plaintiff alleges that SA Kelly undertook various actions such as investigating the case, performing stakeouts, and in total spending a couple hundred hours on the case. Complaint, at ¶¶ 220, 226, 268, 271, 275, 269, 285, 289, 295, 335. Under the authorities discussed above, none of these alleged actions of SA Kelly remotely implicate the plaintiff's constitutional rights. Thus, SA Kelly is entitled to qualified immunity and these claims against SA Kelly should be dismissed.

### 4. Failure To Meet The Saucier Standard

As explained above, there was no constitutional deprivation involving the actions of EAD Prouty or SA Kelly. Thus, plaintiff fails the first prong of the Saucier standard, and the constitutional claims should be dismissed as to these defendants in their individual capacities. Saucier v. Katz, 533 U.S. at 200-201.

Even if the Court were to find that some action of these defendants violated the plaintiff's constitutional rights, though they did not, the plaintiff cannot satisfy the second prong of the Saucier standard because "the contours of the right" are not "sufficiently plain that a reasonably prudent [official] would have realized not merely that his conduct might be wrong, but that it violated [the] particular constitutional right." Martinez, 54 F.3d at 988.

The fundamental premise of plaintiff's complaint is that the state arrest warrant was invalid, thereby invalidating the federal UFAP warrant. Even assuming for the purposes of discussion that the premise is correct, and it is not, the plaintiff cannot meet the second prong of the Saucier standard, because it would not have been sufficiently clear to a reasonable officer that the warrants were invalid. Therefore, the plaintiff's complaint as it relates to EAD Prouty and SA Kelly individually should be dismissed.

SA Kelly's conduct in obtaining the federal warrant was reasonable under Saucier. His affidavit lists the information on which the warrant application was based. SA Kelly stated that the information upon which he relied was provided by Assistant District Attorney ("ADA") Eileen Foreman of the Essex County District Attorney's Office. Exhibit 4, at ¶ 2. Among the information provided by ADA Foreman was the statement that the plaintiff failed to return his minor child to the child's mother, in violation of a court order placing the child under custody of the mother (Exhibit 4, at ¶ 2 ( C ); see also Complaint, at Exhibit W, Exhibit QQ, Exhibit T- ¶ 37); that an arrest warrant was issued by the Haverhill District Court charging Brian Meuse with kidnapping of a Minor By Relative in violation of MGL, Ch. 265, § 26A (Exhibit 4, at ¶ 2 (F));  and that law enforcement efforts to locate the plaintiff in the Commonwealth of Massachusetts had been unsuccessful (Exhibit 4, at ¶ 2 (H)).  Further, on November 2, 2000, Robert N. Weiner, First Assistant District Attorney ("FADA"), Eastern District, sent a letter to the United States Attorney for the District of Massachusetts, seeking a federal flight warrant, and a copy of the warrant issued by the Haverhill District Court was attached. Exhibit 2.

Based on the knowledge that SA Kelly had from ADA Foreman at the time of his application for the federal warrant, the request from FADA Weiner, as well as the state arrest warrant examined in conjunction with the relevant provision of Massachusetts law (MGL, Ch. 265, § 26A), it is clear that SA Kelly acted reasonably in the situation he confronted. See Section B.3. supra. There is nothing on the state arrest warrant that would indicate it was facially invalid, given that SA Kelly was informed that attempts to locate the plaintiff in the Commonwealth had failed, and there was probable cause to believe the plaintiff had fled the district of Massachusetts in violation of Massachusetts law and federal law. Exhibit 4, at ¶¶ 2–4; see also footnote 3 supra.

Finally, in addition to the information provided to SA Kelly by state district attorneys, two courts reviewed the same information available to SA Kelly and approved the warrants. The state attorneys and courts did not find it "sufficiently plain" that a constitutional violation would result

16

from the issuance of the warrants, thus, it cannot be said that it should have been clear to SA Kelly, EAD Prouty, or any reasonable officer that the conduct was unlawful in the situation confronted. " Martinez, 54 F.3d at 988; Saucier, 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." (citing Malley v. Briggs, 475 U.S. 335, 341 (1986) ( qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")).

Accordingly, the constitutional claims against SA Kelly and EAD Prouty, should be dismissed.

**D.   Plaintiff Has Failed to Effect Proper Service of The Complaint On The Federal Defendants**

Notwithstanding the Court's Order of October 11, 2005, the plaintiff has failed to meet the requirements under Fed. R. Civ. P. 4(i),[9] regarding service of the Complaint.

---

[9]   Fed. R. Civ. P. 4:

Rule 4(i)(1) provides in pertinent part as follows:
   (1) Service upon the United States shall be effected
   (A) by delivering a copy of the summons and of the complaint to the United States Attorney for the district in which the action is brought . . . and
   (B) by also sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, DC

Rule 4(i)(2)(A) provides that:
   Service upon an officer, agency, or corporation of the United States, or an officer or employee of the United States sued only in an official capacity, is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency or corporation.

Rule 4(i)(2)(B) provides that:
   Service upon an officer or employee of the United States sued in an individual capacity for acts or omission occurring in connection with the performance of duties on behalf of the United States - whether or not the officer or employee is sued also in an official capacity - is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by serving the officer or employee in the manner prescribed by rule 4(e), (f), or (g).

(emphasis added).

