Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 1 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006    8:19 AM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly,** in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

**MEUSE 'S LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
(An opposition and a supporting memorandum accompany this Local Rule 56.1 Statement of Facts, and an affidavit appears below the signature on page 13.)**

Now comes Brian J. Meuse ["Meuse] and submits his Local Rule 56.1 Statement of Facts in support of his opposition to the Motion to Dismiss, or in the Alternative for Summary Judgment by Defendants Louis Freeh ["Freeh"], Charles S. Prouty ["Prouty"], and Charles P. Kelly ["Kelly"].

This pleading is divided into four sections:

- Part I:   Summary of Facts Pled in Complaint (with Addendum Exhs. A-HHH).  These facts are uncontroverted by the FBI defendants.
- Part II:  Undisputed Facts According to Meuse
- Part III: Disputed Facts
- Part IV: Mixed Fact and Law

1

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 2 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM

**Part I:  SUMMARY OF FACTS PLED IN COMPLAINT AND ADDENDUM EXHIBITS**

Meuse incorporates herein by reference all the facts stated in the Amended Complaint and its exhibits and Part I from MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF HIS OPPOSITION TO ROSALYN STULTS' MOTION FOR SUMMARY JUDGMENT [**Paper 118**].

**Part II: MEUSE'S UNDISPUTED FACTS**

> **NOTE**
> Meuse incorporates herein by reference Papers ## 1, 7, 55, 100, 116, and 118.

1. During 2000 and 2001, when Meuse's injuries began, for instance, Meuse did not know the extent of the FBI Agent Kelly's or Agent Prouty's or the FBI Director's role.

2. On 23 March 2001, Meuse was captured in Ada, Oklahoma [**Am.Compl. ¶384 and Exh. FFF**],

3. On 5 April 2001, Meuse was arraigned in Haverhill, Massachusetts [**Am.Compl. ¶267**],

4. On the day Meuse was arraigned, 5 April 2001, Haverhill District Court Judge Herlihy wanted to see the FBI warrant, when the issue of its non-existence arose, and requested Essex County Assistant District Attorney John DePaolo to produce it [**Am.Compl. ¶267**],

5. The Essex County D.A.'s office never produced a federal warrant to arrest Meuse.

6. On Thursday, 23 May 2002, in Haverhill District Court, which has no jurisdiction over felonies, Meuse was found Not Guilty by a jury of his peers [**Am. Comp. ¶395**].

7. Meuse filed and served the Complaint in this action on 6 February 2004.

8. On 1 July 2004, FOX and STF/AMW filed oppositions [**Papers 65 and 66, respectively**] to Meuse's Motion for Reconsideration, FOX having joined in STF/AMW's opposition.

9. STF/AMW's opposition [**Paper 66**] included Exhibit A, which was comprised of three documents: **(1)** a federal Complaint seeking an arrest warrant, **(2)** a warrant **UN**signed by the magistrate-judge whose name had been typed on the warrant form, or by any other judicial officer, and **(3)** an affidavit by FBI Special Agent Kelly.\[1]/  All three documents were explicitly dated 6 November 2000.

10. Allegedly on 6 November 2000, Kelly affianced that Meuse had been charged with a felony [**Kelly Aff. ¶¶2(F) and (G)**].

11. Meuse knew that the statement that he had been charged with a felony was untrue, but Meuse did not know what Defendants Detective Moynihan and/or Captain Thompson

---

[1]  These same documents were also in an exhibit to the FBI's second Motion to Dismiss of 3 February 2006.

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 3 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM

had communicated to Kelly either orally or in writing\**2**/

12. The FBI's Complaint, dated 6 November 2000, **(a)** was signed by FBI Special Agent "Charles P. Kelly," **(b)** sought a federal warrant based under 18 U.S.C. §1073), and **(c)** had attached Agent Kelly's affidavit which was also dated 6 November 2000.

13. The Warrant for Arrest, also allegedly dated on 6 November 2000, **(a)** included the false statement that Meuse had been charged with "Unlawful Flight to Avoid Prosecution" in violation of 18 U.S.C. §1073, and **(b)** was not signed by the magistrate-judge whose name had been typed on the warrant form as being the "Issuing Officer," or by any other judicial officer.

14. Section 1073 requires a State felony warrant to have issued. **FBI Statement of Fact 10(#2).**

15. No court in the Commonwealth ever issued a State felony warrant for Meuse.

16. During July 2004, Meuse learned that in the alleged case, United States v. Meuse, No. 00-MJ-889-MBB [*see* **Figure 1.** *infra*], the FBI's Complaint dated 6 November 2000 was allegedly **filed** on "10/8/2000" (a Sunday), a month **before** the Complaint form was filled out, and was ultimately entered into the docket on "4/25/01," a month after Meuse's capture and a few weeks after his arraignment.

17. Haverhill Police Detective Moynihan and Captain Thompson admitted never having seen the alleged federal warrant [**Am.Complaint, ¶¶219, 223-224**].

18. The USDC docket does not memorialize the filing of the purported affidavit of Agent Kelly on any date whatsoever [*compare* **the entry for "Paper 2" in the** *Alves* **docket sheet, in Exh. B, attached here, and in Doc. #62**].

19. The docket does not memorialize any hearing before the court on the complaint.

20. The docket does not memorialize the issuance of a warrant on any date whatsoever [*compare* **entry on 5/23/00, showing issuance of** *Alves* **warrant, in Exh. B, attached here, and to Doc. #62**].

21. The docket sheet does not memorialize any Return of a received and executed arrest warrant [*compare* **entry for Paper 4, the Return in** *Alves* **docket sheet, in Exh. B, attached here, and to Doc. #62**].

22. The criminal complaint and affidavit prepared by Agent Kelly avers that Meuse "picked up" his child in Florida [**Kelly's Affidavit, ¶2(B)**] and that Meuse was charged in Massachusetts with kidnapping a minor relative [**Kelly's Affidavit, ¶¶2(F) and (G)**].

23. The untimeliness of the entry of the Meuse case into the docket made it *invisible* in the clerk's office [*see* **Figure 2.** *infra*].

---

**2**   Was it reasonable for Kelly to believe Moynihan or Thompson? Meuse could not answer that question because it had not been revealed what Moynihan or Thompson had communicated to Kelly.

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT      2/27/2006   8:19 AM

| Filing Date | # | Docket Text |
|---|---|---|
| 10/08/2000 | 1 | COMPLAINT as to Brian Meuse , filed. (fmr) (Entered: 04/25/2001) |
| 04/24/2001 | 2 | MOTION by USA , as to Brian Meuse to dismiss , filed. (fmr) (Entered: 04/25/2001) |
| 04/24/2001 |   | Mag. Judge Marianne B. Bowler. ENDORSED ORDER as to Brian Meuse : granting [2-1] motion to dismiss as to Brian Meuse (1). (fmr) (Entered: 04/25/2001) |
| 04/24/2001 |   | DISMISSAL of Count(s) on Government Motion as to Brian Meuse . Complaint dismissed. (fmr) (Entered: 04/25/2001) |
| 04/25/2001 |   | Case closed as to all defendants, as to Brian Meuse party Brian Meuse (fmr) (Entered: 04/25/2001) |

**Figure 1. An excerpt from the docket sheet for <u>USA v. Meuse</u>, Case No. 00-MJ-889-MBB.**
**[Compare with FBI Exh. 1 to Document 116, filed in this court on 02/03/2006.]**
The Complaint allegedly filed on 10/08/2000 is dated 11/06/2000,
making the entry date in the docket sheet a fabrication by a person unknown as yet.
There is no notation of FBI Agent Kelly's affidavit having been filed.
There is no notation of a hearing before a clerk or a magistrate-judge or a judge.
There is no notation that a §1073, a UFAP, warrant was issued.

| TABLE 2. Dates Filed and Dates Entered into Docket List for MBB ||||
|---|---|---|---|
| 00-MJ-00860 | No case | -- | -- |
| 00-MJ-00861 | No case | -- | -- |
| 00-MJ-00862-MBB | USA v Roldan | Date Filed: 5/16/00 | Date Entered: 5/18/00 |
| 00-MJ-00863-MBB | USA v. Jimenez | Date Filed: 5/17/00 | Date Entered: 5/17/00 |
| 00-MJ-00864 | No case | -- | -- |
| 00-MJ-00865 | No case | -- | -- |
| 00-MJ-00866 | No case | -- | -- |
| 00-MJ-00867 | No case | -- | -- |
| 00-MJ-00868 | No case | -- | -- |
| 00-MJ-00869 | No case | -- | -- |
| 00-MJ-00870 | No case | -- | -- |
| 00-MJ-00871 | No case | -- | -- |
| 00-MJ-00872 | No case | -- | -- |
| 00-MJ-00873 | No case | -- | -- |
| 00-MJ-00874 | USA v. Vasquez | Date Filed: 5/22/00 | Date Entered: 5/23/00 |
| *00-MJ-00875-MBB* | *USA v. Alves* * | *Date Filed: 5/23/00* | *Date Entered: 5/23/00* |
| 00-MJ-00876-EFH | USA v. Edwards | Date Filed: 5/23/00 | Date Entered: 5/30/00 |
| 00-MJ-00877 | No case | -- | -- |
| 00-MJ-00878 | No case | -- | -- |
| 00-MJ-00879 | No case | -- | -- |
| 00-MJ-00880 | No case | -- | -- |
| 00-MJ-00881 | No case | -- | -- |
| 00-MJ-00882 | USA v. Ramos | Date Filed: 11/2/00 | Date Entered 11/6/00 |
| 00-MJ-00883 | USA v. Taylor | Date Filed: 11/3/00 | Date Entered 11/3/00 |
| 00-MJ-00884 | USA v. Ogando | Date Filed: 11/3/00 | Date Entered 11/6/00 |
| 00-MJ-00885 | No case | -- | -- |
| 00-MJ-00886 | No case | -- | -- |
| 00-MJ-00887 | No case | -- | -- |
| 00-MJ-00888 | No case | -- | -- |
| *00-MJ-00889-MBB* | *USA v. Meuse* ** | *Date Filed: 10/08/00* | *Date Entered 4/25/01* |
| 00-MJ-00890 | No case | -- | -- |
| 00-MJ-00891-MBB | USA v. Hamilton | Date Filed: 11/7/00 | Date Entered 11/8/00 |
| 00-MJ-00892 | No case | -- | -- |
| 00-MJ-00893 | No case | -- | -- |
| 00-MJ-00894 | No case | -- | -- |

\*   <u>USA v. Alves</u> Docket Sheet, attached as Exhibit B
\*\*  <u>USA v. Meuse</u> Docket Sheet, attached as Exhibit A; an empty numbered slot

**Figure 2. An excerpt from the docket sheet for <u>USA v. Alves</u>, Case No. 00-MJ-875-MBB.**

4

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 5 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM

24. At the time of the FOX Broadcast, in February 2001, the warrant had not issued.

25. At the time the posters were distributed, the warrant had not issued.

26. And after Meuse was acquitted of parental kidnapping in May 2002, there was no warrant for his arrest for unlawful flight to avoid prosecution or parental kidnapping.

27. STF/AMW and NCMEC continued to retain on their website WANTED posters identifying Meuse as an abductor for two years after he was acquitted, until he filed the instant action.

28. The <u>Alves</u> docket sheet, **Exh. B**, **attached here, and to Doc. #62,** shows clearly that an affidavit and the ensuing warrant were filed and entered into the docket on the same day that the Complaint was filed.

29. The <u>Meuse</u> docket sheet, **Exh. A**, **attached here, and to Doc. #62** shows **no affidavit and no warrant and no return of service**.

30. There was no valid custody order prior to Meuse taking the child [**Am.Compl. ¶324 and Compl. CCC, memorandum supporting adjudication of this issue (Swan, J.)**],

31. There was no crime charged against Meuse before he left Massachusetts with the child.

32. There was no crime committed in either Florida or Massachusetts.

33. There was one affidavitless State warrant not signed by any state judge or clerk-magistrate.

34. Meuse was found Not Guilty of the *<u>state</u>* law crime with which he was charged **after** capture.

35. Meuse had and has never been charged with a federal crime, including 18 U.S.C. §1073 ("flight to avoid prosecution or giving testimony").

36. Meuse had and has never been tried for a federal crime, including 18 U.S.C. §1073 ("flight to avoid prosecution or giving testimony").

37. "The Federal Bureau of Investigation is in the Department of Justice."  28 U.S.C. §531.

38. The FBI "assists Federal, State, and local authorities in matters involving child abductions. . . ." [28 U.S.C. §531, Notes, subsection (b)], but Meuse had not abducted his child, and was found by a jury of his peers Not Guilty of Parental Kidnapping.

39. FBI and the NCMEC are partners.  42 U.S.C. §5771 (9)(B).

40. STF/AMW and Wal-Mart are partners of NCMEC [**Am.Compl. ¶¶13-15. Compl. Exhs. EEE and HHH**].

41. FOX and STF/AMW are sister corporations.

42. NCMEC is a private nonprofit corporation that has access to the National Crime Informa-

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 6 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT     2/27/2006  8:19 AM

tion Center of the Federal Bureau of Investigation. 42 U.S.C. §5771.

43. It is reasonable to infer, short of discovery, that the FBI recruited the assistance of NCMEC's partners Wal-Mart and STF/AMW and STF/AMW's sister corporation to capture Meuse.

44. Assistant District Attorney Eileen Forman of the Essex County (Massachusetts) D.A.'s Office requested the FBI "to assist in the location and apprehension of Brian Meuse"  [FBI Exh. 1, Affidavit of Charles P. Kelly, ¶¶1-2].[3]/[4]/

45. Meuse learned on 3 February 2006, when the FBI attached an exhibit to its second motion to dismiss [Doc. 116]:

   (a)   that FBI Agent Kelly knew that the State warrant was for a misdemeanor [Doc. 116, FBI Exh. 1, p. 7 of 20],

   (b)   that Kelly perjured himself when he affianced, allegedly on 6 November 2000, that Meuse had fled to avoid a felony [Doc. 116, FBI Exh. 4, ¶2(G) and ¶4],

   (c)   that Kelly knew that First Assistant U.S. District Attorney Robert Weiner was in possession of the State misdemeanor warrant and sought, on 2 November 2000, from U.S. Attorney Donald Stern a federal flight warrant [Doc. 116, FBI Exh. 2],

   (d)   that U.S. Attorney Donald Stern did not seek a UFAP warrant,

   (e)   that so-called federal Warrant for Arrest, dated 6 November 2000, and accompanying Kelly's affidavit was unsigned,

   (f)   that the Criminal Complaint, USA v. Meuse, was dated 6 November 2000 but allegedly filed on 8 October 2000, which was impossible, for the form for the federal Criminal Complaint seeking a 18 U.S.C. §1073 UFAP warrant had not yet been completed, and

   (g)   that Kelly and Prouty had in their possession a copy, if not the original, of the State misdemeanor warrant, which Kelly and Prouty, if they were trained properly, knew was insufficient to support their alleged request for an arrest warrant for Unlawful Flight to Avoid Prosecution ["UFAP"] under §1073, which requires a State felony warrant, not a State misdemeanor warrant.

46. Meuse did not, and still does not yet, know:

   (a)   the extent of Kelly's involvement in the contribution or creation of the contents of the multiple WANTED posters,

---

[3] At that point the FBI and its "deputies" began, at the very least, acting under the color of Massachusetts law as well as under federal law.

[4] Eileen Forman is registered with the Board of Bar Overseers *not* as Eileen Forman but as Eileen Whooley. Her birth name is Eileen Catherine Whooley. Forman appears to be the name she took upon marriage. Whether those documents she signed as an attorney named "Eileen Forman" are valid or proper is a question beyond the scope of this pleading.

6

Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 7 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006   8:19 AM

    (b)    whether Kelly provided to the defendant corporations false information regarding the invalid, unsigned federal warrant,

    (c)    if so, whether Kelly provided false information on his own volition or whether he was ordered by Prouty or "the Bureau" to provide the false information to the defendant corporations,

    (d)    whether Kelly provided to the defendant corporations false information regarding the invalid, unsigned federal warrant,

    (e)    whether Kelly provided to the defendant corporations false information that Meuse had been charged with a felony.

47. Meuse did and still does not know the extent of the role of Defendant FBI Agent Prouty as the head of the Boston branch of the FBI.

48. Prior to receiving from the FBI defendants on 3 February 2006 a copy of the State warrant showing only a misdemeanor charge, Meuse did not know **(a)** whether Prouty or Kelly knew that the Haverhill District Court issued a State misdemeanor warrant and **not** a felony warrant, **(b)** about the involvement of U.S. Attorney Stern and Assistant U.S. Attorney Weiner, and **(c)** that Prouty or Kelly had knowledge about the involvement of the Office of the U.S. Attorney.

49. Prior to receiving copies of the Criminal Complaint, signed by Kelly, and Kelly's affidavit from STF/AMW and FOX on 1 July 2004, Meuse did not know that Kelly had any other role other than working both alone and with Moynihan interviewing people who, they believed, might have known where Meuse was.

50. Meuse did not know whether Kelly was working on his own, i.e., outside the scope of his employment and authority.

51. Not yet having seen the FBI Handbook, the FBI Handbook Guidelines, the FBI Manual or other documents outlining policy and customs or outlining the duties and reporting responsibilities of FBI agents, Meuse has no knowledge of the extent of knowledge of the "Bureau."\[5]/

52. At the relevant times in this action, Prouty was, at most, the head of the Boston office of the FBI, not the Executive Assistant Director ["EAD"] as his counsel improperly and wrongly asserts throughout the FBI defendants' memorandum.

53. A State felony warrant never existed.

54. Other than for the physical descriptions of Meuse and the child, the information on the three posters was false.

---

[5] AUSA Geidt and Meuse's counsel did slightly confer about documents. Meuse's counsel requested a copy of the FBI Handbook so that she would have it for purposes of Meuse's opposition, but her request was denied on the grounds that it was "privileged."

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 8 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM

**UNDISPUTED FACTS THAT THE FBI SHOULD HAVE KNOWN HAD THEY CONDUCTED A PROPER INVESTIGATION**

55. On 4 October 1999, in Massachusetts, Meuse obtained, from Judge Herlihy in Haverhill District Court, a restraining order pursuant to M.G.L. c. 209A, which gave him custody of the child and ordered Susan Pane ["Pane"] not to leave Massachusetts with the child [**Ver. Am. Compl. ¶¶48 *et seq*; Compl. Exhs. M and N**].

56. In Florida, Pane got a temporary order of custody [**Ver. Am. Compl. Exh. QQ**].

57. On 26 October 1999, Meuse was granted a Temporary Emergency Injunction by the Seventh Judicial Circuit Court in Volusia County against Pane. The injunction enjoined Pane from removing the child from the county without order of the court [[**Ver. Am. Compl. ¶¶54, 57, Comp. Exh. OO**].

58. Pane repeatedly defied and violated the injunction. Meuse alerted the courts, resulting in a Massachusetts judge (Manzi, J.) and a Florida judge communicating, in accordance with the Massachusetts Child Custody Jurisdiction Act.

59. Judge Manzi held a hearing in March 2000 and on 3 May 2000 declared that Massachusetts was the Home State of the child, that Massachusetts would exercise jurisdiction, and that Susan Pane wrongfully removed the child to Florida in October 1999. [**Ver. Am. Compl. ¶64, Compl. Exh. T**]

60. In May 2000, the Florida court dismissed Pane's case for custody in two ways: initially by operation of law [**Exhibit C(4), attached hereto, in which Officer C. Miller confirmed the date of dismissal**] and later in writing (so that Meuse would have a piece of paper to use in a court as evidence of the Florida dismissal) [**Exhibit D, attached hereto**].

    a. The FBI defendants <u>wrongly</u> infer (by giving no date) that a Temporary Order and an Interim Order by the Circuit Court of Volusia County, Florida, giving temporary custody to Susan Pane, was in effect when Meuse took the child from Florida to Massachusetts [**FBI Statement of Fact 2**].

    b. Rosalyn Stults wrote two letters regarding the Florida orders. **(i)** The first letter is dated 9 August 2000, **prior to** Meuse taking the child, and was sent to Carmen Miller of the Port Orange Police Department. To Miller, Stults wrote that the Florida Orders were no longer in effect. [**Exhibit C(1-2), attached**] **(ii)** The second letter is dated 1 November 2000**, after** Meuse took the child, and was sent to Eileen Forman, then an assistant district attorney at the Essex County District Attorney's office. To the letter to ADA Forman, Stults attached a copy of the Interim Order that the Florida court issued on 1 November 1999. The inference was **false**, namely, that the November 1st order was still in effect [**Exhibit C(5), attached**].

61. Where Defendant Charles Prouty received a Juris Doctor degree from George Mason University in 1991, and is a member of the Virginia Bar [**Exhibit E, attached hereto**], he should have known to check or cause Agent Kelly to check the Florida court record before wrongly declaring that the Florida order that had been dismissed in May 2000 was still ac-

Case 1:04-cv-10255-EFH   Document 124   Filed 02/27/2006   Page 9 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT      2/27/2006   8:19 AM

tive on 1 October 2000 [**FBI Mem. Dism/SJ at 2, ¶¶2 and 3**].\[6]/

62. In June 2000, Judge Sahagian issued an Order relative to the medical examination of Pane and Meuse's child. It was solely predicated on the child receiving treatment if any prescribed by the medical examiners of the child.

63. In July 2001, Judge Sahagian's Order was adjudicated by Judge Alan Swan not to be a custody order [**Compl. Exh. CCC**]. In his decision, Judge Swan found that there was no custody order in Probate & Family Court prior to Meuse taking the child from Florida to Massachusetts. The FBI defendants would have this court believe otherwise [**FBI Statement of Fact 2**].

> 1  In this particular case, plaintiff mailed three copies of the summons and complaint to the Office of General Counsel of the FBI in Washington, D.C. The letter accompanying the copies thanked the counsel for agreeing to accept service on behalf of the named defendants. No such agreement was made, however, and counsel in the Office of General Counsel are only authorized to accept personal service if the individual has authorized such acceptance. The individually named defendant's did not give any such authorization. Subsequently, plaintiff mailed waiver forms to the Office of General Counsel for the FBI in Washington, D.C. The FBI

**Figure 3. FBI (first) Motion to Dismiss, at 3, n. 1.**

64. As the FBI defendants admitted, Meuse originally sent three summonses and three complaints and they were received [*see* **Figure 3**, *supra*].

65. After the court order of 11 October 2005, Meuse timely made proper service and filed returns of service on 9 November 2005 [*see* **Figure 4, an excerpt from docket sheet for this case** and **Exhibit F, summonses, letters, receipts for mailing, returned green slips**].

| 11/09/2005 | 105 | SUMMONS Returned Executed as to U.S. Attorney Michael J. Sullivan by Brian J. Meuse. (Holahan, Sandra) (Entered: 12/05/2005) |
| --- | --- | --- |
| 11/09/2005 | 104 | SUMMONS Returned Executed as to U.S. Attorney General Alberto R. Gonzales, Washington DC (Holahan, Sandra) (Entered: 12/05/2005) |
| 11/09/2005 | 103 | SUMMONS Returned Executed by Brian J. Meuse. Charles P. Kelly served on 10/19/2005, answer due 12/19/2005. (Holahan, Sandra) (Entered: 11/17/2005) |
| 11/09/2005 | 102 | SUMMONS Returned Executed by Brian J. Meuse. Louis Freeh served on 10/19/2005, answer due 12/19/2005. (Holahan, Sandra) (Entered: 11/17/2005) |
| 11/09/2005 | 101 | SUMMONS Returned Executed by Brian Meuse. Charles S. Prouty served on 11/2/2005, answer due 12/2/2005. (Holahan, Sandra) (Entered: 11/17/2005) |
| 10/11/2005 |  | Judge Edward F. Harrington : ElectronicORDER entered denying 99 Motion to Dismiss. MOTION DENIED AT THIS TIME. PLAINTIFF HAS TEN DAYS FROM TODAY'S DATE TO PROPERLY SERVE THE DEFENDANTS. SO ORDERED. cc/cl (Holahan, Sandra) (Entered: 10/11/2005) |

**Figure 4. Excerpt from Docket Sheet of the instant action.**

---

[6] Where Prouty was trained in the law, then the statement in the FBI defendants' memorandum is but an intentional smokescreen to hide the truth of the agents' intentional tortious acts or of their incompetence.

Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 10 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006   8:19 AM

66. The summonses show that Meuse got the summonses properly stamped and date-stamped (13 October 2005) by the clerk of the U.S. District Court. (Why would the summonses not have been sent with the Complaints?)

67. The receipts show that although the documents were sent to John Benson at ZIP 20535, the documents went first to a receiving facility at ZIP 20022 for security purposes, and were received by "M. Simon" at ZIP 20022 [**Exhibit F**].

## Part III: DISPUTED FACTS

1. The statement in **FBI Statement of Fact 2** is disputed because it infers that Pane had legal as well as physical custody of the child pursuant to an order of a Florida court. All orders of the Volusia County court were dismissed in May 2000 [**Exhibits C(1-5) and D, attached hereto**].

2. There is no evidence supporting the inference in **FBI Statement of Fact 5** that Meuse left because Kalip allegedly—according to *only* the FBI defendants—"requested the child's medical records and custody information." Meuse disputes that statement as being absolutely and totally untrue. Paragraph 170 in the Complaint does not support the FBI defendants' statement: "At some time thereafter, on 5 October 2000, Meuse dropped out of sight with the child." **Am.Compl. at ¶170**.

3. The statement in **FBI Statement of Fact 7** is disputed. It infers that the State arrest warrant issued by the Haverhill, Massachusetts, District Court for a felony. The FBI defendants' **Exhibit 1**, which it cites as support does *not* support their statement. They also cite, both in **footnote 3 on page 3** and in **FBI Statement of Fact 8**, their **Exhibit 5** as support. Meuse notes that the CJIS report had to have been filled out by a clerk who might not ever have seen the true State warrant, for the State warrant is a misdemeanor warrant.

    a. The FBI's **Exhibit 5** is a 2-page Criminal Justice Information System ["CJIS"] report on **pages 13-14** of the 20 pages of exhibits filed by the FBI.

    b. One field of the CJIS report on **page 13** reads, "WTP/FELONY."

    c. Another field of the CJIS report at the top of **page 14** reads, "THIS RECORD MAY ONLY BE USED BY CRIMINAL JUSTICE AGENCIES FOR CRIMINAL JUSTICE PURPOSES." This statement appears to presume that the information on it might not be correct and therefore may not be used in civil actions as evidence.

4. In **FBI Statement of Fact 9**, the FBI defendants cite their **Exhibit 2**, a letter from an assistant U.S. attorney, Robert N. Weiner, to the U.S. Attorney Donald Stern in Boston, as support for their averment that Meuse was charged with a felony.

5. In **FBI Statement of Fact 9**, the FBI defendants fail to state that U.S. Attorney Donald Stern did not act as AUSA Weiner requested, that is, U.S. Attorney Stern did not seek an arrest warrant pursuant to 18 U.S.C. §1073 for Meuse. Stern clearly recognized that there was *no* State felony warrant, but just a State misdemeanor warrant, which did not meet the statutory requirement of §1073.

Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 11 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006   8:19 AM

6. In **FBI Statement of Fact 10(#1)**, the FBI defendants allege that a federal arrest warrant issued on 6 November 2000. The docket sheet for USA v. Meuse [**Exhibit A, attached hereto**] and the unsigned Warrant for Arrest [**FBI Exhibit 3**] belie this FBI statement. That there was also no State felony warrant made it impossible for a valid federal arrest warrant to issue.

7. Meuse does not dispute that Kelly executed an affidavit. Meuse disputes the date of the affidavit and disputes parts of it which are untruthful.

8. The FBI defendants untruthfully state that "[Meuse] failed to allege a constitutional violation" [**FBI Memo. at 11**]. Meuse contends that, to the contrary, he did allege constitutional violations.

9. The FBI defendants refer throughout their memorandum to Prouty as "EAD," meaning "Executive Assistant Director" [**FBI Memo. *passim***]. Meuse contends that Prouty was the head of the Boston office at all times relevant to Meuse's Complaint, not the EAD.

10. The FBI defendants' assertion that Kelly is entitled to qualified imnunity for his perjurious affidavit and Criminal Complaint is insulting.

11. Other facts that either are in dispute or are as yet unknown by Meuse or unproven or as yet unadjudicated:

   (a) whether a federal warrant for Meuse's arrest ever existed;

   (b) the true date on which the FBI's Criminal Complaint was written;

   (c) the true date on which the FBI's Criminal Complaint was filed;

   (d) the true date on which FBI Special Agent Kelly's affidavit was written;

   (e) whether FBI Special Agent Kelly's affidavit was ever filed in this court;

   (f) whether the FBI's Criminal Complaint, SA Kelly's affidavit, and the unsigned warrant are of recent fabrication, for instance, after service of Complaint and Amended Complaints in this action;

   (g) the basis upon which the FBI defendants requested an arrest warrant under 18 U.S.C. §1073;

   (h) whether it is policy or custom of the FBI to ignore §1073's requirement of a State felony warrant;

   (i) whether anyone, and if so, who, instructed FBI Special Agent Kelly to write the affidavit and file the Criminal Complaint or whether he wrote it on his volition;

   (j) whether the FBI notified the National Center of Missing and Exploited Children ["NCMEC"] of the Meuse situation;

11

Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 12 of 13

MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM

 (k) which of the defendants first notified the NCMEC**;**

 (l) which of the defendants were in contact with NCMEC;

 (m) which of the defendants were interviewed by FOX;

 (n) who at NCMEC created the one or more of the posters and from where did the information for the posters come;

 (o) the nature and extent of FBI communications with the other defendants regarding Meuse and the events relevant to this action;

 (p) the communication between FOX and Prouty leading up to the Broadcast;

 (q) how much former-Director Freeh knew and whether he was involved in the Meuse case in any way, and if so, to what extent.

## Part IV: MIXED FACTS AND LAW

1. Given the number of sophisticated corporations and the other defendants who played along with the FBI, there was a conspiracy by the defendants, with diverse ulterior motives, to capture, imprison, and prosecute Meuse and to cause the consequences therefrom to harm him. To fake the existence of a federal Warrant for Arrest was but one step in the conspiracy, a step with which all the co-conspirators were in agreement.

2. While it is reasonable to assume that the nonlawyer defendants did not know, literally, the requirement of §1073 that a State felony warrant exist, it is not reasonable to conclude that none of them wanted to see the federal warrant.

3. The reasonable conclusion is that all the co-conspirators knew there was no federal warrant.

4. As lawyers, both Prouty and Stults knew or should have known their obligation to check out the facts before speaking to the press and other media persons about the existence of a federal warrant.

5. It is reasonable to conclude that the FBI agents were trying to enforce *state* law, for when the agents spread the word that there was a federal warrant, which had to be in accordance with 18 U.S.C. §1073, there was none.

6. Where Meuse was never charged with or tried for any federal crime, STF/AMW's and FOX's actions were under the color of state law, not federal law, for there was no federal law under which they were acting.

                Respectfully submitted,
                BRIAN J. MEUSE,
                By his attorney,

Case 1:04-cv-10255-EFH    Document 124    Filed 02/27/2006    Page 13 of 13

**MEUSE'S LOCAL RULE 56.1 STATEMENT OF FACTS
IN SUPPORT OF HIS OPPOSITION TO FBI DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT    2/27/2006  8:19 AM**

|  |  |
|---|---|
| 27 February 2006 | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net><br>Barbara C. Johnson, Esq., BBO #549972<br>6 Appletree Lane<br>Andover, MA 01810-4102<br>978-474-0833 |

## AFFIDAVIT BY BARBARA C. JOHNSON

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief. Sworn under the pains and penalties of perjury.

| | |
|---|---|
| 27 February 2006 | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att/net><br>Barbara C. Johnson, Esq. |