UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly,** in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

**MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**
**(An opposition and a Local Rule 56.1 Statement of Facts accompany this opposition.
An affidavit appears at the bottom of this pleading.)**

Now comes Brian J. Meuse ["Meuse] and submits this memorandum in opposition to Motion to Dismiss, or in the Alternative for Summary Judgment by Defendants Louis Freeh ["Freeh"], Charles S. Prouty ["Prouty"], and Charles P. Kelly ["Kelly"].

Meuse's Statement demonstrates that he has stated sufficient facts to state a claim for relief, making dismissal inappropriate on Fed.R.Civ.P. Rule 12(b)(6) grounds. He has complied with procedural requirements, making dismissal inappropriate on Rule 12(b)(1), Rule 12(b)(2), or Rule 12(b)(5) grounds. And, where there are genuine issues of material fact, summary judgment uder Rule 56(b) inappropriate.

| NOTE |
|---|
| Meuse incorporates herein by reference Documents ## 1, 7, 55, 100 116, and 118. |

1

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 2 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

## STANDARD

In passing on a motion to dismiss for lack of subject matter jurisdiction, a district court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." Viqueira, 140 F.3d at 16. A district court, however, has "very broad discretion in determining the manner in which it will consider the issue of jurisdiction." Valedon Martimez v. Hospital Presbiteriano de La Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986). Accordingly, in deciding a motion to dismiss, a district court may **(1)** consider evidence submitted by the parties, such as depositions and exhibits; **(2)** entertain arguments not raised by the parties' memoranda; and **(3)** resolve factual disputes, if necessary. See Jones-Booker, 16 F. Supp.2d at 58 (citations omitted).

Heinrich v. Sweet, 44 F.Supp.2d 408, 1999.DMA.0000048 < http://www.versuslaw.com> at ¶43 (D.Mass. 1999).(Young, C.J.) (denying the United States' motion to dismiss for lack of subject matter jurisdiction).

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Fed.R.Civ.P. 56(c). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. Anderson, 477 U.S. at 251, 254. A fact is material when it "might affect the outcome of the suit under the governing law." Id. at 248; Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993). In making its determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id. The movant has the initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the movant has met its burden, the non-moving party must "go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." Id. at 323-24 (internal quotation marks omitted). Guided by this standard of review, the Court examines each of the United States' arguments for summary judgment.

Rakes v. U.S., 352 F.Supp.2d 47, 2005.DMA.0000002 at ¶11 <http://www.versuslaw.com> (D.Mass. 2005).

## ARGUMENTS

1. **Where the Federal Torts Claims Act abrogates sovereign immunity in certain instances, and sovereign immunity is a judge-made rule that is sometimes favored and sometimes disfavored, depending on the facts, which we do not yet fully know, it is premature to dismiss Meuse's official-capacity claims in counts 1-4 on the grounds of lack of subject matter jurisdiction.**

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 3 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

Sovereign immunity is a judicially created doctrine like judicial or absolute immunity, which was imported\[1]/ from a case in the Star Chamber of 1607, viz, Floyd and Barker, 12 Co.Rep. 23, 77 Eng. Rep. 1305 (case of conspiracy).

> Despite its ancient lineage, the doctrine of sovereign immunity is nothing but a judge-made rule that is sometimes favored*fn7 and sometimes disfavored.*fn8 \[2]/ Its original reliance on the notion that a divinely ordained monarch can do no wrong*fn9 is, of course, thoroughly discredited.*fn10  Moreover, its persistent threat to the impartial administration of justice has been repeatedly acknowledged and recognized.*fn11 Thus, in FHA v. Burr, 309 U.S. 242, 245 (1940), we remarked on the current disfavor of the doctrine of governmental immunity from suit.*fn12
>
> Time after time Congress has taken action to ameliorate the hardship of the doctrine. A half century ago this Court observed:
>
> "A sense of justice has brought a progressive relaxation by legislative enactments of the rigor of the immunity rule. As representative governments attempt to ameliorate inequalities as necessities permit, prerogatives of the government yield to the needs of the citizen. . . . When authority is given, it is liberally construed." United States v. Shaw, 309 U.S. 495, 501 (1940).

United States v. Nordic Village, Inc., 503 U.S. 30, 1992.SCT.41276 at ¶¶53-55 <http://www.versuslaw.com> (1992).

Like Bowen v. Massachusetts, 487 U.S. 879 (1988), the instant suit is "a suit to review agency action which was claimed to be contrary to federal law" \[3]/ Coggeshall Development

---

[1]   The earliest Supreme Court case to invoke judicial immunity was Randall v. Bingham, 74 U.S. (7 Wall.) 523 (1868)—from Massachusetts. (The year appears as 1868 or 1869.) In Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871), the doctrine became more draconian for a petitioner, by allowing judicial immunity even when judges were malicious or corrupt.

[2]   . . . Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955) (Frankfurter, J.) (Court should not be a self-constituted guardian of the Treasury [and] import immunity back into a statute designed to limit it); Canadian Aviator, Ltd. v. United States, 324 U.S. 215, 222 (1945) (Court should not thwart the broad statutory language authorizing suit against the United States with an unduly restrictive interpretation).

U.S.v. Nordic Village, Inc. 503 U.S. 30, 1992.SCT.41276 AT ¶68 n. 8 (dissent) <http://www.versuslaw.com> (1992).

> In Indian Towing Co. v. United States, 350 U.S. 61 (1955), this principle was applied to the Coast Guard in a situation where it was charged with failure to maintain the beacon lamp in a lighthouse resulting in damage to a barge that went aground. The Supreme Court said that while the Coast Guard need not have undertaken the lighthouse service, once it exercised its discretion to operate the light, thereby engendering reliance on the guidance afforded by the light, it was obligated to use due care to maintain the light and to make repairs or give warnings when the light was not functioning. For failure to do so it was liable in money damages for any injury which resulted.

Neal v. Bergland, 646 F.2d 1178, 1981.C06.40959at ¶52 <http://www.versuslaw.com>  (6th Cir. 05/01/1981).

[3]   The agency in Bowen was acting under the sovereign immunity waiver provisions of the Administrative Procedures Act. 5 U.S.C. § 702.  Meuse notes only that the "bureau" like the "agency" was acting contrary to federal law.

3

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 4 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006  8:49 AM

Corp. v. Diamond, 884 F.2d 1, 1989.C01.40241 at ¶39 <http://www.versuslaw.com> (1st Cir. 9/05/1989, as corrected 9/14/1989).

> Pursuant to G.L. c. 258, § 10(c), governmental liability is not to attach to "any claim arising out of an intentional tort, including ... false imprisonment, [or] false arrest." Since we have found no legislative history interpreting G.L. c. 258, § 10(c), and since there is no Massachusetts case on point, **we have considered cases interpreting similar language under the Federal Tort Claims Act (28 U.S.C. § 2680(h) (1976)),** and an analogous State act (Alaska Stat. § 09.50.250 (1973)). Those authorities are divided in defining the scope of actions which are excluded by statute from a waiver of sovereign immunity. The differing analyses depend, in large part, on different interpretations of what claims may be considered as "arising out of" the torts specifically excluded by statute. Some courts have read "arising out of" in a narrow sense and have allowed actions to be brought against the government when a cause of action independent of the torts specifically enumerated by statute is alleged. See Rogers v. United States, 397 F.2d 12, 15 (4th Cir.1968); Quinones v. United States, 492 F.2d 1269, 1279-1281 (3d Cir.1974); Zerbe v. State, 578 P.2d 597 (Alaska 1978). Other courts have read the language of the statute broadly, thereby retaining a substantial degree of governmental immunity. *See* Gaudet v. United States, 517 F.2d 1034, 1035 (5th Cir.1975); Jimenez-Nieves v. United States, 682 F.2d 1, 3-6 (1st Cir. 1982); Duenges v. United States, 114 F.Supp. 751 (S.D.N.Y. 1953); Collins v. United States, 259 F.Supp. 363, 364 (E.D.Pa.1966). **We are persuaded by the reasoning in the Quinones case that the focus must be upon "the type of governmental activity that might cause harm, not upon the type of harm caused."** Quinones v. United States, 492 F.2d at 1280; General Pub. Util. Corp. v. United States, 551 F.Supp. 521, 529 (E.D.Pa.1982). But *cf.* Jimenez-Nieves v. United States, 682 F.2d at 6.

Ortiz v. Hampden County, 16 Mass.App.Ct. 138, 139-140, 449 N.E.2d 1227, 1228-1229 (1983) (some internal cites omitted) (emphasis supplied).

Suit "will not be barred by sovereign immunity, if it is one for specific relief against officers. . . . However, to come within this 'specific relief' exception a claimant must allege and prove that the officer has acted outside of the scope of his authority." Coggeshall Development Corp. v Diamond, 884 F.2d 1, 1989.C01.40241 at ¶ <http://www.versuslaw.com> (1st Cir. 1989), citing to Larson v. Domestic & Foreign Commerce Corp.,337 U.S. 682, 689-690 (1949).

   a. **Where Meuse was deprived of his fundamental constitutional rights and the agents knew he would be by their actions, he may seek money damages by a *Bivens*[4]/ action against the FBI defendants, making inappropriate the dismissal of Meuse's claims on the grounds of lack of subject matter jurisdiction.**

---

**4**  Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

4

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 5 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

Given **(1)** that this court already stated: because Constitutional amendments were pled in the §1983 claims, it was assuming the §1983 counts included *Bivens* claims, **(2)** that Meuse already argued the law relative to *Bivens* claims in the thread beginning with his motion to reconsider the dismissal of the §1983 claims against the corporations [**Paper #55, *et seq***], Meuse hereby incorporates by reference all his pleadings on the subject, rather than repeat that which has already been written.

With that said, Meuse goes to the bottom line: "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."  Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001).  In fact, in Krohn, *infra*, the First Circuit Court of Appeals wrote:

> For present purposes we see no difference between the *Bivens* claim and the section 1983 claim, so there is no need to discuss whether section 1983 applies to actions by a federal official allegedly taken under color of state law.

Krohn v. United States, 742 F.2d 24, 1984.C01.40137 at ¶55 n. 2  <http://www.versuslaw.com>; (1st Cir. 1984) (an action seeking damages for false arrest and other civil rights violations arising from an FBI investigation into the unexplained disappearance of a person).

**A**ctions for damages under *Bivens* for violations of the Eighth Amendment or of the Due Process clause of the Fifth Amendment have been recognized.  Hayes v. Federal Bureau of Investigation, 562 F.Supp. 319 (S.D.N.Y. 1983).  *See also* Putman v. Gerloff, 639 F.2d 415, 418-20  (8th Cir.1981).

Damages are recoverable in a *Bivens* action for constitutional torts committed by federal agents, and under 42 U.S.C. §§1985(3) and 1986, for a conspiracy with other FBI agents and officials of a city  Wahad v. F.B.I., 813 F.Supp. 224 (S.D.N.Y. 1993).

An actionable conspiracy to violate federal rights, even by federal officials acting under color of federal law, may be brought under §1985(3) where there was a conspiracy to violate Meuse equal protection.  See Wilson v. Rackmill, 878 F.2d 772 (3rd Cir. (Pa.) 1989).

5

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 6 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

A punitive damages award is permissible in either a *Bivens* action or an action brought under the civil rights conspiracy statute when defendants are found to have acted with malicious intent to deprive a person of a right guaranteed by the Constitution. Hobson v. Wilson, 737 F.2d 1 (D.C.Cir. 1984).

2.  **Where FBI Agents Prouty and Kelly were acting outside the scope of their official capacities and where the Federal Tort Claims Act ["FTCA"] is silent as to claims for the deprivation of constitutional rights, the need to exhaust administrative remedies under the Federal Tort Claims Act was non-existent, precluding dismissal on the grounds of lack of subject-matter jurisdiction**.

    [T]he violation of a federal constitutional grant cannot itself serve as a predicate for a claim under the FTCA. Brown v. United States, 653 F.2d 196 (5th Cir. 1981), *cert. denied*, 456 U.S. 925 (1982); Birnbaum v. United States, 588 F.2d 319, 327-328 (2d Cir. 1978).

Krohn v. United States, 578 F. Supp. 1441, 1983.DMA.0000092 ¶47 <http://www.versuslaw.com> (D.Mass. 10/4/1983) (Zobel, J.).

3.  **It would have been futile to make presentment under the FTCA to the FBI for the wrongful acts by FBI Agents Prouty and Kelly arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, and deceit, where the government had not waived its immunity for such claims.  28 U.S. C. 2680 (h).**

    Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.  For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. 2680 (h).

Meuse has brought claims for both libel an slander (for the FBI defendants' role in the FOX Broadcast and for the FBI defendants' contribution to the WANTED posters). Clearly, the FBI defendants are responsible for the public allegations that a federal warrant existed for "Meuse the Abductor's" or "Meuse the Kidnapper's" capture—an assertion that appears on all the posters—

6

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 7 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

but Meuse to this day does not know whether that responsibility was direct or indirect. Who decided to instruct the poster readers to contact the FBI:, e.g., "*Any Information concerning this Kidnapping, contact the FBI Violent Fugitive Task Force, (617) 742-5533*"? [**Compl. Exh. GG**]. There are three different posters. Who created each of them? Who contributed to each of them? What was the nature and extent of the communication between the FBI agents and FOX? And America's Most Wanted? And NCMEC? Thus Meuse, prior to this suit, simply did not have enough evidence with which to make a meritorious presentment under the FTCA.

Further, given 28 U.S.C. 2680 (h), it appears that it would have been futile for Meuse to make presentment pursuant to the FTCA. There is one exception, however. If the WANTED posters can be deemed to be "operational," as described in Jimenez-Nieves v. United States, 682 F.2d 1, 1982.C01.40232 at ¶24 <http://www.versuslaw.com> (1st Cir. 1982), then the claim for defamation would not be barred by sovereign immunity.

> **[When] the false statement not only conveys information but also operates as an instruction or a direction, taking the case some distance from the "providing information for making up one's mind" rationale.** Compare Sullivan v. United States, [299 F. Supp. 621 (N.D. Ala. 1968), *aff'd*, 411 F.2d 794 (5th Cir. 1969) (*per curiam*)]; Ingham v. Eastern Air Lines, Inc., 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931 (1967) (suit not barred where air controllers did not supply weather information that was up to date); and United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir.), *cert. denied*, 379 U.S. 951 (1974) (suit not barred where air controllers negligently fail to warn airline of hazardous flight training near airplane's route), with Marival, Inc. v. Planes, Inc.,306 F. Supp. 855 (N.D. Ga. 1969) (suit barred where plaintiff relied on Federal Aviation Administration's certification of airworthiness when buying plane). . . . But see Neal v. Bergland, 646 F.2d 1178 (6th Cir. 1981), *cert. granted sub nom*. Block v. Neal, 456 U.S. 988, 102 S. Ct. 2267 (1982).

Jimenez-Nieves, 1982.C01.40232 at ¶24 <http://www.versuslaw.com> (emphasis supplied). In Meuse, the WANTED posters "operate[d] as an instruction or a direction, taking the case some distance from the 'providing information for making up one's mind' rationale." Id. People who thought they saw Meuse and the child were to report to the FBI Violent Fugitive Task Force [**Compl. Exh. GG**].

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 8 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

**4. The principles established by the discovery rule warrant a delayed accrual in this case, making inapplicable the two-year statute of limitation for making presentment of a claim under the FTCA, 28 U.S.C. §2671 *et seq*.**

The general rule, within the meaning of the FTCA, is that a tort claim accrues at the time of the plaintiff's injury, [United States v.] Kubrick, 444 U.S. [111], 120 [1979]; Gonzalez-Bernal [v. United States], 907 F.2d [246], 249 [(1st Cir. 1990)]; Richman [v. United States], 709 F.2d [122], 123 [(1st Cir. 1983)]; . . .

Attalah v.United States, 955 F.2d 776, 779 (1st Cir. 1992), 1992.C01.40791at ¶24 <http://www.versuslaw.com>. "In certain cases, however, the claim may accrue at a later date." Heinrich v. Sweet, 44 F.Supp.2d 408, 1999.DMA.0000048< http://www.versuslaw.com> at ¶45 (D.Mass. 1999).(Young, C.J.).

> **Under the discovery rule, the action accrues when the injured party knew or, in the exercise of reasonable diligence, should have known the factual basis for the cause of action.** Kubrick, 444 U.S. at 121-25c; Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123 at 130 (1st Cir. 1987). The standard set forth by the discovery rule is an objective one. In order for the statute of limitations to be tolled pursuant to the discovery rule, the **factual basis for the cause of action must have been "inherently unknowable" at the time of the injury.** See, e.g., Levin v. Berley,728 F.2d 551 at 553 (1st Cir. 1984). After a careful examination of the record in the light most favorable to plaintiffs, we find that the principles established by the discovery rule warrant a delayed accrual in this case since appellants did not know, nor in the exercise of reasonable diligence could have known of the Customs agents' criminal acts until the time of their indictment in May of 1987.

Attalah, 1992.C01.40791at ¶25 <http://www.versuslaw.com> (emphasis supplied).  Similarly, Meuse could not have known of the conduct of the FBI defendants.  He learned of the defamation by them when he learned of the WANTED posters after his capture.  He learned from family and friends of Prouty's comments on the FOX Broadcast after he was released.   He learned while in the Haverhill District Court on the day of his arraignment that there was allegedly a federal warrant, but he heard that same day that <u>no one</u>, including the assistant district attorney, had seen it.  Shortly thereafter, around the next court date, that the State misdemeanor warrant was not supported by an affidavit nor signed by a Clerk-Magistrate or a judge.  But he did ***not*** learn until July 2004, when STF/AMW and FOX produced in this action an ***un***signed federal warrant, that

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 9 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

there appeared that there was **_no_** valid federal warrant. And he did **_not_** learn until 3 February 2006, a few weeks ago, that FBI Agent Kelly **_knew from the State misdemeanor warrant in the FBI's possession_** that they had no legal basis to bring the Criminal Complaint in U.S. District Court pursuant to 18 U.S.C. §1073 because they did not have the requisite State **_felony_** warrant.

Meuse assumes that FBI Agent Prouty also **_knew from the State misdemeanor warrant in their possession_** that they had no legal basis to bring the Criminal Complaint in this court. Rivera v. Riley, 209 F.3d 24, 2000.C01.0042122 <http://www.versuslaw.com> (1st Cir. 2000).

> To be sure, supervisors sometimes may be held liable for failures in carrying out their supervisory responsibilities. See, e.g., Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999). Be that as it may, supervisory liability exists only where "(1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate."

Rivera, 2000.C01.0042122 at ¶24 <http://www.versuslaw.com> citing Aponte-Matos v. Toledo-Davila, 135 F.3d 182, 192 (1st Cir. 1998) (gross negligence amounting to deliberate indifference demonstrates that the supervisor's conduct condoned or tacitly authorized his subordinate's conduct). Given that the FOX Broadcast in which Prouty was interviewed called attention to the federal warrant and displayed a WANTED poster, Meuse assumes that Prouty, as Kelly's immediate supervisor, was well aware of Kelly's affianced statements and of the State misdemeanor warrant.

Therefore, even assuming *arguendo* that this court might find that he had to make presentment pursuant to §2675(a) of the FTCA for any one or more of his claims, he still has until 2 February 2008 to make presentment for them. Attalah, 1992.C01.40791at ¶23 <http://www.versuslaw.com> ("The FTCA, 28 U.S.C. §§ 1346(b), 2671 et seq., affords a plaintiff two years from the date a claim against the United States accrues, to file a written claim with the agency thereby preserving the right to file a tort suit in federal court against the United States. 28 U.S.C. § 2401(b)). *See also* 28 U.S.C. 2672.

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 10 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

Defendants might argue that Meuse had to make presentment prior to suit; however, but for the defendants—namely, STF/AMW, FOX, and the FBI defendants—attaching the Criminal Complaint, the alleged Warrant for Arrest, and Kelly's affidavit to pleadings in the instant action, Meuse would never have learned what the FBI agents did. In sum, Meuse did not learn of some of the tortious activity until after this action had been brought. He also, prior to this suit, simply did not have enough evidence with which to make a meritorious presentment under the FTCA.

5. **Where the FBI agents did not exercise due care, and failed to act reasonably in checking on the truth or falsity of the communications before publishing them, there is no sovereign immunity, precluding a grant of dismissal or summary judgment.**

There is no evidence whatsoever that Defendant FBI Special Agents Kelly and Prouty exercised due care. They performed no independent investigation of the dockets of the various courts involved prior to Meuse taking the child. They did not investigate whether Moynihan or Thomson or Pane or Stults were giving them accurate information.

If Prouty was a rogue Agent, one who knowingly acted outside the scope of his authority to approve and encourage Kelly's unlawful conduct, then his conduct was in his private capacity.

> "Under the negligence standard adopted in Stone v. Essex County Newspapers, Inc., [367 Mass. 849, 858 (1975)], the defendants are required to act 'reasonably in checking on the truth or falsity ... of the communication before publishing it.'" Appleby v. Daily Hampshire Gazette, 395 Mass. [32], 36 [(1985)], quoting Restatement (Second) of Torts §580B, comment g (1977).
>     Applying this standard to the conduct of Channel 5 and Taibbi, we conclude that a jury could find that Channel 5 and Taibbi acted negligently in publishing their reports of Shamshak's allegations.

Jones v. Taibbi, 400 Mass. 786, 799-800 (1987). The negligence standard adopted in Stone v. Essex County Newspapers, Inc., 367 Mass. at 858, is ***the applicable law***, given that "[c]laims under the Federal Tort Claims Act are determined 'in accordance with the law of the place where the act or omission occurred.'" Jimenez-Nieves, 1982.C01.40232 at ¶34 n. 1 <http://www.versuslaw.com> (applying Puerto Rico), citing 28 U.S.C. §1346(b) (1976).

10

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 11 of 20

**MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**
2/27/2006   8:49 AM

In <u>Hydrogen Technology Corp. v. United States</u>, *infra*, the First Circuit panel wrote:

> We pay particular attention to the reasonableness calculus proposed by Restatement (Second) of Torts (1965) which requires the FBI to have employed reasonable knowledge of human qualities and of the law. . . .

<u>Hydrogen</u>, 831 F.2d 1155, 1987.C01.40124 at ¶36 <http://-www.versuslaw.com> (1st Cir. 1987).

Contrary to what the defendants pled in their memorandum on page 10 [lines 2-3], Kelly ***did*** have "reason to question the information provided by the local authorities." Why? Because he knew that the local authorities had a choice of bringing a charge under M.G.L. 265, §26A, as a misdemeanor or a felony, and that the authorities had chosen to bring the charge as a misdemeanor and not a felony. Given that Kelly and assuming also Prouty wanted to apply for a federal warrant, which required a State felony warrant, logically Kelly and/or Prouty should have reasonably asked Detective Moynihan or Captain Thompson, Why not a felony charge?

Had Kelly or Prouty asked that question, they would have learned, amongst other things,[5] that Meuse had not been found in contempt—which was contrary to the information Pane and Stults were supplying them—and that there had been no Order of child custody prior to Meuse taking the child from Florida and bringing her directly to Children's Hospital in Boston. And

---

[5] Moynihan and Thompson had their reasons. See Am. Compl. at ¶¶202-203, 216, 259-264:

202. Moynihan testified that there was nothing in Florida that said Meuse could not take the child in Florida **[Trial, 5/21/02, at 7-8]**.

203. Moynihan testified that "[a]s far as [he was] concerned, there was no crime in Florida" **[Trial, 5/21/02, at 8]**.

216. Before Moynihan brought an application for criminal complaint and warrant, the only people he used as a resource of information beside Susan Pane and her lawyer, Rosalyn Stults, was his captain, Captain Thompson **[Trial, 5/21/02, at 62]**.

259. Moynihan testified that "[a]s far as [he was] concerned, there was no crime in Florida" **[Trial, 5/21/02, at 8]**.

260. Thompson knew that there was no crime in Florida, i.e., that Florida was not handling the case, but he did not learn that on his own. He never communicated with anyone in Florida about the Meuse case **[Trial, 5/22/02, at 126]**; Melissa Alleruzo and Eileen Forman in the DA's office spoke to someone in Florida about the Meuse case **[Trial, 5/22/02, at 127; Trial Exh. CC]**.

261. Thompson testified that Florida felt that the case belonged in the Massachusetts courts because there were court orders in effect in Massachusetts and they referred it to us for investigation and/or prosecution **[Trial, 5/22/02, at 129]**.

262. Thompson admitted, in words for all intents and purposes that he does not have the authority to prosecute someone who commits a crime in another jurisdiction, for instance, in another State **[Trial, 5/22/02, at 133-134]**.

263. If Meuse had committed a crime in Florida, Thompson would not have had a right to try him for that crime here in Haverhill District Court **[Trial, 5/22/02, at 134]**.

264. Thompson testified that Meuse was not charged with a crime in Florida **[Trial, 5/22/02, at 137]**. Meuse did not take the baby from Pane in Massachusetts **[Id.]**. "The baby was taken in Florida, **[Id.]**.

11

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 12 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

where Moynihan had in his file handwritten notice by Stults that she had contacted the doctors to whom Meuse brought the toddler [**Compl. Exh. LL**], Kelly and Prouty could and would have learned that Meuse took the child because of his justifiably grave concern that the child was in need of immediate medical and therapeutic care, care which the child's mother, Pane, had failed to give her.\[6]/

In Capone, v. Marinelli, 868 F.2d 102, 105 (3d Cir. 1989), which the FBI defendants quote, the court wrote that because the NCIC bulletin expressly stated "that a young child was in possible danger," the "officer's [ ] reliance upon the bulletin cannot be said to have been unreasonable." Capone is inapposite to the instant case" **(1)** Kelly and Prouty, for instance, knew that CJIS bulletin was false. **(2)** Kelly and Prouty knew that the State warrant forecast a misdemeanor charge, whereas the CJIS bulletin broadcast that Meuse was wanted for a felony. **(3)** Kelly and Prouty knew that Meuse was not dangerous. Prouty even said on the Broadcast, "*I don't doubt that he does love his daughter*," and the FOX reporter said, "*Now Brian Meuse is not considered dangerous and the FBI does not think he will harm Marissa.*" Yet **(4)** the WANTED poster [**Compl. Exh. GG**] told readers to call the "**FBI VIOLENT FUGITIVE TASK FORCE**."

The FBI agents defend [**FBI Mem. at 9-10**] by stating that they relied on the information by the Haverhill police to support probable cause. Their reliance, although acceptable under one theory of the law, is misplaced

> The Supreme Court's decision in Whiteley v. Warden, 401 U.S. 560 (1971), as well as our own subsequent decisions, make clear that an erroneously issued warrant cannot provide probable cause for an arrest. . . .
> Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. **"Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot**

---

[6] At the top of that exhibit are the handwritten words: "How can the doctors treat Marissa when he is not the custodial parent?" The question reveals the purpose of the contacts made by Stults to the medical professionals, and is some evidence of the truth of Meuse's claim that Stults threatened the doctors were they to see Marissa again.

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 13 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

**be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."** Id. at 568.

Berg v. County of Allegheny, 219 F.3d 261, 2000.C03.0042136 at ¶¶35-36 <http://www.versus-law.com> (3d Cir. 2000) (emphasis supplied).

> In United States v. Hensley, 469 U.S. 221 (1985), the Court, relying primarily on Whiteley, held that police may conduct a Terry stop based on a flyer issued by other officers, but "[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment." Id. at 232. . . . But the Court also noted that Whiteley "clearly retains relevance in determining whether police officers have violated the Fourth Amendment." Id. at 13. Thus, the Supreme Court has made clear that a mistakenly issued or executed warrant cannot provide probable cause for an arrest.

Berg, 2000.C03.0042136 at ¶39 <http://www.versuslaw.com>.

> . . . "[t]he legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect."

Berg, 2000.C03.0042136 at ¶41 <http://www.versuslaw.com>.

> The Fourth Amendment provides: "[N]o Warrants shall issue, but upon probable cause . . ."
>
> . . . "[i]t seems clear that [plaintiff] sustained a violation of constitutional rights by being arrested and detained pursuant to an invalid warrant").
> Because the government officials who issued the warrant here did not have probable cause to arrest Berg, the arrest violated the Fourth Amendment. Accordingly, summary judgment should not have been granted based on the existence of the warrant.*fn6

Berg, 2000.C03.0042136 at ¶¶42-43 <http://www.versuslaw.com>.

> . . . §1983 anticipates that an individual will be "responsible for the natural consequences of his actions." Malley v. Briggs, 475 U.S. 335, 344 n.7 (1986) (holding that a police officer who obtains an arrest warrant without probable cause is liable under §1983 even though another officer made the actual arrest).

Berg, 2000.C03.0042136 at ¶45 <http://www.versuslaw.com>.[7]

Thus, where the Defendant FBI agents, knowing that they were charged with employing a reasonable knowledge of the law, failed to act reasonably in checking on the truth or falsity of the

---

[7] Meuse did **not** sue the arresting officers, for they were initially relying on the WANTED poster displayed in a local Wal-Mart. They were not in the conspiratorial loop that is the subject of this action.

13

Case 1:04-cv-10255-EFH  Document 125  Filed 02/27/2006  Page 14 of 20

**MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**
2/27/2006  8:49 AM

communications before publishing them, and thus did not exercise due care, there is no sovereign immunity, precluding a grant of dismissal or summary judgment.

**6.    Where the WANTED posters are "operational," sovereign immunity is waived for defamation.**

**See Issue #3 above.**

**7.    Where FBI Agents Prouty and Kelly were federal employees who (a) were acting under the color of State law and (b) violated Meuse's clearly established constitutional rights, the FBI defendants are not entitled to qualified immunity and dismissal or summary judgment of Meuse's claims under §1983 are inappropriate. If FBI Agents Prouty and Kelly were acting under federal law—although they have failed to identify that law— the FBI defendants are still not entitled to qualified immunity and dismissal or summary judgment on Meuse's *Bivens* claims are inappropriate.**

> **A government official is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known**." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In the context of this case, the question is whether "**a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession."** Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (*per curiam*); Anderson v. Creighton, 483 U.S. 635, 641 (1987). Our inquiry, then, has two parts. Did Wolfgang's conduct violate clearly established law? If so, did he nevertheless reasonably believe that his conduct was lawful in light of the information he possessed at the time?

Berg, 2000.C03.0042136 at ¶48 <http://www.versulaw-.com> (emphasis supplied).

Meuse did plead that he was deprived of his clearly established constitutional rights [**Am. Compl.** *passim*]. For instance, Meuse pled that he had a fundamental liberty interest in not being falsely arrested, in not being falsely imprisoned, in not being tried for a non-existent crime. Additionally he had a fundamental liberty interest in maintaining custody of his child, who was taken from him and put back into harm's way when the toddler was returned to the mother, who jeopardized the child by her addiction to prescription drugs, which included oxycontin [**Am.Compl. ¶¶33-35, 38-41; Compl. Exhs. A, KK, X, SS; Crim.Trial Transcript, 5/22/02 at 40**].

> Parents have a fundamental liberty interest in maintaining custody of their children, which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution. Care & Protection of Robert, 408 Mass. 52, 58, 60, 556 N.E.2d 993 (1990).

In re Erin, 443 Mass. 567, 570, 823 N.E.2d 356, 360 (2005).

Did Prouty's and Kelly's conduct violate clearly established law? If so, did they nevertheless reasonably believe that their conduct was lawful in light of the information they possessed at the time? **(1)** They did not investigate when they should have; that, investigation, is their primary charge. **(2)** Prouty approved and Kelly carried through with preparing a perjurious affidavit, one drawn with the intention to deceive and misrepresent the true facts to a court.\$^8$/ **(3)** Prouty and Kelly passed on information about an alleged federal arrest warrant when no valid one existed. **(4)** Prouty and Kelly filed on some as-yet-unknown date a Criminal Complaint based on a statute, to wit, 18 U.S.C. §1073, which the agents knew did not have the requisite support, namely, a State felony warrant. **(5)** While conducting over 100 hours of "searching" and interviewing diverse friends and members of Meuse's family and the populace, Kelly informed them both directly and indirectly that Meuse was unlawfully fleeing to avoid prosecution—in short, a fugitive from a felony charge for abducting or kidnapping his child. **(6)** Prouty took a more public route, one lined by WANTED posters and a FOX TV Broadcast, to defame Meuse by written and oral statements, made to seem true by respected reporters repeating falsities that Prouty had told them.\$^9$/ **(7)**

---

**8**   The district court's analysis, as it correctly articulated, was governed by Franks v. Delaware, 438 U.S. 154 (1978), and Murray v. United States, 487 U.S. 533 (1988). Under the procedure set forth in Franks, a court faced with a warrant affidavit which includes deliberately or reckless false statements must set aside those false statements and determine whether the remaining information in the affidavit sets forth sufficient facts to support a finding of probable cause. Franks, 438 U.S. at 171-72. Although it is not explicitly tied to the "independent source" doctrine,*fn6  Franks requires an analogous inquiry: whether, ignoring the false statements, the remaining information in a warrant application is an independent source of the discovered material.

United States v. Dessesaure, 429 F.3d 359, 2005.C01.0000535 at ¶29 < http://www.versuslaw-.com> (1st Cir. 2005).

**9**   The series of known falsities Prouty provided for the posters and FOX TV broadcasters included, but are not limited to, the following: **(1)** that Meuse was wanted by the FBI, **(2)** that he was wanted for kidnapping or abduction of a child, **(3)** that the FBI needed the help of the public if the child was "*ever to have a normal childhood,*" **(4)** that Meuse was wanted for Parental Kidnapping and Unauthorized Flight to Avoid Prosecution, **(5)** that Meuse has "*taken the law into his own hands,*" **(6)** that there was a "*custody agreement*" and that "*he simply has to abide by that,*" **(7)** that he urged the public to contact the FBI Violent Fugitive Task Force, and **(8)** that "*in the eyes of the law, Meuse is a fugitive and must be brought to justice.*"  Prouty's conduct violated clearly established law and Meuse's clearly

15

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 16 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006  8:49 AM

Prouty and Kelly knew the foreseeable consequence of their actions was to deprive Meuse of his clearly established constitutional rights.

Public policy is against Agents Prouty and Kelly using their employment by the federal government as an excuse **(a)** for declaring that they were federal actors and **(b)** for evading liability for unlawful acts such as those to create the bizarre facts surrounding the alleged issuance under §1073 of a warrant, which was not only invalid because of the lack of a signature and the perjurious affidavit supporting it, but also a nullity because it lacked a requisite supporting State felony warrant.

> See Malley, 475 U.S. at 345 (holding that where a police office submits an affidavit in support of a warrant request, and a reviewing magistrate's concludes that the affidavit establishes probable cause, the officer is **not** immune from a §1983 lawsuit if "a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause . . . ."); see also Yancey v. Carroll County, 876 F.2d 1238, 1243 (6th Cir. 1989) (holding that "[p]olice officers are entitled to rely on a judicially secured warrant for immunity from a §1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable.").

Berg, 2000.C03.0042136 at ¶53 <http://www.versuslaw.com> (emphasis supplied). If in the circumstances described in Malley v. Briggs, where a reviewing magistrate concluded that the affidavit established probable cause," the officer was not immune from a §1983 lawsuit, certainly in the circumstances of this case, where there is no evidence of there being a reviewing magistrate, Kelly is also not immune from a §1983 or *Bivens* lawsuit.

Given also the Keystone Kops quality of the scenario in which Prouty and Kelly were stars, it must be concluded that qualified immunity does not protect Prouty and Kelly or their conduct, for "[q]ualified immunity protects 'all but the plainly incompetent **OR** those who knowingly violate the law,'" Anderson v. Creighton, 403 U.S. 635, 638 (1987), quoting Malley v.

---

established constitutional rights. And given the information he possessed at the time, Prouty knew that his conduct was unlawful, and therefore is not entitled to qualified immunity.

Briggs, 475 U.S. 335, 343, 341 (1986) (discussing liability of police officer who allegedly applied for arrest warrants, without probable cause, in violation of the Fourth Amendment). McCleary v. Navarro, -- U.S. --, 112 S.Ct. 2324, 2324 (1992) (same), citing Malley, at 341, and quoted in Hunter v. Bryant, 502 U.S. 224, 229 (1991).

Given all the documentary evidence—even prior to discovery being conducted—Prouty and Kelly clearly could not have believed that their conduct was lawful, in light of both the clearly established law and the information in their possession.

Thus, Prouty and Kelly are not entitled to qualified immunity.

    a.    **The FBI defendants wrongly contend that "the qualified immunity determination should be made as early in the litigation as possible, preferably on a motion to dismiss or an early motion for summary judgment and in advance of discovery."**

The FBI defendants have interposed the defense of qualified immunity as a shield to liability on Meuse's civil rights claims. The United States Supreme Court recognized the doctrine in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), for those government officials who were performing discretionary functions provided that "their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.

In Gouin v. Gouin, *et al*, No. 2001-10890, Memorandum and Order on Four Motions #13, #16, #18, and #21, Paper #46, slip op. at 27-28 (Dist.Ct., Boston, March 21, 2002) (Collings, U.S.M.J.), Magistrate Judge Collings wrote:

> "because the 'resolution of the issues of whether probable cause existed for the [officers] to arrest Gouin . . and whether [they] acted in an objectively reasonable manner [had to] await the development of the facts of [that] case through discovery, . . . [d]ismissal of the plaintiff's civil rights claims on the grounds of the defendant officers' asserted qualified immunity was not warranted at [that] stage of the proceedings"

Gouin, slip op. at 28.

According to Saucier, *infra*, upon which the FBI defendants have heavily relied, "[a} ruling

Case 1:04-cv-10255-EFH    Document 125    Filed 02/27/2006    Page 18 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006   8:49 AM

should be made early in the proceedings so that the cost and expenses of trial are avoided **where the defense is dispositive**. Such immunity is an entitlement not to stand trial, not a defense from liability. Mitchell *v.* Forsyth, 472 U. S. 511, 526." Saucier v. Katz, 533 U.S. 194 (2001) (emphasis supplied). Here, where the FBI defendants' defense is not dispositive, there is no rush to make the decision on qualified immunity early in the proceedings. However, if it is decided early, qualified immunity must be precluded given the evidence thus far accumulated in this case.

8. **Where Meuse did aver in his Complaint that Prouty and Kelly deprived him of his clearly established constitutional rights and that Prouty and Kelly knew that their conduct was unlawful and deprived Meuse of his constitutional rights, Meuse did meet the Saucier standard, making dismissal or summary judgment of Counts 1 through 4 of Meuse's Complaint inappropriate.**

Meuse incorporates herein by reference his arguments set forth above in this memorandum. The Saucier case is an excessive force case, which the instant case is not. In Saucier, there was considerable discussion regarding the standard to be used in determining whether qualified immunity was to be applied. It compared at confusing length the alleged dichotomy between the analysis of an excessive force case and a plain vanilla Fourth Amendment warrantless arrest case. Meuse contends the latter, an objective reasonable analysis, which he has used in his arguments, *supra*, applies here.

> Respondent Katz, president of respondent In Defense of Animals, filed a suit pursuant to *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388, against, *inter alios,* petitionner Saucier, a military policeman. Katz alleged, among other things*,* that Saucier had violated his Fourth Amendment rights by using excessive force in arresting him while he protested during Vice President Gore's speech at a San Francisco army base. The District Court declined to grant Saucier summary judgment on qualified immunity grounds. In affirming, the Ninth Circuit made a two-part qualified immunity inquiry. First, it found that the law governing Saucier's conduct was clearly established when the incident occurred. It therefore moved to a second step: to determine if a reasonable officer could have believed, in light of the clearly established law, that his conduct was lawful. The court concluded that this step and the merits of a Fourth Amendment excessive force claim are identical, since both concern the objective reasonableness of the officer's conduct in light of the circumstances the officer faced at the scene. Thus, it found, summary judgment based on qualified immunity was inappropriate.

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 19 of 20

**MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**
2/27/2006   8:49 AM

Saucier v. Katz, 533 U.S. 194, 194 (2001) (ruling that the standard used by the Ninth Circuit was incorrect). The standard the court in Saucier used is the same that Meuse has used in his analysis. The Saucier test consists of three questions. Meuse addressed all of them.

1. Q: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier, citing Siegert *v.* Gilley, 500 U. S. 226, 232 (1991).

   A: Yes.

2. Q; Did the constitutional right complained-of exist or not exist?

   A: Yes. See page 14, *supra*, for a list of Meuse's clearly established constitutional rights of which he was deprived by the FBI agents.

3. Q. Was the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

   A: Yes. Defamation, perjury, and conspiracy to deprive an individual of his or her established constitutional rights, false arrest, false imprisonment, assault, battery, malicious prosecution, abuse of process, intentional infliction of motional distress, etc., were all unlawful during the period in which Prouty and Kelly were involved in the "Meuse" case.

9. **Where discovery has not yet been conducted, it is premature to determine whether Meuse's claims against Defendant Louis Freeh in his official capacity should be dismissed or be subject to a brevis disposition. Further, until discovery is performed, it would have been futile to make a presentment under the FTCA.**

Louis Freeh was sued in Count IV in his official capacity for refusing or neglecting to prevent harm to Meuse by Prouty's and Kelly's action that deprived Meuse of his constitutional rights. Meuse requires discovery to learn fully Freeh's role in the events detailed in this action. To make a determination at this junction, prior to discovery being conducted, would be premature.

Further, to have made presentment in accordance with the FTCA would also have been premature, for Meuse has not seen any documents describing the custom and policy of the FBI, or the FBI Handbook, FBI Guidelines Handbook, and/or the FBI Manual. Premature presentment would have been insufficient and futile. "The law does not require the doing of a useless act."

Case 1:04-cv-10255-EFH   Document 125   Filed 02/27/2006   Page 20 of 20

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO
THE FBI DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
2/27/2006  8:49 AM

Loomer v. Dionne, 338 Mass. 348, 353 (1959), citing Mowry's Case, 112 Mass. 394, 400, and Schayer v. Commonwealth Loan Co., 163 Mass. 322, 323-324 39 N.E. 1110 (1895). *See* Leigh v. Rule, 331 Mass. 664, 668, 121 N.E.2d 854 (1954); Nevins v. Ward, 320 Mass. 70, 73, 67 N.E.2d 673 (1946); Restatement of Contracts §306 Comment a (1932); 5 S. Williston, Contracts §§ 676, 699 (3d ed. 1961).

**10.    Meuse effected proper service of the Complaint on the three FBI defendants, Freeh, Prouty, and Kelly.**

Meuse does not dispute the requirements of Fed.R.Civ.P. 4(i) and its subparts. Meuse does, however, contrary to the FBI defendants' assertions, contend that he properly served the FBI defendants in compliance of this Court's order of 11 October 2005.

Meuse incorporates herein by reference from his Local Rule 56.1 Statement of Facts: **(1)** Facts ##64-67, regarding service, **(2)** Figures 3 and 4**,** and **(3)** Exhibit F, attached to his opposition.

WHEREFORE, Plaintiff prays this court DENY the FBI defendants' motion to dismiss or in the alternative their motion for summary judgment and award Plaintiff attorney's fees for having to oppose a frivolous motion. If the award of fees to Meuse is made, Plaintiff's counsel prays that she be given at least 10 days to prepare the accounting and supporting affidavit.

|  |  |
|---|---|
|  | Respectfully submitted,<br>BRIAN J. MEUSE,<br>By his attorney, |
|  | /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net> |
| 27 February 2006 | Barbara C. Johnson, Esq., BBO #549972<br>6 Appletree Lane<br>Andover, MA 01810-4102<br>978-474-0833 |

### AFFIDAVIT BY BARBARA C. JOHNSON

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief. Sworn under the pains and penalties of perjury.

27 February 2006              /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att/net>
                                         Barbara C. Johnson, Esq