**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BRIAN J. MEUSE,
                Plaintiff

            v.                         CIVIL ACTION NO.:
                                        04-10255-EFH

ROSALYN STULTS, ET AL.,
                Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

March 22, 2006

HARRINGTON, S.D.J.

**INTRODUCTION**

    This matter is before the Court on Defendant Rosalyn Stults' Motion for Summary Judgment as to the claims of Plaintiff Brian Meuse. Of the thirteen counts listed in Plaintiff's Second Amended Complaint, only the first three are pertinent to the instant motion. Counts one and two are brought under 42 U.S.C. § 1983. Count three is brought under 42 U.S.C. § 1985(3). Count four, though a federal claim, does not name Stults as a defendant. The remaining counts (five through thirteen) all concern state law claims. For the reasons set forth in more detail below, Stults' Motion for Summary Judgment is granted in part. Counts one through four are dismissed, and the remaining state law claims are transferred to state court.

**BACKGROUND**

    The genesis of this lawsuit is a custody dispute between the Plaintiff Brian Meuse ("Meuse") and Co-defendant Susan Pane ("Pane") concerning their daughter, Marissa. Marissa Lyne Meuse ("Marissa" or "the child") was born on August 4, 1999. At that time and for a short

time thereafter, Meuse, Pane, and their newborn daughter resided together in Haverhill, Massachusetts. Relations between Meuse and Pane quickly deteriorated, however, and on October 1, 1999 Pane left Massachusetts and traveled with the child to Florida where they took residence with Pane's mother. Each parent quickly sought aid from the courts. In October and November of 1999, courts in Massachusetts and Florida issued conflicting orders as to who held custody of Marissa—a Massachusetts court granting temporary custody to Meuse, a Florida court to Pane. On May 3, 2000, the Massachusetts court resolved the jurisdictional conflict by concluding that the Essex County (Massachusetts) Probate and Family Court held jurisdiction pursuant to the Massachusetts Child Custody Jurisdiction Act, M.G.L. ch. 209B, § 2 *et seq*. (See Pl.'s Second Am. Compl. ("Complaint") at Ex. T) (opinion of Essex County Probate and Family Court Judge Mary Manzi).

Meuse made repeated efforts to check on Marissa's well being throughout late 1999 and into 2000. Concerned by reports that Marissa was neither developing on schedule[1] nor receiving proper care, Meuse took matters into his own hands in early October, 2000. Meuse traveled to Florida and on October 1, 2000 removed the child back to Massachusetts where he had arranged for Marissa to meet with Boston-area physicians. Meuse's counsel informed Co-defendant Rosalyn Stults ("Stults"), then serving as Pane's Massachusetts probate attorney, about the doctor appointments on October 5, 2000. Pane and/or Stults then contacted the doctors with whom Marissa was scheduled to meet and represented that Pane, not Meuse, was Marissa's custodial parent. The hospital cancelled the appointments. Upon learning that Pane had

---

[1] Meuse alleges that at fourteen months, Marissa could not sit up on her own, hold a spoon, hold a baby's bottle, talk, walk, or even crawl. (Complaint at ¶¶ 153–161).

convinced the hospital to cancel Marissa's appointments, Meuse took Marissa and dropped out of sight. Six days later, the Essex County Probate and Family Court held a hearing at which Meuse did not appear. Pane was granted temporary custody of Marissa. Meuse did not resurface with the child during the next two weeks, and police search efforts were unsuccessful. Convinced there was probable cause to believe that Meuse had unlawfully fled with a minor, see M.G.L. ch. 265, § 26A, Haverhill Lieutenant Detective Daniel Moynihan ("Moynihan") obtained a warrant for Meuse's arrest on October 25, 2000.

From late-October, 2000 until March, 2001, the Haverhill Police Department and FBI coordinated a search for Brian and Marissa Meuse. The search efforts included *inter alia*: distribution of "Missing/Wanted" posters; reports to and by the National Center for Missing and Exploited Children; and a televised report on the "America's Most Wanted" television program. Two patrons at an Ada, Oklahoma Wal-Mart observed one of the posters and informed local authorities that they had recently seen Brian and Marissa Meuse in a nearby laundromat. Meuse was arrested by Oklahoma authorities on March 22, 2001, and eventually transferred back to Massachusetts where he was charged with kidnapping under M.G.L. ch. 265, § 26A. Meuse stood trial in Massachusetts state court and was acquitted by a Haverhill jury in May, 2002. This suit followed.

The motion now before the Court concerns plaintiff's claims only as to Co-defendant Rosalyn Stults. Stults is a Massachusetts attorney who served as Susan Pane's probate counsel at all times relevant to this case. The gravamen of plaintiff's allegations is that he was arrested and detained without probable cause in contravention of the Fourth and Fourteenth Amendments, and that Stults played a significant role in depriving him of his constitutional rights. Despite the fact

that she is not a state actor *per se*, Meuse claims Stults may be held liable under § 1983 because she acted in concert with state authorities. Specifically, Meuse claims that Stults (1) used false information to encourage Haverhill detectives to initiate the kidnapping investigation; (2) regularly communicated with Haverhill authorities during the course of the investigation; and (3) performed investigatory "police work" at the urging of state personnel, work that is traditionally the exclusive prerogative of the state.

For the reasons set forth in more detail below, plaintiff's § 1983 and § 1985(3) claims against Stults cannot stand and summary judgment is appropriate. The remaining state law claims shall be transferred to the Essex Superior Court in Lawrence, Massachusetts.

## **DISCUSSION**

### I.      **Summary Judgment Standard**

A motion for summary judgment can only be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue of fact is "genuine" if it may reasonably be resolved in favor of either party. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). "Material" facts are those which possess the capacity to sway the outcome of the litigation under the applicable law. Okmyansky v. Herbalife Intern. of America, Inc., 415 F.3d 154, 158 (1st Cir. 2005). In ruling on the motion, the Court must view the facts in the light most favorable to the non-moving party, here the plaintiff, drawing all reasonable inferences in that party's favor. Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).

**II.     § 1983 Claims Against Private Persons**

In a § 1983 action, a plaintiff can only prevail against a defendant who acts "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  As a result, § 1983 "rarely" provides a cause of action against private actors.  Destek Group, Inc. v. State of New Hampshire Public Util. Com'n, 318 F.3d 32, 39-40 (1st Cir. 2003) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982)).  The rare instances when a private person can be sued under § 1983 arise "[o]nly when a private individual's conduct can be deemed fairly attributable to the State . . . ."  Id. at 40.  Where a § 1983 plaintiff cannot reasonably expect to establish that a private defendant's conduct is fairly attributable to the state, summary judgment is appropriate.  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253-54 (1st Cir. 1996).

Three scenarios in which a private person's conduct may be fairly attributed to the state bear mention.  The first occurs where the state has so far insinuated itself into a position of interdependence with a private person that the two must be recognized as a joint participants in the challenged activity.  Mitchell v. Home, 377 F. Supp. 2d 361, 370 (S.D.N.Y. 2005) (citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)).  A plaintiff may invoke this so-called "interdependence" theory of state action only where a private defendant is aligned so closely with the state that "the undertow pulls them [both] inexorably into the grasp of § 1983." Roche, 81 F.3d at 254.  The second scenario occurs where a private person receives such "significant encouragement" from the state that the questioned conduct must in law be deemed to be that of the state.  Mitchell, 377 F. Supp. 2d at 370 (citing Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982)).  The third scenario occurs where a private person "conspires" with state actors

to deprive someone of a federal right. Hamilton v. Arnold, 135 F. Supp. 2d 99, 102 (D. Mass. 2001). None of these theories operate on the facts of this case.

### III. Stults' Relationship with the Haverhill Police

Interdependence. Plaintiff has adduced no material facts on which a reasonable jury could find that Stults and the Haverhill Police Department were interdependent joint actors. The essence of Plaintiff's allegations on this score is that Stults kept in close contact with the Haverhill police, regularly feeding them information throughout their investigation. Specifically, plaintiff alleges that Stults spoke to Lt. Detective Moynihan about "once every other week," and that Stults periodically updated Moynihan on "what was going on down in Florida" concerning the efforts to find Marissa. (Complaint at ¶¶ 330, 334). However, it is well settled that merely reporting information to the police does not make one an interdependent joint actor. In Roche, for example, the Court of Appeals for the First Circuit held that a private insurance company who reported the criminal conduct of a former employee was not a state actor where the police officers, magistrate, and prosecutors involved in pursuing the case all exercised independent judgment and acted of their own volition. Roche, 81 F.3d at 254. According to the Roche Court:

> [A private] citizen [need not] have probable cause (or anything remotely approaching probable cause) before informing the police of a suspected crime. Indeed, to the extent that the appellant's thesis implies that a private citizen who articulates his suspicions to the police may, without more, be held liable as a state actor under § 1983 for an ensuing arrest and prosecution if probable cause is lacking, we unequivocally reject it.

Id. at 254 n.2.; see also Andresen v. Diorio, 349 F.3d 8, 13 (1st Cir. 2003) ("[I]t is settled that the fact that private parties give the police information on which official action is then taken does not

by itself convert the private parties into state actors.").[2]

<u>State Encouragement</u>.  Nor does the fact that Haverhill authorities encouraged Stults to do investigatory "police work" make her a state actor.  (<u>See</u> Complaint at ¶ 284; <u>see also</u> Pl's Statement of Facts (Docket No. 118) at 8 & n.5).  Plaintiff has not alleged, nor can he, that the Haverhill police made an explicit delegation of investigatory authority to Stults, or that they controlled her investigation.  Meuse's sole contention on this issue is that Haverhill Domestic Violence Advocate Jean Walker gave Stults "significant encouragement" to continue gathering information, something Stults undoubtedly would have done anyway.  One can imagine a § 1983 case in which a state hires a private individual to perform services that the state is obligated to perform, trains the individual, actively controls the performance of the individual's duties, cloaks the individual with state authority, monitors the individual's performance, and substantially dictates the actionable conduct.  Were that the case, a reasonable juror could conceivably find that a private party's conduct was fairly attributable to the state.  <u>See</u> <u>Szekeres v. Schaeffer</u>, 304 F. Supp. 2d 296, 309 (D. Conn. 2004) (proposing hypothetical).  Nothing close to that happened here, and no reasonable juror could find otherwise.

<u>Conspiracy</u>.  Meuse's final attempt to sweep Stults within the purview of § 1983 is to suggest that Stults and the Haverhill police conspired to deprive Meuse of his constitutional rights.  <u>See</u> <u>Adickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 152 (1970) (private defendant can be

---

[2] Plaintiff's allegations that Stults purposefully misled Haverhill authorities as to who held custody of Marissa are equally unavailing because even *false* reporting to the police does not expose private persons to § 1983 liability.  <u>See</u> <u>Daniel v. Ferguson</u>, 839 F.2d 1124, 1130 (5th Cir.1988); <u>see also</u> <u>Shelton v. Schneider</u>, No. 05 C 5955, 2006 WL 59364, at *5 (N.D. Ill. Jan. 4, 2006) (false report pertaining to a child's custody, even if based on "shear slander and fantasy," does not meet state action requirement); <u>Gilbert v. Feld</u>, 788 F. Supp. 854, 859-60 (E.D. Pa. 1992) (providing district attorney's office with false and misleading information in order to instigate criminal charges against arrestee does not expose private parties to § 1983 liability).

charged with acting under color of state law if the defendant conspired with city policeman to deny plaintiff's constitutional rights); see also Wagenmann v. Adams, 829 F.2d 196, 210-11 (1st Cir. 1987) (§ 1983 verdict against private defendant upheld based on circumstantial evidence of conspiracy, namely, private defendant's close relationship with police chief). Yet for a conspiracy to be actionable under § 1983, the plaintiff must prove that there has been *an agreement* to deprive a federal right. Hamilton, 135 F. Supp. 2d at 102 (emphasis added). As the Court of Appeals for the First Circuit has opined:

> The problem for the plaintiff is not the propriety of the acts they cite, but, rather, whether they show *agreement*. Was there a single plan the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences? At the least, did the parties decide to act 'interdependently,' each actor deciding to act only because he was aware that the other would act similarly?

Aubin v. Fudala, 782 F.2d 280, 286 (1st Cir.1983) (emphasis in original).

Plaintiff has failed to adduce even a scintilla of evidence showing that Stults and the Haverhill authorities agreed to deprive Meuse of a federal right. There is no doubt Stults cooperated with the Haverhill authorities during the Meuse kidnapping investigation. Showing an agreement and conspiracy, however, requires more than mere cooperation. See Hamilton, 135 F. Supp. 2d at 103. The fact that Stults is alleged to have provided false information to the police only drives the point home further because a conspiracy cannot exist for purposes of § 1983 where the police are unaware of the allegedly violative nature of their actions due to the misrepresentations of a private party. Gilbert, 788 F. Supp. at 860 (E.D. Pa. 1992). This Court recognizes that it must be cautious in using summary judgment to resolve cases involving conspiracy or state of mind. See Hamilton, 135 F. Supp. 2d at 103. Nevertheless, summary

judgment is appropriate where, as here, a reasonable jury's only chance at finding an agreement and conspiracy is through "speculation and conjecture." Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988); see also Hamilton, 135 F. Supp. 2d at 104.

In sum, Stults cannot be held liable under § 1983 unless her conduct can be fairly attributed to the state. Destek Group, Inc., 318 F.3d at 40. Mere cooperation with state investigators, without more, does not meet the state action standard. Plaintiff's § 1983 claims against Ms. Stults therefore fail as a matter of law. To find otherwise would surely undermine "the strong public interest" in encouraging private persons to cooperate with state authorities. Roche, 81 F.3d at 254 n.2. Such critical policy considerations apply no less to an attorney who vigorously advocates the interests of her client because, as one federal court put it, "if an attorney must work in constant fear of civil liability, it is the rights of the public that will suffer." United States General, Inc. v. Schroeder, 400 F. Supp. 713, 717 (E.D. Wis. 1975). Summary judgment must lie.[3] It is salutary that there be citizen cooperation with law enforcement for such cooperation is conducive to a civil social order and, thus, should be encouraged by the law.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted in part. Counts one through four are dismissed as to Defendant Rosalyn Stults and this Court

---

[3] Summary judgment is also appropriate with respect to plaintiff's count three. Count three, though labeled as a § 1983 claim, was clarified at oral argument to actually represent a claim for conspiracy under 42 U.S.C. § 1985(3). Plaintiff's § 1985(3) claim fails as a matter of law because "[a] trialworthy § 1985(3) conspiracy claim requires competent evidence that some racial, or perhaps otherwise class-based, invidiously discriminatory animus motivated the alleged conspirators." Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 349 (1st Cir. 1995) (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)). Plaintiff has not averred that Stults or any of her alleged co-conspirators were motivated by a racial or an otherwise class-based animus. And in any event, as discussed *supra*, no reasonable jury could find that a conspiracy existed on the facts of this case.

declines to exercise supplemental jurisdiction over the remaining state law claims (Counts five through thirteen).  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law).  The remaining state law claims are hereby transferred to the Essex Superior Court in Lawrence, Massachusetts.

    SO ORDERED.

    /s/ Edward F. Harrington
    EDWARD F. HARRINGTON
    United States Senior District Judge