## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BRIAN J. MEUSE,
                Plaintiff

        v.                            CIVIL ACTION NO.:
                                                      04-10255-EFH
LOUIS FREEH, ET AL.,
                Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM AND ORDER

March 23, 2006

HARRINGTON, S.D.J.

### INTRODUCTION

The matter is before the Court on the Motion to Dismiss or in the Alternative for Summary Judgment of Defendants Louis Freeh, former Director of the Federal Bureau of Investigation ("FBI"); Charles S. Prouty, former Executive Assistant Director of the FBI's Boston Division ("Prouty"); and FBI Special Agent Charles P. Kelly ("Kelly") as to the claims of Plaintiff Brian Meuse.[1] Counts one, two, and four are brought under 42 U.S.C. § 1983.[2] Count

---

[1] Plaintiff's Complaint originally named former FBI Director Louis Freeh as a defendant, but current Director Robert S. Mueller, III, has been substituted pursuant to FED. R. CIV. P. 25(d)(1). Freeh, Prouty and Kelly are hereinafter collectively referred to as the "federal defendants."

[2] It should be noted at the outset that the federal defendants cannot be sued under 42 U.S.C. § 1983. Redondo-Borges v. U.S. Dept. of Housing and Urban Development, 421 F.3d 1, 6 (1st Cir. 2005) (noting that § 1983 applies to persons acting under color of *state* law and not to persons acting pursuant to *federal* law) (emphasis added). Federal officials are liable for constitutional harms committed under color of federal law, if at all, under Bivens v. Six Unknown Named Agents of FBN, 403 U.S. 388 (1971). Because Bivens claims bear a "family resemblance" to claims brought under § 1983, the Court will give plaintiff the benefit of the doubt and treat counts one, two, and four as so-called Bivens claims. See Redondo-Borges, 421 F.3d at 6.

three is brought under 42 U.S.C. § 1985(3).  Counts five through thirteen assert various state law claims.  For the reasons discussed in more detail below, the federal defendants' Motion for Summary Judgment is granted as to plaintiff's counts one through four.  The remaining state law claims are transferred to state court.

## BACKGROUND

The facts of this case are set out in detail in the Court's Memorandum and Order entered on Co-defendant Rosalyn Stults' Motion for Summary Judgment in the case entitled <u>Brian J. Meuse v. Rosalyn Stults, et al.</u>, ___ F.Supp.2d ___ (D. Mass. 2006), and need not be repeated at length.  In sum, this case arose out of a custody dispute between the Plaintiff Brian Meuse ("Meuse") and Co-defendant Susan Pane ("Pane") concerning their daughter Marissa.  Marissa Lyne Meuse ("Marissa" or "the child") was born on August 4, 1999.  At that time and for a short time thereafter, Meuse, Pane, and their newborn daughter resided together in Haverhill, Massachusetts.  Relations between Meuse and Pane quickly soured, however, and in October, 1999 Pane left Massachusetts and traveled with the child to Florida where the two took residence with Pane's mother.  For approximately the next twelve months, Meuse and Pane battled over custody.  Custody had not been resolved when, in early October, 2000, Meuse traveled to Florida for a scheduled week-long visitation with his daughter.  Meuse did not return Marissa at the end of the visitation period, choosing instead to take her back to Massachusetts.  On October 5, 2000, Meuse and Marissa dropped out of sight.

The Haverhill police searched for Meuse and the child over the course of the next several weeks, but were unsuccessful.  Convinced there was probable cause to believe that Meuse had unlawfully kidnapped his daughter, <u>see</u> M.G.L. ch. 265, § 26A, Haverhill Lieutenant Detective

Daniel Moynihan ("Moynihan") obtained a warrant for Meuse's arrest on October 25, 2000. (See Mot. of Federal Def.'s at Ex. 1) (the "state warrant"). Convinced as well that Meuse was a significant flight risk, the Essex County District Attorney's office sought a federal flight warrant from the United States Attorney in Boston. (Id. at Ex. 2) (November 2, 2000 letter from Essex County First Assistant District Attorney Robert N. Weiner to United States Attorney Donald Stern); (see also id. at Ex. 4) (affidavit of FBI Special Agent Charles Kelly). The FBI opened a fugitive investigation on November 4, 2000 and the United States District Court issued a federal flight warrant pursuant to 18 U.S.C. § 1073 on November 6, 2000. (Id. at Ex. 3).

From November, 2000 through March, 2001, the Haverhill Police Department and FBI coordinated a search for Brian and Marissa Meuse. The search efforts included *inter alia*: distribution of "Missing/Wanted" posters; reports to and by the National Center for Missing and Exploited Children; and a televised report on the "America's Most Wanted" television program. In March, 2001, two patrons at an Ada, Oklahoma Wal-Mart observed one of the posters and informed local authorities that they had recently seen Brian and Marissa Meuse in a nearby laundromat. Indeed, Meuse and the child had been living in the area. On March 22, 2001, Meuse was arrested by Oklahoma authorities on the federal flight warrant. He was then transferred back to Massachusetts and charged with kidnapping under M.G.L. ch. 265, § 26A. He stood trial in Massachusetts state court and was acquitted by a Haverhill jury in May, 2002. This suit followed.

The gravamen of counts one and two against the federal defendants is that they facilitated a violation of plaintiff's Fourth Amendment right against unreasonable seizure by obtaining a federal flight warrant for which there was no underlying probable cause. Count three alleges that the federal defendants participated in a conspiracy in violation of 42 U.S.C. § 1985(3). Count

four alleges that Director Freeh and Executive Assistant Director Prouty failed to train, supervise, control, and discipline the agents under their control, and that such failure led to a violation of plaintiff's constitutional rights under the Fourth Amendment. None of these claims constitute a viable theory of liability, and for the reasons discussed in detail below summary judgment must lie.

## DISCUSSION

### I.  Plaintiff's § 1983 Claims (Counts One, Two, and Four)

Despite the sheer volume of plaintiff's scattershot Complaint, counts one, two, and four against the federal defendants essentially boil down to a single narrow question: did Special Agent Kelly have probable cause on which to seek a federal flight warrant for Brian Meuse? If the answer to this question is yes, then plaintiff suffered no constitutional deprivation and summary judgment is appropriate. As the Court of Appeals for the First Circuit has held, "the [] threshold inquiry must be whether the facts, taken in the light most favorable to the party claiming injury, show that an officer's conduct violated a statutory or constitutional right. If the facts do not support the violation of a right, then the inquiry ends at that point. . . ." Forest v. Pawtucket Police Dept., 377 F.3d 52, 56 (1st Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)). The specific question this Court must ask, then, is whether an agent, standing in Kelly's shoes and having the same information, might reasonably have come to the conclusion that there was probable cause to apply for a federal flight warrant. See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996). Even when the facts here are viewed in a light most favorable to the plaintiff, the answer to this question is an unqualified yes.

The facts on which Kelly relied to establish probable cause are contained in his November 6, 2000 affidavit. (Mot. of Federal Def.'s at Ex. 4). Kelly's affidavit, based largely on

information provided by Assistant District Attorney Eileen Foreman of the Essex County District Attorney's Office, states that:

- Sometime prior to October 1, 2000, Brian Meuse traveled to Florida for a scheduled week-long visitation with his daughter Marissa;

- Meuse failed to return Marissa at the close of the visitation period;

- from October 3 until October 5, 2000, Meuse placed Marissa in the care of Anne Kalip, his neighbor in Haverhill, Massachusetts;

- when Ms. Kalip requested that Meuse provide her with access to Marissa's medical records and custody information, Meuse removed Marissa from Ms. Kalip's care—Kalip did not see Meuse or the child from that point forward;

- law enforcement efforts to locate Meuse in Massachusetts have been unsuccessful;

- Haverhill Detective Daniel Moynihan filed a complaint in the Haverhill District Court on October 25, 2000; and

- an arrest warrant was issued by the Haverhill District Court, also on October 25, 2000, charging Meuse with Kidnapping of a Minor Relative in violation of M.G.L. ch. 265, § 26A.

(See id. at ¶¶ 1, 2A–2F, 2H, 3).

These facts, even viewed most favorably to the plaintiff, can lead to only one conclusion—a reasonable agent standing in Kelly's shoes would have likewise determined that probable cause existed to support the federal flight warrant. Two main reasons support this conclusion: (1) the facts to which Kelly was privy showed Meuse was a flight risk; and (2) the Haverhill authorities had already procured an arrest warrant in state court. As to the former, Meuse demonstrated his willingness to traverse state lines when he removed Marissa from Florida to Massachusetts in early October, 2000 in violation of the visitation schedule. Moreover, as of

the date Agent Kelly applied for the federal flight warrant (November 6, 2000), noone had seen or heard from Meuse in over a month—notwithstanding search efforts by the Haverhill and Essex County authorities. Even more significant, though, is the fact that the local authorities had themselves already procured a warrant for Meuse's arrest. (See Mot. of Federal Def.'s at Ex. 1, 2). On this latter point, plaintiff argues that the state warrant lacked probable cause and that the federal defendants acted unreasonably when neither Kelly nor anyone else in the FBI conducted an independent investigation to determine whether the state warrant had properly issued. Under plaintiff's theory, a reasonable agent in Kelly's position would have done his *own* legwork and gone behind the state warrant, rather than simply accepting the information provided by the Haverhill authorities and the fact that a state warrant had issued.

Plaintiff's frivolous argument must fail because it is axiomatic that police work often requires officers and agents to rely on the observations, statements, and conclusions of fellow investigators. In Burke v. Town of Walpole, for example, a detective sought an arrest warrant at the request of a district attorney, and supported his application with information provided by other investigators. When the arrestee later sued under § 1983, the Court of Appeals for the First Circuit held the detective was immune from suit. 405 F.3d 66, 78-81 (1st Cir. 2005). According to the Court, "one who asserts the existence of probable cause is not a guarantor either of the accuracy of the information upon which he has reasonably relied or of the ultimate conclusion

that he reasonably drew therefrom." Id. at 80.³ This rule is particularly salient where, as here, the arrest warrant being questioned was issued pursuant to the Unauthorized Flight to Avoid Prosecution ("UFAP") statute, 18 U.S.C. § 1073.  The purpose of the UFAP statute is simply to permit federal law enforcement agents to apprehend state fugitives, release them to local authorities in the state of arrest, and allow extradition to the state in which the federal offense was committed. United States v. Love, 425 F.Supp. 1248, 1250 (S.D.N.Y. 1977).  Thus, the probable cause standard for a federal UFAP warrant is different—and significantly easier to meet—than the standard for an underlying substantive crime, here kidnapping under Massachusetts law.  Indeed, as the Supreme Court of Pennsylvania has opined, probable cause to support a UFAP warrant may be established *solely by the fact that a state arrest warrant has issued*, Commonwealth v. Lewis, 398 A.2d 1016, 1018 (Pa. 1979) (emphasis added), and a federal agent need not go behind the state warrant to investigate its validity *vel non*. Id.⁴  Here, a Massachusetts warrant had issued for Meuse's arrest and Agent Kelly sought a UFAP warrant based on (1) that state warrant; and (2) facts that showed Meuse presented a flight risk.  This is common practice among federal agents and in no way ran afoul of plaintiff's constitutional rights.  See Bowers v. Coiner,

---

³ Other courts, including the United States Supreme Court, are in accord. See, e.g., United States v. Hensley, 469 U.S. 221, 232-33 (1985) (officers may rely on flyer issued by another police department for reasonable suspicion to conduct investigatory stop); Rogers v. Powell, 120 F.3d 446, 455 (3d Cir. 1997) (officer who made arrest based on statements by fellow officers held immune from § 1983 suit where it was objectively reasonable to believe on the basis of the statements that probable cause existed); Albright v. Rodriguez, 51 F.3d 1531, 1536 (10th Cir. 1995) ("Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion, [] and to develop probable cause for an arrest."); Capone v. Marinelli, 868 F.2d 102, 104 (3d Cir. 1989) (arresting officer who reasonably relies upon an arrest warrant bulletin from another jurisdiction is immune from civil rights liability); cf. Feathers v. Aey, 319 F.3d 843, 851 (6th Cir. 2003) (officers who conducted Terry stop are immune from § 1983 liability where they reasonably relied on information from police dispatcher).

⁴ Though not necessary to the Court's decision here, it bears mention that any reasonable agent that *had* gone behind the state warrant would have concluded that probable cause for the kidnapping charge did indeed exist.  (See generally Mot. of Federal Def.'s at  Ex. 4) (Kelly affidavit).

309 F.Supp 1064, 1068-69 (S.D.W.Va. 1970) (letter from county prosecutor to United States Attorney stating that state arrest warrant had issued was sufficient to establish probable cause for issuance of UFAP warrant).

In sum, Special Agent Kelly acted reasonably when he determined there was probable cause sufficient to apply for a federal UFAP warrant for Brian Meuse. He strictly observed the customary procedure in carrying out the highly effective practice of assisting local law enforcement authorities in the arrest of their fugitives from justice. Counts one, two, and four[5] of plaintiffs complaint fail as a matter of law.

## II.    Plaintiff's § 1985(3) (Count Three)

Count three of plaintiff's complaint also fails as a matter of law, but require less exposition. Count three, though labeled in plaintiff's Complaint as a § 1983 claim, was clarified at oral argument to actually represent a claim for conspiracy under 42 U.S.C. § 1985(3). This claim cannot stand because "[a] trialworthy § 1985(3) conspiracy claim requires competent evidence that some racial, or perhaps otherwise class-based, invidiously discriminatory animus motivated the alleged conspirators." Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 349 (1st Cir. 1995) (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)). Plaintiff has not averred that the federal defendants or any of their alleged co-conspirators were motivated by a racial or other class-based animus. And, in any event, as discussed in the Court's Memorandum and Order on Co-defendant Rosalyn Stults' Motion for Summary Judgment in the

---

[5] Count four appears to raise a claim of negligent supervision against Director Freeh and Executive Assistant Director Prouty. Negligent supervision claims are necessarily premised on the existence of some underlying constitutional harm. See Budnick v. Barnstable County Bar Advocates, Inc., No. 92-1933, 1993 WL 93133, at *4 (1st Cir. March 30, 1993) (in order to have a viable § 1983 claim against police chief for negligent supervision, a state actor must first commit an underlying constitutional violation). As discussed *supra*, no such harm took place. Count four cannot stand.

case entitled Brian J. Meuse v. Rosalyn Stults, et al., _____ F.Supp.2d _____ (D. Mass. 2006), no reasonable jury could find that a conspiracy existed on the facts of this case.

## CONCLUSION

For the reasons discussed above, the federal defendants' Motion for Summary Judgment is granted in part. Counts one through four are dismissed, and this Court declines to exercise supplemental jurisdiction over the remaining state law claims (Counts five through thirteen). See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law). The remaining state law claims are hereby transferred to the Essex Superior Court in Lawrence, Massachusetts.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge