Case 1:04-cv-10255-EFH     Document 141     Filed 04/17/2006     Page 1 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006  6:21 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly,** in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

## MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO FBI DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. 137] OF COURT'S MEMORANDUM AND ORDER OF MARCH 23, 2006 [DOC. 135]

Now comes Brian J. Meuse ["Meuse] submits this memorandum in support of his opposition to the FBI Defendants' Motion for Reconsideration [Doc. 137] of Court's Memorandum and Order of March 23, 2006 [Doc. 135] on the grounds they contend.

In summary, **(1)** where the FBI defendants, particularly Charles S. Prouty and Charles P. Kelly, were acting outside the scope of their employment during the relevant times of the Meuse case, Assistant U.S. Attorney Michael Sullivan's certification to the contrary is groundless and untrustworthy and subject to judicial review in a federal forum.  **(2)** Meuse contends that factually the FBI defendants' defamation falls outside the Federal Tort Claims Act ["FTCA"], as does their misrepresentation that a valid arrest warrant issued, making the general waiver of immunity applicable.  (An UNsigned warrant does not a valid warrant make.)  **(3)** Where the FTCA is inapplica-

1

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 2 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

ble, the United States may not be substituted for the three FBI defendants. **(4)** Where Meuse has the burden of proving that the defendants acted outside the scope of their employment, Meuse is entitled to discovery (set out, *infra*, in detail). **(5)** The determination of the scope of the FBI defendants' employment must occur in this federal tribunal, although the law applied must be state law of Massachusetts.

The four issues argued below are:

1. Where the government employees acted outside the scope of their employment, and may be sued, the United States may not be substituted for the FBI defendants. The scope status of the federal defendants is resolved by a federal tribunal, but state *respondeat* superior law must control the determination of whether the federal employee was acting within the scope of employment.

2. Where the burden of proving that the defendants outside the scope of their employment, Meuse must be given an opportunity to meet that burden. This court does retain jurisdiction over the case at least until the scope of the FBI agents' employment is determined.

3. In Massachusetts, the general *respondeat* superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work.

4. Where the FTCA does not apply, neither does the Westfall Act.

## ARGUMENTS

1. **Where the government employees acted outside the scope of their employment, and may be sued, , the United States may not be substituted for the FBI defendants. The scope status of the federal defendants is resolved by a federal tribunal, but state *respondeat* superior law must control the determination of whether the federal employee was acting within the scope of employment.**

"[T]he Attorney General's scope-of-employment certification is reviewable in court." Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 1995.SCT.0000112 at ¶32 <http://www.versuslaw.com> (1995). "[T]he certification is 'provisional and subject to judicial review.'" Vélez-Diaz v. Vega-Irizarry, 421 F.3d 71, 2005.C01.0000393 at ¶25 < http://www.versuslaw.com> (1st Cir. 2005), quoting Davric Me. Corp. v. United States Postal Serv., 238 F.3d 58, 65 (1st Cir. 2001)

2

(citing Gutiérrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)).

> No persuasive reason for restricting access to judicial review is discernible from the statutory fog we confront here.

Gutierrez, 1995.SCT.0000112 at ¶39 <http://www.versuslaw.com> (analyzing the Westfall Act).

"Recognizing that a U. S. Attorney, in cases of this order, is hardly positioned to act impartially, the Attorney General reads the law to allow judicial review." Id. at ¶52. "This strange course becomes all the more surreal when one adds to the scene the absence of an obligation on the part of the Attorney General's delegate to conduct a fair proceeding, indeed, any proceeding." Id. at ¶54.

The effect of the Attorney General's certification is that the Attorney General is seeing to it "that the federal defendant's scope status is resolved by a federal, not a state tribunal." Rogers, at ¶24, citing Nasuti v. Scannell, 906 F.2d 802, 813 n. 16 (1st Cir. 1990), and Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996). Yet, while the scope status of the federal defendants is resolved by a federal tribunal, "[s]tate law controls the determination of whether a federal employee was acting within the scope of employment." Davric Maine Corp. v. United States Postal Service, 238 F.3d 58, 2001.C01.0000029 at ¶38 <http://www.versuslaw.com> (1st Cir. 2001), citing Lyons, 158 F.3d at 609; Aversa, 99 F.3d at 1208-09. This dichotomy adds a bit more surrealism to the "strange course" and "statutory fog" noted by the court in Gutierrez.

Notwithstanding the surreal, "[w]here plaintiffs are able to show that the employees acted outside the scope of their employment, the employees may be re-substituted as the party defendants." Vélez-Diaz, 2005.-C01.0000393 at ¶25 < http://www.versuslaw.com>, citing Davric, 238 F.3d at 65; Aversa v. United States, 99 F.3d 1200, 1208 (1st Cir. 1996). Gutierrez, 115 S.Ct. 2227, 2230-2231.

Under the Westfall Act, however, the initial substitution may be made only as to the state-

3

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 4 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006  6:21 PM

law claims if the plaintiff, like Meuse, also asserted Bivens claims against federal employees. Vélez-Diaz, 2005.C01.0000393 at ¶36 <http://www.versuslaw>, citing Davric, 238 F.3d at 65, and Aversa, 99 F.3d at 1206.

2. **Where the burden of proving that the defendants outside the scope of their employment, Meuse must be given an opportunity to meet that burden. This court does retain jurisdiction over the case at least until the scope of the FBI agents' employment is determined.**

The Court in "Gutierrez did not speak to the question of who has the burden of proof on the scope issue," but the First Circuit did, in Nasuti v. Scannell, 906 F.2d 802 (1st Cir. 1990). In Nasuti, the court held that "where a plaintiff asserts that a defendant acted outside the scope of his or her employment despite the Attorney General's certification to the contrary, the burden of proof is on the plaintiff." Rogers v. Management Technology Inc., 123 F.3d 34, 1997.C01.0000374 at ¶23 <http://www.versuslaw.com> (1st Cir. 1997). See Day v. Massachusetts Air Nat'l Guard, 167 F.3d 678, 685 (1st Cir. 1999); Lyons v. Brown, 158 F.3d 605, 610 (1st Cir. 1998); Davric Maine Corp. v. United States Postal Service, 238 F.3d 58, 2001.C01.0000029 at ¶38 <http://www.versuslaw.com> (1st Cir. 2001).

But the plaintiff must be given the opportunity to meet his burden. In Rogers, this court ordered the employees to "submit affidavits 'delineating the duties and responsibilities of their employment. . . .'" Rogers, at ¶17. In Aversa, the plaintiff was allowed to depose the defendants. Aversa, at ¶53. In Nasuti, 906 F.2d at 808, the trial court held an evidentiary hearing to resolve immunity-related factual disputes.

In Aversa, a defamation case, guided by New Hampshire law,[1]/ against federal government employees, the plaintiff had to show that the "defamatory statements to the press were not authorized." Aversa, at ¶57. As an Assistant United States Attorney, the defendant accused of

---

[1]   In Massachusetts, the case that appears appropriate as underpinning for this case is Howard v. Town of Burlington,

**4**

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 5 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006  6:21 PM

defamation "was expected to abide by the United States Attorneys' Manual ("the Manual") issued by his employer, the Department of Justice. Chapter 7 of the Manual, entitled "Media Relations." Id. Chapter 7 "provides that 'fairness [and] accuracy . . . must prevail in all dealings with the news media.'" Aversa, at ¶57, quoting Manual, ch. 7, §§ 1–7.001 (1988).

> But despite its title, the FBI is also one of the entities that must abide by the Manual.
>
> The purpose of this policy statement is to establish specific guidelines consistent with the provisions of 28 CFR 50.2 governing the release of information relating to criminal and civil cases and matters by all components (FBI, DEA, INS, BOP, USMS, USAO, and DOJ divisions) and personnel of the Department of Justice. These guidelines are: 1) fully consistent with the underlying standards set forth in this statement and with 28 CFR 50.2; 2) in addition to any other general requirements relating to this issue; 3) intended for internal guidance only; and 4) do not create any rights enforceable in law or otherwise in any party.

Manual, ch. 7, §§ 1–7.001 (1988):

Employees of the Department of Justice, under which the FBI sits, are also governed by 28 C.F.R. §50.2, which

> "defines the types of information that may be and the types of information that may not be made available to the news media about pending . . . criminal cases by employees of the Department of Justice." Id. (emphasis in original). Employees are to adhere to the regulation "in both letter and spirit." Id.

Aversa, at ¶57.

> The regulation provides that, among other facts and circumstances not relevant here, Justice Department employees may make public the "substance or text of the charge, such as a[n] indictment," and may disclose "only incontrovertible, factual matters." 28 C.F.R. 50.2(b)(3).

Aversa, at ¶58. Where the warrant was controvertible, where Meuse was not a fugitive under federal law, the oral statements on television and the several WANTED posters were breaches of the 28 C.F.R. 50.2(b)(3).

> . . . in dealing with the news media regarding a criminal case, [Defendant Walsh] was not authorized to say anything that was inaccurate or misleading, not contained in a public document, or prejudicial to a defendant's right to a fair trial, or to otherwise contravene the

---

399 Mass. 585, 506 N.E.2d 102 (1987). See Issue 3.

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 6 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135]  4/17/2006  6:21 PM

directives of the Manual, 28 C.F.R. Section(s) 50.2, or [NH] Local Rule 35.

Aversa, at ¶60. Like Walsh's statements, those oral and written statements of the FBI and Prouty here "transgressed these policies and rules and therefore were not authorized." Id. Where the statements were not authorized, the United States may not be substituted for the named defendants. "An employee of the Department of Justice who wishes to release information beyond that allowed by 28 C.F.R. Section(s) 50.2 must obtain permission from the Attorney General or Deputy Attorney General, 28 C.F.R. Section(s) 50.2(9), not the United States Attorney." Aversa, at ¶61. Like Walsh, Prouty and the other FBI defendants did not seek such approval. Id.

The provisions of 28 C.F.R. §50.2 relevant to the instant case are the following, namely §50.2(b)(5), §50.2(b)(6), §50.2(b)(6)(vi),

> (5) Because of the particular danger of prejudice resulting from statements in the period approaching and during trial, they ought strenuously to be avoided during that period. Any such statement or release shall be made only on the infrequent occasion when circumstances absolutely demand a disclosure of information and shall include only information which is clearly not prejudicial.
>
> (6) The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function. Therefore, personnel of the Department should refrain from making available the following:
> . . .
>> (vi) Any opinion as to the accused's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense.
>
> (8) This statement of policy is not intended to restrict the release of information concerning a defendant who is a fugitive from justice.

Critical here is that Meuse was not a fugitive from justice under federal law: **(a)** The alleged warrant for Unlawful Flight to Avoid Prosecution ["UFAP"] was UNsigned by the magistrate-judge whose name had been typed on the warrant form as being the "Issuing Officer," or by any other judicial officer, **(b)** the alleged warrant included the false statement that Meuse had been charged with "Unlawful Flight to Avoid Prosecution" in violation of 18 U.S.C. §1073, and **(c)** there was **_no_** State felony warrant, which was required before a §1073 UFAP could legally issue.

6

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 7 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

Therefore, when the FBI agent (Prouty) was interviewed on a FOX TV show and the several WANTED posters were published, Prouty did not take the requisite "'extreme care' to avoid statements branding [Meuse] as guilty of a crime of which [Meuse had] not been convicted." Aversa, at ¶57, quoting Manual, ch. 7, §§ 1–7.001 (1988).  Thus the FBI, too, as employees of the Department of Justice, must abide by the "extreme care" requirement.

The Manual sets out in considerable detail the steps that must be taken when the FBI deals with the media.  Meuse sets out a selected sampling below and attaches as **Exhibit A** *the* section of the Manual that has particular relevance to this case: G1-7.401, which is entitled "Guidance for Press Conferences and Other Media Contacts."

> Final responsibility for all matters involving the news media and the Department of Justice is vested in the Director of the Office of Public Affairs (OPA). The Attorney General is to be kept fully informed of appropriate matters at all times.  Responsibility for all matters involving the local media is vested in the United States Attorney.

§1-7.210, General Responsibility.

> The public affairs officers at the headquarters level of the Federal Bureau of Investigation, Drug Enforcement Administration, Immigration and Naturalization Service, Bureau of Prisons, United States Marshals Service, Office of Justice Programs, and Community Relations Service are responsible for coordinating their news media effort with the Director of OPA.

**§**1-7.310 Department of Justice Components.

> News Conferences. Prior coordination with OPA is required of news conferences of national significance.

§1-7.330(B), Procedures to Coordinate with OPA.

> Requests from National Media Representatives (TV, Radio, Wire Service, Magazines, Newspapers). OPA should be informed immediately of all requests from national media organizations, including the television and radio programs (such as the nightly news, Good Morning America, Meet the Press and Sixty Minutes), national wire services, national news magazines and papers (such as the New York Times, U.S.A. Today, and the Wall Street Journal) regarding in-depth stories and matters affecting the Department of Justice, or matters of national significance.

§1-7.330(C), Procedures to Coordinate with OPA.

7

Case 1:04-cv-10255-EFH    Document 141    Filed 04/17/2006    Page 8 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

Media Coverage Affecting DOJ. When available, press clippings and radio/television tapes involving matters of significance should be forwarded to OPA.

§1-7.330(D), Procedures to Coordinate with OPA.

Any opinion as to the defendant's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea of a lesser offense.

§1-7.550(F), Concerns of Prejudice. The FBI defendants labeled Meuse as a fugitive from justice, an abductor, a kidnapper, although he had not been convicted as a fugitive fleeing from prosecution, an abductor, or a kidnapper, and never was.

If the FBI–FoxTV interview was approved, there should be a paper trail of approvals by the OPA, in accordance with §§1-7.210, 1-7.310, 1-7.330(B), 1-7.330(C), 1-7330(D), and 1-7.401.

As in Rogers, this court should also order Prouty, Kelly, and Freeh[2] to write affidavits delineating not only their duties and responsibilities but also the communications they had regarding Meuse's case with others within the Bureau as well as with the Department of Justice. with the Attorney General or Deputy Attorney General, and with the Office of Public Affairs, the OPA.

Meuse also suggests that the court also order the FBI defendants to produce **(a)** that part of the FBI Wanted Persons Index which contains a reference to Meuse, **(b)** that part of the FBI Identification Order Fugitive Flier File which contains a reference to Meuse,[3] **(c)** that part of the FBI Informant Index which contains a reference to Meuse,[4] **(d)** that part of the FBI Wanted Fliers File which contains fliers re Meuse, and **(e)** in Category #88, Unlawful Flight to Avoid Prosecution, Custody, or Confinement (18 U.S.C. § 1073), the material regarding Meuse.

---

[2] Freeh's replacement, i.e., the new FBI director, is likely not to know what Freeh did on the Meuse case).

[3] The fugitive flier files are kept numerically in a control file. When immediate leads have been exhausted in fugitive investigations and a crime of considerable public interest has been committed, the fliers are given wide circulation among law enforcement agencies throughout the United States and are posted in post offices. The fliers contain the fugitive's photograph, fingerprints, and description.

[4] The FBI Informant Index, kept on cards, contains the name, symbol numbers, and brief background information on the following categories of active and inactive informants, top echelon criminal informants, security informants, criminal information, operational and informational assets, extremist informants (discontinued), plant informant--informants on and about certain military basis discontinued), and potential criminal informants.

Case 1:04-cv-10255-EFH    Document 141    Filed 04/17/2006    Page 9 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

If such cards, fliers, and the other diverse records exist, they should reveal material information about the alleged case USA v. Meuse as well as the communications and tasks performed regarding during that period when the FBI was publishing that Meuse was a fugitive.

Other than the UNsigned UFAP warrant, Kelly's affidavit, and the mysterious USA v. Meuse Complaint—all attached to the FBI's motion to dismiss—there has been no voluntary discovery by the FBI and its defending agents.

3. **In Massachusetts, the general *respondeat* superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work.**

"The general *respondeat* superior test involving intentional torts considers whether the act was within the course of employment, and in furtherance of the employer's work." Howard v. Town of Burlington, 399 Mass. 585, 590, 506 N.E.2d 102, 105 (1987). Howard was a taxpayer suit to enjoin town, *et al*, from defending or indemnifying town's finance committee chairwoman against defa-mation action. The taxpayers claimed that the "alleg[ed] defamatory statements of chairwoman were made outside scope of authority of committee and that any payments by town were not authorized by Massachusetts Tort Claims Act." The taxpayers won. The town appealed. The judgment was reversed.

Whether a town should be allowed to indemnify a public employee or official may be a somewhat different ultimate question under the indemnity statute—§9 of G.L. c. 258, the Massachusetts Tort Claims Act. "It may be that the permissive nature of the indemnity statute may allow a broader scope of employment definition than under the *respondeat* superior inquiry." Howard. 399 Mass. at 589 n. 6, 506 N.E.2d at 105 n. 6,

> . . . G.L. c. 258 is modeled closely on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1982). . . . In construing Massachusetts statutes we are ordinarily guided by the construction given the parallel Federal statute by the Federal courts. . . . The Federal courts have referred to the applicable State law of *respondeat* superior in determining the

9

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO FBI DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. 137] OF COURT'S MEMORANDUM AND ORDER OF MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 10 of 12

scope of employment under the Federal statute. . . . Though *respondeat* superior principles are usually applied to determine whether an employer should be held liable for the acts of employees, the test is, at least, useful in determining the scope of employment under G.L. c. 258, § 9. . . .

Howard , 399 Mass. at 590, 506 N.E.2d at 105 (internal citations omitted).

Whether a corporation may be found liable under a theory of *respondeat* superior for defamation will depend on a determination of whether the alleged defamation was made within the scope of the employee's employment. Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859-860, 501 N.E.2d 1163, 1167 (1986). The determination whether conduct falls within the scope of employment is a question of fact. See Pinshaw v. Metropolitan Dist. Commn., 402 Mass. 687, 694 (1988).

> To determine whether an employee's conduct is within the scope of his employment for purposes of employer liability under G.L. c. 93A, we may appropriately be guided by a consideration of the factors relevant to scope of employment determinations bearing on the imposition of vicarious liability on employers for the tortious conduct of their employees. In that context, conduct of an agent is within the scope of employment if it is of the kind he is employed to perform, Douglas v. Holyoke Machine Co., 233 Mass. 573, 576, 124 N.E. 478 (1919); if it occurs substantially within the authorized time and space limits, Vallavanti v. Armour & Co., 260 Mass. 417, 419-420, 157 N.E. 527 (1927); and if it is motivated, at least in part, by a purpose to serve the employer, Donahue v. Vorenberg, 227 Mass. 1, 5, 116 N.E. 246 (1917); McKeever v. Ratcliffe, 218 Mass. 17, 20, 105 N.E. 552 (1914). See Restatement (Second) of Agency § 228 (1958). The fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority. Restatement (Second) of Agency § 236 comment b (1958). See United States v. Cincotta, 689 F.2d 238, 241-242 (1st Cir.), *cert. denied sub nom*. Zero v. United States, 459 U.S. 991, 103 S.Ct. 347 (1982).

Wang, 398 Mass. at 859-860, 501 N.E.2d at 1167.

Thus, as stated above, the determination whether conduct falls within the scope of employment is a question of fact. See Pinshaw v. Metropolitan Dist. Commn., 402 Mass. 687, 694 (1988). In Howard, e.g., the taxpayers had the burden to prove factually that when the chairwoman met with town's chief administrative officer to discuss the ambulance situation, she was acting as a private citizen rather than as the committee chairwoman. This, the taxpayers did not

**10**

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 11 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO FBI DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. 137] OF COURT'S MEMORANDUM AND ORDER OF MARCH 23, 2006 [DOC. 135] 4/17/2006 6:21 PM

do. Hence the chairwoman was entitled to be defended and indemnified under M.G.L. c. 258, §9.

Notwithstanding the application of §9, a "plaintiff is entitled to a jury trial if there is some indication before the motion judge from which an inference of actual malice--knowing falsehood or reckless disregard of the truth--could be drawn." Jolin v. Howley, 1992 WL 64138 at 3, 1992 Mass.App.Div. 51 (1992), quoting Godbout v. Cousens, 396 Mass. 254, 258-259 (1985).

> To prove an action of slanderous defamation against Martineau, the plaintiffs must demonstrate that she, without a privilege to do so, intentionally or negligently published to a third person, a false and defamatory statement of fact by spoken words of and concerning the plaintiffs that results in harm to the plaintiffs. Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 635 (1996); Correllas v. Viveiros, 410 Mass. 314, 319 (1991). *See generally* Restatement (Second) Torts §§ 558, 565, 566 (1977 Ed.). A statement is defamatory if it is "reasonably susceptible of a defamatory meaning," id. at 635-36, and "holds the plaintiffs to ridicule, scorn or contempt in a considerable and respectable class of the community." Zereski v. American Postal Workers Union, Civil Action No.97-1567, 1998 WL 1181769, at *4 (Mass.Super.1998) [9 Mass.L.Rptr. 284 (January 25, 199) (Fecteau, J.)], citing Muchnik v. Post Publishing Co., 332 Mass. 304, 306 (1955).

Barthelmes v. Martineau, 2000 WL 1269666 at 6, No. CA982378A (Mass.Super. May 22, 2000) (Fecteau, J.). To prove an action of slanderous and libelous defamation against Meuse, Meuse can do.

### 4. **Where the FTCA does not apply, neither does the Westfall Act.**

Where Meuse claims defamation, in addition to his Bivens claims, and defamation is outside the scope of the Federal Tort Claims Act ["FTCA"], the general waiver of immunity applies. *See* Aversa v. United States, 99 F.3d 1200, 1996.C01.0000442 at ¶33 and 53 <http://www.versuslaw.com> (1st Cir. 1996).\[5]/ "Congress . . . expressly excepted certain kinds of claims from the FTCA's otherwise broad waiver of sovereign immunity, including any claim arising out of slander and other specified intentional torts." Rogers v. Management Technology Inc., 123 F.3d 34, 1997.C01.0000374 at ¶41 <http://www.versuslaw.com> (1st Cir. 1997), citing 28

---

[5]  Where a government employee was acting outside the scope of his employment, the employee is not entitled to immunity from personal liability.  Rogers, at ¶24. citing Nasuti, at 813 n. 16 and Aversa, at 1209.

**11**

Case 1:04-cv-10255-EFH   Document 141   Filed 04/17/2006   Page 12 of 12

MEUSE'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO FBI DEFENDANTS'
MOTION FOR RECONSIDERATION [DOC. 137]
OF COURT'S MEMORANDUM AND ORDER OF
MARCH 23, 2006 [DOC. 135] 4/17/2006  6:21 PM

U.S.C. §2680(h).

The Massachusetts Tort Claims Act, as stated above, is "modeled closely on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1982)" [Howard, 399 Mass. at 590, 506 N.E.2d at 105], and in construing it, the Massachusetts courts are "ordinarily guided by the construction given the parallel Federal statute by the Federal courts." Id.

WHEREFORE, Plaintiff prays this court DENY the FBI defendants' motion to reconsider the Court's Memorandum and Order of March 23, 2006 [Doc. 135] on the grounds they contend: The Westfall Act is not applicable. Substitution of the United States for the FBI defendants is inappropriate. And this court does retain jurisdiction over the case at least until the scope of the FBI agents' employment is determined.

    Respectfully submitted,
    BRIAN J. MEUSE,
    By his attorney,

    /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>

17 April 2006    Barbara C. Johnson, Esq.
    6 Appletree Lane
    Andover, MA 01810-4102
    978-474-0833
    BBO #549972

### AFFIDAVIT BY BARBARA C. JOHNSON

I, Barbara C. Johnson, Esq., hereby depose that all statements and observations I attribute to myself saying or observing are true, and all other statements are true upon information and belief. Sworn under the pains and penalties of perjury.

    /s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>

17 April 2006    Barbara C. Johnson, Esq.