UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN J. MEUSE,<br><br>   Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>   Defendant. | Civil Action No.  04-CV-10255-EFH |

**UNITED STATES' REQUEST FOR ISSUANCE OF A FINAL ORDER OF DISMISSAL**

On March 23, 2006, the Court issued a Memorandum and Order dismissing the constitutional claims (counts I – IV ) of the plaintiff's complaint against three named employees of the Federal Bureau of Investigation ("FBI"), and transferred the remaining state tort claims (counts V – XIII) to Massachusetts Superior Court (Docket No. 135).  On April 4, 2006, the United States filed a Motion for Reconsideration of the Court's Memorandum and Order of March 23, 2006 (Docket Nos. 137 and 138), asking the Court to retain jurisdiction over counts V – XIII as to the United States in accordance with the requirements of the Federal Tort Claims Act ("FTCA"), and to dismiss these counts against the United States for, *inter alia*, failure of the plaintiff to satisfy and comply with the requirements of the FTCA.  On the same date the United States filed a Notice of Substitution of the United States for the named individual employees with respect to counts V – XIII of plaintiff's complaint (Docket No. 136-1).  The Notice of Substitution was accompanied by the United States Attorney's certification that the FBI employees were acting within the scope of their employment regarding the underlying facts that formed the basis for the plaintiff's state tort claim allegations (Docket No. 136-2).  In addition to the arguments addressed in the Motion for Reconsideration (Docket Nos. 137 and 138), the United States incorporated by reference the tort claim issues briefed in the United States' Motion

to Dismiss or in the Alternative for Summary Judgment (Docket Nos. 115 and 116). On April 17, 2006, the plaintiff filed a motion to strike the substitution of the United States and an opposition to the United States' Motion for Reconsideration (Docket Nos. 139, 140, 141).

On April 19, 2006, by Electronic Order, the Court endorsed and allowed the substitution of the United States as the sole federal defendant (Docket Entry of April 19, 2006). On the same date the Court also issued an Electronic Order (Docket Entry of April 19, 2006) granting the United States' Motion for Reconsideration. Finally, on April 18, 2006, the Court issued an Order dismissing counts V – XIII against the United States (Docket No. 143).

The United States accepts and concurs with the Court's endorsement of the substitution of the United States as the sole federal defendant (Electronic Docket Entry of April 19, 2006), the Court's granting of the federal defendants' Motion for Reconsideration (Electronic Docket Entry of April 19, 2006), and the Court's dismissal of counts V – XIII against the United States (Docket No. 143).

However, for clarification of the record, the United States respectfully requests that the Court issue a comprehensive Final Order of Dismissal as to the FBI employees on counts I through IV, and as to the United States on counts V – XIII, of the plaintiff's complaint based on: (1) the Court's Memorandum and Order of March 23, 2006 (Docket No. 135); (2) the arguments briefed in the United States' Motion To Dismiss (Docket Nos. 115 and 116); (3) the Notice of Substitution of the United States for the named individual federal employees with respect to counts V – XIII of plaintiff's complaint and the certification of scope of employment (Docket Nos. 136-1, 136-2, 136-3); (4) The Court's Electronic Endorsement of the substitution of the United States as the sole federal defendant and the certification of scope of employment

2

(Electronic Docket Entry of April 18, 2006); (5) the arguments briefed in the United States' Motion for Reconsideration (Docket No. 137); (6) the Court's Electronic Order granting the United States' Motion for Reconsideration (Electronic Docket Entry of April 18, 2006); (7) the Court's Order of Dismissal entered April 18, 2006 (Docket No. 143); (8) the Court's Electronic Order denying plaintiff's Motion to Produce (Electronic Docket Entry of May 9, 2006); and (9) the issues addressed in this Request For Final Order of Dismissal (responding to plaintiff's motion to strike the substitution of the United States and an opposition to the United States' Motion for Reconsideration (Docket Nos. 139, 140, 141)).  A form of order is attached for the Court's convenience.

### THE CERTIFICATION OF SCOPE OF EMPLOYMENT, SUBSTITUTION OF THE UNITED STATES AS THE SOLE FEDERAL DEFENDANT AND DISMISSAL OF THE UNITED STATES WERE ALL APPROPRIATE UNDER THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT

The heart of the Westfall Act is 28 U.S.C. § 2679(b)(1), the exclusive remedy provision of the FTCA, and its companion provision, 28 U.S.C. § 2679(d) (certification and substitution of the United States).  Taken together, these provisions provide that federal employees acting within the scope of their employment shall enjoy immunity from suit under state law, and that the United States shall be substituted for the employee at the earliest stages of the case.  The Westfall Act was a Congressional response to the United States Supreme Court decision in Westfall v. Erwin, 484 U.S. 292 (1988).  In that case, the Supreme Court ruled that for an employee to have immunity from suit, the employee's conduct had to be both within the scope of federal employment and discretionary.  Id.  The Westfall Act's fundamental requirement for immunity is that the employee was acting within the scope of his or her federal employment at the time of the alleged negligence or wrongful act.  28 U.S.C. § 2679(b)(1) and (d).  Because the

Westfall Act amends the FTCA, scope of employment is determined based on the relevant state's law of respondeat superior. Aversa, 99F.3d at 1208-1209; Nasuti, 906 F.2d at 805, n. 3. Under Massachusetts law, a person's action is deemed to be within the scope of employment if: (1) it is of the kind the agent is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is motivated, at least partially, by the purpose of serving the employer. Martin-Kirkland v. United Parcel Service, Inc., 2006 WL 1110371 *9 (Mass. Super. 2006), citing Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986); Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991); Nasuti, 906 F.2d at 805, n. 3.

After certification of the scope of employment and substitution of the United States for the federal employee,[1] the plaintiff may challenge the certification that the employee was acting within the scope of employment at the time the challenged action occurred. Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995). Certification, however, shifts the burden of proof on the question of scope of employment to the plaintiff. Nasuti v. Scannell, 906 F.2d 802, 813 n. 16 (1st Cir. 1990) (". . . employee immunity will thus be protected, in keeping with the Westfall Act's purpose, except where the plaintiff can convince a federal court that the government employee was acting outside the scope of his employment . . ."); Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing Nasuti); Rogers v. Management Technology, Inc., 123 F.3d 34, 37 (1st Cir. 1997) (citing Nasuti). In reviewing any challenge, the district court should construe the compliant liberally, treating all well-plead facts as true and indulging all reasonable

---

[1] Contrary to plaintiff's argument (Docket Nos. 139, 140, 141), the Westfall Act applies even where, after substitution of the United States as the sole defendant on the state tort claim, the plaintiff's claim against the United States is barred by an exception to the FTCA's waiver of sovereign immunity. United States v. Smith, 499 U.S. 161 (1991); Aversa, 99F.3d at 1209.

4

inferences in favor of the plaintiff, and may consider whatever evidence has been submitted. Aversa, 99 F.3d at 1210.

Applying the law cited above to the instant action, including the plaintiff's pleadings as well as the materials submitted by the government, it is clear that plaintiff has not demonstrated that former SAC Prouty and SA Kelley were acting outside the scope of their employment. The actions of SA Kelley's in obtaining a federal warrant for unlawful flight to avoid prosecution are clearly within the scope of an FBI agent's duties. Plaintiff does not, and simply cannot, make a plausible argument that obtaining the warrant, or any of the investigative work preceding the issuance of the warrant, was outside the scope of SA Kelly's employment. Rather, the plaintiff alleges that the warrant was invalid because it was not signed and because the underlying state warrant was not a felony warrant as required. Neither of these allegations is accurate or true (i.e., neither is well pled or reasonable),[2] and neither has any bearing on the issue of whether SA

---

[2] The issuance of the Massachusetts state felony warrant (the warrant under which Meuse was actually arrested, see Docket No. 1, Meuse Complaint at Exhibit FF ), is addressed and explained in the federal defendants' Memorandum in Support of Motion to Dismiss or in The Alternative for Summary Judgment ("federal defendants' Motion to Dismiss") (Docket No. 116-1 at pp. 3-4 and Exhibit 5). The federal arrest warrant for Unlawful Flight to Avoid Prosecution ("UFAP Warrant") is also addressed in the federal defendants' Motion to Dismiss (Docket No. 116-1 at p. 4 and Exhibits 3 and 4). Even though Meuse was not even arrested pursuant to the UFAP Warrant, his assertion that the federal UFAP warrant was invalid because it was unsigned (Docket Nos. 137 and 138), is incorrect. After extensive inquiry, the government has only been able to locate SA Kelly's Affidavit signed and certified by the magistrate judge, a copy of the Criminal Complaint signed and certified by the magistrate judge, and an unsigned copy of the UFAP Warrant (see federal defendants' Motion to Dismiss, Docket No. 116-1 at p. 4 and Exhibits 3 and 4). However, the government can establish that the UFAP warrant was still valid even if the magistrate judge may have mistakenly failed to sign the UFAP Warrant. The Fourth Amendment of the United States Constitution does not contain an explicit signature requirement for a warrant to be held valid. See Perrin v. The City of Elberton, Georgia, 2005 WL 1563530 (M.D.Ga.). What is required is that a warrant be "supported by Oath or affirmation." Burke v. Town of Walpole, 405 F3d 66, 78 (1st Cir. 2005). Courts hold that if there is no dispute as to whether the judge intended to issue the warrant, a ministerial defect in the warrant, such as a lack of the approving judge's signature, does not render it

Kelley was acting within the scope of his employment. As the Fourth Circuit said in Johnson v. Carter:

> Few government authorities are authorized to commit torts as part of their line of duty, but to separate the activity that constitutes the wrong from its surrounding context-an otherwise proper exercise of authority-would effectively emasculate the immunity defense. Once the wrongful acts are excluded from an exercise of authority, only innocuous activity remains to which immunity would be available. Thus, the defense would apply only to conduct for which it is not needed. We also made clear that "[a]pplication of the immunity is not affected by whether the injury was committed in good faith, negligently, or even intentionally."

983 F.2d 1316, 1323 (4th Cir. 1993) cert denied 510 U.S. 812 (1993) citing Wallen v. Domm, 700 F.2d 124 (4th Cir. 1983).

The actions of former SAC Prouty are very similar to the conduct of the Assistant United States Attorney in Aversa v. United States, 99 F.3d 1200 (1st Cir. 1996), a case cited frequently by plaintiff. In Aversa, the plaintiff filed suit against the AUSA for giving statements to the press that were defamatory. The First Circuit held that giving statements to the press was ancillary to the AUSA's duties, making it within the scope of his employment. Id. At 1212. Additionally, even if a statement is defamatory, it can be within the scope of employment. Id.; Operation Rescue Nat. V. United States, 975 F.Supp. 92, 106 (D. Mass. 1997). Similarly, giving statements to the press are ancillary to the duties of the SAC of an FBI field office. SAC Prouty

---

invalid. Id. at 78. In Burke, the court addressed a situation that was similar to what may have occurred with the Meuse UFAP Warrant, and held that an unsigned arrest warrant to be valid given the evidence that the officers had submitted the warrant application, criminal complaint and summons to the magistrate judge and the magistrate judge had only signed the criminal complaint and summons. Id. Given that the magistrate judge in the Meuse UFAP Warrant signed the criminal complaint and affidavit of SA Kelly, it logically follows, as was found in Burke, that there was a neutral and detached finding of probable cause to arrest Meuse. Id.; see also United States v. Leon, 468 U.S. 897, 921 (1984); United States v. Peltier, 422 U.S. 531, 542 (1975); Kelley, 140 F.3d at 602; United States v. Moore, 41 F.3d 370, 376 (8th Cir. 1994) (cases upholding the reasonable reliance of officers on the validity of warrants that may have had a technical defect but were otherwise valid).

was speaking on behalf of the FBI when he made the statements of which the plaintiff complains, and plaintiff has offered no contrary evidence.

Finally, Plaintiff argues that because he has the burden of proof on the issue of scope of employment, he is entitled to discovery. This argument is contrary to well accepted law in this area. In Siegert v. Gilley, the Supreme Court held that:

> One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

500 U.S. 226, 232 (1991). In order for discovery of immunity-related facts to be warranted, the plaintiff must indicate what sort of facts he or she hopes to discover that would create a material factual dispute and could support a viable theory that the individual defendant was acting outside the scope of employment. Davric Maine Corp. v. United States Postal Service, 238 F.3d 58, 68 (1st Cir. 2001). Thus, in the absence of a showing by plaintiff that there is a genuine issue of fact with respect to the scope issue (and as explained above and in the government's previous filings there has been none), there should be no discovery, and the district court may not insist upon affidavits or evidentiary support for the certification. Rogers v. Management Technology, Inc., 123 F.3d 34, 37 (1st Cir. 1997).[3] The plaintiff has not made any such showing and all of the filings in this action, particularly the plaintiff's own complaint, clearly demonstrate that SAC Prouty and SA Kelly were acting within the scope of their employment.

---

[3] If there is a showing that there is a genuine issue of fact, and there has been none in this action, discovery should be limited as narrowly as possible. Schrob v. Catterson, 967 F.2d 929, 936 (3rd Cir. 1992); Melo v. Hafer, 13 F.3d 736, 742 (3rd Cir. 1994); Maron v. United States, 126 F.3d 317, 327 (4th Cir. 1997) ("If initial discovery were not narrowly tailored, plaintiffs would be able to undermine the advantage of substitution intended for defendants by subjecting them to a lengthy and invasive discovery process before the court even had an opportunity to rule that they should be immune from trial.").

Based on the foregoing and (1) the Court's Memorandum and Order of March 23, 2006 (Docket No. 135); (2) the arguments briefed in the United States' Motion To Dismiss (Docket Nos. 115 and 116); (3) the Notice of Substitution of the United States for the named individual federal employees with respect to counts V – XIII of plaintiff's complaint and the certification of scope of employment (Docket Nos. 136-1, 136-2, 136-3); (4) The Court's Electronic Endorsement of the substitution of the United States as the sole federal defendant and the certification of scope of employment  (Electronic Docket Entry of April 18, 2006); (5) the arguments briefed in the United States' Motion for Reconsideration (Docket No. 137); (6) the Court's Electronic Order granting the United States' Motion for Reconsideration (Electronic Docket Entry of April 18, 2006); (7) the Court's Order of Dismissal entered April 18, 2006 (Docket No. 143); and (8) the Court's Electronic Order denying plaintiff's Motion to Produce (Electronic Docket Entry of May 9, 2006), the Court should issue a comprehensive Final Order of Dismissal as to the FBI employees on counts I – IV, and as to the United States on counts V – XIII of the plaintiff's complaint.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

| | |
|---|---|
| OF COUNSEL:<br>Nolon J. Benson, Jr.<br>Assistant General Counsel<br>Office of the General Counsel<br>Federal Bureau of Investigation<br>935 Pennsylvania Ave., N.W.,<br>Washington, D.C.  20535<br>202-220-9323 (Voice)<br>202-220-9353 (Fax) | By:   /s/ Anton P. Giedt    6/15/2006<br>Anton P. Giedt<br>Assistant U.S. Attorneys<br>1 Courthouse Way - Suite 9200<br>Boston, MA 02210<br>617-748-3309 (Voice)<br>617-748-3967 (Fax)<br>anton.giedt@usdoj.gov |

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                                       Boston, Massachusetts
                                                                                                         DATE: June 15, 2006

   I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Plaintiff's counsel of record through electronic filing.

                                                              /s/ Anton P. Giedt
                                                              Anton P. Giedt
                                                              Assistant U.S. Attorney