UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-10255-EFH

**Brian J. Meuse**
Plaintiff

v.

**Susan Pane,**
**Rosalyn Stults,**
**Lt. Detective Daniel R. Moynihan**, in his official and individual capacities,
**Captain Donald Thompson**, in his official and individual capacities,
**City of Haverhill, Massachusetts,**
**Louis Freeh**, in his official capacity,
**Charles S. Prouty**, in his official and individual capacities,
**Charles P. Kelly,** in his official and individual capacities,
**FOX Television Stations, Inc.,**
**STF Productions, Inc.**, a/k/a America's Most Wanted,
**National Center for Missing and Exploited Children,**
**Wal-Mart Stores, Inc.**
Defendants

---

## MEUSE'S OPPOSITION TO FBI REQUEST FOR FINAL ORDER OF DISMISSAL [#146]

Now comes Brian J. Meuse ["Meuse] to oppose the FBI Defendants' Request for Final Order of Dismissal [Doc. 146].

As grounds, Meuse incorporates herein by reference those set out in

- PLAINTIFF BRIAN MEUSE'S MOTION

    (1)   TO ORDER PRODUCTION TO MEUSE OF 28 C.F.R. §15.3(a) REPORT TO U.S. AT-TORNEY,
    (2)   TO STRIKE OR ORDER WITHDRAWAL OF U.S. ATTORNEY'S CERTIFICATION,
    (3)   TO STRIKE OR ORDER WITHDRAWAL OF THE FBI'S PROPOSED ORDER, AND
    (4)   TO STRIKE THE FBI DEFENDANTS' NOTICE OF SUBSTITUTION OF THE "UNITED STATES" FOR THE THREE FBI DEFENDANTS
    (5)   TO DENY INFERRED MOTION TO ALLOW PROPOSED ORDER
    (6)   TO ORDER THE PRODUCTION OF SPECIFIC DOCUMENTS

- MEUSE'S OPPOSITION TO FBI DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. 137] OF COURT'S MEMORANDUM AND ORDER OF MARCH 23, 2006 [DOC. 135]

- MEUSE'S MEMORANDUM IN SUPPORT OF OPPOSITION TO FBI DEFENDANTS' MOTION FOR RECONSIDERATION [DOC. 137] OF COURT'S MEMORANDUM AND ORDER OF MARCH 23, 2006 [DOC. 135]

Further, the FBI defendants for the first time set out a new version facts in footnote 2 on

**1**

page 5 of their brief. This new and distorted version of the facts is discussed at ¶25 *infra*. Had the FBI's counsel contacted—as required under Local Rule 7.1(A)(2)—the plaintiff's counsel to confer in a good faith attempt to resolve or narrow the issues raised by the FBI's latest pleading, this issue might have been addressed by the FBI defendants in a proper manner, not one relegated to a footnote on page 5 of a 6-page brief that otherwise reads like a narrative of a docket sheet.\[1]/

In support, Meuse states the following undisputed, undisputable, and uncontroverted facts and mixed facts and law:

**(1)** The FBI defendants, particularly Charles S. Prouty and Charles P. Kelly, were acting outside the scope of their employment during the relevant times of the Meuse case.

**(2)** Assistant U.S. Attorney Michael Sullivan's certification to the contrary is groundless and untrustworthy and subject to judicial review in a federal forum.

**(3)** The FBI defendants' defamation falls outside the Federal Tort Claims Act ["FTCA"].

**(4)** No valid arrest warrant issued, making the general waiver of immunity applicable. An UNsigned warrant does not a valid warrant make.

**(5)** The United States may not be substituted for the three FBI defendants where the FTCA is inapplicable.

**(6)** The determination of the scope of the FBI defendants' employment must occur in this federal tribunal, although the law applied must be state law of Massachusetts.

**(7)** "[T]he Attorney General's scope-of-employment certification is reviewable in court."

**(8)** Where Meuse has shown that FBI agents Prouty and Kelly acted outside the scope of their employment, they may be re-substituted as the party defendants. (*See* ¶26, *infra*.)

**(9)** FBI is one of the entities that must abide by the United States Attorneys' Manual.

**(10)** Where the warrant was controvertible and Meuse was not a fugitive under federal law, the oral statements on television and the several WANTED posters were breaches of the 28 C.F.R. 50.2(b)(3).

**(11)** Where the oral and written statements were not authorized, the United States may not be substituted for the named defendants.

---

[1] The Local Rules must apply to all parties. To not apply them equally to all parties would deprive those to whom it did apply of their constitutional right to equal protection.

**(12)** Prouty did not seek the requisite approval from the Attorney General or Deputy Attorney General to release information beyond that allowed by 28 C.F.R. Section(s) 50.2.

**(13)** Critical here is that Meuse was not a fugitive from justice under federal law: **(a)** The alleged warrant for Unlawful Flight to Avoid Prosecution ["UFAP"] was UNsigned by the magistrate-judge whose name had been typed on the warrant form as being the "Issuing Officer," or by any other judicial officer, **(b)** the alleged warrant included the false statement that Meuse had been charged with "Unlawful Flight to Avoid Prosecution" in violation of 18 U.S.C. §1073, and **(c)** there was *no* State felony warrant, which was required before a §1073 UFAP could legally issue.

**(14)** Therefore, when the FBI agent (Prouty) was interviewed on a FOX TV show and the several WANTED posters were published, Prouty did not take the requisite "'extreme care' to avoid statements branding [Meuse] as guilty of a crime of which [Meuse had] not been convicted." Thus Prouty did not abide by the "extreme care" requirement.

**(15)** The FBI defendants labeled Meuse as a fugitive from justice, an abductor, a kidnapper, although he had not been convicted as a fugitive fleeing from prosecution, an abductor, or a kidnapper, although Meuse never was.

**(16)** There is no paper trail of approvals by the OPA, in accordance with §§1-7.210, 1-7.310, 1-7.330(B), 1-7.330(C), 1-7330(D), and 1-7.401 of Chapter 7 ("Media Relations") of the United States Attorneys' Manual issued by the Department of Justice.

**(17)** The court did not order Prouty, Kelly, and Freeh[2] to write affidavits delineating not only their duties and responsibilities but also the communications they had regarding Meuse's case with others within the Bureau as well as with the Department of Justice.

**(18)** The court also did not order the FBI defendants to produce **(a)** that part of the FBI Wanted Persons Index which contains a reference to Meuse, **(b)** that part of the FBI Identification Order Fugitive Flier File which contains a reference to Meuse,[3] **(c)** that part of the FBI Informant Index which contains a reference to Meuse,[4] **(d)** that part of the FBI Wanted Fliers File which contains fliers re Meuse, and **(e)** in Category #88, Unlawful Flight to Avoid Prosecution, Custody, or Confinement (18 U.S.C. § 1073), the material regarding Meuse.

**(19)** Other than the UNsigned UFAP warrant, Kelly's affidavit, and the mysterious USA v. Meuse Complaint—all attached to the FBI's motion to dismiss—there has been no voluntary discovery by the FBI and its defending agents.

---

[2] Freeh's replacement, i.e., the new FBI director, is likely not to know what Freeh did on the Meuse case).

[3] The fugitive flier files are kept numerically in a control file. When immediate leads have been exhausted in fugitive investigations and a crime of considerable public interest has been committed, the fliers are given wide circulation among law enforcement agencies throughout the United States and are posted in post offices. The fliers contain the fugitive's photograph, fingerprints, and description.

[4] The FBI Informant Index, kept on cards, contains the name, symbol numbers, and brief background information on the following categories of active and inactive informants, top echelon criminal informants, security informants, criminal information, operational and informational assets, extremist informants (discontinued), plant informant--informants on and about certain military basis discontinued), and potential criminal informants.

**(20)** Where the FTCA does not apply, neither does the Westfall Act.

**(21)** Where the Assistant U.S. Attorney's certification is groundless and untrustworthy and was not subjected to judicial review in a federal forum, the burden to prove that the FBI defendants were acting within the scope of their duties **did not shift** to the plaintiff, giving further proof that the Westfall Act does not apply

**(22)** Where there is no proof whatsoever that the FBI defendants were acting within the scope of their duties, the Westfall Act does not apply.

**(23)** To hold that the Westfall Act applies would be contrary to existing law.

**(24)** Where Meuse claims defamation, in addition to his Bivens claims, and defamation is outside the scope of the Federal Tort Claims Act ["FTCA"], the general waiver of immunity applies. "Congress . . . expressly excepted certain kinds of claims from the FTCA's otherwise broad waiver of sovereign immunity, including any claim arising out of slander and other specified intentional torts." Rogers v. Management Technology Inc., 123 F.3d 34, 1997.C01.0000374 at ¶41 <http://www.versuslaw.com> (1st Cir. 1997), citing 28 U.S.C. §2680(h).

**(25)** **For the first time the FBI states that Special Agent Kelly's affidavit was certified by a magistrate judge. If so, this certified affidavit has not yet been provided to Meuse either separately or attached to an FBI pleading in this court.**

**The FBI also asserts that the Fourth Amendment does not require a signature on a warrant. They write: "What is required is that a warrant be 'supported by Oath or affirmation.' Burke v. Town of Walpole, 405 F.3d 66, 78 (1st Cir. 2005)." What the FBI fails to assert is that the affidavit contains multiple falsehoods (described in Meuse's pleadings listed above and incorporated herein by reference), among which is the falsehood that a State felony warrant existed. That is NOT true . . . and NO State felony warrant has ever been produced by the FBI or its assistant U.S. attorney OR by the Haverhill Police Department OR by the Essex County D.A.'s office.**

**So—contrary to the FBI's assertion—there IS a dispute as to whether the judge intended to issue the warrant. There is absolutely NO proof that the ABSENCE of a judge's or magistrate's signature is—again as the FBI asserts—ministerial.**

**Thus, given a legitimate dispute, or real controversy, and the ABSENCE of any evidence whatsoever that the lack of a signature was ministerial, one must conclude that the magistrate judge did not sign it because there was NO State felony warrant which is required for a federal arrest warrant, pursuant to §1073, for Unlawful Flight to Avoid Prosecution ["UFAP"].**

**Moreover, the reason Meuse was not arrested pursuant to a federal UFAP warrant—as the FBI now admits—is because there NEVER was a federal UFAP warrant, so the substitute State MISDEMEANOR warrant was made and transmitted to Oklahoma. The Massachusetts warrant should have had no effect in Oklahoma.**

4

  **As to whether the magistrate judge signed the Criminal Complaint and the Summons is still unknown. Yes, the FBI asserts that the court signed it, but Meuse has never seen the original and had it analyzed to determine whether they were but STAMPED signatures on forms in a pile or two on a desk in some office or whether they were real signatures.**

  **Meuse is far less concerned that a magistrate's signature would be on a Criminal Complaint form or on a Summons because Meuse or any other defendant would suffer far less, if any, harm from a signed form, than he suffered. or any other defendant would suffer, by the ABSENCE of a signature on a warrant and then by the treatment of the warrant as if it were real and/or valid. The ABSENCE of a signature on a warrant is NOT a MERE technical defect. The ABSENCE of a signature on a warrant is proof that constitutional procedures were not followed.**

  **Significant, too, is the docket sheet in the alleged federal case <u>US v. Meuse</u>. See specifically, Exhibits A and B attached to Meuse's opposition to the FBI's motion for summary judgment, which he also incorporates herein by reference, and the discussion in Meuse's pleadings regarding the mutant quality to the docket sheet in <u>US v. Meuse</u> (as compared to <u>US v. Alves</u>).**

  **Moreover, in contrast to the law cited by the FBI's counsel in the footnote on page 6, where the FBI counsel asserts that there was probable cause in <u>Burke</u>, there is no evidence whatsoever that there was ever probable cause in the <u>Meuse</u> case.**

(26)  **On page 7 (in the body and the note on that page) of their brief, the FBI defendants argue that Meuse made no showing that the FBI agents were acting outside the scope of their duties. This is false. Meuse did make the showing. See <u>Exhibits M, N, T, CCC</u> and <u>¶¶ 64, 82, 107, 109, 324, 343, 349-350</u> of Meuse's Verified Complaints, in which Meuse proves:**

   **(A) by an adjudication by the criminal trial judge (Judge Swan) that there was no custody order in place when he took the child,**

   **(B) by Police Captain Thompson's and Police Detective Moynihan's admissions that they never checked with the court to see whether Meuse had been found in contempt of a court order regarding custody or visitation,**

   **(C) that there had been a restraining order violated by Susan Pane when she removed the child from Massachusetts,**

   **(D) that Suffolk County Probate & Family Court Judge Manzi held that Pane had wrongfully removed the child from Massachusetts, and**

   **(E) that Police Detective Moynihan knew about Judge Manzi's order holding that Pane had wrongfully removed the child from Massachusetts,.**

  **CONCLUSION: Meuse had committed no violation of a court order and no crime.**

**There was no probable cause to issue any arrest warrant, State or Federal, against Meuse. Meuse has made an overwhelming showing—contrary to the FBI defendants' assertion—that whatever actions Special Agents Prouty and Kelly took against Meuse had to be outside the scope of their official duties. There was never probable cause to even call the agents onto the case. Had the agents done the proper investigation before acting, they would not have violated the many known, well-established, constitutional, fundamental rights Meuse has had.**

WHEREFORE, Plaintiff prays this Honorable Court (1) to re-substitute the FBI agents individually for the United States, (2) to deny the FBI defendants' request for a final order of dismissal, and (3) to strike or ignore the FBI defendants' Proposed Final Order of Dismissal. To not allow re-substitution and to allow dismissal would be to deny Meuse any remedy for the wrongs done him by the FBI defendants. The constitution guarantees him a remedy for such wrongs.

>Respectfully submitted,
>BRIAN J. MEUSE,
>By his attorney,
>
>/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>
>Barbara C. Johnson, Esq.
>6 Appletree Lane
>Andover, MA 01810-4102
>978-474-0833
>BBO #549972

28 June 2006