17

Initially the federal defendants moved for dismissal of the plaintiff's Complaint on the grounds of failure to serve the Complaint in accordance with Fed. R. Civ. P. 4.  Docket No.: 99.  On October 11, 2005, the Court issued an Electronic Order stating that federal defendants' Motion to Dismiss "DENIED AT THIS TIME" and ordering that the plaintiff "TEN DAYS FROM TODAY'S DATE TO <u>PROPERLY</u> SERVE THE DEFENDANTS. SO ORDERED."  Docket entry of October 11, 2005 (emphasis added).

On October 12, 2005, undersigned counsel and counsel for the FBI conferred with plaintiff's counsel and explained to her the need to comply fully with Fed. R. Civ. P. 4, with respect to the named federal defendants in their official and individual capacities.  Exhibit 7, at ¶ 2, Declaration of Nolan J. Benson, Jr., Assistant General Counsel ("FBI Counsel"), FBI Headquarters.  On October 12, 2005, and October 17, 2005, FBI Counsel received authorization to accept service of process for SA Kelly and EAD Prouty, respectively, in their individual capacities.  <u>Id.</u>, at ¶ 3.  Undersigned counsel informed plaintiff's counsel of these authorizations immediately on the same dates.

On or about October 17, 2005, the United States Attorney's Office received a single copy of plaintiff's amended complaint, but did not receive a copy of the summons for the Director of the FBI in his official capacity, as required by Fed. R. Civ. P. 4(i)(2)(A), or a copy of the complaint and summons for each of EAD Prouty and SA Kelly, as required by Fed. R. Civ. P. 4(i)(2)(B).

The Docket indicates that a summons was returned executed as to the Attorney General (Docket No.: 104), but there is no verification of the service date, nor is there any verification that a copy of the summons for the Director of the FBI in his official capacity, as required by Fed. R. Civ. P. 4(i)(2)(A), or a copy of the complaint and summons for each of EAD Prouty and SA Kelly, as required by Fed. R. Civ. P. 4(i)(2)(B), were ever served on the Attorney General as required under Fed. R. Civ. P. 4(i)(1)(B).

On October 17, 2005, EAD Prouty advised FBI counsel that he had received word that the U.S. Postal Service attempted to deliver the Complaint to his home, but because he was not home to

sign for the package, the Complaint was not delivered.  Exhibit 7, at ¶ 4; see also Fed. R. Civ. P. 4(i)(2)(B) and 4(e)(2).  On November 3, 2005, FBI counsel received by U.S. mail the complaint for EAD Prouty.  Exhibit 7, at ¶ 7.  The receipt of EAD Prouty's complaint was over 12 days after the deadline set by the Court (October 21, 2005), and was not accompanied by a summons, as required by Fed. R. Civ. P. 4(i)(2)(B), or a waiver of service form called for under Fed. R. Civ. P. 4(d).

On October 19, 2005, FBI counsel received by U.S. mail the complaint for SA Kelly.  Exhibit 7, at ¶ 5.  The receipt of SA Kelly's complaint was not accompanied by a summons, as required by Fed. R. Civ. P. 4(i)(2)(B), or a waiver of service form called for under Fed. R. Civ. P. 4(d).

On October 21, 2005, FBI counsel received by U.S. mail the complaint for the Director of the FBI.  Exhibit 7, at ¶ 6.  The receipt of the FBI Director's complaint was not accompanied by a summons, as required by Fed. R. Civ. P. 4(i)(2)(A), or a waiver of service form called for under Fed. R. Civ. P. 4(d).

Because the plaintiff failed to properly serve the defendants, this court lacks personal jurisdiction over the defendants.  See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a ... court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").  See also Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc. 526 U.S. 344, 350 (1999) (Service of Process is fundamental to any procedural imposition on a named defendant.)  In the absence of proper service of process, a court ordinarily may not exercise power over a party the complaint names as defendant.  Id.

Dismissal of the complaint as to the federal defendants is appropriate here based the lack of jurisdiction resulting from the plaintiff's failure to effectuate proper service.  See, e.g., McGuire v. Turnbo, 137 F.3d 321, 323 (5th Cir. 1998) (dismissal of Bivens defendants for lack of personal service upheld); see also McGregor v. United States, 933 F.2d 156 (2d Cir. 1991) (affirming dismissal for failure to serve the Attorney General); McLamb v. U.S. Dept. Of Treasury, 858 F.Supp. 1042 (S.D. Cal. 1994) (plaintiff failed to comply with either service requirement, case dismissed under 12(b)(5));

Dutkiewicz v. Foster, 88 F.R.D. 85 (D.Mass. 1980) (dismissing a *pro se* plaintiff's action for failure to comply with Fed. R. Civ. P. 4); see also Alvarado Morales v. Digital Equipment Corp., 843 F.2d 613 (1st Cir. 1988).

Accordingly, federal defendants respectfully requst that the Cour reconsider dismissal of the plaintiff's Complaint for insufficiency of service of process.

## IV.  CONCLUSION

Based on the foregoing, the plaintiff's Complaint should be dismissed as to the federal defendants, or in the alternative, summary judgment should be granted to the federal defendants.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

OF COUNSEL:
Nolan J. Benson, Jr.
Assistant General Counsel
Office of the General Counsel
Federal Bureau of Investigation
935 Pennsylvania Ave., N.W.,
Washington, D.C.  20535
202-220-9323 (Voice)
202-220-9353 (Fax)

By:    /s/ Anton P. Giedt   1/31/06
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way - Suite 9200
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), he has conferred with Plaintiff''s counsel over the past several months regarding the plaintiff''s Complaint.

/s/ Anton P. Giedt 2/3/06
Anton P. Giedt
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                                                      Boston, Massachusetts
                                                                                                                  DATE: February 3, 2006

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Plaintiff's counsel of record through electronic filing.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney